**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| CARROLL INDEPENDENT SCHOOL DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, *et al*.,<br><br>Defendants. | Case No. 4:24-cv-00461-O<br>District Judge Reed O'Connor |

**BRIEF IN SUPPORT OF DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION TO DELAY EFFECTIVE DATE
AND FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 3

I.      Title IX, Implementing Regulations, and Guidance ............................................. 3

II.     Procedural History ................................................................................................ 5

LEGAL STANDARD......................................................................................................... 5

ARGUMENT ..................................................................................................................... 5

I.      Plaintiff Is Unlikely To Succeed on the Merits. ................................................... 5

        A.      The Rule's Interpretation of Title IX To Prohibit Discrimination on the
                Basis of Gender Identity Is Compelled by the Statutory Text. ............................... 5

        B.      The Final Rule's Limitations on Sex Separation Are Lawful and Properly
                Account for Congressional Direction. ................................................................ 11

                1.      The De Minimis Harm Standard in § 106.31(a)(2) Is Properly
                        Derived from the Statutory Text and Fully Consistent with
                        Supreme Court Precedent. .......................................................... 11

                2.      Plaintiff Does Not Show that the Department's Consideration of
                        § 106.31(a)(2) Was Arbitrary and Capricious. ......................................... 14

        C.      The Final Rule Does Not Raise a Spending Clause Issue or Implicate the
                Major Questions Doctrine. .................................................................................. 18

        D.      The Rule's Hostile Environment Harassment Definition Is Consistent with
                the Requirements of the First Amendment and Is Not Arbitrary and
                Capricious. ........................................................................................................ 20

        E.      The Rule's Protection of the "Privacy of the Parties and Witnesses" in
                Grievance Procedures Is Not an Unconstitutional "Prior Restraint." ................. 25

        F.      Plaintiff's Complaint Is Subject to Dismissal for Claim-Splitting. ..................... 26

II.     Plaintiff Has Not Shown Irreparable Harm Justifying Preliminary Relief. ..................... 26

III.    The Equities and Public Interest Weigh Against Preliminary Relief. ............................. 28

IV.     Any Relief Afforded by the Court Should Be Limited in Accordance with the
        Administrative Procedure Act ("APA") and Equitable Principles. ................................... 29

CONCLUSION................................................................................................................ 30

# TABLE OF AUTHORITIES

## <u>CASES</u>

*ADT, LLC v. Cap. Connect, Inc.*,
  145 F. Supp. 3d 671 (N.D. Tex. 2015) ............................................................ 27, 28

*Ams. for Prosperity Found. v. Bonta*,
  594 U.S. 595 (2021) ................................................................................................ 23

*Arizona v. Biden*,
  40 F.4th 375 (6th Cir. 2022) ................................................................................ 29

*Ayotte v. Planned Parenthood of N. New England*,
  546 U.S. 320 (2006) ................................................................................................ 30

*Big Tyme Invs., L.L.C. v. Edwards*,
  985 F.3d 456 (5th Cir. 2021) ................................................................................ 29

*Bostock v. Clayton County*,
  590 U.S. 644 (2020) ...................................................................................... *passim*

*Califano v. Aznavorian*,
  439 U.S. 170 (1978) ................................................................................................ 13

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ................................................................................................ 29

*Cannon v. Univ. of Chi.*,
  441 U.S. 677 (1979) ................................................................................................ 29

*Chiu v. Plano Indep. Sch. Dist.*,
  339 F.3d 273 (5th Cir. 2003) ......................................................................... 25, 26

*Cornish v. Dudas*,
  540 F. Supp. 2d 61 (D.D.C. 2008) ...................................................................... 28

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999) ................................................................................ 18, 21, 22

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019) ................................................................................................ 14

*DHS v. New York*,
  140 S. Ct. 599 (2020) ...................................................................................... 29, 30

*EEOC v. Boh Bros. Constr. Co.*,
  731 F.3d 444 (5th Cir. 2013) ................................................................................ 23

*Franklin v. Gwinnett Cnty. Pub. Sch.*,
    503 U.S. 60 (1992) ................................................................................................ 8, 10

*Gen. Land Off. of Tex. v. Biden*,
    71 F.4th 264 (5th Cir. 2023) ..................................................................................... 26

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17 (1993) ............................................................................................ 20, 24

*Hodel v. Va. Surface Mining. & Reclamation Ass'n*,
    452 U.S. 264 (1981) ................................................................................................. 19

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005) .............................................................................................. 3, 19

*Jordan v. Fisher*,
    823 F.3d 805 (5th Cir. 2016) ...................................................................................... 5

*Lakoski v. James*,
    66 F.3d 751 (5th Cir. 1995) .................................................................................... 8, 10

*Lowrey v. Tex. A&M Univ. Sys.*,
    117 F.3d 242 (5th Cir. 1997) ....................................................................................... 8

*Meritor Sav. Bank, FSB v. Vinson*,
    477 U.S. 57 (1986) ............................................................................................... 8, 23

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ............................................................................................. 14, 18

*Muldrow v. City of St. Louis*,
    144 S. Ct. 967 (2024) ............................................................................................... 14

*Munaf v. Geren*,
    553 U.S. 674 (2008) ................................................................................................... 5

*New York v. United States*,
    505 U.S. 144 (1992) ................................................................................................. 19

*NFIB v. Sebelius*,
    567 U.S. 519 (2012) ................................................................................................. 18

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................................. 28

*Rest. L. Ctr. v. U.S. Dep't of Lab.*,
    66 F.4th 593 (5th Cir. 2023) ..................................................................................... 27

iii

*Roberts v. U.S. Jaycees,*
  468 U.S. 609 (1984)..................................................................................................... 29

*Sampson v. Murray,*
  415 U.S. 61 (1974)....................................................................................................... 30

*South Dakota v. Dole,*
  483 U.S. 203 (1987)..................................................................................................... 18

*Speech First Inc. v. Cartwright,*
  32 F.4th 1110 (11th Cir. 2022) .............................................................................. 24, 25

*Speech First, Inc. v. Khator,*
  603 F. Supp. 3d 480 (S.D. Tex. 2022) ........................................................................ 25

*Texas v. Cardona,*
  --- F. Supp. 3d ---, 2024 WL 2947022 (N.D. Tex. June 11, 2024)................................. 6

*Texas v. EPA,*
  829 F.3d 405 (5th Cir. 2016) ...................................................................................... 27

*Texas v. United States,*
  328 F. Supp. 3d 662 (S.D. Tex. 2018) ........................................................................ 28

*United States v. Williams,*
  553 U.S. 285 (2008)..................................................................................................... 24

*Virginia v. Hicks,*
  539 U.S. 113 (2003)..................................................................................................... 23

*W. Sur. Co. v. PASI of LA, Inc.,*
  334 F. Supp. 3d 764 (M.D. La. 2018)......................................................................... 28

*Watchguard Techs., Inc. v. Valentine,*
  433 F. Supp. 2d 792 (N.D. Tex. 2006) ....................................................................... 26

*West Virginia v. EPA,*
  597 U.S. 697 (2022)............................................................................................... 19, 20

*White v. Carlucci,*
  862 F.2d 1209 (5th Cir. 1989) .................................................................................... 27

*Williamson v. Mazda Motor of Am., Inc.,*
  562 U.S. 323 (2011)..................................................................................................... 19

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008)...................................................................................................... 5, 27

*Woods v. Cantrell,*
  29 F.4th 284 (5th Cir. 2022) ................................................................. 23

## STATUTES

5 U.S.C. § 705 ...................................................................................... 29

20 U.S.C. § 1681 ............................................................................... *passim*

20 U.S.C. §§ 1681–1682 ........................................................................ 13

20 U.S.C. § 1682 ............................................................................... *passim*

20 U.S.C. § 1683 .................................................................................... 28

20 U.S.C. § 1686 ......................................................................... 3, 12, 13

42 U.S.C. § 2000e-2 ......................................................................... 4, 7, 10

## RULES AND REGULATIONS

34 C.F.R. § 106.6 ................................................................................... 20

34 C.F.R. § 106.31 ................................................................................. 12

34 C.F.R. § 106.33 ................................................................................. 12

34 C.F.R. § 106.41 ................................................................................. 15

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal
  Financial Assistance,
  85 Fed. Reg. 30,026 (May 19, 2020) ....................................................... 4

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving
  Federal Financial Assistance,
  87 Fed. Reg. 41,390 (proposed July 12, 2022) .............................. 4, 11, 12

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal
  Financial Assistance: Sex-Related Eligibility Criteria for Male and Female Athletic Teams,
  88 Fed. Reg. 22,860 (proposed Apr. 13, 2023) ......................................... 5

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving
  Federal Financial Assistance,
  89 Fed. Reg. 33,474 (Apr. 29, 2024) ................................................. *passim*

## OTHER AUTHORITIES

Administrative Procedure Act, S. Doc. No. 248, 79th Cong., 2d Sess. (1946). .......................... 30

Guaranteeing an Educational Environment Free from Discrimination on the Basis of Sex,
    Including Sexual Orientation or Gender Identity, Exec. Order No. 14,021,
    86 Fed. Reg. 13,803 (Mar. 8, 2021) ............................................................................ 4

1997 Sexual Harassment Guidance,
    62 Fed. Reg. 12,034 (Mar. 13, 1997) ........................................................................ 22

Carroll ISD, Student Welfare/Freedom from Discrimination, Harassment, and Retaliation,
    6.6.8 (LOCAL) (Aug. 2, 2023),
    https://perma.cc/A9HQ-5MF2 .................................................................................. 24

## INTRODUCTION

Title IX prohibits recipients of federal funds from discriminating on the basis of sex in their education programs and activities. 20 U.S.C. § 1681(a). The Department of Education is charged with issuing rules to effectuate this prohibition. *Id.* § 1682. On April 29, 2024, the Department of Education issued a rule titled Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 Fed. Reg. 33,474 (Apr. 29, 2024) (the "Final Rule" or "Rule"). Among other things, the Final Rule interprets Title IX's prohibition on discrimination "on the basis of sex" to include "discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." *Id.* at 33,886. And the Rule defines sex-based hostile environment harassment to include "[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity." *Id.* at 33,884. Contrary to Plaintiff's suggestion, the Rule does not affect the Department's regulations regarding sex-separate athletic teams, which are the subject of a separate rulemaking that has not yet been finalized. *See id.* at 33,817.

Plaintiff's challenges to the Rule fail on every proffered ground. The Department's interpretation of Title IX's prohibition on discrimination "on the basis of sex," to be codified at § 106.10, straightforwardly applies the Supreme Court's reasoning in *Bostock v. Clayton County*, 590 U.S. 644 (2020). *Bostock* concluded that Title VII's prohibition on sex discrimination encompasses discrimination based on gender identity "because it is impossible" to discriminate against a person for being transgender "without discriminating against that individual based on sex," even assuming sex is biological and binary. *Id.* at 660. That same reasoning applies to the

materially similar prohibition on sex discrimination in Title IX.

Further, the Department's implementation of Title IX's narrow exceptions to the general prohibition on separate or different treatment based on sex, through the provision to be codified at 34 C.F.R. § 106.31(a)(2), was reasonable and consistent with the statutory text. The Rule's adherence to the lines drawn by Congress—which specified only a handful of contexts where separation or different treatment based on sex is permitted even when it may subject a person to harm—was proper and lawful. The de minimis harm standard applied in § 106.31(a)(2) follows naturally from the statute's prohibition of "discrimination" and is consistent with Supreme Court precedents interpreting that term. And Plaintiff does not demonstrate that this provision is arbitrary and capricious in any respect.

Plaintiff's argument that the Rule's definition of hostile environment sex-based harassment is arbitrary and capricious and violates First Amendment rights also lacks merit. Indeed, the Department used a similar standard in its enforcement of Title IX for decades prior to 2020, and courts and the Equal Employment Opportunity Commission (EEOC) have used a similar standard for decades to identify harassment under Title VII—without raising serious First Amendment concerns. Plaintiff's First Amendment argument boils down to an assertion that the harassment standard is invalid insofar as it encompasses harassment based on gender identity. But Plaintiff identifies no legal principle whereby anti-harassment laws may be deemed permissible except as applied to harassment based on gender identity.

Plaintiff's First Amendment challenge to the Rule's requirement that a recipient take reasonable steps to protect the privacy of the parties and witnesses during grievance procedures is similarly unsupported, as are Plaintiff's arguments that the Rule is in conflict with the Spending Clause and implicates the major questions doctrine.

2

Finally, apart from these deficiencies, Plaintiff is unlikely to succeed on the merits because its complaint is subject to dismissal on claim-splitting grounds, as the claims it raises in this case are already being raised in separate matters by the State of Texas, an entity with which Plaintiff is in privity for all relevant purposes in this case.

Plaintiff also has not satisfied the other requirements for a stay or preliminary injunction. Plaintiff's alleged harms are largely speculative and do not establish irreparable injury justifying preliminary relief. Moreover, the public interest and balance of equities weigh against granting Plaintiff's motion, as enjoining the Rule would substantially harm the United States' interests in preventing discrimination in federally funded education programs and activities.

Accordingly, the Court should deny the motion to delay effective date and for preliminary injunction.

## BACKGROUND

### I.      Title IX, Implementing Regulations, and Guidance

Title IX's nondiscrimination mandate states, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). There are only a small number of "specific, narrow exceptions to that broad prohibition." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005); *see* 20 U.S.C. § 1681(a)(1)–(9) (listing educational institutions, organizations, or programs that are exempt or partly exempt from Title IX's prohibition on sex discrimination); *id.* § 1686 (permitting maintenance of sex-separate living facilities).

Title IX authorizes and directs the Department to "issu[e] rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken." *Id.* § 1682. Title

3

IX also sets forth an administrative enforcement scheme, which requires the Department to obtain voluntary compliance from a recipient that fails to comply with the statute or the Department's implementing regulations before effectuating compliance through fund termination, or refusal to grant or continue funding, or by any other means authorized by law. *Id*.

Over the years, the Department has promulgated regulations effectuating Title IX, including in 2020, when it specified how recipients of federal funds must respond to allegations of sexual harassment in their education programs and activities. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30,026 (May 19, 2020) [hereinafter 2020 Amendments].

One month after publication of the 2020 Amendments, the Supreme Court held that the prohibition on discrimination "because of . . . sex" in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), necessarily encompasses discrimination because of sexual orientation and gender identity. *See Bostock*, 590 U.S. at 660. Following *Bostock*, President Biden directed the Department to review the 2020 Amendments and existing agency guidance "for consistency with governing law." Guaranteeing an Educational Environment Free from Discrimination on the Basis of Sex, Including Sexual Orientation or Gender Identity, Exec. Order No. 14,021, § 2, 86 Fed. Reg. 13,803 (Mar. 8, 2021). In July 2022, after extensive public engagement, the Department issued a Notice of Proposed Rulemaking (NPRM). 87 Fed. Reg. 41,390.

Following extensive review of the more than 240,000 public comments, the Department published the Final Rule. *See* 89 Fed. Reg. at 33,476. Most relevant to this case, the Final Rule: (1) describes the scope of prohibited sex discrimination under Title IX, *id.*; (2) explains the limits of permissible different or separate treatment on the basis of sex under Title IX, *id.* at 33,477; and (3) clarifies the definition of sex-based harassment under Title IX, *id.* at 33,476.

The Final Rule does not address the issue of sex-separate athletic teams. Instead, the Department is currently considering a separate proposed rule that would address eligibility criteria for sex-separate athletic teams. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance: Sex-Related Eligibility Criteria for Male and Female Athletic Teams, 88 Fed. Reg. 22,860 (proposed Apr. 13, 2023). As the Department has unambiguously stated, "[u]ntil that rule is finalized and issued, the current regulations on athletics continue to apply." 89 Fed. Reg. at 33,817.

## II.   Procedural History

On May 21, 2024, Plaintiff filed its complaint. ECF No. 1 ("*Carroll* Compl."). On May 30, 2024, Plaintiff filed its motion to delay effective date and for preliminary injunction. ECF No. 15.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy" that should "never be awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted). A plaintiff may obtain this "extraordinary remedy" only "upon a clear showing" that it is "entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The party seeking a preliminary injunction must show "a substantial likelihood of success on the merits," "a substantial threat of irreparable injury," "that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted," and "that the grant of an injunction will not disserve the public interest." *Jordan v. Fisher*, 823 F.3d 805, 809 (5th Cir. 2016) (citation omitted).

## ARGUMENT

## I.   Plaintiff Is Unlikely To Succeed on the Merits.

### A.   The Rule's Interpretation of Title IX To Prohibit Discrimination on the Basis of Gender Identity Is Compelled by the Statutory Text.

Title IX prohibits discrimination "on the basis of sex" in education programs and activities

receiving federal financial assistance. 20 U.S.C. § 1681(a). The Final Rule interprets that provision to provide that "[d]iscrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." 89 Fed. Reg. at 33,886 (to be codified at 34 C.F.R. § 106.10). As the Department explained, "discrimination on each of those bases is sex discrimination because each necessarily involves consideration of a person's sex, even if that term is understood to mean only physiological or 'biological distinctions between male and female.'" *Id.* at 33,802 (quoting *Bostock*, 590 U.S. at 655).

In a recent opinion, this Court held unlawful the Department's interpretive guidance, predating the Final Rule, which explained that the Department interprets Title IX's prohibition on discrimination on the basis of sex to encompass discrimination on the basis of sexual orientation and gender identity. *See Texas v. Cardona*, --- F. Supp. 3d ---, 2024 WL 2947022, at *52 (N.D. Tex. June 11, 2024) (the "Guidance Case"). Defendants respectfully maintain that the Guidance Case decision should not control the Court's analysis here. The detailed analysis set forth in the Final Rule, including *inter alia* the Department's careful consideration of comments received from the public and related materials, was not before the Court in the Guidance Case. The analysis set forth in the Final Rule informs the claims raised by Plaintiff in this case, and directly rebuts Plaintiff's arguments that the Rule is unreasonable, contrary to statute, or otherwise unlawful. Of particular note, the Rule explains that the Department's interpretation of Title IX is not predicated on "interpreting the term 'sex' in Title IX to embrace 'gender identity,'" *id.* at *29, which was a central aspect of this Court's holding in the Guidance Case. As set forth below, the Rule does not adopt a definition of "sex," and does not assume that "sex" means something other than "biological sex." 89 Fed. Reg. at 33,802. Rather, following the reasoning of *Bostock*, the Rule merely

concludes that "it is impossible to discriminate against a person" based on gender identity "without discriminating against that individual based, at least in part, on sex"—even assuming "sex" means "biological sex." *Id.* at 33,807.

The Department's interpretation of Title IX in § 106.10 of the Rule faithfully applies the statutory text in light of *Bostock*, which interpreted Title VII's provision making it unlawful, in relevant part, "for an employer . . . to discriminate against any individual . . . because of such individual's . . . sex," 590 U.S. at 655 (quoting 42 U.S.C. § 2000e-2(a)(1)). The Supreme Court explained that Title VII's "because of" language "incorporates the 'simple' and 'traditional' standard of but-for causation." *Id.* at 656–57 (citation omitted). "[S]ex is necessarily a but-for cause" of discrimination on the basis of transgender status "because it is impossible" to discriminate against a person for being transgender "without discriminating against that individual based on sex." *Id.* at 660, 661 (emphasis omitted). If, for example, an employer "fires a transgender person who was identified as a male at birth but who now identifies as a female," but "retains an otherwise identical employee who was identified as female at birth, the employer intentionally penalizes a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth." *Id.* at 660. "[T]he individual employee's sex plays an unmistakable and impermissible role in the discharge decision." *Id.* Critically, that is so even assuming "sex" in Title VII "refer[s] only to biological distinctions between male and female." *Id.* at 655.

*Bostock*'s reasoning applies with equal force to Title IX's prohibition on discrimination "on the basis of sex," 20 U.S.C. 1681(a), which employs a causation standard no more stringent than Title VII's "because of . . . sex" language, 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has long used the phrase "on the basis of" interchangeably with Title VII's "because of" language when discussing Title VII's causation standard, including in *Bostock* itself. *See, e.g.*, 590 U.S. at

650 ("[I]n Title VII, Congress outlawed discrimination in the workplace on the basis of . . . sex."). Courts—including the Fifth Circuit—consistently rely on interpretations of Title VII's prohibition on discrimination "because of . . . sex" to interpret Title IX's textually similar provision. *See, e.g.*, *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75 (1992) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)); *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 248 (5th Cir. 1997); *Lakoski v. James*, 66 F.3d 751, 756 (5th Cir. 1995). Indeed, the Fifth Circuit has emphasized "Title IX's similarity to Title VII," explaining that "the prohibitions of discrimination on the basis of sex [in] Title IX and Title VII are the same." *Lakoski*, 66 F.3d at 756, 757. Like *Bostock*'s interpretation of Title VII, the Department's determination that Title IX's statutory prohibition on discrimination on the basis of sex encompasses discrimination based on gender identity follows from the "unambiguous statutory text." 590 U.S. at 674; *see* 89 Fed. Reg. at 33,802.[1] Title IX no more permits a school to bar a student from band practice because the student is transgender than Title VII permits an employer to fire an employee because the employee is transgender.

Plaintiff argues that the Rule is unlawful based on Plaintiff's view that Title IX defines sex as binary and biological. Pl.'s Mem. 7, 11, ECF No. 16. But, as Plaintiff appears to acknowledge, *id.* 12, *Bostock* "proceed[ed] on the assumption that 'sex' . . . referr[ed] only to biological distinctions between male and female." 590 U.S. at 655. Thus, per *Bostock*, regardless of how one defines "sex," "it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex." *Id.* at 660. The Rule faithfully follows *Bostock*'s reasoning. *See* 89 Fed. Reg. at 33,802, 33,804–05, 33,807. As *Bostock* underscores, discriminating against someone based on their gender identity necessarily constitutes

---

[1] Because, as the *Bostock* Court held with respect to Title VII, there is no ambiguity in the relevant statutory text, 590 U.S. at 674, there is likewise no basis for Plaintiff's contention that the clear-statement rule forecloses the Department's interpretation. *See generally* Pl.'s Mem. 17.

discrimination "on the basis of" the sex that they were assigned at birth. *See Bostock*, 590 U.S. at 660–61; *id.* at 669.

Plaintiff contends that *Bostock*'s reasoning is inapplicable on two broad grounds, each of which lacks merit.

*First*, Plaintiff argues that the Department cannot rely on *Bostock*'s reasoning because *Bostock* did not address statutory provisions that expressly allow sex-based distinctions. Pl.'s Mem. 12–13, 22; *see also id.* 8–9 (arguing that Department's interpretation of Title IX's general nondiscrimination mandate is invalid because Title IX permits some sex-separate programs, activities, and facilities). But the Rule's scope of sex discrimination provision at § 106.10 likewise does not address contexts in which Title IX permits distinctions based on sex. As Plaintiff notes, *see id.* 8, Title IX and the Department's regulations have long allowed for sex-based separation or differentiation in certain specified contexts, and those provisions are unaffected by the scope of sex discrimination provision to be codified at § 106.10. Whether any different or separate treatment on the basis of sex may be permissible in certain circumstances is instead addressed by other portions of the Final Rule and Title IX regulations, *see* Part I.B *infra*—not § 106.10, which merely sets forth the general scope of Title IX's prohibition on sex discrimination.

Plaintiff's challenge appears to stem in large part from § 106.31(a)(2), which is a separate provision of the Rule that governs how recipients may implement "the limited circumstances in which Title IX or [its implementing regulations] permit[] different treatment or separation on the basis of sex." 89 Fed. Reg. at 33,887; *see, e.g.*, Pl.'s Mem. 8–10, 13–16. Plaintiff is wrong to conflate § 106.10 with § 106.31(a)(2), as these are separate provisions with separate justifications. *Compare* 89 Fed. Reg. at 33,801–13, *with id.* at 33,814–25. *Bostock*'s reasoning is fully consistent with § 106.10's general description of the scope of Title IX's prohibition on sex discrimination,

with or without § 106.31(a)(2)'s clarification regarding sex-based separation or differentiation.

*Second*, Plaintiff argues that *Bostock*'s reasoning is inapplicable because Title IX and Title VII have different coverage, different purposes, and different enforcement mechanisms. *See* Pl.'s Mem. 12–13, 14. But despite these differences, courts have long interpreted the statutes' general nondiscrimination mandates consistently. *See, e.g.*, *Franklin*, 503 U.S. at 75 (citing Supreme Court precedent interpreting Title VII in explaining that school district "[u]nquestionably" was on notice that Title IX prohibits sexual harassment); *Lakoski*, 66 F.3d at 756 (explaining that, based on statutory text, "both Title VII and Title IX protect individuals from employment discrimination on the basis of sex," and that legislative history "also suggests that the Title IX right to be free from sex discrimination in employment is no different from the Title VII right"). Further, none of the distinct aspects of Title VII that Plaintiff highlights—such as the fact that Title VII applies to the "workplace," Pl.'s Mem. 12, or that Title VII covers discrimination based on "race, national origin, and other protected classifications" as well as sex, *id.* 13—was a factor in *Bostock*'s reasoning. Rather, the *Bostock* Court explained, its analysis "involve[d] no more than the straightforward application of legal terms with plain and settled meanings." 590 U.S. at 662.

Indeed, the *Bostock* Court was untroubled by the fact that Title VII's prohibition of discrimination based on transgender status might be an application "not expressly anticipated by Congress." *Id.* at 674. Nor did the Court feel the need to address the fact that Title VII, in a separate provision, sets forth an exception to its general nondiscrimination mandate. *See* 42 U.S.C. § 2000e-2(e) (allowing employers to hire individuals on the basis of "sex" when sex "is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise"). Title VII's general nondiscrimination provision was a "broad rule," and there is no "such thing as a 'canon of donut holes,' in which Congress's failure to speak directly to a specific

10

case that falls within a more general statutory rule creates a tacit exception." *Bostock*, 590 U.S. at 669. Whatever the differences between Title VII and Title IX, for the reasons explained in *Bostock*, Title IX's prohibition on discrimination "on the basis of sex" by its plain terms prohibits discrimination based on gender identity, *see id.* at 662, and Plaintiff's arguments otherwise are unlikely to succeed.

> **B.    The Final Rule's Limitations on Sex Separation Are Lawful and Properly Account for Congressional Direction.**

Contrary to Plaintiff's contentions, Pl.'s Mem. 14–16, 22–24, the Final Rule's explanation of the extent to which Title IX permits separate or different treatment on the basis of sex also follows naturally from Title IX's operative text and is not arbitrary or capricious.

> **1.    The De Minimis Harm Standard in § 106.31(a)(2) Is Properly Derived from the Statutory Text and Fully Consistent with Supreme Court Precedent.**

In § 106.31(a)(2), the Rule provides that "[i]n the limited circumstances in which" Title IX and its implementing regulations permit separation on the basis of sex, that separation must not be carried out "in a manner that discriminates on the basis of sex by subjecting a person to more than de minimis harm." 89 Fed. Reg. at 33,887. This de minimis harm standard correctly interprets Title IX's prohibition on sex-based "discrimination" and is fully consistent with Supreme Court precedents interpreting that term. Contrary to Plaintiff's argument, *see* Pl.'s Mem. 14–16, § 106.31(a)(2) properly applies a central element of Title IX's prohibition of sex-based discrimination—that different or separate treatment based on sex is prohibited, i.e., discriminatory, only when it causes harm.

As explained in the Final Rule, the Department's regulations have long specified that separate or different treatment on the basis of sex is generally prohibited under Title IX because such treatment is presumptively discriminatory. 89 Fed. Reg. at 33,814 (citing NPRM, 87 Fed.

Reg. at 41,534; 34 C.F.R. § 106.31(b)(4), (7)). The regulations, however, also have long recognized limited contexts in which sex separation or differentiation is allowed. *Id.* The provision to be codified at § 106.31(a)(2) explains how recipients may carry out such separate or different treatment without running afoul of the statute's nondiscrimination mandate. Consistent with Supreme Court precedent, the Rule provides that, save for limited instances allowed by statute, Title IX prohibits "distinctions or differences in treatment [on the basis of sex] that injure protected individuals." 89 Fed. Reg. at 33,814 (quoting *Bostock*, 590 U.S. at 681).

The Department has long recognized that sex "separation in certain circumstances, including in the context of bathrooms or locker rooms, is not presumptively unlawful sex discrimination" because such sex-separate facilities generally impose no more than de minimis harm on students. *Id.* at 33,818; *see generally* 34 C.F.R. § 106.33. But consistent with federal court decisions and guidelines published by respected medical organizations, the Department explained that sex separation that prevents a person from participating in a program or activity consistent with the person's gender identity *does* cause more than de minimis harm—a conclusion that Plaintiff does not dispute. *See* 89 Fed. Reg. at 33,816 (citing cases); *id.* at 33,819 n.90 (citing guidelines published by medical organizations). Because preventing a student from using sex-separate restrooms consistent with their gender identity causes more than de minimis harm on the basis of sex, *id.* at 33,814, it is prohibited by Title IX.

At the same time, the Department recognized that Congress specified a few limited contexts in which separate or different treatment based on sex is permitted by the statute, notwithstanding whether it causes harm. *Id.* at 33,819; *see, e.g.*, 20 U.S.C. § 1681(a)(6) (membership practices of certain social fraternities or sororities); *id.* § 1681(a)(4) (institutions focused on military training); *id.* § 1686 (educational institution's maintenance of "separate living

facilities for the different sexes"). The Rule's attention to the distinction between regulations informed by express congressional direction, listed in § 106.31(a)(2), and regulations permitting sex separation in other contexts, is neither "implausibl[e]," Pl.'s Mem. 15, nor arbitrary and capricious, *id.* 24. To the contrary, as explained by the Department, this distinction follows directly from the statute itself. 89 Fed. Reg. at 33,814, 33,819. The Rule "clearly effectuates this basic congressional decision." *Califano v. Aznavorian*, 439 U.S. 170, 178 (1978). As Congress did not except restrooms, locker rooms, or physical education classes from the general prohibition on sex discrimination, the Department reasonably determined that sex separation in such contexts can be consistent with Title IX only to the extent that any sex-based harm imposed is de minimis—*i.e.*, not discriminatory. 89 Fed. Reg. at 33,816.

Congress's specification that Title IX allows a recipient to maintain sex-separate living facilities, 20 U.S.C. § 1686, does not somehow "foreclose" the Department from "reading Title IX to say that sex separation" can be discriminatory in *other* circumstances, as Plaintiff suggests. Pl.'s Mem. 15. Indeed, that suggestion is contradicted by Section 1686 itself, which provides that Title IX's allowance of sex-separate living facilities is a carve-out from a general rule "to the contrary." 20 U.S.C. § 1686; *see generally* 89 Fed. Reg. at 33,821 (explaining that the statutory living facilities "carve-out" in § 1686 is inapplicable to "other aspects of a recipient's education program or activity for which Title IX permits different treatment or separation on the basis of sex, such as bathrooms, locker rooms, or shower facilities," and noting that the latter are "regulations that the Department adopted under different statutory authority [20 U.S.C. §§ 1681–1682], and which have long been addressed separately from 'living facilities'").

Plaintiff also fails to show that § 106.31(a)(2) is inconsistent with precedents regarding the meaning of the term "discrimination." As Plaintiff acknowledges, it is well established that a

statute prohibiting discrimination bars differential treatment only when it causes "some injury." Pl.'s Mem. 15 (quoting *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 977 (2024)). Plaintiff suggests that § 106.31(a)(2) is somehow in tension with the Supreme Court's recent holding in *Muldrow*, a Title VII case in which the Court held that a plaintiff claiming discrimination must demonstrate some harm, but need not establish a "significant" injury or meet "an elevated threshold of harm." 144 S. Ct. at 974; *see* Pl.'s Mem. 15. But this is precisely the standard articulated in § 106.31(a)(2)—that separate or different treatment based on sex constitutes discrimination when it causes some harm, *i.e.*, a harm that is "more than de minimis." 89 Fed. Reg. at 33,887.

### 2. Plaintiff Does Not Show that the Department's Consideration of § 106.31(a)(2) Was Arbitrary and Capricious.

Plaintiff also contends that the Department's consideration of § 106.31(a)(2) was otherwise unreasonable, and arbitrary and capricious. Review under the arbitrary and capricious standard is "deferential," *Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019), and merely examines whether the agency's decision "was the product of reasoned decisionmaking," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983). Plaintiff fails to show that the Department's promulgation of § 106.31(a)(2) was unreasonable, and Plaintiff's arguments that the provision is arbitrary and capricious lack merit.

*First*, Plaintiff does not show that the Department "fail[ed] to grapple with the impact on sports." Pl.'s Mem. 22. The Rule makes explicit that it does not amend or affect the Department's regulation regarding sex-separate athletic teams, given that the eligibility criteria a school can use for its male and female athletic teams remain unchanged by the Rule. 89 Fed. Reg. at 33,817. Indeed, the Rule expressly states that the Department will address sex-separate athletic teams in a separate rulemaking. *Id.* at 33,839. Further, the Rule thoroughly and logically explains why the de minimis harm standard in § 106.31(a)(2) does not apply to the regulation permitting sex-separate

14

athletic teams, and why this is consistent with the Department's longstanding approach to athletics. *Id.* at 33,816–19. As the Rule does not address sex-separate athletic teams, Plaintiff's arguments on this topic rest on a false premise. *See generally* Pl.'s Mem. 11–12, 13, 16, 19, 22–23.

Plaintiff nonetheless insists that the Rule still affects sex-separate athletic teams, *id.* 22–23, but this is based on a misapprehension of the Rule. Plaintiff's argument appears to hinge on the fact that § 106.31(a)(2) specifies that its de minimis harm standard applies to the "limited circumstances in which Title IX or this part permits different treatment or separation on the basis of sex," except for certain specified statutory and regulatory provisions. 89 Fed. Reg. at 33,887. Those excluded provisions include 34 C.F.R. § 106.41(b), which permits sex-separate athletic teams under some circumstances, but not § 106.41(a), which is the general provision otherwise prohibiting discrimination on the basis of sex in athletics. Plaintiff argues that the omission of § 106.41(a) shows that the Rule covertly applies to recipients' policies regarding separate male and female athletic teams. Pl.'s Mem. 22. The problem with this argument is that § 106.41(a) is not one of the "limited circumstances in which Title IX or this part *permits different treatment or separation on the basis of sex*," 89 Fed. Reg. at 33,887 (emphasis added). Rather, § 106.41(a) is a general nondiscrimination provision. As such, it is simply not implicated by § 106.31(a)(2).

*Second*, Plaintiff argues that § 106.31(a)(2) is "inconsisten[t]" because it treats cisgender individuals differently from individuals whose gender identities do not match their sex assigned at birth. Pl.'s Mem. 15. There is no such inconsistency. The Department had no basis to conclude that excluding cisgender students and employees from sex-separate facilities inconsistent with their gender identity generally causes cognizable harm. 89 Fed. Reg. at 33,820. In contrast, as the Rule explains, sex separation that prevents a person from participating in a program or activity consistent with the person's gender identity does cause such harm. *Id.* at 33,816; *see supra* at 12.

15

*Third*, contrary to Plaintiff's suggestion, Pl.'s Mem. 24, the Department considered and addressed commenters' concern that allowing individuals to use sex-separate restrooms consistent with their gender identity poses a threat to privacy. *See* 89 Fed. Reg. at 33,817–20. As the Rule states, the Department "strongly agrees that recipients have a legitimate interest in protecting all students' safety and privacy." *Id.* at 33,820. The Department reasonably concluded, however, that there is no "evidence . . . that the mere presence of a transgender person in a single-sex space compromises anyone's legitimate privacy interest." *Id*. The Rule notes, for example, that federal courts have rejected "unsubstantiated and generalized concerns that transgender persons' access to sex-separate spaces infringes on other students' privacy or safety." *Id.* (citing cases).

*Fourth*, Plaintiff does not show that the Department failed to consider reasonable reliance interests.  Pl.'s Mem. 23. The only purported reliance interest Plaintiff identifies is that unspecified schools "built expensive facilities based on ED's prior positions—for example, building communal restrooms and locker rooms rather than single-occupant facilities." *Id.* But the declaration Plaintiff cites for this proposition includes no such statement. *See* Pl.'s App'x 004–005, ECF No. 17. Moreover, contrary to Plaintiff's implication, compliance with § 106.31(a)(2) does not require recipients to modify their restroom or locker room facilities. *See generally* 89 Fed. Reg. at 33,876 ("Compliance with final § 106.31(a)(2) may require updating of policies or training materials, but will not require significant expenditures, such as construction of new facilities or creation of new programs."). At bottom, the Department adequately considered the recipients' relevant reliance interest on past policies and practices and ultimately concluded that "the final regulations will not impose substantial new burdens that are not justified by the significant benefits the Department expects from implementation of the final regulations." *Id.* at 33,849.

*Fifth*, Plaintiff is incorrect that § 106.31(a)(2) unreasonably "treat[s] biological differences

as if they were sex stereotypes." Pl.'s Mem. 23. Section 106.31(a)(2) does not say anything about "sex stereotypes" but rather explains that, except in certain contexts in which Congress provided otherwise, a recipient may not carry out separate or different treatment based on sex "in a manner that discriminates on the basis of sex by subjecting a person to more than de minimis harm." 89 Fed. Reg. at 33,887. And as explained above, *see* Part I.B.1 *supra*, the Department determined that "[a]dopting a policy or engaging in a practice that prevents a person from participating in an education program or activity consistent with the person's gender identity subjects a person to more than de minimis harm on the basis of sex." 89 Fed. Reg. at 33,887. Plaintiff does not dispute this determination. Section 106.31(a)(2) does not rely on the "sex stereotypes" premise surmised by Plaintiff, and the Department therefore did not fail to "give a reasoned explanation" for such a non-existent justification, Pl.'s Mem. 23.

*Finally*, Plaintiff does not demonstrate that the Department failed to adequately address concerns about "conceal[ing] a child's request to be treated as the opposite sex from the child's parents." *Id.* On the contrary, responding to the specific concern highlighted by Plaintiff, the Rule makes explicit that "nothing in these final regulations prevents a recipient from disclosing information about a minor child to their parent who has the legal right to receive disclosures on behalf of their child." 89 Fed. Reg. at 33,822; *see id.* at 33,890 (to be codified at 34 C.F.R. § 106.44(j)(2)). More broadly, the Department thoroughly considered parental rights, and the Rule does not disturb any existing parental rights. *See, e.g.*, *id.* at 33,821, 33,835–36, 33,531.

In sum, Plaintiff does not show that, in its consideration of § 106.31(a)(2), the Department "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that r[an] counter to the evidence before the agency, or [was] so implausible that it could not be ascribed to a difference

in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

### C.   The Final Rule Does Not Raise a Spending Clause Issue or Implicate the Major Questions Doctrine.

Plaintiff's Spending Clause and "major question" arguments fail because the Rule neither expands the conditions for federal funding under Title IX, nor constitutes an extraordinary action taken without clear congressional authorization.

First, the Rule does not violate the Spending Clause. The Spending Clause grants Congress broad power to achieve its policy aims through conditioned offers of funding, so long as those conditions, *inter alia*, (1) are "unambiguous[]," (2) relate "to the federal interest" in the project, and (3) are consistent with "other constitutional provisions." *South Dakota v. Dole*, 483 U.S. 203, 207-08, 211 (1987) (citation omitted). Plaintiff argues that the Rule violates the Spending Clause by "coerc[ing]" states and schools districts with a threat of loss of federal funding. Pl.'s Mem. 18 (citing *NFIB v. Sebelius*, 567 U.S. 519, 581 (2012)). But it was Congress, not the Executive Branch, that established Title IX's funding conditions, and Title IX has long been held to be consistent with the Spending Clause. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640 (1999).

To the extent Plaintiff's argument is instead that, if the Rule's interpretation of Title IX is correct, Title IX violates the Spending Clause, Plaintiff is likewise wrong. As explained above, the Rule merely delineates the scope of Title IX's unambiguous prohibition on sex discrimination, based on the plain meaning of the statutory text. *See* 89 Fed. Reg. at 33,802. Plaintiff in essence argues that certain obligations imposed by the Rule are not ones it expected, Pl.'s Mem. 18, but Plaintiff was on notice it is barred from discriminating based on sex, and "the fact that a statute has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity; instead, it simply demonstrates the breadth of a legislative command." *Bostock*, 590

U.S. at 674 (cleaned up). Indeed, in 2005, the Supreme Court rejected an analogous argument that Title IX's prohibition on sex discrimination did not cover retaliation because it was not specifically mentioned in the statute. *Jackson*, 544 U.S. at 175.

In connection with its Spending Clause argument, Plaintiff argues that the Rule violates the anti-commandeering doctrine because the Rule states that the Title IX regulations preempt conflicting state laws. Pl.'s Mem. 18 (citing 89 Fed. Reg. at 33,885). Plaintiff's argument misunderstands the anti-commandeering doctrine, which prohibits the federal government from "commandeering the legislative processes of the States." *New York v. United States*, 505 U.S. 144 (1992). The doctrine does not, as Plaintiff suggests, bar the federal government from enacting legislation through the Spending Clause that preempts conflicting state laws. *See Hodel v. Va. Surface Mining. & Reclamation Ass'n*, 452 U.S. 264, 290 (1981) (rejecting commandeering argument regarding Commerce Clause legislation, citing Supremacy Clause). Rather, it is well established that a federal law or regulation can preempt a state law that "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of a federal law." *Williamson v. Mazda Motor of Am., Inc*., 562 U.S. 323, 330 (2011) (citations omitted).

This case does not implicate the major questions doctrine either.  That doctrine is reserved for "extraordinary" cases, "in which the history and breadth of the authority that the agency has asserted, and the economic and political significance of that assertion, provide a reason to hesitate before concluding that Congress meant to confer such authority." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022) (citation omitted). Plaintiff's "major questions" argument appears to be directed at § 106.31(a)(2), and the general requirement that recipients not prevent students and employees from participating in the recipient's education programs and activities consistent with their gender identity. Pl.'s Mem. 19. As explained above, however, § 106.31(a)(2) effectuates Congress's

decision in Title IX to generally prohibit sex-based discrimination where it subjects a person to more than de minimis harm. *See* Part I.B *supra.* And to the extent Plaintiff's argument is directed at the Department's description of the scope of prohibited sex discrimination in § 106.10, that provision merely interprets Title IX's unambiguous text, as explained above. The relevant portions of the rule thus reflect "policy decisions" made by "Congress . . . itself" in the text of the statute. *West Virginia*, 597 U.S. at 723.

### D.   The Rule's Hostile Environment Harassment Definition Is Consistent with the Requirements of the First Amendment and Is Not Arbitrary and Capricious.

The Final Rule defines hostile environment sex-based harassment, in relevant part, as "[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity." 89 Fed. Reg. at 33,884 (to be codified at 34 C.F.R. § 106.2). This definition is consistent with "relevant judicial precedent, and . . . with congressional intent and the Department's longstanding interpretation of Title IX and resulting enforcement practice prior to the 2020 amendments." *Id*. at 33,490. In addition, the definition "closely tracks longstanding case law defining sexual harassment," *id.* at 33,494 (citing *Harris v. Forklift Sys., Inc*., 510 U.S. 17 (1993)), and aligns with the similar definition used by the EEOC, *id.* at 33,516.

The Rule also expressly provides that it must not be applied in a manner inconsistent with the First Amendment. The Rule states—as the 2020 Amendments did—that "nothing in the Title IX regulations requires a recipient to restrict any rights that would otherwise be protected from government action by the First Amendment." 89 Fed. Reg. at 33,503; *see also* 34 C.F.R. § 106.6(d) (unchanged by the Rule). Thus, if the application of the Rule's harassment standard in a specific context raises First Amendment concerns, "a recipient must formulate, interpret, and apply its

regulations in a manner that respects the legal rights of students and employees when taking action to end sex-based harassment that creates a hostile environment." 89 Fed. Reg. at 33,505.

Plaintiff nonetheless argues that the Rule's hostile environment sex-based harassment definition violates the First Amendment and is arbitrary and capricious for two reasons: (1) because it is inconsistent with the standard for private damages actions articulated in *Davis ex. rel. LaShonda D. v. Monroe County Board of Education*, Pl.'s Mem. 20–21, 23–24, and (2) because of how it operates when applied to gender identity, *id.* 19–20. These arguments lack merit.

*First*, Plaintiff's reliance on *Davis* is misplaced because *Davis* addressed the standard a plaintiff must meet in a private action for damages under Title IX's implied private right of action, 526 U.S. at 650; *Davis* did not limit the Department's enforcement authority, and nowhere suggested that the specific standard it articulated was required by the First Amendment. Explaining that "[t]he requirement that recipients receive adequate notice of Title IX's proscriptions . . . bears on the proper definition of 'discrimination' in the context of a private damages action," *id.* at 649, *Davis* held that "funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.* at 650. As the Rule explains, *Davis* "makes clear that the Court was describing only the standards applicable to the 'particular context' of a private action for damages—not the standard applicable to administrative enforcement," where "educational access is the goal" rather than imposing liability for private damages.  89 Fed. Reg. at 33,498.

Plaintiff identifies no basis to conclude that the *Davis* standard must apply in the distinct administrative enforcement context. Indeed, after observing that Congress ''entrust[ed]'' Federal

agencies to ''promulgate rules, regulations, and orders to enforce the objectives'' of Title IX, 526 U.S. at 638, the *Davis* court twice approvingly cited the Department's then-recently published guidance regarding sexual harassment, *see id.* at 647–48, 651 (citing 1997 Sexual Harassment Guidance, 62 Fed. Reg. 12,034 (Mar. 13, 1997)). That guidance specifically stated that schools could be found to violate Title IX if the relevant harassment "was sufficiently severe, persistent, or pervasive to create a hostile environment." 62 Fed. Reg. at 12,040. *Davis* did not purport to "define the scope of the behavior that Title IX proscribes," 526 U.S. at 639, and the Department explained in detail its reasons for departing from the definition adopted in the 2020 Amendments. 89 Fed. Reg. at 33,494–501.

Moreover, Plaintiff's contention that the Rule is in conflict with *Davis* because the "harassment definition sweeps up speech even off campus or outside the United States," Pl.'s Mem. 21, is incorrect. The Rule's "Application" provision, § 106.11, provides that a recipient's obligations to address sex-based harassment apply even when some conduct contributing to a hostile environment in the recipient's program or activity occurred outside of the recipient's program or activity or outside the United States. *See* 89 Fed. Reg. at 33,886. However, conduct occurring abroad or outside the recipient's program or activity is only implicated insofar as it "contributes to a hostile environment in the United States," *id.* at 33,576, and in the recipient's education program or activity, *id.* at 33,528. The Rule directly refutes Plaintiff's argument that this standard is in conflict with *Davis*, confirming that "under § 106.11, a recipient is not responsible for the actions of parties over which it lacks significant control." *Id.* at 33,529.

Accordingly, there is no basis to find under *Davis* that the Rule's hostile environment harassment definition either conflicts with the First Amendment or is arbitrary and capricious.

*Second*, Plaintiff argues that the hostile environment sex-based harassment definition "violates constitutional protections against overbreadth and vagueness" insofar as it applies to harassment based on gender identity. Pl.'s Mem. 20–21. But a law may be invalidated as overbroad only "if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021). Courts "have insisted that a law's application to protected speech be 'substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications, before applying the 'strong medicine' of overbreadth invalidation," *Virginia v. Hicks*, 539 U.S. 113, 119-20 (2003) (internal citations omitted). Plaintiff cannot satisfy this standard.

The Final Rule's standard for hostile environment sex-based harassment tracks similar standards that courts have applied routinely for decades without First Amendment issues. *See, e.g.*, *Meritor Sav. Bank*, 477 U.S. at 67 (to be actionable under Title VII, sexual harassment "must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment'"); *EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 457, 461–62 (5th Cir. 2013) (en banc) (deeming the evidence sufficient to find that a plaintiff suffered "sufficiently severe or pervasive" sex-based harassment where, *inter alia*, he was repeatedly called sex-based epithets by a supervisor); *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) ("We have further said, however, that under the totality of the circumstances test, a single incident of harassment, if sufficiently severe, can give rise to a viable Title VII claim." (cleaned up)). The definition at issue is not "amorphous," Pl.'s Mem. 20, but rather sets forth multiple elements that must be satisfied for hostile environment harassment to be established, including that the harassment must be "subjectively and objectively offensive" and "so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity." 89

Fed. Reg. at 33,884. As the Rule explains, "it is clear from the case law that narrowly drawn anti-harassment laws are permissible" and that "the First Amendment allows for proscription of a narrow category of speech that, based on the totality of the circumstances, constitutes hostile environment sex-based harassment." *Id.* at 33,504–05 (discussing *Harris*, 510 U.S. 17).

These precedents undermine Plaintiff's assertion that the Rule is unconstitutionally overbroad. Plaintiff hypothesizes various ways in which the Rule might be applied to students' or teachers' speech regarding gender identity, Pl.'s Mem. 20, and professes confusion about the Rule's sweep, calling it "vague," *id.* 22.[2] But Plaintiff does not argue that other, similar harassment standards—whether under federal, state, or local law—unconstitutionally chill speech, for instance. There is no meaningful difference in the application of these anti-harassment standards except that the Rule also applies to gender identity.[3] Plaintiff does not even attempt to articulate a principle whereby anti-harassment laws would be constitutionally permissible except as applied to gender identity.

Plaintiff suggests that courts "regularly invalidate as overbroad definitions of harassment mirroring the Rule's," citing *Speech First Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022), for that broad proposition. Pl.'s Mem. 21. But the policy in *Speech First* was markedly different from

[2] Plaintiff's accusation of vagueness—which implicates due process rather than First Amendment rights—*see United States v. Williams*, 553 U.S. 285, 304 (2008)—is unsupported by reference to any specific portion of the Rule or explanation of how the hostile environment harassment definition fails to provide "fair notice of what is prohibited" or is "so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.*; *see* Pl.'s Mem. 21–22. Rather, Plaintiff's vagueness argument appears to be simply Plaintiff's overbreadth argument by another name.

[3] For example, Carroll ISD's own student welfare nondiscrimination policy defines harassment as "physical, verbal, or nonverbal conduct based on . . . any . . . basis prohibited by law, when the conduct is so severe, persistent, or pervasive that the conduct," among other possible effects, "[a]ffects a student's ability to participate in or benefit from an educational program or activity." Carroll ISD, Student Welfare/Freedom from Discrimination, Harassment, and Retaliation, 6.6.8 (LOCAL) (Aug. 2, 2023), https://perma.cc/A9HQ-5MF2.

the definition at issue here. In that case, the university's policy defined "discriminatory harassment" to prohibit "a wide range of 'verbal, physical, electronic, and other' expression concerning any of . . . some 25 or so characteristics." *Speech First*, 32 F.4th at 1125. The panel concluded that this definition "reache[d] not only a student's own speech, but also her conduct 'encouraging,' 'condoning,' or 'failing to intervene' to stop another student's speech." *Id.* "The policy, in short, [was] staggeringly broad," *id.*, and it was not "tailored to harms that have long been covered by hostile environment laws," 89 Fed. Reg. at 33,505 (discussing *Speech First*).[4]

In sum, Plaintiff fails to show that the Rule's hostile environment sex-based harassment standard violates the First Amendment or is arbitrary and capricious.

### E.  The Rule's Protection of the "Privacy of the Parties and Witnesses" in Grievance Procedures Is Not an Unconstitutional "Prior Restraint."

Plaintiff also argues that the Rule's grievance procedures impose unconstitutional "gag orders" by "prohibiting discussing the case with the media or publicly criticizing the recipient's handling of the process." Pl.'s Mem. 21. However, the provision at issue merely requires a recipient "to take reasonable steps to protect the privacy of the parties and witnesses during the pendency of a recipient's grievance procedures." 89 Fed. Reg. at 33,891 (to be codified at 34 C.F.R. § 106.45(b)(5)). The Department directly addressed concerns that this provision would invite recipients to impose "gag orders," reiterating that "students, employees, and third parties retain their First Amendment rights," and emphasizing that, in applying § 106.45(b)(5), recipients must respect those rights. *Id.* at 33,674. Plaintiff cites no precedent suggesting such a policy is an unconstitutional prior restraint. *Cf. Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 281–82 (5th Cir.

---

[4] Plaintiff also cites to *Speech First, Inc. v. Khator*, a brief opinion which contains little analysis other than to say that the University of Houston harassment policy did not comport with the standard adopted by the Supreme Court in *Davis*. 603 F. Supp. 3d 480, 482 & n.6 (S.D. Tex. 2022).

2003) (explaining that school policy was an unconstitutional prior restraint as applied where the "school board applied the virtually standardless speech policy to suspend students who . . . distributed an 'underground' newspaper off of school grounds, outside school hours").

      **F.**    **Plaintiff's Complaint Is Subject to Dismissal for Claim-Splitting.**

Because Plaintiff's claims in this case challenge both the Final Rule and guidance documents predating the Rule, they overlap with the claims brought by the State of Texas in *Texas v. United States*, 2:24-cv-86-Z (N.D. Tex. filed Apr. 29, 2024) ("*Texas II*"), and *Texas v. Cardona*, 4:23-cv-00604-O (N.D. Tex. filed June 14, 2023). Plaintiff's complaint thus implicates the rule against claim splitting, which "prohibits a party or parties in privity from simultaneously prosecuting multiple suits involving the same subject matter against the same defendants." *Gen. Land Off. of Tex. v. Biden*, 71 F.4th 264, 269–70 (5th Cir. 2023).

Texas and Carroll ISD are, at a minimum, in privity with each other for purposes of the rule against claim splitting. With respect to the Final Rule challenges, for instance, both complaints assert an identical interest: the potential loss of federal funds by Texas school districts, including Carroll ISD. *See Texas II* Am. Compl. ¶¶ 117–122, 129–130, 140, ECF No. 12; *Carroll* Compl. ¶¶ 29–31. As the Fifth Circuit has explained, parties are in privity "where the non-party's interests were adequately represented by a party to the original suit." *Gen. Land Off.*, 71 F.4th at 270. Because Carroll ISD's interests in this case are already adequately represented by the State of Texas in its suits, Plaintiff's complaint is subject to dismissal on claim-splitting grounds, and for this reason as well, Plaintiff is unlikely to succeed on the merits.

**II.**    **Plaintiff Has Not Shown Irreparable Harm Justifying Preliminary Relief.**

Plaintiff also fails to establish the imminent irreparable harm needed to justify a preliminary injunction. Plaintiff bears a "heavy burden of clearly establishing to the Court irreparable harm." *Watchguard Techs., Inc. v. Valentine*, 433 F. Supp. 2d 792, 794 (N.D. Tex.

2006). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Moreover, "the irreparable harm element must be satisfied by independent proof, or no injunction may issue." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989).

Plaintiff claims that it will suffer irreparable harm in the form of unrecoverable compliance costs in the lead up to the Final Rule's August 1, 2024, effective date. Pl.'s Mem. 24. In order for compliance costs to qualify as irreparable harm, they "must be based on more than 'speculat[ion]' or 'unfounded fears.'" *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023) (citation omitted). Here, Plaintiff provides only vague and speculative assertions regarding its alleged costs in advance of the Rule's effective date. *See, e.g.*, Ledbetter Decl. ¶ 24, Pl.'s App'x 005 ("Carroll ISD would also have to obtain legal advice regarding compliance with the Rule, which would require it to spend money on legal fees."); *id.* ¶ 27, Pl.'s App'x 006 ("Carroll ISD would have to train its staff on the Rule and resulting changes to Carroll ISD policies and practices."). At most, these generic assertions state the obvious: a new regulation will likely require regulated parties to undertake some activities to assure compliance. They do not justify extraordinary relief in the form of a preliminary injunction. *Cf. Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) (compliance with regulation would lead to permanent closure of power plants).

Plaintiff also alleges that the Final Rule exposes it to private lawsuits and enforcement actions. Pl.'s Mem. 24. But Plaintiff fails to identify how any such alleged injury is realistic, let alone "imminent." *ADT, LLC v. Cap. Connect, Inc.*, 145 F. Supp. 3d 671, 697 (N.D. Tex. 2015). Indeed, even if an administrative enforcement action were to occur once the Rule goes into effect, a recipient could at that time raise challenges to any administrative enforcement proceedings,

which would necessarily precede any termination of funds. 20 U.S.C. § 1682. And any adverse administrative determination would be subject to judicial review. *Id.* § 1683. Similarly, Plaintiff fails to show that private lawsuits following the Final Rule's August 1, 2024, effective date are anything more than "speculative." *ADT, LLC*, 145 F. Supp. 3d at 697.

Plaintiff likewise fails to show any imminent irreparable injury with respect to the challenged Fact Sheet, Interpretation, and guidance documents. As an initial matter, in the Guidance Case, this Court has already enjoined the Department from relying on the relevant portions of these documents, *see* Part I.A *supra*, eliminating even a theoretical risk that they could imminently harm Plaintiff. Moreover, the challenged guidance documents were first issued by the Department in 2021, *Carroll* Compl. ¶¶ 99–109, predating Plaintiff's motion by almost three years. That delay alone belies any argument that Plaintiff is facing irreparable harm justifying imposition of preliminary relief. *See, e.g.*, *W. Sur. Co. v. PASI of LA, Inc.*, 334 F. Supp. 3d 764, 799 (M.D. La. 2018) (recognizing that "a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief"); *Texas v. United States*, 328 F. Supp. 3d 662, 738–39 (S.D. Tex. 2018) (same).

## III.  The Equities and Public Interest Weigh Against Preliminary Relief.

The balance of equities and the public interest "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, these combined factors counsel against issuing the requested preliminary relief. The Rule implements the Department's authority to enforce the statutory objectives of Title IX. *See* 20 U.S.C. § 1682. "There is inherent harm to an agency in preventing it from enforcing regulations that Congress found it in the public interest to direct that agency to develop." *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008). The public interest favors allowing the Department to fulfill these responsibilities. Moreover, a stay or preliminary injunction would significantly harm the Government's interests in preventing

discrimination in education programs and activities. The Final Rule effectuates Title IX's important goals of "avoid[ing] the use of federal resources to support discriminatory practices [and] provid[ing] individual citizens effective protection against those practices." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 704 (1979). Needless to say, preventing sex discrimination is in the public interest. *See Roberts v. U.S. Jaycees,* 468 U.S. 609, 623–24 (1984).

Conversely, Plaintiff has failed to show it faces imminent and irreparable harm supporting relief. *See* Part II *supra*. At best, Plaintiff has pointed to some amount of compliance costs. *See id.* But compelling non-monetary government interests measure up against even serious economic harm. *See, e.g.*, *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 470 (5th Cir. 2021) (allowing state government's COVID-19 restrictions on operations of bars despite financial harms).

## IV.   Any Relief Afforded by the Court Should Be Limited in Accordance with the Administrative Procedure Act ("APA") and Equitable Principles.

While Defendants dispute that preliminary relief is necessary at all, any relief afforded must be appropriately limited to the parties and consistent with the APA and equitable principles. The Court should not issue preliminary relief that extends beyond Plaintiff or beyond portions of the Rule as to which the Court has found that Plaintiff has established irreparable harm and a likelihood of success. But in any event, relief—including any "set aside"—should be limited by traditional equitable principles, including that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). "At a minimum, a district court should think twice—and perhaps twice again—before granting universal anti-enforcement injunctions against the federal government." *Arizona v. Biden*, 40 F.4th 375, 395–96 (6th Cir. 2022) (Sutton, C.J., concurring).

An order to "postpone the effective date" of the Rule under 5 U.S.C. § 705, Proposed Order, ECF No. 15-1, would pose all the same problems as a universal injunction. *See DHS v. New York*,

140 S. Ct. 599, 599–601 (2020) (Gorsuch, J., concurring in the grant of stay). Moreover, § 705 (like other APA provisions) "was primarily intended to reflect existing law," not "to fashion new rules of intervention for District Courts." *Sampson v. Murray*, 415 U.S. 61, 68 n.15 (1974). Plaintiff does not identify, and Defendants have not found, any pre-APA practice of district courts granting universal stays of agency regulations. Consistent with that backdrop, Congress contemplated that any relief under § 705 "would normally, if not always, be limited to the parties," Administrative Procedure Act, S. Doc. No. 248, 79th Cong., 2d Sess. at 277 (1946).

Finally, the Final Rule is severable. *See* 89 Fed. Reg. at 33,848 ("[R]emov[ing] any 'doubt that it would have adopted the remaining provisions of the Final Rule' without any of the other provisions, should any of them be deemed unlawful."). Plaintiff has challenged only a small fraction of the Rule's provisions, and for some, only certain applications. Indeed, Plaintiff seeks relief only as to certain portions of the Rule. *See* ECF No. 15. If the Court grants preliminary relief as to any portion of the Rule, the remainder of the Rule should still be permitted to go into effect, as intended, on August 1, 2024.[5] As the Supreme Court explained, courts should "enjoin only the unconstitutional applications of a statute while leaving other applications in force, . . . or . . . sever its problematic portions while leaving the remainder intact." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–29 (2006) (citation omitted).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion to delay effective date and for preliminary injunction.

---

[5] Two federal district courts recently enjoined the Department from enforcing the Rule in the plaintiff States in those cases. *See* Mem. Op. & Order at 93, *Tennessee v. Cardona*, 2:24-cv-00072 (E.D. Ky. June 17, 2024), ECF No. 100; Mem. Ruling at 39–40, *Louisiana v. U.S. Dep't of Educ.*, 3:24-cv-00563 (W.D. La. June 13, 2024), ECF No. 53. The reasoning of those decisions was faulty in many respects, and one such error was that the courts failed to adequately assess severability.

Dated: June 20, 2024                              Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

/s/ *Elizabeth Tulis*
ELIZABETH TULIS
REBECCA KOPPLIN
BENJAMIN TAKEMOTO
HANNAH SOLOMON-STRAUSS
PARDIS GHEIBI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-9237
Fax: (202) 616-8470
E-mail: elizabeth.tulis@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2024, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/ECF system.

*/s/ Elizabeth Tulis* _____