# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

CARROLL INDEPENDENT SCHOOL DISTRICT,

        Plaintiff,

    v.

UNITED STATES DEPARTMENT OF EDUCATION, *et al.*,

        Defendants.

Case No. 4:24-cv-00461-O
Judge Reed O'Connor

---

# BRIEF OF AMICI CURIAE CALIFORNIA, NEW JERSEY, PENNSYLVANIA, COLORADO, DELAWARE, DISTRICT OF COLUMBIA, HAWAII, ILLINOIS, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEW YORK, OREGON, RHODE ISLAND, VERMONT, AND WASHINGTON IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DELAY EFFECTIVE DATE AND FOR PRELIMINARY INJUNCTION

---

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................... 1

INTERESTS OF AMICI CURIAE ............................................. 2

ARGUMENT ................................................................................. 3

    I.    AMICI STATES' EXPERIENCE CONFIRMS THAT
THE FINAL RULE WILL YIELD BROAD BENEFITS
WITHOUT COMPROMISING STUDENT PRIVACY
OR SAFETY, OR IMPOSING SIGNIFICANT COSTS. ........ 3

        A.    The Final Rule's Benefits Will Not Compromise
Student Privacy or Safety. ............................................... 3

        B.    The Final Rule Will Not Impose Significant
Compliance Costs. ........................................................... 7

        C.    The Final Rule Will Foster Positive Health
Outcomes for LGBTQ Students. ..................................... 9

    II.    THE FINAL RULE DEFINES "SEX-BASED
HARASSMENT" IN A WAY THAT EFFECTUATES
TITLE IX WITHOUT BURDENING OR SURPRISING
THE STATES. ...................................................................... 10

    III.    THE FINAL RULE DOES NOT VIOLATE THE
SPENDING CLAUSE OR OTHER
CONSTITUTIONAL PROVISIONS. .................................... 12

CONCLUSION ............................................................................. 13

i

TABLE OF AUTHORITIES

Page

CASES

*Bostock v. Clayton County*
    590 U.S. 644 (2020)................................................................. 1, 7

*Brown v. Bd. of Educ.*
    347 U.S. 483 (1954)................................................................. 5, 7

*Davis v. Monroe Cnty. Bd. of Educ.*
    526 U.S. 629 (1999)................................................................. 11

*Doe v. Miami Univ.*
    882 F.3d 579 (6th Cir. 2018) .................................................... 12

*Feminist Majority Found. v. Hurley*
    911 F.3d 674 (4th Cir. 2018) .................................................... 11

*Fennell v. Marion Indep. Sch. Dist.*
    804 F.3d 398 (5th Cir. 2015) .................................................... 10

*Franklin v. Gwinnett Cnty. Pub. Schs.*
    503 U.S. 60 (1992)................................................................... 12

*Gebser v. Lago Vista Indep. Sch. Dist.*
    524 U.S. 274 (1998)................................................................. 11

*Grimm v. Gloucester Cnty. Sch. Bd.*
    972 F.3d 586 (4th Cir. 2020) .................................................... 13

*J.A.W. v. Evansville Vanderburgh Sch. Corp.*
    396 F. Supp. 3d 833 (S.D. Ind. 2019)....................................... 13

*Jackson v. Birmingham Bd. of Educ.*
    544 U.S. 167 (2005).................................................................. 1

*Mahanoy Area Sch. Dist. v. B.L.*
    594 U.S. 180 (2021).................................................................. 3

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Meritor Sav. Bank, FSB v. Vinson*
   477 U.S. 57 (1986)...................................................................... 12

*Olmstead v. L.C. ex rel. Zimring*
   527 U.S. 581 (1999)........................................................................1

*Oncale v. Sundowner Offshore Servs.*
   523 U.S. 75 (1998)...................................................................... 12

*Roberts v. U.S. Jaycees*
   468 U.S. 609 (1984)........................................................................7

*Tennessee v. U.S. Dep't of Agric.*
   665 F. Supp. 3d 880 (E.D. Tenn. 2023) ................................... 13

*Texas v. Cardona*
   No. 4:23-cv-00604-O (N.D. Tex. June 11, 2024), ECF No.
   37 ..................................................................................................1

*Tovar v. Essentia Health*
   342 F. Supp. 3d 947 (D. Minn. 2018) ...................................... 13

**FEDERAL STATUTES**

20 U.S.C.
   § 1681 ..................................................................................... 1, 11
   § 1682 ......................................................................................... 11
   § 1686 ..........................................................................................7

**FEDERAL REGULATORY MATERIALS**

*Nondiscrimination on the Basis of Sex in Education Programs*
   *or Activities Receiving Federal Financial Assistance*, 85
   Fed. Reg. 30,026 (May 19, 2020)....................................... 2, 9

*Nondiscrimination on the Basis of Sex in Education Programs*
   *or Activities Receiving Federal Financial Assistance*, 89
   Fed. Reg. 33,474 (Apr. 29, 2024)................................... 1, 7, 10

**TABLE OF AUTHORITIES**
(continued)

Page

*Racial Incidents and Harrassment Against Students at
   Educational Institutions; Investigative Guidance*, 59 Fed.
   Reg. 11,448 (Mar. 10, 1994) .................................................................... 11

Russlyn Ali, Assistant Sec'y for Civ. Rts., Off. for Civ. Rts.,
   Dear Colleague Letter (Apr. 4, 2011, withdrawn Sept. 22,
   2017) ............................................................................................................ 12

*Sexual Harassment Guidance: Harassment of Students by Sch.
   Emps., Other Students, or Third Parties*, 62 Fed. Reg.
   12,034 (Mar. 13, 1997) ............................................................................... 11

U.S. Dep't of Educ., *Q&A on Campus Sexual Misconduct*
   (Sept. 2017, rescinded Aug. 2020) ........................................................... 12

U.S. Dep't of Educ., *Q&A on Title IX and Sexual Violence*
   (Apr. 24, 2014, withdrawn Sept. 22, 2017) ............................................. 12

U.S. Dep't of Educ., *Revised Sexual Harassment Guidance:
   Harassment of Students by School Employees, Other
   Students, or Third Parties* (Jan. 2001) ................................................... 12

### STATE STATUTES AND REGULATORY MATERIALS

43 P.S.
   § 953 ...............................................................................................................8

16 Pa. Code
   § 41.206 ..........................................................................................................8

11 R.I. Gen. Laws
   § 11-24-2 .........................................................................................................8

28 R.I. Gen. Laws
   § 28-5-6(11) ....................................................................................................8
   § 28-5-7 ...........................................................................................................8

iv

**TABLE OF AUTHORITIES**
**(continued)**

Page

34 R.I. Gen. Laws
   § 34-37-3(9) ............................................................8
   § 34-37-4 ..............................................................8

775 Ill. Comp. Stat.
   5/1-102(A) ............................................................8
   5/1-103(O-1) .........................................................8

Assemb. B. 1266, 2013-2014 Sess. (Cal. 2013) ............................................3

Cal. Civ. Code
   § 51 ..................................................................7

Cal. Educ. Code
   § 220 .................................................................7
   § 221.5(f) ............................................................7

Cal. Gov't Code
   § 12926 ...............................................................7
   § 12940(a) ............................................................7
   § 12949 ...............................................................7
   § 12955 ...............................................................7

Cal. Penal Code
   § 422.55 ..............................................................7
   § 422.56(c) ...........................................................7

Colo. Rev. Stat.
   § 24-34-301(7) ........................................................7
   § 24-34-402 ...........................................................7
   § 24-34-502 ...........................................................7
   § 24-34-601 ...........................................................7

**TABLE OF AUTHORITIES**
**(continued)**

Page

Conn. Gen. Stat.
§ 10-15c .................................................................................................................7
§ 46a-51(21) ..........................................................................................................7
§ 46a-60 ................................................................................................................7
§ 46a-64 ................................................................................................................7
§ 46a-64c ...............................................................................................................7

D.C. Code
§ 2-1401.02(12A-i) ................................................................................................8
§ 2-1402.11 ...........................................................................................................8
§ 2-1402.21 ...........................................................................................................8
§ 2-1402.31 ...........................................................................................................8
§ 2-1402.41 ...........................................................................................................8

Del. Code Ann.
tit. 6, § 4501 .........................................................................................................7
tit. 6, § 4603(b) .....................................................................................................7
tit. 19, § 711 .........................................................................................................7

Haw. Rev. Stat.
§ 302A-461 ...........................................................................................................8
§ 368D-1 ...............................................................................................................8
§ 489-2 ..................................................................................................................8
§ 489-3 ..................................................................................................................8
§ 515-2 ..................................................................................................................8
§ 515-3 ..................................................................................................................8

Iowa Code
§ 216.2(10) ...........................................................................................................8
§ 216.6 ..................................................................................................................8
§ 216.7 ..................................................................................................................8
§ 216.8 ..................................................................................................................8
§ 216.9 ..................................................................................................................8

**TABLE OF AUTHORITIES**
**(continued)**

Page

Mass. Gen. Laws
    ch. 4, § 7...................................................................................8
    ch. 76, § 5.................................................................................8
    ch. 151B, § 4............................................................................8
    ch. 272, § 92A.........................................................................8
    ch. 272, § 98 (as amended by Ch. 134, 2016 Mass. Acts) .........................8

Md. Code Ann.
    Educ. § 26-704........................................................................8
    State Gov't § 20-304...............................................................8
    State Gov't § 20-606...............................................................8
    State Gov't § 20-705...............................................................8

Me. Rev. Stat. Ann. tit. 5
    § 4553(9-C)..............................................................................8
    § 4571 ......................................................................................8
    § 4581 ......................................................................................8
    § 4591 ......................................................................................8
    § 4601 ......................................................................................8

Minn. Stat.
    § 363A.03(44)..........................................................................8
    § 363A.08.................................................................................8
    § 363A.09.................................................................................8
    § 363A.11.................................................................................8
    § 363A.13.................................................................................8

N.H. Rev. Stat. Ann.
    § 354-A:2(XIV-e)....................................................................8
    § 354-A:6.................................................................................8
    § 354-A:8.................................................................................8
    § 354-A:16...............................................................................8
    § 354-A:27...............................................................................8

## TABLE OF AUTHORITIES
### (continued)

Page

N.J. Stat. Ann.
  § 10:5-5(rr) .................................................................8
  § 10:5-12 .....................................................................8
  § 18A:36-41 .................................................................8

N.M. Stat. Ann.
  § 28-1-2(Q) ..................................................................8
  § 28-1-7 .......................................................................8

N.Y. Exec. Law
  § 291 ............................................................................8
  § 296 ............................................................................8

Nev. Rev. Stat.
  § 118.075 .....................................................................8
  § 118.100 .....................................................................8
  § 613.310(4) .................................................................8
  § 613.330 .....................................................................8
  § 651.050(2) .................................................................8
  § 651.070 .....................................................................8

Or. Rev. Stat.
  § 174.100(4) .................................................................8
  § 659.850 .....................................................................8
  § 659A.006 ..................................................................8

Utah Code Ann.
  § 34A-5-106 ................................................................8
  § 57-21-5 .....................................................................8

Vt. Stat. Ann.
  tit. 1, § 144 ..................................................................8
  tit. 9, § 4502 ................................................................8
  tit. 9, § 4503 ................................................................8
  tit. 21, § 495 ................................................................8

**TABLE OF AUTHORITIES**
**(continued)**

Page

Wash. Rev. Code Ann.
  § 28A.642.010 .................................................................................8
  § 49.60.030(1)(a)-(e) .....................................................................8
  § 49.60.040(27) ...............................................................................8
  § 49.60.180 ......................................................................................8
  § 49.60.215 ......................................................................................8
  § 49.60.222 ......................................................................................8

**OTHER AUTHORITIES**

Affirming & Inclusive Schs. Task Force, *Strengthening Inclusion in Illinois Schools* (2020) ...........................................6

Alberto Arenas et al., *7 Reasons for Accommodating Transgender Students at School*, Phi Delta Kappa (Sept. 1, 2016) ...........................................................................................5

Alexa Ura, *For Transgender Boy, Bathroom Fight Just Silly*, Tex. Trib. (June 14, 2016) ..........................................................3

Beatriz Pagliarini Bagagli et al., *Trans Women and Public Restrooms: The Legal Discourse and Its Violence*, 6 Frontiers Socio. 1 (Mar. 31, 2021) ...................................................5

Br. of Amici Curiae Sch. Adm'rs from Thirty-One States & D.C. in Supp. of Resp't, *Gloucester Cnty. Sch. Bd. v. G.G. ex rel. Grimm*, 137 S. Ct. 1239 (2017) (No. 16-273), 2017 WL 930055 ........................................................................... 4, 5

Cal. Sch. Bds. Ass'n, Final Guidance: AB 1266, Transgender and Gender Nonconforming Students, Privacy, Programs, Activities & Facilities (2014) ....................................................6

Christy Mallory et al., Williams Inst., *Impact of Stigma and Discrimination (Michigan)* (2019) ............................................9

**TABLE OF AUTHORITIES**
(continued)

Page

Colo. Ass'n of Sch. Bds. et al., Guidance for Educators
    Working with Transgender and Gender Nonconforming
    Students (n.d.) ...............................................................................6

Conn. Safe Sch. Coal., Guidelines for Connecticut Schools to
    Comply with Gender Identity and Expression Non-
    Discrimination Laws (2012) .........................................................6

Crosby Burns et al., Ctr. for Am. Progress & AFSCME, *Gay
    and Transgender Discrimination in the Public Sector: Why
    It's a Problem for State and Local Governments, Employees,
    and Taxpayers* (2012) ..................................................................9

D.C. Pub. Schs., Transgender and Gender-Nonconforming
    Policy Guidance (2015) ................................................................6

Emily A. Greytak et al., GLSEN, *Harsh Realities: The
    Experiences of Transgender Youth in Our Nation's Schools*
    (2009) ......................................................................................... 10

Ill. Dep't of Hum. Rts., Non-Regulatory Guidance: Relating to
    Protection of Transgender, Nonbinary, and Gender
    Nonconforming Students Under the Illinois Human Rights
    Act (2021) .....................................................................................6

Ill. State Bd. of Educ., Non-Regulatory Guidance: Supporting
    Transgender, Nonbinary and Gender Nonconforming
    Students (2020) .............................................................................6

Joseph G. Kosciw et al., GLSEN, *The 2015 National School
    Climate Survey: The Experiences of Lesbian, Gay, Bisexual,
    Transgender, and Queer Youth in Our Nation's Schools*
    xviii-xix, (2016) ...........................................................................4

Joseph G. Kosciw et al., GLSEN, *The 2021 National School
    Climate Survey: The Experiences of LGBTQ+ Youth in Our
    Nation's Schools* (2022) ..............................................................4

**TABLE OF AUTHORITIES**
**(continued)**

Page

Kan. Hum. Rts. Comm'n, *Kansas Human Rights Commission
    Concurs with the U.S. Supreme Court's* Bostock *Decision*
    (Aug. 21, 2020)............................................................................8

Kristina R. Olson et al., *Mental Health of Transgender
    Children Who Are Supported in Their Identities*, 137
    Pediatrics e20153223 (Mar. 2016) .................................................... 4, 10

Linda Darling-Hammond et al., *Implications for Educational
    Practice of the Science of Learning and Development*, 24
    Applied Dev. Sci. 97 (Feb. 17, 2019).........................................................4

Mass. Dep't of Elementary & Secondary Educ., Guidance for
    Massachusetts Public Schools: Creating a Safe and Supportive
    School Environment (Oct. 28, 2021)...........................................................6

Md. State Dep't of Educ., Providing Safe Spaces for
    Transgender and Gender Non-Conforming Youth:
    Guidelines for Gender Identity Non-Discrimination (2015).....................6

Michelle M. Johns et al., *Transgender Identity and Experiences
    of Violence Victimization, Substance Use, Suicide Risk, and
    Sexual Risk Behaviors Among High School Students-19
    States and Large Urban School Districts, 2017*, 68
    Morbidity & Mortality Wkly. Rep. 67 (2019)...........................................9

Mich. Dep't of Educ., State Board of Education Statement and
    Guidance on Safe and Supportive Learning Environments
    for Lesbian, Gay, Bisexual, Transgender, and Questioning
    (LGBTQ) Students (2016)...........................................................................6

Minn. Dep't of Educ., A Toolkit for Ensuring Safe and
    Supportive Schools for Transgender and Gender
    Nonconforming Students (2017) ................................................................6

Movement Advancement Project, *Local Nondiscrimination
    Ordinances*...................................................................................................8

**TABLE OF AUTHORITIES**
(continued)

Page

N.J. State Dep't of Educ., Transgender Student Guidance for
School Districts (2018) ...................................................................6

N.Y. State Educ. Dep't, Creating a Safe, Supportive, and
Affirming School Environment for Transgender and Gender
Expansive Students: 2023 Legal Update and Best Practices
(June 2023) ....................................................................................6

Off. of Elementary & Secondary Educ., U.S. Dep't of Educ.,
*Safe & Supportive Schools* (May 30, 2023) .................................5

Or. Dep't of Educ., Supporting Gender Expansive Students:
Guidance for Schools (2023) ..........................................................6

R.I. Dep't of Educ., Guidance for Rhode Island Schools on
Transgender and Gender Nonconforming Students (2016) ......................6

Sandy E. James et al., Nat'l Ctr. for Transgender Equal., *The
Report of the 2015 U.S. Transgender Survey* (Dec. 2016) ........................9

Stephen Russell et al., *Chosen Name Use Is Linked to Reduced
Depressive Symptoms, Suicidal Ideation, and Suicidal
Behavior Among Transgender Youth*, J. of Adolescent
Health (2018) ............................................................................ 10

Susanne Beauchaine et al., *Prohibiting Discrimination in
Washington Public Schools* (Wash. Off. of Superintendent
of Pub. Instruction 2012) ...............................................................6

Toomey et al., *Gender-Affirming Policies Support Transgender
and Gender Diverse Youth's Health*, Soc'y for Rsch. in
Child Dev. (Jan. 27, 2022) .......................................................... 13

The Trevor Project, *2023 U.S. National Survey on the Mental
Health of LGBTQ Young People* (2023) .....................................3

**TABLE OF AUTHORITIES**
**(continued)**

Page

The Trevor Project, *The Trevor Project Research Brief:
LGBTQ & Gender-Affirming Spaces* (Dec. 2020) ................................. 10

Vt. Agency of Educ., Continuing Best Practices for Schools
Regarding Transgender and Gender Nonconforming
Students (2017) ............................................................................6

World Professional Association for Transgender Health,
*Standards of Care for the Health of Transgender and
Gender Diverse People*, Version 8, Int'l J. of Transgender
Health S107 (Sept. 2022) ....................................................................... 10

## INTRODUCTION

In defining sex discrimination to include discrimination based on sexual orientation or gender identity, the U.S. Department of Education's ("ED") new final rule, *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024) [hereinafter Final Rule], is consistent with the plain text of Title IX of the Education Amendments Act of 1972 ("Title IX"), 20 U.S.C. § 1681, Supreme Court precedent, decisions in at least eight circuits, and congressional intent.

Title IX broadly prohibits discrimination "on the basis of sex." 20 U.S.C. § 1681(a); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174-75 (2005) (emphasizing "repeated holdings construing 'discrimination' under Title IX broadly"). The Supreme Court, and many circuit courts, interpret Title IX in light of Title VII. *E.g.*, *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 616 n.1 (1999) (Thomas, J., dissenting) (citing *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 (1992)). Thus, given "the straightforward application of legal terms with plain and settled meanings," a prohibition on sex discrimination also covers discrimination based on being lesbian, gay, bisexual, transgender, or queer ("LGBTQ"). *Bostock v. Clayton County*, 590 U.S. 644, 662 (2020).

Because the Final Rule comports with Title IX and the U.S. Constitution,[1] and better enables states to advance their compelling interests in preventing harassment and discrimination and protecting students from harm, Amici Curiae States ("Amici States") submit this brief in support of ED's opposition to Plaintiff's motion for a preliminary injunction.

---

[1] While the Court enjoined ED's 2021 Guidance on Title IX as to the plaintiff in *Texas v. Cardona*, No. 4:23-cv-00604-O (N.D. Tex. June 11, 2024), ECF No. 37, that decision "does not extend to the Final Rule or, broadly speaking, the general Title IX interpretation that could underlie a future final rule," *id.*, slip op. at 108.

## INTERESTS OF AMICI CURIAE

As sovereign jurisdictions charged with enforcing state antidiscrimination laws and shaping school policies that foster a safe and supportive environment for all students, Amici States take the implementation of Title IX regulations seriously to advance our compelling governmental interests in ensuring that our schools operate free from sex discrimination. Sex discrimination and harassment based on sexual orientation or gender identity, and sex stereotypes imposed on LGBTQ individuals, cause direct economic, physical, and emotional harms to students. To prevent these tangible injuries, Amici States have adopted laws and policies that combat sex discrimination against students on the basis that they appear, act, and identify as a sex different from their sex assigned at birth, or that they are attracted to someone of the same sex. The Final Rule advances Amici States' ability to protect students from discrimination and harassment.

As Amici States' experience demonstrates, preventing sex-based discrimination, protecting against sexual harassment, and ensuring equal access to educational opportunities for all students confer wide societal benefits, without imposing substantial costs on schools or compromising student privacy or safety. The same is true under the Final Rule, which includes explicit protections for LGBTQ students and rectifies the harm caused to our schools and communities by ED's prior rule, 85 Fed. Reg. 30,026 (May 19, 2020) [hereinafter 2020 Rule]. The 2020 Rule undermined Title IX's nondiscrimination mandate by arbitrarily narrowing the scope of Title IX's sexual harassment protections.

Pursuant to the Court's June 13, 2024 order, ECF No. 25, Amici States submit this brief to demonstrate, in sovereign states' unique experience, how sex discrimination can cause direct economic, physical, and emotional harms to our students, their communities, their states, and society as a whole, and that the balance of equities and public interest cut against the extraordinary relief Plaintiff seeks. Amici States encourage full implementation of the Final Rule nationwide.

**ARGUMENT**

**I.    AMICI STATES' EXPERIENCE CONFIRMS THAT THE FINAL RULE WILL YIELD BROAD BENEFITS WITHOUT COMPROMISING STUDENT PRIVACY OR SAFETY, OR IMPOSING SIGNIFICANT COSTS.**

States' responsibility to provide public education encompasses a concomitant duty to protect students from harm. *See Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 189, 192 (2021) (noting states' duty to protect students from harm); *id.* at 201 (Alito, J., concurring). The Final Rule will promote states' efforts to protect students from harms of all kinds—in part by clarifying that Title IX protections against sex discrimination include protections for LGBTQ students—and will provide broad, significant benefits to LGBTQ students nationwide, without compromising student privacy or safety, and without imposing substantial costs on our schools.

**A.    The Final Rule's Benefits Will Not Compromise Student Privacy or Safety.**

Amici States' experience demonstrates that policies allowing students to use facilities consistent with their gender identity significantly benefit those students without risking student privacy or safety. For example, allowing students to use bathrooms consistent with their gender identity safeguards against harms common to transgender students, such as forgoing drinking or eating at school to avoid using the restroom for fear of exclusion, reprimand, or bullying.[2]

By contrast, subjecting LGBTQ students to such discrimination and harassment, including by barring transgender students from facilities consistent with their gender identity, significantly

---

[2] *See* Assemb. B. 1266, 2013-2014 Sess. (Cal. 2013); Alexa Ura, *For Transgender Boy, Bathroom Fight Just Silly*, Tex. Trib. (June 14, 2016), https://tinyurl.com/mtpescst. *See also* The Trevor Project, *2023 U.S. National Survey on the Mental Health of LGBTQ Young People* 5 (2023), https://tinyurl.com/mvbmabrw (noting that approximately half of transgender and nonbinary youth reported in 2023 having seriously considered suicide in the past twelve months).

harms LGBTQ students.[3] For example, one 2021 survey showed that LGBTQ students who experienced discrimination in their schools were almost three times as likely (43.3% versus 16.4%) to have missed school because they felt unsafe or uncomfortable.[4] LGBTQ students who experienced discriminatory policies and practices also had lower grade point averages, lower levels of educational achievement and aspiration, lower self-esteem, and higher levels of depression than other students who had not encountered such discrimination.[5]

While discriminatory environments that cause fear and anxiety weaken a child's cognitive capacity and disrupt effective learning, safe and supportive school environments allow students to develop positive relationships, regulate their emotions and behavior, and maintain their physical, psychological, and academic well-being.[6] Accordingly, transgender students, when allowed to use school bathroom and locker room facilities consistent with their gender identity, experience better mental health outcomes that are more comparable to their cisgender peers.[7] Providing equal access to facilities that align with one's gender identity—in accordance with the Final Rule—promotes

---

[3] Joseph G. Kosciw et al., GLSEN, *The 2021 National School Climate Survey: The Experiences of LGBTQ+ Youth in Our Nation's Schools* xviii-xix, 36 (2022), https://tinyurl.com/2aabcfe4.

[4] *Id.* at 36.

[5] *Id.* at 35-36, 41-45; Joseph G. Kosciw et al., GLSEN, *The 2015 National School Climate Survey: The Experiences of Lesbian, Gay, Bisexual, Transgender, and Queer Youth in Our Nation's Schools* xviii-xix, 41-45, 48-49 (2016), https://tinyurl.com/5av274d3.

[6] *See* Linda Darling-Hammond et al., *Implications for Educational Practice of the Science of Learning and Development*, 24 Applied Dev. Sci. 97, 97-98, 102 (Feb. 17, 2019), https://tinyurl.com/5f97nkbx.

[7] *See* Kristina R. Olson et al., *Mental Health of Transgender Children Who Are Supported in Their Identities*, 137 Pediatrics e20153223, [hereinafter Olson] at 5-7 (Mar. 2016), https://tinyurl.com/47fuas7h; Br. of Amici Curiae Sch. Adm'rs from Thirty-One States & D.C. in Supp. of Resp't [hereinafter Br. of Amici Curiae Sch. Adm'rs] at 4, *Gloucester Cnty. Sch. Bd. v. G.G. ex rel. Grimm*, 137 S. Ct. 1239 (2017) (No. 16-273), 2017 WL 930055.

these positive outcomes and helps reduce the harms that LGBTQ students face. This, in turn, benefits society as a whole, since equal education better prepares students to contribute to society, both culturally and economically. *Cf. Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954).

Amici States' experience also demonstrates that allowing transgender students access to facilities that correspond with their gender identity does not result in increased privacy or safety concerns in public schools, or any reported instances of transgender students harassing cisgender students when using restrooms or locker rooms consistent with their gender identity.[8] The documented experience of school administrators in thirty-one states and the District of Columbia demonstrates that sex-based protections for gender identity in bathroom- and locker room-use policies result in no safety or privacy risks, nor is there evidence that cisgender students pose as transgender to gain improper restroom access.[9]

The Final Rule affords ample flexibility for our schools to implement policies to address privacy concerns, and Amici States have already increased privacy options for all students in a cost-effective manner without singling out any one student. For example, in Washington, where districts must allow students to use the restroom or locker room consistent with their gender identity, schools must provide any student "who has a need or desire for increased privacy, regardless of the underlying reason," with "access to an alternative restroom (e.g., staff restroom, health office restroom)," "a reasonable alternative changing area, such as the use of a private area

---

[8] *See* Alberto Arenas et al., *7 Reasons for Accommodating Transgender Students at School*, Phi Delta Kappa (Sept. 1, 2016), https://tinyurl.com/224mzep4; Beatriz Pagliarini Bagagli et al., *Trans Women and Public Restrooms: The Legal Discourse and Its Violence*, 6 Frontiers Socio. 1, 8 (Mar. 31, 2021), https://tinyurl.com/2s2ucz9t.

[9] *See* Br. of Amici Curiae Sch. Adm'rs, *supra* note 7, at 14-16; Off. of Elementary & Secondary Educ., U.S. Dep't of Educ., *Safe & Supportive Schools* (May 30, 2023), https://tinyurl.com/yv397h94.

(e.g., a nearby restroom stall with a door), or a separate changing schedule."[10] At least twelve other states and the District of Columbia offer comparable guidance to ensure that school districts can comply with nondiscrimination policies and privacy concerns.[11] Solutions range from offering privacy curtains to separate restroom and changing rooms to all who desire them, none of which require costly construction or remodeling.

Maintaining sex-separated spaces while allowing transgender students to use facilities that align with their gender identity results in positive educational and health outcomes for students,

---

[10] *See* Susanne Beauchaine et al., *Prohibiting Discrimination in Washington Public Schools* 30-31 (Wash. Off. of Superintendent of Pub. Instruction 2012), https://tinyurl.com/yk26eb96.

[11] **California**: Cal. Sch. Bds. Ass'n, Final Guidance: AB 1266, Transgender and Gender Nonconforming Students, Privacy, Programs, Activities & Facilities 2 (2014). **Colorado**: Colo. Ass'n of Sch. Bds. et al., Guidance for Educators Working with Transgender and Gender Nonconforming Students 4-5 (n.d.). **Connecticut**: Conn. Safe Sch. Coal., Guidelines for Connecticut Schools to Comply with Gender Identity and Expression Non-Discrimination Laws 9-10 (2012). **Illinois**: Ill. Dep't of Hum. Rts., Non-Regulatory Guidance: Relating to Protection of Transgender, Nonbinary, and Gender Nonconforming Students Under the Illinois Human Rights Act 6-7 (2021); Ill. State Bd. of Educ., Non-Regulatory Guidance: Supporting Transgender, Nonbinary and Gender Nonconforming Students 10-11 (2020); Affirming & Inclusive Schs. Task Force, *Strengthening Inclusion in Illinois Schools* 19-21 (2020). **Maryland**: Md. State Dep't of Educ., Providing Safe Spaces for Transgender and Gender Non-Conforming Youth: Guidelines for Gender Identity Non-Discrimination 13-14 (2015). **Massachusetts**: Mass. Dep't of Elementary & Secondary Educ., Guidance for Massachusetts Public Schools: Creating a Safe and Supportive School Environment (Oct. 28, 2021). **Michigan**: Mich. Dep't of Educ., State Board of Education Statement and Guidance on Safe and Supportive Learning Environments for Lesbian, Gay, Bisexual, Transgender, and Questioning (LGBTQ) Students 5-6 (2016). **Minnesota**: Minn. Dep't of Educ., A Toolkit for Ensuring Safe and Supportive Schools for Transgender and Gender Nonconforming Students 10 (2017). **New Jersey**: N.J. State Dep't of Educ., Transgender Student Guidance for School Districts 7 (2018). **New York**: N.Y. State Educ. Dep't, Creating a Safe, Supportive, and Affirming School Environment for Transgender and Gender Expansive Students: 2023 Legal Update and Best Practices 22-24 (June 2023). **Oregon**: Or. Dep't of Educ., Supporting Gender Expansive Students: Guidance for Schools 24-26 (2023). **Rhode Island**: R.I. Dep't of Educ., Guidance for Rhode Island Schools on Transgender and Gender Nonconforming Students 8-9 (2016). **Vermont**: Vt. Agency of Educ., Continuing Best Practices for Schools Regarding Transgender and Gender Nonconforming Students 6, 8 (2017). **District of Columbia**: D.C. Pub. Schs., Transgender and Gender-Nonconforming Policy Guidance 9 (2015).

and promotes Amici States' compelling interest in "removing the barriers to economic advancement and political and social integration that have historically plagued certain disadvantaged groups." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 626 (1984). Ensuring equal access to facilities that align with gender identity is therefore not only consistent with Title IX's provision for sex-separated facilities, 20 U.S.C. § 1686, but also with the constitutional guarantee that education be "made available to *all* on equal terms," *Brown*, 347 U.S. at 493 (emphasis added).

### B.    The Final Rule Will Not Impose Significant Compliance Costs.

Plaintiff grossly overstates the expense of updating policies and training, arguing that the costs of compliance with the Final Rule will inflict irreparable harm. Pls.' Mem. Supp. Mot. Stay & Prelim. Inj. 24, ECF No. 16 [hereinafter Br.]. Amici States' experience confirms that these concerns are unfounded. Plaintiff fails to note that every school district is already required to prohibit discrimination based on LGBTQ identity for all employees under Title VII. *See Bostock*, 590 U.S. at 659-62. Training staff members and implementing policies, so that the same protections extend to all students at risk of discrimination or harassment on the basis of sex under Title IX, is not a "significant expenditure[]," and would require neither "construction of new facilities [n]or creation of new programs." 89 Fed. Reg. at 33,876; *see also id.* at 33,862-77 (noting benefits "far outweigh" costs). Further, at least twenty-three states and the District of Columbia, and at least 374 municipalities,[12] already offer express protections against discrimination based on

---

[12] **California**: Cal. Civ. Code § 51(b), (e)(5) (public accommodations); Cal. Educ. Code §§ 220 (education), 221.5(f) (education and school athletic participation); Cal. Gov't Code §§ 12926(o), (r)(2), 12940(a), 12949 (employment); *id.* § 12955 (housing); Cal. Penal Code §§ 422.55, 422.56(c) (hate crimes). **Colorado**: Colo. Rev. Stat. § 24-34-301(7) (definition); *id.* § 24-34-402 (employment); *id.* § 24-34-502 (housing); *id.* § 24-34-601 (public accommodations). **Connecticut**: Conn. Gen. Stat. § 10-15c (schools); *id.* § 46a-51(21) (definition); *id.* § 46a-60 (employment); *id.* § 46a-64 (public accommodations); *id.* § 46a-64c (housing). **Delaware**: Del. Code Ann. tit. 6, § 4501 (public accommodations); *id.* tit. 6, § 4603(b) (housing); *id.* tit. 19, § 711

LGBTQ identity in areas such as education, housing, public accommodations, and employment—

all demonstrating that the Final Rule's protections are entirely feasible. A return to the 2020 Rule's

---

(employment). **Hawai'i**: Haw. Rev. Stat. § 368D-1 (education); *id.* § 302A-461 (school athletics); *id.* § 489-2 (definition); *id.* § 489-3 (public accommodations); *id.* § 515-2 (definition); *id.* § 515-3 (housing). **Illinois**: 775 Ill. Comp. Stat. 5/1-102(A) (housing, employment, access to financial credit, public accommodations); *id.* 5/1-103(O-1) (definition). **Iowa**: Iowa Code § 216.2(10) (definition); *id.* § 216.6 (employment); *id.* § 216.7 (public accommodations); *id.* § 216.8 (housing); *id.* § 216.9 (education). **Kansas**: Kan. Hum. Rts. Comm'n, *Kansas Human Rights Commission Concurs with the U.S. Supreme Court's* Bostock *Decision* (Aug. 21, 2020) (advising that Kansas laws prohibiting discrimination based on "sex" in "employment, housing, and public accommodation" contexts "are inclusive of LGBTQ and all derivates of 'sex'"). **Maine**: Me. Rev. Stat. Ann. tit. 5, § 4553(9-C) (definition); *id.* § 4571 (employment); *id.* § 4581 (housing); *id.* § 4591 (public accommodations); *id.* § 4601 (education). **Maryland**: Md. Code Ann., State Gov't § 20-304 (public accommodations); *id.* § 20-606 (employment); *id.* § 20-705 (housing); Md. Code Ann., Educ. § 26-704 (schools). **Massachusetts**: Mass. Gen. Laws ch. 4, § 7, fifty-ninth (definition); *id.* ch. 76, § 5 (education); *id.* ch. 151B, § 4 (employment, housing, credit); *id.* ch. 272, §§ 92A, 98 (public accommodations) (as amended by Ch. 134, 2016 Mass. Acts). **Minnesota**: Minn. Stat. § 363A.03(44) (definition); *id.* § 363A.08 (employment); *id.* § 363A.09 (housing); *id.* § 363A.11 (public accommodations); *id.* § 363A.13 (education). **Nevada**: Nev. Rev. Stat. §§ 118.075, 118.100 (housing); *id.* §§ 613.310(4), 613.330 (employment); *id.* §§ 651.050(2), 651.070 (public accommodations). **New Hampshire**: N.H. Rev. Stat. Ann. § 354-A:2(XIV-e) (definition); *id.* § 354-A:6 (employment); *id.* § 354-A:8 (housing); *id.* § 354-A:16 (public accommodations); *id.* § 354-A:27 (education). **New Jersey**: N.J. Stat. Ann. § 10:5-5(rr) (definition); *id.* § 10:5-12 (public accommodations, housing, employment); *id.* § 18A:36-41 (directing issuance of guidance to school districts permitting transgender students "to participate in gender-segregated school activities in accordance with the student's gender identity"). **New Mexico**: N.M. Stat. Ann. § 28-1-2(Q) (definition); *id.* § 28-1-7(A) (employment); *id.* § 28-1-7(F) (public accommodations); *id.* § 28-1-7(G) (housing). **New York**: N.Y. Exec. Law §§ 291, 296 (education, employment, public accommodations, housing). **Oregon**: Or. Rev. Stat. § 174.100(4) (definition); *id.* § 659.850 (education); *id.* § 659A.006 (employment, housing, public accommodations). **Pennsylvania**: 43 P.S. § 953; 16 Pa. Code § 41.206 (defining sex to include gender identity). **Rhode Island**: 11 R.I. Gen. Laws § 11-24-2 (public accommodations); 28 R.I. Gen. Laws §§ 28-5-6(11), 28-5-7 (employment); 34 R.I. Gen. Laws §§ 34-37-3(9), 34-37-4 (housing). **Utah**: Utah Code Ann. § 34A-5-106 (employment); *id.* § 57-21-5 (housing). **Vermont**: Vt. Stat. Ann. tit. 1, § 144 (definition); *id.* tit. 9, § 4502 (public accommodations); *id.* tit. 9, § 4503 (housing); *id.* tit. 21, § 495 (employment). **Washington**: Wash. Rev. Code Ann. § 28A.642.010 (education); *id.* § 49.60.030(1)(a)-(e) (employment, public accommodations, real estate transactions, credit transactions, and insurance transactions); *id.* § 49.60.040(27) (definition); *id.* § 49.60.180 (employment); *id.* § 49.60.215 (public accommodations); *id.* § 49.60.222 (housing). **District of Columbia**: D.C. Code § 2-1401.02(12A-i) (definition); *id.* § 2-1402.11 (employment); *id.* § 2-1402.21 (housing); *id.* § 2-1402.31 (public accommodations); *id.* § 2-1402.41 (education); Movement Advancement Project, *Local Nondiscrimination Ordinances*, https://tinyurl.com/59p55bap (current as of Jan. 1, 2023).

regulatory scheme would result in weighty costs to the students who are denied protections under Title IX, including increased costs from absenteeism and student dropouts, as well as unemployment and health service costs that redound to states when students experience unremediated incidents of discrimination and harassment.[13]

### C.   The Final Rule Will Foster Positive Health Outcomes for LGBTQ Students.

Amici States' experience counsels that LGBTQ students suffer concrete harms when they are denied Title IX's protections against discrimination, and against severe or pervasive harassment—including a greater risk of mental health issues and worse educational outcomes. Of students known or perceived to be transgender, 77% reported negative experiences at school, including harassment and physical assault.[14] As a group, transgender students are up to five times more likely than cisgender students to report being bullied at school, threatened or injured with a weapon at school, and being sexually assaulted.[15] In the largest survey of transgender people to date, 17% of respondents reported that they left K-12 school because of the mistreatment they suffered as a result of their gender expression.[16] And a 2009 study found that 40% of students who

---

[13] Discrimination against LGBT individuals directly threatens the interests of States. *See, e.g.*, Christy Mallory et al., Williams Inst., *Impact of Stigma and Discrimination (Michigan)* 56 (2019), https://tinyurl.com/4jut8zr8; Crosby Burns et al., Ctr. for Am. Progress & AFSCME, *Gay and Transgender Discrimination in the Public Sector: Why It's a Problem for State and Local Governments, Employees, and Taxpayers* 18 (2012), https://tinyurl.com/22knbxuh; *see also* 2020 Rule, 85 Fed. Reg. at 30,538-48 (acknowledging harms and declining to include them in regulatory impact analyses).

[14] Sandy E. James et al., Nat'l Ctr. for Transgender Equal., *The Report of the 2015 U.S. Transgender Survey* 132-34 (Dec. 2016), https://tinyurl.com/46fkp2th [hereinafter James].

[15] Michelle M. Johns et al., *Transgender Identity and Experiences of Violence Victimization, Substance Use, Suicide Risk, and Sexual Risk Behaviors Among High School Students—19 States and Large Urban School Districts, 2017*, 68 Morbidity & Mortality Wkly. Rep. 67, 69 (2019), https://tinyurl.com/5bpxzvfy.

[16] James, *supra* note 14, at 135.

experienced frequent verbal harassment because of their gender expression did not plan to continue on to college.[17]

By contrast, when transgender youth do not suffer discrimination and have their gender identity affirmed, their mental health outcomes mirror those of their cisgender peers: they experience reduced suicidal ideation, fewer suicide attempts, and enhanced well-being and functioning.[18]

## II.   THE FINAL RULE DEFINES "SEX-BASED HARASSMENT" IN A WAY THAT EFFECTUATES TITLE IX WITHOUT BURDENING OR SURPRISING THE STATES.

The Final Rule's definition of sex-based harassment as conduct that "is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity," 89 Fed. Reg. at 33,884, comports with the text and intent of Title IX and better enables stakeholders to prohibit harassment and redress hostile environments. In Amici States' experience, sex-based harassment need not be severe *and* pervasive to create tangible injury to a student's education. For example, a teacher's repeated inappropriate sexual comments and intrusions of personal space may not be "severe," but could be so pervasive that a student feels unsafe and avoids classes, and is effectively excluded from education. *See, e.g.*, *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 409 (5th Cir. 2015) (noting that "offensive remarks made every few months over three years" raised genuine dispute regarding Title VII

---

[17] Emily A. Greytak et al., GLSEN, *Harsh Realities: The Experiences of Transgender Youth in Our Nation's Schools* 25-27 (2009), https://tinyurl.com/3bpt9py5.

[18] Olson, *supra* note 7; *see also* World Professional Association for Transgender Health, *Standards of Care for the Health of Transgender and Gender Diverse People*, Version 8, Int'l J. of Transgender Health S107 (Sept. 2022), https://tinyurl.com/y86j5jnp; Stephen Russell et al., *Chosen Name Use Is Linked to Reduced Depressive Symptoms, Suicidal Ideation, and Suicidal Behavior Among Transgender Youth*, J. of Adolescent Health 503 (2018), https://tinyurl.com/465z8reh; The Trevor Project, *The Trevor Project Research Brief: LGBTQ & Gender-Affirming Spaces* (Dec. 2020), https://tinyurl.com/2c2p7zkf.

hostile environment); *Feminist Majority Found. v. Hurley,* 911 F.3d 674, 680-82, 687-89, 693 (4th Cir. 2018) (finding a series of harassing social media posts sent over campus wireless network could support Title IX harassment claim).

By covering severe *or* pervasive forms of harassment, the Final Rule also effectuates the breadth of 20 U.S.C. § 1681(a), and advances Congress' objectives, because "the scope of the behavior that Title IX proscribes" is not limited to "severe, pervasive, and objectively offensive" conduct. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 639, 652 (1999). Congress established an administrative scheme authorizing ED "to give effect to" the goals of Title IX. *Davis*, 526 U.S. at 638-39; *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280-81 (1998); 20 U.S.C. § 1682.[19] The Final Rule protects students from both severe incidents of harassment, as well as a series of lesser, unwelcome incidents that become pervasive.

Amici States' experience also teaches that no sovereign jurisdiction should be burdened or surprised by the Final Rule's return to the "severe or pervasive" standard. For more than thirty years, ED defined harassment as conduct that was "sufficiently severe, pervasive or persistent" to *interfere with, limit, or adversely affect*, rather than *deny*, a student's ability to participate in or benefit from an education program or activity, and consistently applied this definition to address harassment under Title IX and Title VI.[20] Amici States have long understood that this definition

---

[19] Plaintiff mistakenly relies on *Davis* to argue that harassment must be "severe, pervasive, *and* objectively offensive." Br. at 20-21. But *Davis* makes clear that its rule applies only to private damages claims, 526 U.S. at 652; *see also Gebser*, 524 U.S. at 283-84, 287, and does not otherwise limit ED's regulatory authority, *see Gebser*, 524 U.S. at 292.

[20] *See, e.g.*, Racial Incidents and Harassment Against Students at Educational Institutions; Investigative Guidance, 59 Fed. Reg. 11,448, 11,449 (Mar. 10, 1994); Sexual Harassment Guidance: Harassment of Students by Sch. Emps., Other Students, or Third Parties, 62 Fed. Reg. 12,034, 12,038 (Mar. 13, 1997) ("[S]exual harassment must be sufficiently severe, persistent, or pervasive that it adversely affects a student's education . . . ."); U.S. Dep't of Educ., *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third*

applies to their schools, and the Final Rule correctly returns to ED's longstanding definition and aligns with case law. *See, e.g.*, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (protecting employees, including student employees, from sexual harassment that is "sufficiently severe or pervasive to alter the conditions of the victim's employment"); *Franklin*, 503 U.S. at 75 (concluding that sexual harassment constitutes discrimination under Title IX); *Doe v. Miami Univ.*, 882 F.3d 579, 590 (6th Cir. 2018) (applying "severe or pervasive" standard to Title IX harassment).

## III.   THE FINAL RULE DOES NOT VIOLATE THE SPENDING CLAUSE OR OTHER CONSTITUTIONAL PROVISIONS.

Plaintiff also alleges that the Final Rule violates the Spending Clause's clear-statement rule and is unduly coercive. Br. 14, 17-18.[21] This argument runs contrary to Amici States' actual experience. The Final Rule does not require any state to establish any new programs; it just clarifies that established programs must protect LGBTQ students from sex discrimination, using the Title IX framework that funding recipients already have in place. Many Amici States have already implemented these protections, and incurred *de minimis* costs in doing so, while conferring significant benefits to students.[22] And many courts have held that discrimination based on LGBTQ

---

*Parties* (Jan. 2001), at v, 6 (noting that harassment must "deny or limit" student's education, and single "sufficiently severe" incident of sexual harassment can create hostile environment); Russlyn Ali, Assistant Sec'y for Civ. Rts., Off. for Civ. Rts., Dear Colleague Letter (Apr. 4, 2011, withdrawn Sept. 22, 2017) ("The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment . . . ."); U.S. Dep't of Educ., *Q&A on Title IX and Sexual Violence* (Apr. 24, 2014, withdrawn Sept. 22, 2017) (same); U.S. Dep't of Educ., *Q&A on Campus Sexual Misconduct* (Sept. 2017, rescinded Aug. 2020) (applying "severe, persistent, or pervasive" and "deny or limit" standards).

[21] The Final Rule is consistent with the U.S. Constitution. Supreme Court precedent also forecloses Plaintiff's First Amendment argument. *See, e.g., Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 82 (1998) (Title VII can prohibit verbal harassment).

[22] School-based gender-affirming policies are linked to dramatic decreases in depression, anxiety, and suicidal ideation among transgender and nonbinary students. *See* Toomey et al.,

identity is sufficiently ascertainable from Title IX's prohibition against sex discrimination, such that the clear-statement rule is satisfied. *See, e.g.*, *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 619 n.18 (4th Cir. 2020); *J.A.W. v. Evansville Vanderburgh Sch. Corp.*, 396 F. Supp. 3d 833, 842 (S.D. Ind. 2019) (finding adequate notice to support suit for damages under Title IX).[23] The Final Rule only requires funding recipients to do only what has always been required of them: to refrain from discriminating against students on the basis of sex, and to remedy any discrimination that arises. No state should be surprised at the need to perform this longstanding duty.

## CONCLUSION

This Court should deny Plaintiff's motion for emergency and preliminary relief.

---

*Gender-Affirming Policies Support Transgender and Gender Diverse Youth's Health*, Soc'y for Rsch. in Child Dev. (Jan. 27, 2022), https://tinyurl.com/ms6eubb7.

[23] *See also Tennessee v. U.S. Dep't of Agric.*, 665 F. Supp. 3d 880, 916 (E.D. Tenn. 2023) (concluding statute prohibiting sex discrimination for SNAP and SNAP-Ed funding recipients "unambiguous[ly]" prohibited gender identity discrimination, "and always has"); *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 953 (D. Minn. 2018) (holding that "plain language" of Patient Protection and Affordable Care Act "incorporates Title IX and its prohibition on sex discrimination," putting healthcare providers "on notice that [the statute's] nondiscrimination requirements encompassed gender-identity discrimination").

Date: June 21, 2024

Respectfully submitted,

**ROB BONTA**
*Attorney General*
*State of California*

/s/ Nimrod Pitsker Elias
NIMROD PITSKER ELIAS
(251634CA)
CHRISTINA RIEHL
EDWARD NUGENT
Deputy Attorneys General
LAURA FAER
Supervising Deputy Attorney General
California Attorney General's Office
1515 Clay Street, 20th Floor
Oakland, CA 94612-0552
(510) 879-0012 (phone)
(510) 622-2270 (fax)
Nimrod.Elias@doj.ca.gov

*Attorneys for Amicus Curiae State of California*

**MATTHEW J. PLATKIN**
*Attorney General*
*State of New Jersey*

/s/ Lauren E. Van Driesen
LAUREN E. VAN DRIESEN
JESSICA L. PALMER
ANDREW H. YANG
AMANDA I. MOREJÓN
GIANCARLO G. PICCININI
Deputy Attorneys General
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07101
(973) 648-2893
Lauren.VanDriesen@law.njoag.gov

*Attorneys for Amicus Curiae State of New Jersey*

**MICHELLE HENRY**
*Attorney General*
*Commonwealth of Pennsylvania*

/s/ Lisa E. Eisenberg
LISA E. EISENBERG
Deputy Attorney General
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
(215) 560-2980
leisenberg@attorneygeneral.gov

*Attorney for Amicus Curiae Commonwealth of
Pennsylvania*

*[additional counsel listed on subsequent pages]*

**ADDITIONAL COUNSEL**

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway, 10th Floor
Denver, CO 80203

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th Street N.W.
Washington, DC 20001

ANNE E. LOPEZ
*Attorney General*
*State of Hawai'i*
425 Queen Street
Honolulu, Hawai'i, 96813

KWAME RAOUL
*Attorney General*
*State of Illinois*
115 South LaSalle Street
Chicago, IL 60603

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, Michigan 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, Vermont 05609-1001

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

**CERTIFICATE OF SERVICE**

I certify that this document was filed through the Court's CM/ECF system, which served it upon all counsel of record.

*/s/ Nimrod Pitsker Elias*
NIMROD PITSKER ELIAS (251634CA)