**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| CARROLL INDEPENDENT SCHOOL DISTRICT, | |
| *Plaintiff,* | **Case No.** 4:24-cv-00461-O |
| v. | |
| UNITED STATES DEPARTMENT OF EDUCATION; ET AL., | |
| *Defendants.* | |

**CARROLL INDEPENDENT SCHOOL DISTRICT'S REPLY
IN SUPPORT OF MOTION TO DELAY EFFECTIVE DATE AND FOR
<u>PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

Table of Authorities ............................................................................................. iii

Introduction ........................................................................................................ 1

Argument ............................................................................................................ 1

I.     Carroll ISD is likely to succeed on the merits. ................................... 1

    A.    The Rule's gender-identity mandate is contrary to law. ....................... 1

        1.    *Bostock* does not apply to Title IX. ................................... 1

        2.    The de-minimis-harm rule for gender identity is not a permissible interpretation of the statute. .................................... 3

        3.    The gender-identity mandate applies to sports. ......................... 6

        4.    Constitutional canons of statutory construction foreclose the gender-identity mandate. ................................................ 8

    B.    The Rule infringes on First Amendment Rights. .................................... 9

    C.    The Rule is arbitrary and capricious. .................................................. 12

    D.    Claim splitting is immaterial here. ...................................................... 13

II.    The other preliminary injunction factors favor relief. ...................... 13

III.   Complete relief requires delaying the Rule's effective date and enjoining its enforcement. ......................................................................................... 14

Conclusion ......................................................................................................... 15

Certificate of Service ........................................................................................ 17

# TABLE OF AUTHORITIES

## Cases

*Adams ex rel Kasper v. School Board of St. Johns County*,
  57 F.4th 791 (11th Cir. 2022) ....................................................................... 2, 12

*Bostock v. Clayton County*,
  590 U.S. 644 (2020) ...................................................................................... 2, 9

*Career Colleges & Schools of Texas v. United States Department of Education*,
  98 F.4th 220 (5th Cir. 2024) ............................................................................ 15

*Chiu v. Plano Independent School District*,
  339 F.3d 273 (5th Cir. 2003) ............................................................................ 11

*College Republicans at San Francisco State University v. Reed*,
  523 F. Supp. 2d 1005 (N.D. Cal. 2007) ............................................................ 11

*Dambrot v. Central Michigan University*,
  55 F.3d 1177 (6th Cir. 1995) ............................................................................ 11

*Davis ex rel. LaShonda D. v. Monroe County Board of Education*,
  526 U.S. 629 (1999) ......................................................................................... 10

*Department of Homeland Security v. Regents of the University of California*,
  591 U.S. 1 (2020) ............................................................................................... 8

*EMW Women's Surgical Center, P.S.C. v. Beshear*,
  920 F.3d 421 (6th Cir. 2019) .............................................................................. 5

*Free Enterprise Fund v. PCAOB*,
  561 U.S. 477 (2010) ......................................................................................... 14

*General Land Office v. Biden*,
  71 F.4th 264 (5th Cir. 2023) ............................................................................. 13

*Griffin v. HM Florida-ORL, LLC*,
  144 S. Ct. 1 (2023) ........................................................................................... 15

*Jackson v. Birmingham Board of Education*,
  544 U.S. 167 (2005) ........................................................................................... 1

*Kleczek ex rel. Kleczek v. Rhode Island Interscholastic League, Inc.*,
  768 F. Supp. 951 (D.R.I. 1991) .......................................................................... 3

*L. W. ex rel Williams v. Skrmetti,*
    83 F.4th 460 (6th Cir. 2023) ............................................................... 5

*Loper-Bright Enterprises v. Raimondo,*
    No. 22-451, slip opinion (U.S. June 28, 2024) .................................... 5

*Louisiana v. United States Department of Education,*
    2024 WL 2978786 (W.D. La. June 13, 2024)........................... 1, 9, 14

*Mexican Gulf Fishing Co. v. United States Department of Commerce,*
    60 F.4th 956 (5th Cir. 2023) ............................................................... 9

*Muldrow v. City of St. Louis,*
    144 S. Ct. 967 (2024) ......................................................................... 4

*Nasdaq Stock Market LLC v. SEC,*
    38 F.4th 1126 (D.C. Cir. 2022)........................................................ 15

*National Federation of Independent Business v. Sebelius,*
    567 U.S. 519 (2012) ........................................................................... 9

*Ohio v. Environmental Protection Agency,*
    No 23A349, slip opinion (U.S. June 27, 2024) ........................... 8, 12

*Otto v. City of Boca Raton,*
    981 F.3d 854 (11th Cir. 2020) ............................................................ 5

*Tennessee v. Cardona,*
    2024 WL 3019146 (E.D. Ky. June 17, 2024) ....................... 1–4, 7, 9–11, 13–15

*Texas v. Cardona,*
    2024 WL 2947022 (N.D. Tex. June 11, 2024)................... 1, 2, 4, 5, 9, 10, 12, 14

*Texas v. Environmental Protection Agency,*
    829 F.3d 405 (5th Cir. 2016). .......................................................... 15

## <u>Statutes</u>

20 U.S.C. § 1681(a) ................................................................................ 2, 9

20 U.S.C. § 1686.......................................................................................... 7

5 U.S.C. § 705 ............................................................................................ 14

5 U.S.C. § 706.............................................................................................. 2

## **Regulations**

34 C.F.R. § 106.10 ................................................................................ 6, 9

34 C.F.R. § 106.31(a)(2) ...................................................................... 6, 9

34 C.F.R. § 106.41(a) .......................................................................... 6, 7

34 C.F.R. § 106.41(b) .......................................................................... 6, 7

40 Fed. Reg. 24,128 (June 4, 1975) ......................................................... 8

89 Fed. Reg. 33,474 (Apr. 29, 2024) ................................... 3, 4, 6, 10, 13, 14

## **Other Authorities**

Brief for the United States as Amicus Curiae in Support of Plaintiff-
   Appellant and Urging Reversal, *B.P.J. ex. rel. Jackson v. West Virginia
   State Board of Education*, 98 F.4th 542 (4th Cir. 2024) (Nos. 23-1078,
   23-1130), 2023 WL 2859726 ............................................................... 7

**INTRODUCTION**

In a "strikingly similar" case, this Court held that requiring "schools [to] treat 'gender identity' the same as sex flouts Title IX." *Texas v. Cardona*, no. 4:23-cv-604-O, 2024 WL 2947022, at *5, 29 (N.D. Tex. June 11, 2024). Two other courts enjoined the Rule on the same grounds. *Tennessee v. Cardona*, no. 2:24-072-DCR, 2024 WL 3019146 (E.D. Ky. June 17, 2024); *Louisiana v. U.S. Dep't of Educ.*, 3:24-cv-00563, 2024 WL 2978786 (W.D. La. June 13, 2024). Those courts also properly recognized that the de-minimis-harm standard has no basis in Title IX, that the Rule infringes on First Amendment freedoms, and that the Department of Education (ED) acted arbitrarily and capriciously. Additionally, the inexorable logic of the gender-identity mandate and the Department of Justice's own prior position show that the Rule impacts athletics—something ED failed to consider.

The Rule showcases "abuse of power by executive federal agencies." *Louisiana*, 2024 WL 2978786, at *20. The challenged provisions of the Rule all exceed ED's power, so this Court should stay and enjoin them entirely. They cannot be valid as applied to any recipient. Carroll ISD also needs universal relief because its students often travel to other states for interscholastic competitions. Broader relief will not burden Defendants, who have no interest in acting unlawfully. The unchecked "abuse of power by administrative agencies is a threat to democracy." *Id.* at *21. This Court should grant Carroll's motion.

**ARGUMENT**

**I.    Carroll ISD is likely to succeed on the merits.**

**A.    The Rule's gender-identity mandate is contrary to law.**

**1.    *Bostock* does not apply to Title IX.**

Defendants' reliance on *Bostock* "falls flat." *Texas*, 2024 WL 2947022, at *37. Title VII and Title IX each define and prohibit "discrimination" differently. *Id.*; *see Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005). Defendants ignore

1

*Adams ex rel Kasper v. School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022) (en banc), and cannot explain how the Rule's *Bostock*-to-Title IX transplant can survive Title IX's clear text. Defendants can't overcome the text's reference to differential treatment that disfavors, denies, or treats one sex worse than the other sex or its recognition that sex distinctions are not "discrimination" in many contexts. Mem. 8; *see* 20 U.S.C. §§ 1681(a), 1686.

Defendants suggest that *Texas* doesn't control because of the Rule's purported "detailed analysis." Opp'n 6. But *Texas* is "strikingly similar" to—and controls—this case. 2024 WL 2947022, at *5. There, this Court vacated the Interpretation and Fact Sheet that Carroll challenges here, which both "rely upon the interpretation of Title VII described in *Bostock* and apply it to Title IX." *Id.* at *2.[1] And, again contrary to Defendants' argument, this Court engaged with *Bostock* correctly. *Contra* Opp'n 6. The *Bostock* Court acknowledged that "homosexuality and transgender status are distinct concepts from sex." *Texas*, 2024 WL 2947022, at *38 (quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 655, 669 (2020)). So *Bostock* necessarily focused "on the conduct and traits associated with a particular sex rather than sex itself." *Id.* "Defendants' argument that discrimination based on gender identity always demands consideration of sex is entirely wrong." *Id.*; *accord Tennessee*, 2024 WL 3019146, at *13 (discussing hypothetical showing potential discrimination based on gender identity is not necessarily discrimination based on sex).

Moreover, *Bostock* did not answer the material question here: what is discrimination in education? As this Court put it, "[r]ecognition of innate biological differences is permissible—encouraged, even—under Title IX." *Texas*, 2024 WL 2947022,

---

[1] Because the Interpretation and Fact Sheet have been vacated, Carroll ISD no longer needs a stay under 5 U.S.C. § 705 to protect it from those unlawful agency actions while this litigation proceeds. Carroll ISD will renew its request for preliminary relief from these actions if necessary in the future.

at \*31. It cannot be that it is discriminatory to consider relevant biological differences. But that is the logic of the Rule's new definition.

### 2. The de-minimis-harm rule for gender identity is not a permissible interpretation of the statute.

The de-minimis-harm standard subverts Title IX's sex-based protections and is "arbitrary in the truest sense of the word." *Tennessee*, 2024 WL 3019146, at \*43. The problem with the de-minimis-harm standard is not that it seeks to define what "harm" is. *Contra* Opp'n 11. The Rule says "more than de minimis harm" is "legally cognizable injury," 89 Fed. Reg. 33,474, 33,814 (Apr. 29, 2024), and an injury is cognizable under Title IX if it "impose[s] more than de minimis harm," *id.* at 33,811. That circular standard is either nonsense or redundant. The problem is that "prevent[ing] a person from participating in [school] consistent with the person's gender identity" is the only more than de minimis harm the Rule recognizes. In that context alone, ED says, sex-based distinctions are legally cognizable discrimination as a matter of law—except when they are not. None of that makes any sense.

For example, take a boy who wants to play field hockey but can't because his school fields only a female team. He unquestionably suffers an injury. *See Kleczek ex rel. Kleczek v. R.I. Interscholastic League, Inc.*, 768 F. Supp. 951, 953 (D.R.I. 1991) (describing how this boy was "sideline[d]"). But Title IX allows it, even if he has no other opportunity to play field hockey. *Id.* at 956. Under the new Rule too, that harm is "de minimis." *E.g.*, Opp'n 15 (arguing there is "no basis to conclude that excluding cisgender students…from sex-separate facilities inconsistent with their gender identity generally causes cognizable harm").

Now assume the same boy identified as a girl. Same policy. Same exclusion. But for Defendants, a different injury. A sex-based exclusion alone is de minimis, but a sex-based exclusion applied to someone who happens to identify as transgender (or, in the Department's words, gender-identity discrimination) is more than de minimis.

That "add[s] words" and "impose[s] a new requirement" that Title IX does not. *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024). And far from employing an "objective standard," the Rule says harm is only cognizable if it implicates a person's "subjective, deep-core sense of self." *Compare* 89 Fed. Reg. at 33,815, *with id.* at 33,809; *see also Muldrow*, 144 S. Ct. at 974–75 (explaining elevated harm showing leads to subjective evaluations of what counts as "significant"). Nothing in Title IX's text distinguishes between sex-based exclusions "causing significant disadvantages and [sex-based exclusions] causing not-so-significant ones." *Muldrow*, 144 S. Ct. at 974. Sex-based distinctions permitted by law cannot be a legally cognizable injury. ED's contrary interpretation is not a permissible reading of the statute.

Defendants' reading has other problems too. Take the Rule's idea that statutory carveouts from the nondiscrimination mandate show that Congress *intended* schools to impose more than de minimis harm in certain contexts. 89 Fed. Reg. at 33,818 (explaining carveouts allow "sex-specific policies and practices … that may cause more than de minimis harm to a protected individual"). That "throwaway reasoning" leads to absurd results, like allowing for sex-designated "Boy Scouts or Girl Scouts" but requiring Carroll ISD to allow males into female showers and locker rooms. *Tennessee*, 2024 WL 3019146, at *12.

This Court has already recognized why the de-minimis-harm provision runs headlong into Title IX's text. Title IX prohibits sex "discrimination," meaning "a negative distinction." *Texas*, 2024 WL 2947022, at *31. Of course, "not all differential treatment based on biological sex will qualify as prohibited discrimination." *Id.* at 32. Title IX's provisions for living facilities, fraternities and sororities, and beauty pageants help define what *is* a prohibited discriminatory practice. *Id.* Add in historical context and canons of construction, and you arrive at a statutory text aligned with its purpose: "[s]afeguarding … equal educational opportunities for men and women," which "necessarily requires" sex-based "differentiation and separation at times." *Id.*

So if an individual's gender identity and sex do not align, Title IX allows "sex separation that prevents [that] person from participating in a program or activity consistent with" gender identity. *Contra* Opp'n 15.

Defendants have no response to this textual and structural analysis. Instead, they and Amici States look to "respected" medical groups who say it's harmful if schools don't accommodate someone's gender identity. *Id.* at 12; States' Br. 10. But purported "expert consensus, whether in the medical profession or elsewhere, is not the North Star of" judicial review. *L. W. ex rel Williams v. Skrmetti*, 83 F.4th 460, 479 (6th Cir. 2023) (rejecting similar argument that medical guidelines control constitutional analysis). They do not "define the boundaries" of statutory or constitutional rights. *Otto v. City of Boca Raton*, 981 F.3d 854, 869 (11th Cir. 2020) (explaining medical group's opposition to certain speech was not relevant to understanding free-speech rights). Whether the de-minimis-harm standard is faithful to Title IX turns on the statutory text, not "whether the [Rule] is consistent with … views of certain medical groups." *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 439 (6th Cir. 2019) (similarly rejecting reliance on professional medical groups).

Defendants and Amici's reliance on outside medical groups confirms that elevating gender identity above sex in the de-minimis-harm standard is really a policy determination by an agency trying to usurp Congress's role. Congress in 1972 did not know about, much less peg Title IX's meaning to the views of the World Professional Association on Transgender Health. After all, that group did not exist until 1978, and its views have changed and can change again. Nor did Congress tell Defendants to ignore the objective markers of biological sex in favor of subjective personal perceptions of gender identity.[2]

---

[2] As of this morning, even ambiguous statutory text cannot give an agency license to write its policy preferences into law in this way. *See Loper-Bright Enterps. v. Raimondo*, No. 22-451, slip op. 23 (U.S. June 28, 2024).

### 3.      The gender-identity mandate applies to sports.

**a.** Defendants argue that the gender-identity mandate does not apply to sports. Opp'n 14. On this theory, while § 106.10 (sex discrimination covers gender identity) and § 106.31(a)(2) (de-minimis-harm standard) together require schools to allow anyone to participate in activities "consistent with … gender identity," 89 Fed. Reg. at 33,887, the Rule does not apply the mandate to certain statutory and regulatory carveouts, including § 106.41(b), which allows for sex-specific sports teams in skills-based or contact sports. *Id.*; *see* 34 C.F.R. § 106.41(b).

That only tells half the story. Defendants don't dispute that there is *no* carve-out from the gender-identity mandate for § 106.41(a). Opp'n 15; *see* 89 Fed. Reg. at 33,887. That section applies the general nondiscrimination rule to athletics: "[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in" sports. 34 C.F.R. § 106.41(a). Because under the Rule the nondiscrimination mandate requires participation by gender identity, § 106.41(a) applies the gender-identity mandate to sports.

Defendants' response is that § 106.41(a) doesn't require participation according to gender identity because it's *not* one of the regulatory carveouts to the nondiscrimination mandate, while § 106.41(b) is. Opp'n 15. But this supports Carroll ISD's position, not Defendants'. Section 106.41(a) applies the gender-identity mandate to sports. Section 106.41(b) says sports may be designated by sex, just like other provisions say the same about restrooms, showers, and locker rooms. Reading these provisions together suggests schools can maintain men's and women's teams—they just can't deny participation according to gender identity. And that's been Defendants' position all along: § 106.10 does not prohibit sex-specific activities or facilities; it just explains how to effectuate such sex separation. *See* Opp'n 9. Because the gender-identity mandate applies to § 106.41(a), and § 106.41(a) specifically governs sports, the

mandate must apply to sports. Changing the definition of sex-based discrimination in Title IX changes *everything* about it. Defendants can't account for the "virtually limitless" consequences of their attempt to redefine "sex" in Title IX. *Tennessee*, 2024 WL 3019146, at *13.

The Department of Justice has argued the gender-identity mandate applies to sports. Last year, DOJ claimed that "Title IX *and its regulations*" only allow women's sports teams (without men who identify as women) "to the extent that such exclusion is consistent with the statute's requirement that [schools] provide equal opportunity in athletics programs. *See* 34 C.F.R. 106.41(a). … Bans that extend beyond that (*as categorical bans do*) violate the general nondiscrimination mandate in the statute *and the regulations*." Br. for the U.S. as Amicus Curiae in Supp. of Pl.-Appellant and Urging Reversal at 27–28, *B.P.J. ex. rel. Jackson v. W. Va. State Bd. of Educ.*, 98 F.4th 542 (4th Cir. 2024) (Nos. 23-1078, 23-1130), 2023 WL 2859726, at *27–28 (emphasis added). Defendants cannot explain why the prior sports regulation under their reading requires admitting men into women's sports and the new Rule does not when the Rule *expanded* the old regulation to include gender identity explicitly. So the Rule cannot help but affect sports by globally importing gender identity into Title IX and by failing to universally exempt sports from every provision affecting sports.

**b.** Defendants' reading also makes the Rule arbitrary and capricious for at least three reasons. First, Defendants err when they describe § 106.41(b) as an "except[ion]" to the nondiscrimination rule. Opp'n 15. Sports are not a Title IX-free zone. Section 106.41(b) does not say the nondiscrimination mandate is inapplicable. It just says that "[n]otwithstanding" § 106.41(a), sex-designated teams are still allowed. Like the statutory provisions allowing sex-specific "living facilities," 20 U.S.C. § 1686, this provision helps clarify what *is* sex discrimination in the first place. Plus, the regulatory provisions on sex-designated "toilet, locker room, and shower facilities" were part of the same 1975 implementing regulations as athletics. 40 Fed. Reg.

24,128, 24,141–42 (June 4, 1975). Defendants cannot explain why the "more than de minimis harm" gender-identity mandate applies to one and not the other.

Second, Defendants' reading leads to bizarre results. Defendants assert there's no evidence "that excluding cisgender students … from sex-separate facilities inconsistent with their gender identity causes cognizable harm." Opp'n 15. But a "cisgender" person's gender identity is the same as his or her sex, so Defendants seem to say it's always harmless to exclude someone *because of sex*. Yet sex discrimination is what Title IX is all about.

Third, Defendants "offered no reasoned response" to the comments showing how the gender-identity mandate extends to athletics, despite Defendants' assurances to the contrary. *Ohio v. EPA*, No. 23A349, slip op. 12 (U.S. June 27, 2024); *see e.g.*, App.67–68, 87–88. That makes Carroll "likely to prevail." *Ohio*, slip op. 13.

### 4. Constitutional canons of statutory construction foreclose the gender-identity mandate.

The clear-notice rule for Spending Clause legislation applies, the major-questions doctrine bars the gender-identity mandate, and the Rule exceeds ED's delegated power under the Spending Clause.

**a.** The Rule does not claim that the gender-identity mandate created by § 106.31(a)(2) is found in unambiguous statutory text. Defendants cannot now argue to the contrary. *See* Opp'n 18. The agency must stand on the reasons stated in the Rule. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21–22 (2020). That requires rejecting Defendants' clear-notice rule and major-questions doctrine arguments, both of which presume unambiguous text requires the gender-identity mandate.

Defendants argue that Title IX must be unambiguous as to gender identity in schools because *Bostock* found Title VII to prohibit firing an employee because of transgender status. Opp'n 18–19. That is wrong for all the reasons discussed above. Moreover, *Bostock* did not involve Spending Clause legislation, so it did not consider

the heightened clarity required for conditions on funding. *See Texas*, 2024 WL 2947022, at \*40–42. Indeed, *Bostock* acknowledged that "many, maybe most, applications of Title VII's sex provision were 'unanticipated' at the time of the law's adoption." *Bostock*, 590 U.S. at 679; *see id.* at 649 ("unexpected consequences"), 660 (calling its holding "momentous"). "*Bostock*'s holding cannot be reconciled with an argument that Congress spoke clearly on this 'unexpected' condition Defendants ask the Court to read into Title IX." *Texas*, 2024 WL 2947022, at \*42. And Congress's prohibition on sex-based discrimination, 20 U.S.C. § 1681(a), did not give agencies power to "decide the major policy question of whether discrimination on the basis of sex should include gender identity." *Id.* at \*36. The gender-identity mandate in 34 C.F.R. §§ 106.10 and 106.31(a)(2) cannot survive the major-questions doctrine.

Carroll ISD doesn't argue that Congress cannot preempt state law because of the anticommandeering doctrine, *contra* Opp'n 12, but rather that preempting state law is outside the spending power, *see* Mem. 18. The Rule is wrong to claim otherwise. Conditions on federal spending cannot be so coercive as to put "a gun to the head," *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 581 (2012) (opinion of Roberts, C.J.)—which is what the Rule does, particularly with regard to Texas law protecting women's sports. Mem. 18. And the anticommandeering doctrine shows that ED cannot exempt Carroll ISD from complying with state law.

**B.    The Rule infringes on First Amendment Rights.**

This Court must reject an agency interpretation that causes "grave constitutional concerns." *Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*, 60 F.4th 956, 966 (5th Cir. 2023). That dooms the Rule. The Rule "forces the Nation's schools and educators to convey a message ordained in Washington, D.C., while silencing dissenting opinions." *Tennessee*, 2024 WL 3019146, at \*23. Contrary to Defendants' argument, courts "regularly" invalidate—and have already invalidated—similarly overbroad definitions of harassment. *E.g.*, *id.* at \*26; *Louisiana*, 2024 WL 2978786, at \*13. The

new standard will chill speech on all manner of issues, including abortion, pregnancy, and gender identity, because under the Rule's new definition of harassment, anyone offended by speech on such topics is granted a heckler's veto. *See* Mem. 20–21.

Contrary to Defendants' attempts to distinguish *Speech First v. Cartwright*, the Rule's standard for harassment is "as user-friendly and objective as Justice Stewart's obscenity test: 'I know it when I see it.'" *Tennessee*, 2024 WL 3019146, at *26 (cleaned up). It interferes with free speech on any topic touching on sex, pregnancy, "sex stereotypes" (whatever that means), as well as gender identity. Its ill effects are particularly apparent, however, when it comes to the gender-identity mandate, which says that speech relating to "gender identity" will often be harassing or create a hostile environment. 89 Fed. Reg. at 33,886. The Rule doesn't define "gender identity," except to say it "describe[s] an individual's sense of their [sic] gender." *Id.* at 33,809. A finding of harassment "depend[s] on vague terminology [Defendants have] elected not to define." *Tennessee*, 2024 WL 3019146, at *25. That means the Rule can require "the use of preferred pronouns," contrary to constitutional protections for "expression and religious exercise." *Texas*, 2024 WL 2947022, at *28 n.119.

Defendants cannot distinguish *Davis*. They argue that *Davis* "addressed the standard [that] a plaintiff must meet in a private action for damages." Opp'n 21. But the Court interpreted Title IX's prohibition on sex-based discrimination. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). There is no reason the same words mean one thing in a private lawsuit and another for agency enforcement. And the *Davis* Court crafted its standard to fit with First Amendment protections. Mem. 21. An agency cannot replace the Court's authoritative construction of the text with its own.

The extension of harassment to online and extraterritorial speech only broadens the Rule's application. *Contra* Opp'n 22. Speech "not expressly and specifically directed at the school" is "almost always beyond" regulation. *Tennessee*, 2024 WL

10

3019146, at *26. Yet the Rule "seeks to root out 'all forms of sex discrimination' oc-curring online," under an "amorphous and discretionary definition," including "inten-tionally undefined" terms like "gender identity." *Id.* at *25–27. Its "sweeping and sub-jective standard most certainly chills protected speech." *Id.* at *27.

As to the gag-order requirement, Defendants concede that a "standardless" school policy can impose unconstitutional prior restraint. Opp'n 26. Yet their gag-order requirement does just that. It mandates that Carroll ISD take steps to "protect the privacy of the parties and witnesses" without defining how to protect that privacy while preserving First Amendment rights to discuss the case with the media or pub-licly criticize how the recipient has handled the grievance process. *See id.* at 25. Stu-dents have "a clearly established right to be free of prior restraints except where they are designed to maintain discipline or to prevent school disruption and are narrowly drawn to achieve that goal." *Chiu v. Plano Ind. Sch. Dist.*, 339 F.3d 273, 282 (5th Cir. 2003). Defendants offer no narrow tailoring here.

Finally, Defendants' insistence that they will comply with the First Amend-ment doesn't help. *Contra* Opp'n 20–21, 25. Generic savings clauses cannot save a rule that is overbroad on its face. *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1183 (6th Cir. 1995) (disregarding savings clause in harassment policy); *Coll. Republicans at S.F. State Univ. v. Reed*, 523 F. Supp. 2d 1005, 1020–21 (N.D. Cal. 2007) (dis-claimer that "behavior protected by the First Amendment" could not be punished "communicate[d] virtually nothing," given the complex nature of First Amendment law that poses "so much difficulty" even for "judges"). And Defendants' reference to Carroll's harassment policy is unavailing. Carroll has additional protections for free speech, such as not requiring students and employees to use pronouns inconsistent with sex. App.2. Independent of Carroll's policies, *Defendants* cannot impose an over-broad harassment definition on pain of burdensome administrative enforcement and costly private lawsuits that infringes on First Amendment rights. The Rule "turn[s]"

Carrol ISD into a "federally commandeered censor[ ] of speech." *Texas*, 2024 WL 2947022, at *28 n.119. That's unlawful.

### C.   The Rule is arbitrary and capricious.

The challenged provisions of the Rule are all arbitrary and capricious. Mem. 22–24. Defendants' contention that Carroll ISD only brings this argument as to the de-minimis-harm provision is therefore unavailing. *Contra* Opp'n 14.

Instead of engaging with the authority that students have "a significant privacy interest in their unclothed bodies," Mem. 10, Defendants baldly assert that the gender-identity mandate doesn't interfere with privacy, Opp'n 16. This Court and others have ruled to the contrary. *Texas*, 2024 WL 2947022, at *34. Defendants' requirement that schools "permit biological men into women's intimate spaces … is not only impossible to square with Title IX, but with the broader guarantee of education protection." *Id.* Yet Defendants continue to bury their heads in the sand.

ED "offered no reasoned response" to reliance interest comments. *Ohio*, slip op. 12. Defendants' position that Carroll ISD had "notice that its policy of separating male and female bathrooms," locker rooms, and showers "violate[d] Title IX" is "untenable." *Adams*, 57 F.4th at 816. Thus, its superintendent's declaration shows that it relied on how Title IX has been understood for the vast majority of its existence. *Contra* Opp'n 16. It built sex-designated facilities consistent with Title IX. App.1. Absent a delay or injunction, to preserve privacy and protect its students, it would have to construct single-user facilities because it "has determined that opening up restrooms, locker rooms, and showers to the opposite sex endangers its students." App.5.

Defendants argue that the de-minimis-harm provision doesn't "say anything about 'sex stereotypes.'" Opp'n 17. But the Rule overall includes "sex stereotypes" in its definition of "sex." Mem. 23. Even if "sex stereotypes" are not ED's basis for elevating gender identity over sex in § 106.31(a)(2), Defendants don't dispute that sex

does not mean "sex stereotypes." *Id.* They still have failed to give any explanation for how the Rule can treat "sex stereotypes" the same as "sex." It can't.

Finally, a sister court recently concluded that the Rule "seemingly bind[s] administrators to treat … children consistent with their gender identities on school grounds, even if that conflicts with parental preferences." *Tennessee*, 2024 WL 3019146, at *31 (cleaned up). Defendants fail to recognize the "private realm of family life which the state cannot enter." *Id.* For all these reasons, ED acted arbitrarily and capriciously.

### D.      Claim splitting is immaterial here.

Claim splitting offers no basis to deny preliminary relief. Texas and Carroll ISD are not in privity because they assert different interests and because the Texas Attorney General does not have "legal authority" to represent Carroll ISD here. *See Gen. Land Off. v. Biden*, 71 F.4th 264, 270–71 (5th Cir. 2023); ECF No. 22-1. And— as Defendants have conceded—the proper remedy for any claim splitting would be consolidation, not dismissal. ECF No. 21-1 at 8–9. Either way, Carroll ISD needs preliminary relief before the Rule's effective date on August 1, 2024. Carroll ISD is likely to succeed regardless of which court decides the merits. The Court considering Texas's challenge to the Rule denied Defendants' request to consolidate, ECF No. 23-1, so this Court is the one that can (and should) now provide that relief.

## II.   The other preliminary injunction factors favor relief.

Defendants ignore the Fifth Circuit's recent decision holding that compliance costs inflict irreparable injury. *See* Mem. 24. Yet they assert any such costs are "speculative." Opp'n 27. That contradicts ED's admission that compliance costs include "reviewing and making necessary changes to policies, procedures, and training to implement the final regulations," which will cost schools over $98 million in the first

year. Compl. ¶ 234 (quoting 89 Fed. Reg. 33,861). And the compliance costs here include changing policies to infringe on constitutional rights—which is *per se* irreparable injury. *Tennessee*, 2024 WL 3019146, at *42.

The Rule makes clear that it imposes "obligation[s]" on recipients like Carroll. *E.g.*, 89 Fed. Reg. at 33,885. Defendants cannot now claim the risk of administrative enforcement or private litigation is speculative. *Contra* Opp'n 27–28. Loss of funds or costly private litigation "would have a devastating impact on" Carroll's students. *Tennessee*, 2024 WL 3019146, at *41. Nothing requires Carroll to "bet the farm" by violating the Rule once it goes into effect. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 490 (2010); *see also Texas*, 2024 WL 2947022, at *23 (Title IX enforcement imposes "an arduous, expensive, and long administrative process").

The balance of the equities also favors preliminary relief. Defendants argue that the Rule is urgently needed to prevent sex discrimination. Opp'n 28–29. But "Defendants are responsible for a significant change in the status quo and for the short three-month deadline they gave [school districts] to comply." *Louisiana*, 2024 WL 2978786, at *20. Title IX has prohibited sex discrimination—properly understood—for 50 years. It will continue to do so. And Amici States suffer no burden because they can enact—and have enacted—similar provisions. *See* States' Br. 6–7. "[I]t would be of relatively little harm to others to maintain the status quo pending the resolution of this lawsuit." *Tennessee*, 2024 WL 3019146, at *42.

## III.   Complete relief requires delaying the Rule's effective date and enjoining its enforcement.

This Court should delay the Rule's effective date across the board. The challenged provisions of the Rule have no basis in Title IX, so they are unlawful for any recipient, not just Carroll ISD. Plaintiff asks the Court "to postpone the effective date of [the Rule]," 5 U.S.C. § 705, and "the scope of preliminary relief under Section 705

aligns with the scope of ultimate relief under Section 706, which is not party-restricted and allows a court to 'set aside' an unlawful agency action." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024). Agency action that is "set aside," or vacated, "is treated as though it had never happened." *Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1, 2 n.1 (2023) (Kavanaugh, J., statement respecting the denial of application) (citation omitted). That is, necessarily, "nationwide" relief.

Moreover, relief "limited" to Carroll ISD would not "fully remedy" its injuries. *Contra* Opp'n 29. In the upcoming school year, Carroll ISD athletes and debaters plan to compete against other schools, both within Texas and in California, Georgia, Florida, Kentucky, Iowa, Ohio, and Oregon. App.476–77. If other schools have males playing on girls' teams or using girls' locker rooms and bathrooms, Carroll ISD's students will be harmed. And unless the Rule is stayed, the gender-identity mandate could be invoked in private lawsuits even after Defendants are enjoined from enforcing it. Complete relief requires delaying the Rule's effective date entirely, not trying to craft a limited stay applicable to certain schools or states.

Defendants suggest certain provisions of the Rule are severable, but do not identify such provisions. A stay under § 705 delays "the effective date" of the whole Rule, not just some of its provisions. In any event, whether unchallenged provisions are severable from an unlawful regulation does not turn on the Rule's say-so. *See Nasdaq Stock Mkt. LLC v. SEC*, 38 F.4th 1126, 1145 (D.C. Cir. 2022). And Defendants have the burden to show how the Court "might craft a limited stay." *Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016). But they make no effort to do so. At this preliminary stage, delaying the effective date in its entirety is the most workable approach. *See Tennessee*, 2024 WL 3019146, at *42–43.

## CONCLUSION

The Court should grant Carroll ISD's motion.

Respectfully submitted this 28th day of June 2024.

*/s/ Mathew W. Hoffmann*

**Tim Davis**
Texas Bar No. 24086142
**Allison Allman**
Texas Bar No. 24094023
**Trevor Paul**
Texas Bar No. 24133388
**JACKSON WALKER LLP**
777 Main Street, Suite 2100
Fort Worth, Texas 76102
Telephone: (817) 334-7200
tdavis@jw.com
aallman@jw.com
tpaul@jw.com

**Jonathan A. Scruggs***
Arizona Bar No. 030505
**ALLIANCE DEFENDING FREEDOM**
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0028
jscruggs@ADFLegal.org

**Tyson C. Langhofer***
Virginia Bar No. 95204
**Mathew W. Hoffmann***
Virginia Bar No. 100102
**ALLIANCE DEFENDING FREEDOM**
44180 Riverside Pkwy
Lansdowne, Virginia 20176
Telephone: (571) 707-4655
Facsimile: (571) 707-4656
tlanghofer@ADFlegal.org
mhoffmann@ADFlegal.org

**Natalie D. Thompson****
Texas Bar No. 24088529
**ALLIANCE DEFENDING FREEDOM**
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (202) 393-8690
Facsimile: (202) 347-3622
nthompson@ADFlegal.org

**Counsel for Plaintiff Carroll ISD**

*\*Admitted pro hac vice*

*\*\*Practice supervised by one or more D.C. Bar members while D.C. Bar application is pending.*

## CERTIFICATE OF SERVICE

I certify that on June 28th, 2024, this document was served on all counsel of record via the Court's CM/ECF system.

*/s/ Mathew W. Hoffmann*

Mathew W. Hoffmann
**Counsel for Plaintiff Carroll ISD**