UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Carroll Independent School District,<br><br>*Plaintiffs,*<br><br>v.<br><br>**United States Department of Education**; **Miguel Cardona**, in his official capacity as Secretary of the United States Department of Education; **Catherine E. Lhamon**, in her official capacity as Assistant Secretary for Civil Rights at the United States Department of Education; **United States Department of Justice**; **Merrick B. Garland**, in his official capacity as Attorney General of the United States; and **Kristen Clarke**, in her official capacity as Assistant Attorney General for the Civil Rights Division of the United States Department of Justice,<br><br>*Defendants.* | Case No. 4:24-cv-00461-O |

**UNOPPOSED MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF OF TEXAS VALUES IN SUPPORT OF PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTION**

Texas Values moves this Court for leave to file the accompanying *amicus curiae* brief in support of Plaintiffs. The proposed *amicus* seeks to use its

1

broad experience in legislative policy and legal matters to assist the Court's understanding of the First Amendment and state legislative issues applicable to this case. Texas Values is a statewide non-profit organization that exists to promote research and education to encourage, strengthen, and protect Texas families. Texas Values has over 200,000 supporters in all 254 counties in the State of Texas. Texas Values provides its members legal and legislative representation and support on issues of faith, family, and freedom and is the leading organization in Texas on issues affecting constitutionally-protected religious freedom, free speech, and parental rights.

    For these reasons, Texas Values respectfully asks the Court to grant this motion and accept the accompanying brief.

                  DATED this 2nd day of July, 2024

                                        /s/ Kevin Fulton
                                        Kevin Fulton
                                        Texas Bar Number: 24059787
                                        Southern District I.D.: 1127417
                                        Fulton Law Group PLLC
                                        7676 Hillmont Street, Suite 191
                                        Houston, Texas 77040
                                        713.589.6964
                                        832.201.8847 (fax)
                                        kevin@fultonlg.com
                                        *Counsel for Amicus Curiae*

/s/ Jonathan M. Saenz
Jonathan M. Saenz
Texas Bar Number: 24041845
TEXAS VALUES
1005 Congress Ave.
Austin, TX 78701
512.478.2220
512.478.2229 (fax)
jsaenz@txvalues.org
*Co-Counsel for Amicus Curiae*

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with all other parties regarding the merits of this motion, and all parties are unopposed. This certificate is submitted in compliance with Local Rule 7.1(b) of the United States District Court.

/s/ Kevin Fulton
Kevin Fulton

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2024, I electronically filed the foregoing Motion for Leave to File Brief of Amicus Curiae Texas Values using the CM/ECF system. Counsel for all parties to the case are registered users and will be served by the CM/ECF system.

/s/ Kevin Fulton
Kevin Fulton

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Carroll Independent School District,<br><br>*Plaintiffs,*<br><br>v.<br><br>**United States Department of Education**; **Miguel Cardona**, in his official capacity as Secretary of the United States Department of Education; **Catherine E. Lhamon**, in her official capacity as Assistant Secretary for Civil Rights at the United States Department of Education; **United States Department of Justice**; **Merrick B. Garland**, in his official capacity as Attorney General of the United States; and **Kristen Clarke**, in her official capacity as Assistant Attorney General for the Civil Rights Division of the United States Department of Justice,<br><br>*Defendants.* | Case No. 4:24-cv-00461-O |

***AMICUS CURIAE* BRIEF OF TEXAS VALUES IN SUPPORT OF PLAINTIFFS MOTION FOR <u>PRELIMINARY INJUNCTION</u>**

5

**TABLE OF CONTENTS**

Table of Contents ………………………………………………………....... i

Index of Authorities …………………….…………………………………….. ii

Interest of Amicus Curiae ….…………………………………………….... 1

Introduction …………………………………………………………...…1

Argument …………………………………………………………….....2

    I.    The Rule violates the First Amendment rights of Christian students and teachers ……………………….……………………..……….2

    II.    The Rule is not narrowly tailored …………………………………....5

    III.    The Rule discrimines against girls and signals the end of fairness in girls' sports …………………………………………………….…6

Conclusion and Prayer …………………………………………………….. 9

Certificate of Service ……………………………………………….…..…11

# INDEX OF AUTHORITIES

**Cases**

*Meriwether v. Hartop,* 992 F.3d 492, 506 (6th Cir. 2021) ……………………2

*Ricard v. USD 475 Geary County,* KS School Board, 2022 WL 1471372 (D. Kan. May 9, 2022)………………….………………………………….... 2

*Masterpiece Cakeshop Ltd. v. Colo. Civ. Rts. Comm'n*, 138 S. Ct. 1718, 1731 (2018) ………...……………………………………………….…………2

*United States v. Yung,* 37 F.4th 70, 78 (3d Cir. 2022) ………………………..4

*State of Texas v. Miguel Cardona et al.*, Civil Action No. 4:23-cv-00604……6

*Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) ……………...……6

*United States. v. Virginia*, 518 U.S. 515, 533 (1996) …………………….…...8

*State of Louisiana v. U.S. Dep't of Educ.*, Case No. 3:24-CV-00563 ………..8

*Doe v. Luzerne Cnty.*, 660 F.3d 169, 176 (3rd Cir. 2011) ……………………8

*D.N. by Jessica N. v. DeSantis,* U.S. Dist. Ct. S.D. FL. WL7323078 (2023)…8

**Statutes**

Education Amendments Act of 1972, 20 U.S.C. §§1681 - 1688 (2018)………1

Tex. Education Code § 51.980 …………………………………………….…..9

Tex. Education Code § 33.0834 ……………………..…………………….….9

**Regulations**

89 Fed. Reg. at 33,815 …………………………………………...…….2, 7

89 Fed. Reg. at 33,504 …………………………………………………….3, 5

89 Fed. Reg. at 33,884 ……………………………………………………3

89 Fed. Reg. at 33817 ……………………………………………………..7

**Other Authorities**

*Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33, 815 (Apr. 29, 2024)………..……………….…………………………...……..2

Tex. Educ. Agency, 2022 *Comprehensive Biennial Report on Texas Public Schools* at 239 (Dec. 2020), https://bit.ly/4a2Y9Bw .........................................5

Attorney General of Texas – *Advisory on Application of Title IX in Texas Schools*. June 18, 2024 https://bit.ly/3Xt7cJq ………......................................6

Abigail Shrier, Wall Street Journal, *Joe Biden's First Day Began the End of Girls' Sports* (2021) https://on.wsj.com/4cvzNSM ..........................................8

Alison K. Heather, *Transwomen Elite Athletes: Their Extra Percentage Relative to Female Physiology,* 19 Int'l. J. Env't. Rsch. Pub. Health 9103 (July 26, 2022) ……………………….....……………………………………...8

## INTEREST OF AMICUS CURIAE

Texas Values is a statewide Judeo-Christian nonprofit organization that promotes research, education, and legislative advocacy to encourage, strengthen, and protect Texas families. Texas Values has over 200,000 supporters in all 254 counties in the State of Texas. Texas Values provides its members legal and legislative representation and support on issues of faith, family, and freedom and is the leading organization in Texas on issues affecting constitutionally-protected religious freedom, free speech, and parental rights.

## INTRODUCTION

The current and attempted overhaul of Title IX[1], a 50-year-old federal education law, is a prime example of cowardly bowing by the Biden Administration to politicization. Title IX's original prohibition is quite simple: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any educational program or activity receiving Federal financial assistance." In redefining the immutable definition of "sex," the newly published Title IX regulation (the "Rule") from the U.S. Department of Education ("Department") makes this simple mandate unrecognizable. *See Nondiscrimination on the Basis*

---

[1] Education Amendments Act of 1972, 20 U.S.C. §§1681 - 1688 (2018)

1

*of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33, 815 (Apr. 29, 2024) (the "Rule"). Without the Court's intervention, the First Amendment rights of Christian students will be trampled and sex-separated athletics for girls and women will be a relic from a much more common-sense past.

## ARGUMENT

I. **The Rule violates the First Amendment rights of Christian students and teachers**

The Rule forces Carroll Independent School District (Carroll ISD) to be the "speech police" for pronoun usage of teachers and students by expanding the definition of "sex" to include "gender identity," an amorphous term that the Rule fails to even define. In *Meriwether v. Hartop,* 992 F.3d 492, 506 (6th Cir. 2021), the Court held that a public employee's refusal to use gender identity based pronouns involves a matter of public concern and is protected by the First Amendment. Further, the Free Exercise Clause requires government to commit itself to religious tolerance, and thus, regulations that burden religious exercise are presumptively unconstitutional unless they are both neutral and generally applicable. *Ricard v. USD 475 Geary County,* KS School Board, 2022 WL 1471372 (D. Kan. May 9, 2022) (citing *Masterpiece Cakeshop Ltd. v. Colo. Civ. Rts. Comm'n*, 138 S. Ct. 1718, 1731 (2018). Students and teachers in Carroll ISD and in all 1,200 school districts in Texas affected by the Rule are Christians

2

of many denominations who believe that God immutably created each person as either male or female, and that these two distinct and yet complementary sexes are made in the image of God. These individuals also believe that the Bible prohibits dishonesty and that referring to pronouns inconsistent with a person's biological sex is harmful because it is untrue. Yet the Rule's logic leads to the position that these beliefs could constitute sexual harassment.

Rather than neutrality, the Rule falsely attempts to shield one group from so-called "harassment" based on an undefined term at the expense of another group's religious and free speech protections. For example, the Rule states that:

> The Department maintains that the type of conduct prohibited by the definition of hostile environment sex-based harassment in the final regulations "invades the rights of others" to receive an education free from sex discrimination and therefore is "not immunized by the constitutional guarantee of freedom of speech." 89 Fed. Reg. at 33,504.

Surely Christian students also have the right not to be "invaded" in their sincerely held beliefs? And yet, presumably, under the Rule, one student may utilize the District to force another student to use the pronouns "xe," "xir," or "they" – among many others - to refer to himself or herself. In fact, any conduct or speech the student considers "unwelcome" can be considered harassment. *Id. at* 33,884. Yet, as the Rule itself recognizes, "there is no categorical 'harassment exception' to the First Amendment's free speech clause." *United States v. Yung*, 37 F.4th 70, 78 (3d Cir. 2022).

3

The Biden Administration's use of the Rule punishes people of faith and creates special protections for a certain group of individuals. Texas Values has considerable experience opposing sexual orientation and gender identity terminology for this exact reason. Over the past 12 years, Texas Values has had a 100% success rate in preventing the enactment of an estimated 3,000[2] attempts to insert this undefined language into Texas statute. These legislative attempts would have affected every aspect of governmental regulation including the Labor Code, Health and Safety Code, Civil Practice and Remedies Code, Property Code, Higher Education Code, Family Code, and many more. Team members have also supported government entities on every level, testifying at dozens of local school board and city council meetings[3] and providing accurate legal analysis[4] to public school districts as an alternative, and sometimes response to, the flawed guidance of organizations such as the Texas Association of School Boards (TASB). In 2016, Texas Values helped parents reverse a set of dangerous guidelines proposed by Fort Worth ISD allowing boys into girls' showers, locker rooms, and bathrooms. In 2023, a charter school in Fort Worth came under tremendous pressure to open their long standing all-boys and all-girls choirs to anyone who "identifies" as a boy or girl – thus offering so-called

---

[2] Since our founding in 2012, Texas Values has operated in 17 regular and special legislative sessions. During these 17 sessions, an estimated 1,000 sexual orientation and gender identity (SOGI) bills have been filed by legislators, most containing multiple proposed insertions to various codes.  Each insertion is considered an "attempt."
[3] https://txvalues.org/mansfield-isd-parents-rise-up-educate-dont-indoctrinate-after-lgbt-push-fails/
[4] https://txvalues.org/aclu-tasb-school-guidance-flawed-says-texas-values-warning-for-school-districts/

4

"transgender" individuals an option not available to anyone else, in violation of equal protection. Our experience tells us that school districts will face an almost-certainty of lawsuits based on First Amendment violations from parents and students if they attempt to comply with the Rule. And Texas Values is likely to either file such litigation itself, or join onto actions filed by other groups or individuals to protect the First Amendment.

## II.  The Rule is not narrowly tailored

The Rule tries to argue that narrowly drawn anti-harassment laws are permissible. 89 Fed. Reg. at 33,504. But the Department's Rule is not narrow by any standard. As a regulation, its miles-wide approach threatens potential bankruptcy to districts which fail to enforce policies that mandate enormous compliance efforts (e.g., school bathroom renovations, additional reporting, hiring of investigators, etc.) and potentially change the landscape of school administration in Texas. Texas received approximately $6.6 billion dollars in federal funds for its K-12 education in the 2021-22 biennium[5].  Every dollar could potentially be lost if public schools legitimately comply with existing state laws on sex-separated athletics. On the other hand, the Texas Attorney General issued an advisory on June 18, 2024 based on this Court's ruling in *State of*

---

[5] Tex. Educ. Agency, 2022 Comprehensive Biennial Report on Texas Public Schools at 239 (Dec. 2020), https://bit.ly/4a2Y9Bw

5

*Texas v. Miguel Cardona et al.*, Civil Action No. 4:23-cv-00604-O, promising to "pursue every remedy" if school districts enact policies upholding the Rule.

In addition, the Rule's definition of hostile environment "sex-based harassment" is equal parts confusing and constitutionally overbroad. It inevitably expands the role of Title IX coordinator to monitor any conduct in the form of speech that is potentially "unwelcome" under the standard. It also expands the *Davis* standard used by courts in private actions under Title IX for money damages. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999). Title IX claims are typically initiated by private parties, and for years courts have referred to the *Davis* standard which requires the harassment to be "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." The Rule goes far beyond this however, allowing a definition that recognizes harassment which is also *subjectively* offensive. To many commenters on the Rule, an attempted "objective" standard based on subjectivity seems absurd. The bureaucrats at the Department chose to ignore this fundamental flaw.

**III. The Rule discriminates against girls and signals the end of fairness in girl's sports**

For over fifty years, since the enactment of Title IX, sex discrimination has always been understood in the contextual binary of males and females by federal agencies and participating educational institutions. There are good reasons for this consistent approach. Bizarre situations result when deviation occurs –

6

particularly in the area of women's sports and athletics. And while the Department attempts to downplay the consequences of the Rule on such a hot-button issue during an election year ("[u]ntil [the rule on sex-separate teams] is finalized and issued, the current regulations on athletics continue to apply" 89 Fed. Reg. at 33817), the truth is they are allocating a privilege (competitive advantage in women's sports) to men, which is classic sex discrimination. The actual consequences will be shocking and the end of women's sports teams – accomplishing the exact opposite of Title IX's original intent.

The Rule's stance is that treating individuals differently on the basis of sex is more than merely *de minimis* harm. *See, e.g. id.* at 33815. If this is true, and sex includes "gender identity" as defined by the Rule, then the Department's assertion that separate athletic teams for women and girls will remain unaffected is calculated misrepresentation meant to overcome strong political headwinds for the administration.

Whereas the law is colorblind (considering a person's race in a regulation will almost always fail), it frequently discriminates, or makes a distinction, based on sex. Schools and other public entities maintain different restrooms, living accommodations, and athletic teams. The rationale for treating sex differently than race, of course, is that biological characteristics provide legitimate relevance for distinguishing between men and women. *United States. v. Virginia*, 518 U.S. 515, 533 (1996). This is especially relevant in the case of

7

athletics and personal privacy. As a matter of biology, men have natural advantages over women in athletics; they are "faster, stronger, and have greater endurance capacity." Alison K. Heather, *Transwomen Elite Athletes: Their Extra Percentage Relative to Female Physiology,* 19 Int'l. J. Env't. Rsch. Pub. Health 9103 (July 26, 2022). In 2018, nearly 300 high school boys could beat Allyson Felix, one of the world's fastest female sprinters ever, in the 400-meter dash.[6] As a matter of privacy, dignitary harms such as the sharing of intimate spaces with men come with the potential for psychological distress and sexual assault. As another U.S. District Court[7], opining on this very issue, put it, "Nearly every civilization recognizes a norm against exposing one's unclothed body to the opposite sex. *Doe v. Luzerne Cnty.*, 660 F.3d 169, 176 (3rd Cir. 2011)."

The legal system tolerates some sex-conscious policies, but when it has done so, constitutionality has almost always been found because the differentiation is based on biology. See *D.N. by Jessica N. v. DeSantis,* U.S. Dist. Ct. S.D. FL. WL7323078 (2023) (Florida statute prohibiting male participation in public-school sponsored girls' sports does not violate Title IX or equal protection). Biology is most important in two types of laws: privacy laws, and laws affecting sex-separate athletics, such as those passed recently in Texas. Texas Values was

---

[6] Abigail Shrier, Wall Street Journal, *Joe Biden's First Day Began the End of Girls' Sports* (2021)
[7] *State of Louisiana v. U.S. Dep't of Educ.*, Case No. 3:24-CV-00563

8

the leading organization authoring and supporting passage of HB 25[8] from the Third Called Session of the 87th Texas Legislature (protecting fairness in girls' sports for middle school and high school) of the Texas Legislature, and SB 15[9], (requiring intercollegiate athletic competition to be based on biological sex), from the 88th Regular Session. Both laws were drafted and passed in recognition of important physiological differences between males and females. In findings, HB 25 specifically recognizes that "classification by sex is the only feasible classification to promote the governmental interest of providing for interscholastic athletic opportunities for girls."

## CONCLUSION AND PRAYER

Accordingly, Texas Values urges this Court to grant the Plaintiff's motion for a preliminary injunction against the Rule in order to protects against adverse impacts on Carroll ISD, schoolchildren, and educators statewide.

---

[8] Tex. Education Code § 33.0834
[9] Tex. Education Code § 51.980

      Respectfully Submitted,

  /s/ Kevin Fulton
 Kevin Fulton
Texas Bar Number: 24059787
Southern District I.D.: 1127417
Fulton Law Group PLLC
7676 Hillmont Street, Suite 191
Houston, Texas 77040
713.589.6964
832.201.8847 (fax)
kevin@fultonlg.com
*Counsel for Amicus Curiae*


 /s/ Jonathan M. Saenz
Jonathan M. Saenz
Texas Bar Number: 24041845
TEXAS VALUES
1005 Congress Ave.
Austin, TX 78701
512.478.2220
512.478.2229 (fax)
jsaenz@txvalues.org
*Co-Counsel for Amicus Curiae*

10

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2024, I electronically filed the foregoing Brief of Amicus Curiae Texas Values using the CM/ECF system. Counsel for all parties to the case are registered users and will be served by the CM/ECF system.

/s/ Kevin Fulton
Kevin Fulton

11