1              IN THE UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF TEXAS

3                    FORT WORTH DIVISION

4    CARROLL INDEPENDENT          )
     SCHOOL DISTRICT,             )
5                                 ) CASE NO. 4:24-CV-00461-O
          Plaintiff,             )
6                                 ) FORT WORTH, TEXAS
     VS.                          )
7                                 ) JULY 8, 2024
     UNITED STATES DEPARTMENT    )
8    OF EDUCATION; MIGUEL         )
     CARDONA, IN HIS OFFICIAL    )
9    CAPACITY AS SECRETARY OF    )
     THE UNITED STATES            )
10   DEPARTMENT OF EDUCATION;    )
     CATHERINE E. LHAMON, IN     )
11   HER OFFICIAL CAPACITY AS    )
     ASSISTANT SECRETARY FOR     )
12   CIVIL RIGHTS AT THE UNITED)
     STATES DEPARTMENT OF         )
13   EDUCATION; UNITED STATES    )
     DEPARTMENT OF JUSTICE;      )
14   MERRICK B. GARLAND, IN HIS)
     OFFICIAL CAPACITY AS        )
15   ATTORNEY GENERAL OF THE     )
     UNITED STATES; AND KRISTEN)
16   CLARKE, IN HER OFFICIAL     )
     CAPACITY AS ASSISTANT        )
17   ATTORNEY GENERAL FOR THE    )
     CIVIL RIGHTS DIVISION OF    )
18   THE UNITED STATES            )
     DEPARTMENT OF JUSTICE,      )
19                                )
          Defendants.            )
20

21                    9:00 A.M.
                   VOLUME 1 OF 1
22        TRANSCRIPT OF MOTIONS HEARING
        BEFORE THE HONORABLE REED C. O'CONNOR
23       UNITED STATES DISTRICT COURT JUDGE

24

25

```
1    A P P E A R A N C E S :

2    FOR THE PLAINTIFF:  MS. ALLISON ALLMAN
                         MR. TIMOTHY DAVIS
3                        JACKSON WALKER, LLP
                         777 Main Street, Suite 2100
4                        Fort Worth, Texas 76102
                         Telephone:  817.334.7200
5
                         MR. MATHEW HOFFMANN
6                        ALLIANCE DEFENDING FREEDOM
                         44180 Riverside Parkway
7                        Lansdowne, Virginia 20176
                         Telephone:  571.707.4708
8
                         MS. NATALIE DEYO THOMPSON
9                        ALLIANCE DEFENDING FREEDOM
                         440 First Street NW, Suite 600
10                       Washington, D.C.  20001
                         Telephone:  202.393.8690
11

12   FOR THE DEFENDANTS: MS. PARDIS GHEIBI
                         United States Department of Justice
13                       Civil Division, Federal Programs Branch
                         1100 L Street NW, Room 12406
14                       Washington, D.C. 20005
                         Telephone:  202.305.3246
15

16

17

18

19

20

21

22

23

24

25
```

```
1

2    COURT REPORTER:        ZOIE M. WILLIAMS, RMR, RDR, FCRR
                            United States District Court Reporter
3                           501 W. 10th Street
                            Fort Worth, Texas  76102
4                           zwilliams.rmr@gmail.com
                            817.850.6630
5

6

7

8        The above styled and numbered cause was reported by

9    computerized stenography and produced by computer.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2    Arguments –

3    By Ms. Thompson...................................06

4    By Mr. Hoffmann...................................13

5    By Ms. Gheibi....................................20

6    Discussion with the Court........................43

7    Reporter's Certificate...........................116

8    Word Index.......................................117

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          JULY 8, 2024

 2                              oOo

 3                   P R O C E E D I N G S

 4             COURT SECURITY OFFICER:  All rise.

 5             THE COURT:  Please be seated.

 6             All right.  Thank you all for being here this

 7   morning.

 8             All right.  Who's here for the plaintiff?

 9             MS. ALLMAN:  I will make quick introductions, Your

10   Honor.

11             Good morning.  Allison Allman with Jackson Walker

12   for the plaintiff, Carroll Independent School District.

13             I would like to introduce my cocounsel, Tim Davis.

14             MR. DAVIS:  Good morning.

15             THE COURT:  Good morning.  Thank you for being

16   here.

17             MS. ALLMAN:  Also with us are some of the board of

18   trustee members, and the superintendent, Dr. Ledbetter.

19             THE COURT:  Thank you all for being here this

20   morning.

21             MS. ALLMAN:  I would like to introduce the

22   attorneys from Alliance Defending Freedom who will argue

23   this morning.

24             THE COURT:  Very good.

25             MS. ALLMAN:  Natalie Thompson will discuss the
```

1     gender identity mandate.

2                    THE COURT:  Thank you for being here.

3                    MS. ALLMAN:  The de minimis harm provision, and

4     the rule's application to sports.

5                    Mathew Hoffmann will discuss the overbroad

6     harassment definition, irreparable injury, and the scope of

7     relief.

8                    THE COURT:  Very good.

9                    MS. ALLMAN:  The plaintiff requests five minutes

10    for rebuttal time.

11                   THE COURT:  No, I will give you whatever time you

12    need.

13                   MS. ALLMAN:  Any questions for me?  I will turn it

14    over to Ms. Thompson.

15                   THE COURT:  Ma'am.

16                   MS. GHEIBI:  Good morning, Your Honor.  I'm Pardis

17    Gheibi.  I will be representing the United States this

18    morning.

19                   THE COURT:  Very good.  Thank you for being here

20    this morning.

21                   Okay.  So who wants to lead off?

22                   MS. THOMPSON:  Would you like us at the podium?

23                   THE COURT:  At the podium, please, yes.

24                   MS. THOMPSON:  May it please the Court.  The

25    plaintiffs are here today requesting a 705 stay under the

1   APA, as well as a preliminary injunction, because the

2   federal government has decided that sex means gender

3   identity entitlement.

4           Their theory is, of course, that Title IX applies

5   to sex discrimination.  And under Bostock, that means it

6   also applies to gender identity discrimination, but sex and

7   gender identity are not the same thing.  That's as true

8   today as it was in 2016.

9           Back then, the government's theory was that the

10  word "sex" is ambiguous.  The government even convinced the

11  Fourth Circuit to apply our deference to that

12  interpretation.  Court after court has rejected that,

13  including this Court, just a few weeks ago.

14          So the government has now retreated to a fallback

15  position.  Well, if we can't claim deference, and we can't

16  say that sex is ambiguous, we've got to have a new theory to

17  reach the same result.  So that's what this rule embodies.

18          First, it enacts two main provisions to create a

19  gender identity mandate that redefines the concept of sex

20  discrimination.

21          First, the regulation has been codified in 34

22  U.S.C. 106.10, that's the redefinition includes gender

23  identity and so on and so on.  All as the government would

24  call it, bases of discrimination based on sex.

25          Second, and this is the part that is novel as

1    compared to the guidance documents that the government

2    issued in 2021.  In the rule, the Department of Education

3    has created a new form of discrimination to put it one way.

4            In the regulation to be codified at 34 CFR

5    106.31(a)(2), the government finds a new de minimis harm

6    requirement for sex-based stations and separations.

7            Now, of course, since the 1975 regulations, and

8    even in the statutory text itself, sex-based distinctions

9    are recognized and appropriate under Title IX.

10           For five decades, we've had the provision that

11   says you cannot construe Title IX to prohibit separate

12   living facilities for the different sexes.

13           In the 1975 regs, the government created

14   recognition for, not only restrooms, locker rooms, and

15   shower facilities, but also for a number of sex-specific

16   classes, including physical education classes, sex education

17   classes, and the government also created the athletics

18   regulations.

19           Now, the statutory text itself did not create an

20   exemption or a carve-out for athletics, but everyone

21   understood at the time that sports have to be sex specific.

22           You can't create equal opportunities for women if

23   you just tell them, well, try out for the boys' team.

24   That's not going to work.

25           So Congress directed the agency to create these

1    regulations.  They created regulations for sex-specific

2    teams in different sports, all the way from elementary

3    school to college, and everyone understood that that was

4    lawful.

5            The new theory in this rule is that all of that

6    has secretly been discrimination all along, discrimination

7    as defined by 1681(a), but it's just secretly been okay,

8    because Congress thinks it's all right to impose what

9    otherwise would be legally cognizable injury on individual

10   students by separating them based on sex.

11           That's not a plausible reading of the statute.

12   And it also violates the major questions doctrine.  So even

13   if it were plausible, the Court should reject the idea that

14   the Department of Education can rewrite and reinterpret

15   Title IX's statutory language in this way.

16           To break it down a little bit more, the two --

17   there's 106.10 and 106.31(a)(2), these two provisions work

18   in tandem to create the overarching gender identity mandate

19   that the government has been trying to create for the better

20   part of a decade.

21           106.10 redefines bases of discrimination.

22   106.31(a)(2) creates this new form of discrimination.  You

23   can tell that this is not -- this is a very tortured reading

24   of the statute, because the Department has realized in the

25   middle of this provision during the rulemaking that there

1    are all of these circumstances where sex separation is

2    required and necessary.

3            Title IX can't be sex blind in circumstances

4    recognized in 1681(a)'s exceptions or in 1686, the provision

5    creating a rule of construction for living facilities, and

6    the accompanying regs.

7            But they define it so narrowly that only

8    dormitories are excluded from the new gender identity

9    mandate, but not the restrooms outside the dormitories.

10           It's not clear how this would apply to the

11   separate mens' and womens' restrooms in a dormitory that

12   has, say, a wing for men and a wing for women.  Not really

13   clear.

14           But, you know, that's what the rule has said.  We

15   can only interpret it very, very narrowly, and it only

16   allows for housing provided by any recipient.

17           And then it gets even more convoluted, because

18   there's no statutory provision addressing athletics.  So the

19   Department has decided that, well, we've always treated

20   athletics differently, and so we can exempt our regulations

21   from the gender identity form of discrimination, even though

22   there's no statutory hook for it, so we just put in

23   106.41(b), which is the regulatory subsection dealing with

24   sex-separate athletic teams.

25           All of that shows that this convoluted reading of

1    the statute is just striving, striving, striving to reach

2    the same result they've been trying for since at least 2016,

3    the student's gender identity is treated as the student's

4    sex, because you can't read Title IX to prohibit the

5    reasonable sex distinctions and sex separation that we've

6    recognized for at least hundreds of years.

7         When it comes to sports, when it comes to privacy,

8    the biological differences between male and female matter,

9    and Title IX recognizes that.

10        The other problem with applying this gender

11   identity rule based on Bostock is that the suspending clause

12   legislation.  Just as with the interpretation in the

13   guidance documents that this Court addressed in the Texas

14   vs. Cardona case.  Title IX is a suspending clause statute.

15   It can only create conditions on federal funding that are

16   clear.  And they have to have been clear at the time the

17   statute was enacted.

18        The Fifth Circuit recently addressed this issue in

19   Texas vs. Yellen, which was issued just a couple weeks ago

20   as well, holding that, even if it's clear that there is some

21   condition, that the actual obligation that the recipient has

22   to comply with needs to be clear at the time of the

23   statute's enactment.

24        So we would need to say that, in 1972, everyone

25   accepting federal funding in education was well aware that

1    locker rooms were not going to be fully sex specific and

2    that men who identify as women are allowed into the womens'

3    locker room.

4              That's just not a reasonable interpretation of how

5    anyone thought about this, notwithstanding Bostock.  Bostock

6    itself recognized that its holding was momentous, and it was

7    surprising.  All of that forecloses applying that same

8    rationale and that result to Title IX.

9              The 106.10 provision is independently harmful as

10   well though.  Bostock did not create any new protected

11   classes.  It just set out a logical basis for saying that

12   firing an employee based on transgender status is -- is

13   discrimination under Title VII, but that does not make

14   transgender status a new protected class.  There's still got

15   to be that hook to discrimination based on sex.

16             This rule seems to just waive that to one side.

17   It redefines sex-based discrimination to include a whole

18   list of things, including discrimination based on gender

19   identity.  That's improper independently.

20             So unless Your Honor has any questions on these

21   specific provisions, I will turn it over to my colleague to

22   discuss the other problematic portions of the rule.

23             THE COURT:  Thank you.

24             MR. HOFFMANN:  Thank you, Your Honor.

25             As discussed, the Department of Education's new

13

1    rule is unlawful, but it's further unlawful because the

2    Department, in its words, broadened the definition of

3    prohibited harassment to sweep in even single instances of

4    protected speech, such as using pronouns as they have been

5    traditionally used.

6           As this Court held, in the strikingly similar

7    Tennessee -- or Texas vs. Cardona case, and as three other

8    courts have held so far, the Department's new rule exceeds

9    the scope of its power under Title IX.

10          If allowed to go into effect, the rule would force

11   Carroll ISD to repeal its policy protecting private spaces

12   for all its students and its policy protecting students' and

13   employees' free-speech rights.

14          It will have to train its staff on the new rule

15   before the upcoming school year, which is now just a few

16   weeks away.  And the rule could be invoked in private

17   litigation against the school district.

18          To remedy this injury, Carroll ISD requests that

19   this Court delay the effective date under 5 U.S.C. 705

20   across the board.

21          So turning to that new harassment definition, the

22   rule creates a broader standard for hostile environment

23   claims.  It expands sex-based hostile environment harassment

24   to include gender identity, which in other courts, like in

25   Tennessee vs. Cardona, have recognized is an undefined term

```
 1    in the rule.

 2              The Department just says it's an individual's

 3    sense of their gender, which automatically bakes a

 4    subjectivity component into the hostile environment

 5    harassment standard.

 6              To look specifically at the definition, the rule

 7    extends to speech that, "Based on the totality of the

 8    circumstances, is subjectively and objectively offensive and

 9    is so severe or pervasive that it limits or denies a

10    person's educational opportunity."

11              But that violates the Supreme Court standard that

12    it established in the Davis vs. Monroe County case, which

13    requires severe pervasive and objectively offensive conduct

14    that has the effect of denying an educational opportunity.

15              And the Supreme Court created that standard with

16    the First Amendment in mind.  As you can see in the

17    discussion between the majority and dissent in that case,

18    the Davis standard protects First Amendment speech.

19              So the Department makes clear that its definition

20    applies to speech online and outside of the United States.

21    And it talks about how the speech has to be within the

22    recipient's disciplinary authority.

23              But, you know, schools can discipline students for

24    any manner of things, even including online, but that

25    doesn't change that it's protected speech.  And when it
```

1    turns to speech on ender identity, it certainly has the

2    effect of chilling speech on important political topics.

3            The severe or pervasive standard makes clear that

4    harassment extends to even a single serious incident, and

5    then that, coupled with the limits language which changes

6    from being denied an educational opportunity to being merely

7    limiting.

8            As the Department says, limit requires only some

9    impact on a complainant's ability to participate in an

10   educational program.  So as other courts have pointed out,

11   that could be something as slight as a student, you know,

12   being sad or upset in class because she or he disagrees with

13   the viewpoint of another student.

14           The Department suggests that so-called

15   misgendering can constitute harassment, which is simply

16   using pronouns consistent with sex, as it has been

17   traditionally understood.  And it repeatedly cites a

18   district court case upholding a school district's ban on

19   using pronouns consistent with sex.

20           And then, we can proceed to the objective standard

21   because, even though the Department says it uses an

22   objective standard when it incorporates subjective terms and

23   undefined terms like gender identity, that leads to what

24   courts have called in this situation, it's inherently not

25   objective at all, because it requires affirmation of a

```
 1   viewpoint consistent with the idea that gender identity is
 2   separate from sex and can change, irrespective of sex.  So
 3   in reality, this definition cannot be objective at all.
 4           And the Department says that the courts do not
 5   routinely invalidate these anti-harassment policies, but
 6   that's simply not true.  There's the Speech First vs.
 7   Cartwright case in the Eleventh Circuit, the Speech First in
 8   the Southern District of Texas.
 9           And even in lower schools, Saxe vs. State College
10   Area School District in the Third Circuit invalidated a
11   harassment policy even under -- allowing for the Tinker
12   standard.
13           And then, the three other courts who have also,
14   you know, preliminarily enjoined or stayed the new
15   regulations have recognized how this is an overbroad
16   restriction on protected speech and how it compels protected
17   speech.
18           Finally, the Department's Title VII cases are
19   unavailing, because the Department itself is imposing this
20   definition on recipients and are requiring them to police
21   speech.
22           And the Fifth Circuit has also recognized that
23   there can be constitutional problems with the Title VII
24   hostile environment harassment standard as it is applied.
25           So that brings us then to the irreparable injury
```

1  prong.  Under the Career Colleges case in the Fifth Circuit,

2  it's clear that Carroll ISD will suffer irreparable injury.

3        The Fifth Circuit said in that case that increased

4  costs of compliance, "Necessary alterations in operating

5  procedures, and immediate threats of costly and unlawful

6  adjudications of liability all satisfy the irreparable

7  injury standard."

8        Carroll ISD has all three, in terms of compliance

9  costs.  While the Department now says they're speculative in

10 the rule -- the preamble to the rule, the Department

11 admitted there was compliance costs and said it would cost

12 school districts over $98 million in the first year to train

13 their staff, to train their Title IX coordinator, and to

14 change their policies.  And that's something that Carroll

15 ISD is going to have to do, if this regulation goes into

16 effect, all before the school year starts on August 13th.

17       Second, the repeal of policies, which is a change

18 of operating procedures, irreparable injury.  So Carroll ISD

19 has two policies that protect free-speech rights against

20 using pronouns inconsistent with sex and preserving privacy

21 in spaces.

22       The school district will have to repeal or amend

23 those policies.  Something that it does not want to do and

24 something that it believes will endanger their students.

25 The rule will also force Carroll ISD to enforce an

1    unconstitutional definition of harassment.

2            And finally, Carroll ISD will suffer potential

3    administrative enforcement action under this unlawful rule

4    and definition and also the risk of private litigation.

5            What's more, Carroll ISD students, as we discussed

6    in our reply brief, travel out of the state and out of

7    district to interscholastic competitions, debate

8    tournaments, sports tournaments even out of state and use

9    bathrooms and locker rooms.

10           And so, the irreparable injury would extend to

11    them and it would extend out of district.  So that kind of

12    then brings us to the scope of the relief that is proper

13    here.

14           A delay under clear Fifth Circuit precedent is not

15    party restrictive and should apply to the whole rule here.

16    The rule is just as unlawful as if it was applied to any

17    recipient, as when it's applied to Carroll ISD.

18           So under that Career Colleges case again, which is

19    a recent Fifth Circuit decision that makes this clear, the

20    Section 705 delay is the analog to Section 706 vacatur,

21    which is the final remedy for an unlawful agency action,

22    which the Court recently discussed in Texas vs. Cardona.

23           And the Fifth Circuit in that case made clear that

24    it is not limited.  It's not party restricted.  The scope of

25    relief under Section 705 ultimately aligns with the scope of

1   relief under Section 706, which is setting aside an unlawful

2   agency action, which is treating it as if it had never

3   existed.

4           So Justice Kavanaugh explained, just a few days

5   ago in his Corner Post concurrence, which is instructive on

6   this topic, is that the defendants', "extreme position on

7   the scope of relief would 'revolutionize long-settled

8   administrative law.'"

9           The government has continued to make and take this

10  position in other Administrative Procedure Act litigation.

11  In that Corner Post case, the government argued that vacatur

12  was akin to a nationwide injunction, but Justice Kavanaugh

13  rejected that rationale because he said, in the APA,

14  Congress, in fact, departed from the understanding of the

15  necessity of a preliminary injunction, and said, an

16  authorized vacatur, which means setting aside treating it as

17  if it never happened.

18          And so, the APA doesn't look to the specific part

19  before the Court, but rather it looks to what the agency

20  action is doing.  And all that is consistent with what the

21  Fifth Circuit held in Career Colleges.

22          So, again, in Career Colleges, it said, almost and

23  certainly unlawful provisions of the rule apply to all

24  recipients, all participants, unless they are also unlawful

25  to all those recipients.

```
 1              It also said that, then the government's protest

 2    against nationwide relief are incoherent, because the

 3    government uses the rule to prescribe a uniform federal

 4    standard nationwide.  So it makes sense, if it's enacted

 5    nationwide, that the scope of relief could be nationwide as

 6    well, and this is the ordinary results.

 7              I think it's also important to note that the Fifth

 8    Circuit says a delay across the board is the "less drastic

 9    remedy," because the delay just removes the source of the

10    government agency's authority.  It acts against the agency

11    action.

12              It does act ad personam as an injunction does.  It

13    does not subject defendants to threat of contempt or

14    anything like that.  Rather, it just delays the agency

15    action while the litigation is pending.  And so, in that

16    sense, it is the less drastic remedy.

17              So with only a few weeks to go before school and

18    the compliance costs that will attend with this new

19    regulation, Carroll ISD says that the appropriate relief

20    would be a delay across the board and respectfully requests

21    that this Court grant the motion.

22              So unless the Court has any questions, I will

23    conclude.

24              THE COURT:  Thank you.

25              MR. HOFFMANN:  Thank you.
```

```
1              MS. GHEIBI:  Good morning, Your Honor.

2              THE COURT:  Good morning.

3              MS. GHEIBI:  Thank you for the opportunity to

4    represent the government's position here this morning.  I

5    would like to start off by outlining the three main

6    provisions that plaintiff challenges here today, and then I

7    will go into why plaintiff's challenges fail.

8              The first one is 106.10, which describes the scope

9    of Title IX's prohibition of discrimination on the basis of

10   sex.  This provision does not speak to sex-separate

11   facilities.

12             That's the second provision at issue here today,

13   which is 106.31(a)(2), which goes into instances where sex

14   separation is permitted, what type of sex separation

15   constitutes discrimination.

16             And as that provision outlines, it says, "Sex

17   separation only amounts to discrimination if it causes more

18   than de minimis harm."

19             In other words, if there's sex separation where

20   there is no harm, then it's not discrimination.  That

21   provision then outlines that there are various different

22   sorts of sex separations that are exempted from

23   106.31(a)(2).

24             So it, essentially, is a recognition by the

25   Department of Education that there will be instances in
```

1    which there are sex separations that may cause more than de

2    minimis harm, but they don't amount to discrimination under

3    Title IX, that includes 106.41(b), which is sex-separate

4    athletics.

5         It also includes various different statutory

6    provisions where Congress sort of expressly allowed for sex

7    separation.  And the Department of Education regulation

8    says, in those instances, even if sex separation does cause

9    more than de minimis harm, it's not discrimination under

10   Title IX.

11        And then, the third main provision is 106.2, it's

12   only the definition of sex-based harassment that plaintiffs

13   challenge here under the First Amendment.

14        So now I will go into the various, the three

15   different provisions and why plaintiff's challenges here

16   fail.  The first one, 106.10, simply clarifies that

17   discrimination on the basis of sex includes discrimination

18   on the basis of gender identity.

19        Contrary to what plaintiffs argue here today, it

20   is not a redefinition.  That is simply a straightforward

21   application of Bostock.  Much like Bostock, the Department

22   of Education, and I here today in this argument, are

23   assuming, that for purposes of this argument, that sex does

24   mean biological sex.

25        Bostock's reasoning meant that, if there is any

```
 1    firing of transgender persons, for instance because they're

 2    transgender, is discrimination of sex, because had that

 3    person presented themselves in the way they did, identified

 4    in the way they did, but they just happened to be born a

 5    different biological sex, there would be no discrimination.

 6            So as Bostock reasoned, there is no way to

 7    discriminate against a transgender person without

 8    discriminating against them on the basis of sex.

 9            I want to recognize that this Court recently, in

10    the Texas case, disagreed with the Department of Education's

11    interpretation on that front.  But since then, since the

12    guidance documents came out, the Department of Education has

13    had an opportunity to explain that this is not a

14    redefinition of sex.

15            This Court took issue with the notion that the

16    Department of Education is essentially going in and

17    redefining sex in Title IX, but I want to be very clear here

18    today that that's not what the Department of Education is

19    doing.  Again, this is a straightforward application of

20    Bostock.

21            As to whether or not Bostock is applicable here,

22    as the Fifth Circuit has recognized in the Lakoski case,

23    that prohibition of discrimination on the basis of sex and

24    Title IX and Title VII are the same and for good reason.

25            Plaintiffs attempt to distinguish the two
```

 1    languages, but the different variations in the language of

 2    Title VII and Title IX are not actually material to the

 3    statutory interpretation, and I will go into why.

 4         They provide various, different grounds.  One,

 5    they say Title VII says "because of," whereas Title IX says

 6    "on the basis of."  Well, that variation is not material.

 7    Again, they're trying to invoke here the canon of meaningful

 8    variation.

 9         But what's key to that canon is that the variation

10    must, in fact, be meaningful.  And here it's not.  As the

11    Supreme Court has recognized, time and again, it has used on

12    the basis of and because of sex interchangeably in Bostock

13    itself, because there is no meaningful difference when it

14    comes to statutory interpretation on that front.

15         They also say, well, Title VII also says bans

16    discrimination on the basis of sex, along with other things,

17    like national origin and race.  Again, that distinction is

18    not material for purposes of this question, because the

19    Supreme Court didn't rely on the fact that sex there was

20    surrounded by national origin and race.

21         Again, the variation must be meaningful in order

22    to be relevant.  There wasn't relevance to the Supreme

23    Court's interpretation, and it shouldn't be relevant here

24    today.

25         Now, the third variation they try to identify is

1    that Title IX recognizes that there are instances where sex

2    separation is permitted.  And whereas, Title VII doesn't.

3    Well, that's plainly not true.

4            Title VII has a provision that actually provides

5    for -- it recognizes that there are employers that can hire

6    individuals on the basis of sex when sex is a bona fide

7    occupational qualification.

8            So much like Title IX, Title VII also recognizes

9    that distinctions -- that there are distinctions based on

10   sex, and that differentiating on the basis of sex is not

11   always discriminatory, which actually brings me to my

12   discussion of 106.31(a)(2), which is the provision that

13   talks about sex separation.

14           As I mentioned earlier, the point of the provision

15   is a sort of recognition that not every sex separation is

16   going to amount to discrimination.  That, in order for there

17   to be discrimination, the sex separation needs to cause more

18   than de minimis harm.

19           And then it goes into outlining various different

20   exceptions.  There are statutory exemptions, and then there

21   is the athletics exemption.

22           There are two main issues I think that plaintiff

23   takes with 106.32(a).  The first one is, as plaintiffs

24   argue, that it sort of -- it doesn't properly exempt sports

25   or that the regulation don't properly exempt sex-separate

1    athletics.

2          So what 106.31(a)(2) does is exempts 106.41(b),

3    which is a subsection of the regulation that allows for

4    sex-separate athletics.

5          Now, plaintiffs take issue with the fact that,

6    well, it doesn't exempt 106.41(a), which is the general

7    prohibition on discrimination of athletics.

8          And of course, it doesn't, because 106.31(a)(2)

9    only speaks to sex separation.  It doesn't speak to general

10   prohibition on discrimination.  So there would be no need,

11   it would make no sense for the Department of Education to

12   actually go in and exempt 106.41(a), because 31(a)(2)

13   doesn't speak to 41(a).  It only speaks to 41(b).

14         As the regulation again outlines, it goes into

15   great pains describing that this does not alter sex-separate

16   athletics.  Whatever was the rule and regulations that apply

17   to sex-separate athletics before this rule are going to be

18   just as applicable after this rule, as the Department has

19   acknowledged, that there's a separate rule that's going to

20   be talking about sex-separate athletics.  So that argument

21   really is a red herring there.

22         And then, the second problem with 106.31(a)(2) is

23   really bathrooms.  What the regulation does is it exempts,

24   again, sports.  And then it exempts certain other statutory

25   exemptions, including the statutory exemption in 1686, which

```
 1     is living facilities, but plaintiff says, but it doesn't
 2     exempt bathrooms.  I will go into why in a second.
 3          So Congress outlined various different exceptions
 4     to Title IX, including living facilities, and various
 5     different very, very specific exemptions:  Boy Scouts, Girl
 6     Scouts, father/son activities, mother/daughter activities,
 7     beauty pageants, et cetera.
 8          This shows that Congress knew exactly how to
 9     create exemptions when it wanted to.  And it didn't create
10     them for bathrooms, showers, and locker rooms.
11          So to the extent that those are not excluded, the
12     Department of Education, after reviewing the various
13     factors, it concluded that, if a student is being prevented
14     from using a bathroom that aligns with their gender
15     identity, then there, that does cause more than de minimis
16     harm.  And so, it does amount to discrimination.
17          Plaintiffs take issue with the fact that, well,
18     the same is not true for cisgender students.  So for
19     instance, a cisgender girl being denied the right to access
20     a boys' bathroom, is that exclusion based on sex?  Yes, but
21     there is no harm.  So it's not discrimination.
22          Whereas a trans girl being denied the right to
23     access a girl's bathroom, is that discrimination on the
24     basis of sex?  Yes.  Because had she been born a biological
25     female -- again straightforward application of Bostock --
```

1    had she been born a biological female, she wouldn't be

2    denied access.  She wouldn't be excluded.  So that is

3    exclusion based on sex.  And the evidence shows that it does

4    cause more than de minimis harm.  Therefore, it is

5    discrimination.

6            So the plaintiffs sort of really confused the

7    issue of the de minimis harm standard and how it works and

8    how it interacts with sex separation.  And then, so those

9    are the two main issues with 106.31(a), which don't really

10   stand.

11           I will now go into there are several other sort of

12   arbitrary and capricious-type arguments with respect to

13   106.31(a), which I'll just briefly address.

14           They also talk about privacy.  They say that the

15   Department of Education didn't adequately consider the sort

16   of privacy interests of cisgender students.  Again, that's

17   not true.

18           The Department of Education explains that it takes

19   seriously the concern that students have with respect to

20   transgender students being in bathrooms.  And it concluded

21   that there is no privacy or harm concern by just the mere

22   presence of transgender students.

23           To the extent that plaintiffs argue that, well,

24   there would be students that are going to use or abuse the

25   rule, as people who don't have genuine -- who don't hold a

1    genuine gender identity, are now going to use the bathroom

2    of the opposite sex in order to harass people.  There's no

3    evidence of that.

4         As the amicus brief highlights in this case, that

5    there are various different states that have had rules that

6    echo and mirror the rule here today, and the sky didn't fall

7    in those states, people weren't abusing the rule to show up

8    to a bathroom and harass girls or young girls or young boys.

9    So there's no evidence there will be some major abuse of the

10   rule.

11        The Department of Education also outlined that

12   there are serious harms on the other end of the spectrum.

13   That transgender students who identify with a certain sex,

14   being forced to use a bathroom of the gender they don't

15   identify with, do face serious harm in terms of privacy and

16   safety.

17        And so, the Department of Education had to weigh

18   all those factors.  I want to be very, very clear here that

19   the proper standard of reviews are arbitrary and capricious

20   review.

21        So, to the extent that the plaintiffs don't agree

22   with the way in which the Department of Education weighed

23   those various factors, that's okay, because the Department

24   of Education need not persuade plaintiffs or the public or

25   the federal court of the way in which it weighed the

1    factors.  It simply needs to weigh them.

2            It needs to show that its decision-making process

3    was a reasoned decision-making process.  It doesn't need to

4    be persuasive in terms of the conclusion it reached.

5            And we maintain that that standard was clearly met

6    here.  The Department of Education considered the various

7    factors and reached the decision it did.

8            And then, the suspending clause.  Plaintiffs also

9    raise a few constitutional challenges.  They say that it

10   violates the suspending clause.  As we outlined in our

11   brief, Bostock held that the language of the statute is

12   unambiguous.

13           And for the same reasons that we believe 106.10

14   follows naturally and unambiguously from the reading of

15   Title IX, we believe the suspending clause is inapplicable

16   here.

17           Again, it was unambiguous.  Carroll ISD was on

18   notice of the fact that Title IX prohibits discrimination on

19   the basis of sex.  And if Bostock is correct, which we

20   maintain it is, that discrimination on the basis of sex or

21   because of sex also includes discrimination on the basis of

22   gender identity and sexual orientation.  If that's

23   unambiguous, then this also is unambiguous, and suspending

24   clause is therefore not invoked.

25           Plaintiffs also sort of sweep in an

1    anti-commandeering doctrine.  We maintain that plaintiff's

2    argument misunderstands the anti-commandeering doctrine.

3    They cite to Murphy for that proposition.

4         What Murphy was saying, and in Murphy, the

5    relevant federal statute was a statute that prohibited

6    states from repealing laws that ban illegal gambling.

7         What the Supreme Court said was that in cases

8    where the federal government feels that it is important for

9    the federal government to regulate, it must do the

10   regulating itself.  It can't dictate what state legislatures

11   will do.

12        And that was the Supreme Court's problem in

13   Murphy, was that the federal government was sort of

14   dictating the legislative process of the states.

15        That's not what's going on here.  The federal

16   government did the regulating itself.  So the

17   anti-commandeering doctrine is simply not applicable.

18        And then, the major question doctrine is also just

19   as inapplicable.  Again, the major question doctrine is

20   really set forth in very rare, rare instances where the

21   agency is doing something, like a major C change, that has

22   no basis in the statute.  And here, our position is, just

23   like Bostock said, this is a natural, straightforward

24   reading of the statute.

25        To the extent plaintiffs argue, well, no one would

1    have thought that this is what that language meant back when

2    it was enacted, that's the argument the dissenting opinion

3    made in Bostock; that opinion lost.

4            That the Court ultimately concluded that -- the

5    majority opinion in Bostock ultimately concluded that the

6    fact that no one would have thought that this would sweep in

7    this type of discrimination is irrelevant.

8            The language of the statute says what it says.  So

9    for those reasons, the major question doctrine is just as

10   inapplicable here as it was in Bostock.

11           From there, I will go into their challenge to the

12   hostile environment harassment.  So plaintiffs challenge the

13   definition of hostile environment harassment in 106.2.

14           I want to be clear that 106.2 has various

15   different definitions.  This is just one definition in that

16   provision that they challenge.

17           And they challenge it under the First Amendment

18   on, essentially, two separate grounds.  One is that they say

19   it doesn't comport with Davis.  And the other one is they

20   say it's overbroad and vague.

21           I will first address the Davis argument.  So the

22   Supreme Court in Davis was really setting the standard for a

23   private right of action for damages.  The majority opinion

24   wasn't really talking about the First Amendment at all,

25   actually.  The question was really, is there a private right

1    for damages?  That's what the discussion was.

2            The standard it outlined there, of course, it was

3    a higher bar than what would be required in the sort of

4    enforcement proceeding.

5            The goal of the enforcement proceeding is that

6    it's to grant educational access.  That's the goal.  It's

7    not liability for private damages.  And there it's also -- I

8    think what's particularly relevant in Davis is that it cited

9    to the 1997 sexual harassment guidance, which at the time

10   found that a Title IX violation -- a harassment in Title IX

11   amounts to anything that was sufficiently severe,

12   persistent, or persuasive.

13           Davis did not purport to overrule that guidance.

14   It sort of cited to it, which shows, at the very least, even

15   when we say it wasn't endorsing it, at the very least it

16   didn't seem to be -- it wasn't purporting to overrule it.

17   So that's their Davis argument.

18           They sort of challenge the standard because they

19   say it's extraterritorial.  That's really their challenge to

20   106.11, but the rule provides that a recipient is

21   responsible only for alleged discriminatory conduct over

22   which it exercises disciplinary authority or otherwise a

23   substantial control.

24           So this is really we are talking about speech and

25   debate tournaments that take place outside the school's sort

1    of physical lines.  In those contexts, sort of physical

2    parameters of the school, are arbitrary.  The school can't

3    say, well, it's a free-for-all for harassment because we're

4    off campus at a speech and debate tournament or we're off

5    campus for some athletic sports team.

6          So, in that regard, their challenge is really --

7    so the challenge fails on that regard alone, because again

8    we're talking about instances where the school has

9    substantial control that is substantially related to the

10   school activity.  That the school's not going to be

11   responsible for instances where it's outside the recipient's

12   control or activity all together.

13         And then, moving on to their sort of vagueness and

14   overbreadth concerns.  I want to start with vagueness.  The

15   standard actually provides various different factors that

16   have to be met in order for something to amount to hostile

17   environment harassment.

18         One, it's a totality of circumstances.  It has to

19   be subjectively and objectively offensive and has to be so

20   severe or pervasive that it limits or denies a person's

21   ability.

22         It then goes into various different factors with

23   the recognition that it's going to be a deeply intensive

24   factual inquiry.  The degree to which the conduct is going

25   to limit the access, the type and frequency, age, role, the

1    type of activity, the location of conduct, and various other

2    factors.

3            So the rule is very specific about the type of

4    things that are relevant.  It doesn't draw bright line

5    rules.  And rightly so, because harassment rules have always

6    been a very fact intensive inquiry, as Carroll ISD's own

7    harassment policy recognizes.

8            Carroll ISD's own policy defines harassment as

9    physical, verbal, or nonverbal conduct based on any basis

10   prohibited by law when the conduct is so severe, persistent,

11   or pervasive, and then it says that it affects the student's

12   ability to participate or benefit from.

13           And various different standards in Title IX that

14   use the same language of severe or pervasive -- or sorry,

15   Title VII -- have been upheld including the Supreme Court

16   opinion in Meritor Savings Bank, the EEOC case that we cite,

17   the Fifth Circuit itself has held that a single incident of

18   harassment can rise to a viable Title VII claim.  That's the

19   Woods opinion by the Fifth Circuit.

20           So standards that mirror the standard that the

21   Department of Education has promulgated have survived this

22   sort of overbreadth and vagueness concerns.

23           To the extent that plaintiffs relied heavily on

24   Speech First, we think that's inapplicable.  The standard in

25   Speech First, it included a wide range of verbal, physical,

1    and electronic expression.

2            It not only policed the speech of the particular

3    student, but it also sort of imposed an obligation to any

4    sort of conduct that's encouraging, condoning, or even

5    failing to intervene to stop another student.

6            And I mean, in Speech First, the standard in

7    Speech First was very, very different from this one.  The

8    one that the Department of Education promulgated sort of

9    mirrors the other standards in Title IX and race-based

10   context -- sorry, Title VII race-based context.

11           So it's also a totality of the circumstances

12   approach.  So their argument that it's going to lead to

13   First Amendment sort of chilling speech and whatnot.  I

14   mean, there has always been interaction between First

15   Amendment and harassment laws.  That's the nature of

16   harassment laws.

17           Of course, a teacher's classroom is not the public

18   square.  There will be some limitations, but the Department

19   of Education is very, very clear that this is not sort of a

20   green flag for recipients to start infringing on the rights

21   of their teachers or students on their First Amendment

22   rights.

23           The regulations actually don't touch 106.6(d),

24   which provides that nothing in the rule allows for the

25   recipients to take actions that would violate the First

1    Amendment.

2         And the rule also goes into great pains to

3    describe instances where there will be, there are concerns,

4    there are serious First Amendment concerns, then the

5    recipient must take other actions that are going to sort of

6    remedy the problem without infringing the First Amendment

7    rights.

8         For instance, in cases where there are some

9    harassments that a student feels truly interferes with their

10   educational right to education, that the school can provide

11   things like counseling and other activities that don't

12   require the school to really infringe on the First Amendment

13   right of the speaker.

14        And again, this is nothing new.  Harassment

15   standards have always interacted with the First Amendment

16   rights.  Really, plaintiff's problem is that it now includes

17   gender identity.  That that's what causes the problem.

18        And we don't think that's a legitimate basis to

19   raise a First Amendment concern.  Simply because it now

20   includes gender identity, harassing students based on sex

21   has always been prohibited.

22        So it's not clear as to why the gender identity

23   aspect would all of a sudden raise a First Amendment concern

24   in and of itself.  There has to be an independent reason as

25   to why there is a First Amendment concern.  And we don't

1    think that's present here.

2              There is a fourth provision that I will speak to

3    briefly.  I don't believe plaintiff brought it up during

4    oral argument, but it's provision 106.45(b)(5), which goes

5    to the grievance proceeding.  Plaintiffs in their briefing

6    argue that this provision amounts to a sort of gag order.

7    That's a First Amendment violation.

8              That provision simply provides that a recipient

9    must take reasonable steps to protect the parties' and

10   witnesses' privacy during the pendency of the recipient's

11   grievance procedures.

12             The idea there is that a recipient must take these

13   sort of reasonable steps to ensure that the fairness of the

14   grievance proceeding is not compromised.  But again, the

15   Department of Education goes into great pains saying those

16   steps cannot infringe on the First Amendment rights.

17             At various different points, it says that, "Any

18   sort of steps that infringe on constitutional rights or

19   otherwise undermine due process are inherently unreasonable

20   and don't fall within the scope of this provision."

21             It then it goes on to say that, "This does not

22   extend beyond the conclusion of the grievance proceedings."

23   So the point is really during the pendency of the grievance

24   proceedings.

25             And it then gives examples as to well -- to the

```
1    extent that they're going to put any limitations on

2    discussing the allegations of the investigation, to the

3    media or social media, schools can limit that, so long as it

4    doesn't violate the First Amendment.

5              And again, there's a recognition by the Department

6    of Education that this is going to be very fact intensive.

7    This is not a place to draw bright line rules.  It says the

8    limitation, so long as it's a balancing of ensuring that

9    you're not -- that those limitations are not infringing on

10   First Amendment rights.

11             They're also not infringing on due process rights.

12   For instance, if discussing the proceedings is somehow

13   necessary for gathering of evidence, then the school can't

14   prohibit that.

15             But again, to the extent that it's not infringing

16   on those rights, and there're reasonable steps in order to

17   protect the privacy, then those reasonable steps need to be

18   taken.

19             So we maintain that it's not -- it doesn't rise to

20   the level of such categorical prior restraint that would

21   amount to a gag order or violate the First Amendment, which

22   it expressly says it does not.

23             So those were the sort of substantive issues.

24   Unless the Court has any questions, I would like to go into

25   scope of relief.
```

```
1              So there are two aspects to scope of relief here.

2    One is severability.  Plaintiffs, in their original motion,

3    actually only request that the specific provisions of the

4    challenge fall.  In the reply brief, they sort of switch

5    gears, and they say, well, actually the whole rule should

6    fall.

7              So as an initial matter, we think, to the extent

8    that now they're arguing the entire rule should fall, that

9    argument has been forfeited.  They raised it for the first

10   time in the reply brief.  It's not in their motion.

11             Even on the substantive ground itself, we think

12   plaintiffs, with all due respect, were right the first time

13   around.  The rule provides for a variety of different

14   things.  And there's no reason why the other aspects, even

15   if the Court disagrees with us on these particular

16   provisions that we discussed here today, there's no reason

17   why the provision that goes to the appointment of the Title

18   IX coordinators, provisions that provide for access to

19   lactation spaces, provisions that speak to retaliation, or

20   provisions that speak to nondiscrimination and recordkeeping

21   obligations, there's really no reason why those provisions

22   would fall.

23             I mean, to the extent the Court disagrees with the

24   government's interpretation on the basis of sex in Title IX,

25   there's no reason why the rule's access to lactation spaces
```

1    should fall.

2          As the Supreme Court has said, the Court should

3    provide the relief that is no more burdensome than

4    necessary.  And there's a Fifth Circuit opinion,

5    Southwestern Electric Power vs. EPA, that really said that

6    relief should be limited to the unlawful provision of the

7    rule, if it can be severed.  Here they can be severed.

8          The plaintiffs have really provided no reason as

9    to why the recordkeeping, for instance, provision can't be

10   severed from the provisions that they challenge here today,

11   or the provision that goes to the appointment of Title IX

12   coordinators can't be severed from 106.31(a)(2), for

13   instance.  And because of that reason, we don't think it

14   would be appropriate for the whole rule to fall.

15         And then, the second aspect of the scope of relief

16   is the nationwide injunction.  Plaintiffs here have

17   requested a nationwide injunction.  I would like to first

18   start off by noting that the three courts that have ruled on

19   this issue thus far, none of them have issued a nationwide

20   injunction.  That is probably the only aspect of those

21   opinions that the government agrees with, that a nationwide

22   injunction is inappropriate.

23         And it is particularly inappropriate here when

24   it's just Carroll ISD and those cases of various different

25   parties and states.  And even there, the court didn't think

 1    that a nationwide injunction was appropriate.

 2              Here, Carroll ISD's argument for a nationwide

 3    injunction is based on the fact that there will be students

 4    who are going to travel outside of Carroll ISD for speaking

 5    at debates and tournaments or whatnot, and there they're

 6    going to be subject to the rule.  And therefore, the Court

 7    should issue a nationwide injunction.

 8              They identify eight states that Carroll ISD

 9    students are going to travel to.  Two of those states,

10    California and Oregon, already have rules that mirror the

11    rule here today.  And then, the two other states, Kentucky

12    and Ohio, the rule has already been enjoined.

13              So the four states remaining, one of them is

14    Texas, Texas itself, as this Court is aware, has sued the

15    government for this rule.  And that issue is before a

16    different court in this district.  And we think it would be

17    appropriate for that court to decide that question with

18    respect to Texas.

19              So we're really left with three states.

20    Plaintiff's basis for seeking a nationwide injunction is

21    that there will be a handful of students at Carroll ISD who

22    may travel to Georgia, Florida, and Iowa.  And while there

23    on their temporary stay, they may be subject to the rule.

24              Therefore, this Court should issue a nationwide

25    injunction enjoining the rule in its entirety in order to

```
 1    provide that relief.  We think that's plainly too

 2    burdensome.  And it would be a -- it would not comport with

 3    the equity traditions of the court providing relief only to

 4    the extent that it's necessary.

 5              So I think that's all I had to say, if the Court

 6    has any questions?

 7              THE COURT:  Yes.  Let me just ask you a few

 8    questions.

 9              MS. GHEIBI:  Sure.

10              THE COURT:  If the Fifth Circuit determines that

11    the Bostock case does not apply to Title IX, would that

12    undermine this basis for implementing the rule that you-all

13    are implementing?

14              MS. GHEIBI:  So if Bostock falls --

15              THE COURT:  No, not falls.  Does not apply.

16              MS. GHEIBI:  Does not apply, so -- correct.  If

17    Bostock does not apply to Title IX, if the Fifth Circuit

18    concludes, we think there are various different aspects of

19    the rule that would stand.  As I explained, there are

20    various rules that have nothing to do with Bostock--

21              THE COURT:  No.  No.  No, I'm sorry.  As it

22    relates to the rules that they're challenging.

23              MS. GHEIBI:  Okay.  So we think the harassment

24    provision would stand because, again, that provision only

25    sort of incorporates 106.1 by reference.
```

```
 1              So to the extent that the Fifth Circuit concludes

 2    that it doesn't include gender identity, it only includes,

 3    you know, biological sex or whatnot, the harassment standard

 4    would still apply.  It would just apply to biological.  It

 5    just wouldn't apply to gender identity.  So harassment would

 6    survive.

 7              The provision they challenge as a gag order,

 8    106.45(b)(5), would survive, I think the aspect of 106.32(a)

 9    too.  So I think, you know, 106.10 would fall, but

10    106.32(a), aspects of it could survive.

11              That last sentence that essentially says,

12    "excluding students on the basis of gender identity from

13    activities would amount to de minimis harm," that aspect of

14    it would likely also fall.

15              But the rest of it that, essentially, it's just an

16    articulation of the fact that sex separation is okay, so

17    long as it doesn't cause harm.  There's no reason why that

18    aspect should fall.  So that's how I would outline that.

19              THE COURT:  Did I cut you off?  I'm sorry.

20              MS. GHEIBI:  No.  No.  And then, of course, the

21    other provisions that plaintiffs don't challenge at all, all

22    of those would survive.  So I think to sum up, clarify,

23    sorry if I wasn't clear -- I went through various different

24    routes there -- to clarify, if the Fifth Circuit concludes

25    that Bostock does not apply to Title IX, 106.10 would fall.
```

1          And the aspect of 106.31(a)(2), that final

2   sentence with respect to gender identity, would fall.  But

3   everything else would stay as -- because it would be just as

4   applicable to biological sex-based discrimination.

5          THE COURT:  And the basis for the new proposed

6   rule is primarily an evaluation of the reasoning from the

7   Supreme Court in Bostock and how, in the Department's view,

8   it should apply to Title IX?

9          MS. GHEIBI:  So I think the basis for 106.10 is

10  the reasoning in Bostock -- is the straightforward reasoning

11  in Bostock.

12          Now, query as to whether or not, you know, sort of

13  that that's the sort of superstar of the rule.  I mean, I

14  can't answer that but I think --

15          THE COURT:  Let me stop you there.  Would you-all

16  have made these changes but for the change in 106.10?

17          MS. GHEIBI:  I'm not sure I can answer --

18          THE COURT:  That answers your query, I would

19  think?

20          MS. GHEIBI:  I'm not sure I can answer that

21  question.  I think, again, there are various different

22  aspects of the rule that the Department of Education has

23  been working on with respect to the grievance proceeding.

24  Like I said, there are various different aspects, like

25  lactation spaces and providing for leave and whatnot.

```
 1              Again, the Department of Education's work here was

 2     very holistic.  And it was meant to encompass a wide variety

 3     of things.  I don't want to downplay the importance of

 4     Bostock.  Of course, Bostock was one of the driving forces

 5     of the rule.

 6              The Department of Education believes that Bostock

 7     is entirely applicable to Title IX.  And that's why it sort

 8     of promulgated 106.10, and in part, 106.31(a)(2), as sort of

 9     an explanation of how Bostock's reasoning applies in 106.10

10     would then apply to sex separation.

11              But would I say that, had it not been for Bostock,

12     that other aspects of the rule that have nothing to do with

13     the gender identity would not have been promulgated.  I

14     don't think I can answer that question in the affirmative.

15              THE COURT:  And so, explain to me then the

16     Department's view that Bostock naturally applies to Title

17     IX, given that Bostock refused on its own to apply that.

18              And one of the cases you cite, Jackson vs.

19     Birmingham, says, "Title VII, however, is a vastly different

20     statute from Title IX.  The comparison the school board

21     urges us to draw is therefore of limited use."

22              You mentioned, as did your colleagues here, Davis

23     vs. Monroe, Monroe Board of Education said the same thing.

24     You talk about the Fifth Circuit's Lucchese decision, but

25     the Rosa decision says the same thing.  They deal with two
```

```
1    different animals.

2             MS. GHEIBI:  Right.

3             THE COURT:  And it's not appropriate to apply.  So

4    explain that to me.

5             MS. GHEIBI:  Right.  Thank you for that question,

6    Your Honor.  I think the question really here is context.

7    This is not to say that everything, every interpretation of

8    Title VII is going to be just as applicable to every

9    interpretation of Title IX.

10             The question really is context, and what was the

11    basis for the Court's interpretation of Title VII, and

12    whether or not that reasoning is applicable?

13             Bostock very expressly said, we are not making a

14    decision with respect to Title IX, and for good reason.  As

15    the Supreme Court has said, it is not in the business of

16    providing advisory opinions.  And that's exactly what it was

17    refusing to do there.  Title IX was not before the Court at

18    the time.  So it didn't reach that issue.

19             But it doesn't mean that the reasoning is not

20    applicable.  As we outline in our brief, the differences

21    between Title VII and Title IX, and there are differences,

22    the courts have recognized those differences, but the

23    differences here are not material to this particular

24    question.

25             Because the question really is, the interpretation
```

 1    of because of sex versus on the basis of sex.  The only

 2    distinction there is that one says because of, the other one

 3    says, on the basis of.  That is a variation, yes, but it's

 4    not meaningful.  So it's not relevant to the statutory

 5    interpretation question.

 6           The reason why we know it's not meaningful is

 7    because the Supreme Court has used those phrases

 8    interchangeably, including in Bostock itself.  And

 9    plaintiffs don't identify a reason as to why those two

10    phrases would be meaningful.  I can't think of a reason why

11    on the basis of versus because of would mean anything

12    different.

13           So the question is also whether or not the

14    variation is meaningful.  And then whether or not that

15    meaningful variation is relevant to the statutory question

16    before the Court.

17           THE COURT:  And I guess my question to you on that

18    is, if the Supreme Court -- the U.S. Supreme Court has said

19    that the comparison is of limited use, how do you square

20    that with what you just said?

21           The Supreme Court has said, not me, not the Fifth

22    Circuit, the Supreme Court has said this comparison, and

23    it's a case you relied on, Jackson vs. Birmingham, the

24    comparison is of limited use.

25           MS. GHEIBI:  Again, the question is whether or not

 1    the comparison of on the basis of versus because of sex is

 2    of limited use.  The question again is always whether or not

 3    at that particular -- the statutory question.

 4            Again, just applying Bostock on its own, nowhere

 5    in Bostock did the court identify an aspect of Title VII in

 6    outlining its reasoning that's not present in Title IX.  So

 7    it's unclear as to why the reasoning wouldn't apply.

 8            It wasn't like the court reasoned, well, Title VII

 9    also references race or national origin, and because it

10    references race or national origin that tells us something

11    about the meaning of sex, that would be relevant to the

12    inquiry.

13            If the Court had done that, yes, I would agree

14    that's a meaningful variation, that it's not necessarily

15    just as applicable.  Or if the Court had said, actually,

16    because of has such a unique meaning that it can't be placed

17    anywhere else, that it's actually so materially different on

18    the basis of, then, yes, I would agree that the reasoning

19    wouldn't be as applicable, but there was no meaningful

20    variation.  There was no basis on which the court relied on

21    in Bostock that isn't just as present here.

22            THE COURT:  So you believe then the canon of

23    construction that says, when Congress uses different terms,

24    Congress means different things, does not apply in this

25    case?

```
 1              MS. GHEIBI:  That's exactly right.  That's exactly

 2   right.  The canon of meaningful variation, the key to that

 3   canon is that the variation must, in fact, be meaningful.

 4   That, if the variation is not meaningful, then that canon is

 5   not relevant.

 6              THE COURT:  And then, you also believe that the

 7   Supreme Court's instruction to lower courts that language of

 8   an opinion is not to be parsed like courts parse language of

 9   a statute, wouldn't apply in this circumstance?

10              The National Pork Producers, which is at 598 U.S.

11   573, says, "We don't parse opinions in a way that we parse

12   statutory language."

13              And so, it's improper to start parsing a Supreme

14   Court opinion and applying that language to different

15   statutory terms to say that they mean the same thing.

16              You have to look at the language of the statute,

17   determine where the language of the statute -- determine

18   what it means.  And you can't say because we've written,

19   generally -- the Supreme Court is saying this, not me.

20              MS. GHEIBI:  That's right.

21              THE COURT:  The Supreme Court is saying, because

22   we've written and used these words when describing a case

23   presented to us, you can't then take it and say that that's

24   what we were saying over here.

25              So it sounds to me like you're saying that this
```

```
1    canon of construction about different terms doesn't apply

2    because it's not meaningful, but it's not meaningful because

3    the Supreme Court has written describing some other case and

4    some other statutory term in a way that they use words that

5    are also used in a different statute.  And so, therefore,

6    we're bound to apply it in that case.  You're asking me to

7    disregard two canons in this regard?

8            MS. GHEIBI:  I think I understand Your Honor's

9    question, which is essentially going like, does the argument

10   as to meaningful variation incorporate the Bostock

11   reasoning?

12           And I think my answer --

13           THE COURT:  Well, I'm sorry.

14           MS. GHEIBI:  Yeah.

15           THE COURT:  What you're saying is --

16           MS. GHEIBI:  Yes.

17           THE COURT:  -- as I understand your argument, what

18   you're saying is Bostock reviewed a statute that said,

19   discrimination is unlawful if it is because of sex.

20           And when Bostock wrote when describing this, they

21   said on the basis of sex, it's illegal, whatever they said,

22   because they used the phrase on the basis of when describing

23   that their conclusion of that statutory term, they used on

24   the basis of, we now have to say that Bostock's reasoning

25   applies to Title IX, because Title IX's statutory text is on
```

1   the basis of sex.

2          And all I'm saying is that there certainly is a

3   canon of construction that says, when Congress uses

4   different terms, those terms mean something different.  And

5   I'm saying that the Supreme Court has also instructed that

6   you can't parse their statute in a way that binds the

7   interpretation of other statutory text just because, when

8   they're interpreting a case before them, they use broad

9   language to explain their justification.  That's what I'm

10  saying.

11         MS. GHEIBI:  So, in response to both of those

12  arguments, I'll start with the second, the second question

13  as to the Court saying that you don't parse statutes in that

14  way.  I think what's key here is looking at how the Court

15  has interpreted certain language.  And the Supreme Court

16  does this itself.

17         It says, when it's trying to define phrases like,

18  in relation to, which Congress uses a lot, in relation to,

19  in connection with, it will look back on its previous

20  Supreme Court decisions as to how that phrase was

21  interpreted as a sort of guidance.

22         I think that the same is what the Department of

23  Education did here.  The Department of Education at no point

24  has said Bostock is binding.  The judgment of Bostock does

25  not mandate this.  The reasoning of Bostock does.

```
1             And that's exactly what the Department of

2    Education was doing here.  It looked at Bostock, and said, I

3    don't see a reason why, based on the reasoning in Bostock,

4    that the same reasoning wouldn't follow here.

5             If the Supreme Court has said because of sex

6    includes discrimination because of transgender, sexual

7    orientation, I don't see a reason as to why it wouldn't be

8    just as applicable as on the basis of sex.

9             So it's really a question of using the

10   interpretative analysis as guidance.  Which, again, is a

11   thing that the Supreme Court does itself and lower courts do

12   using the Supreme Court's analysis all the time as a sort of

13   guidance.

14            And that brings me to the meaningful variation

15   canon.  Yes, the Supreme Court has said that, when there are

16   variations, that is a sign that Congress meant something

17   differently.

18            But again, the variation has to be meaningful.  I

19   think the inquiry really goes, the question of first

20   principle here is whether or not on the basis of and because

21   of, there's an independent reason as to why those two would

22   be distinct.

23            If there is a distinction between the two, then I

24   agree the sort of logical line of reasoning here would fall,

25   but there isn't.  The fact that they're different in and of
```

1    itself does not automatically trigger the canon of

2    construction of meaningful variation, and then also trigger

3    the other sort of statutory rule of using Supreme Court's

4    interpretation of different phrases as a sort of guidance.

5        Again, this all goes back to whether or not the

6    distinctions in the language that are relevant here are

7    actually meaningful.  If they're not meaningful, then

8    there's no reason as to why the reasoning wouldn't be just

9    as applicable.

10        THE COURT:  Okay.  Let me ask you this.  So the

11   Department agrees that the definition of the term "sex" in

12   Title IX is a binary definition, there are male and female

13   students, for instance?

14        MS. GHEIBI:  The Department of Education has never

15   defined "sex."  But for purposes of this argument, just like

16   the Bostock court assumed there, we can assume that sex

17   refers to biological sex, yes.

18        THE COURT:  Is it appropriate for the

19   Department -- well, let me ask you, is it appropriate for

20   the Department to issue rules and regulations about what sex

21   means, if it doesn't define sex?

22        MS. GHEIBI:  Is it appropriate for?  Well, the

23   Department of Education doesn't define sex.  Are you

24   referring to --

25        THE COURT:  I'm just asking about your authority.

```
 1   You are saying that under Title IX, sex means that people

 2   cannot discriminate on the basis of biological sex and

 3   gender identity and sexual orientation and all these things.

 4           Is the Department able to promulgate those rules

 5   and regulations if it won't say what the definition of sex

 6   is?

 7           Do you have the authority to do that?

 8           MS. GHEIBI:  I think the regulation can be read as

 9   assuming that sex means biological sex.

10           THE COURT:  I've read your brief, and I understand

11   that's exactly what you said in that.  I'm just asking you a

12   more fundamental question.  And that is, are you authorized

13   to do that if you are unable to define the statutory term?

14           The statutory term is of paramount importance.

15   You would agree with that?

16           MS. GHEIBI:  Uh-huh.  Yes.

17           THE COURT:  Correct?

18           MS. GHEIBI:  Yes.

19           THE COURT:  Okay.  And if you won't define it, are

20   you able to then add terms to what you won't define?

21           MS. GHEIBI:  I think there's no -- I would say

22   there's no obligation to define the word "sex" in order to

23   then identify -- in order to then explain or clarify that

24   what the discrimination on the basis of sex means by just

25   assuming -- by just applying the reasoning in Bostock.
```

```
 1              So by applying the reasoning in Bostock, there was

 2     really no need for the Department of Education to define

 3     sex.  And the question as to whether or not the Department

 4     of Education is authorized to define the scope of -- or

 5     sorry, excuse me, clarify the scope of the statute based on

 6     sort of following the reasoning of the Supreme Court's

 7     opinion, that authority to define the scope of the statute

 8     does not rise or fall based on the definition of any

 9     particular term though.

10              THE COURT:  And so, you would be able -- I'm

11     sorry.  I don't follow you.

12              If you can't define it, is that because you

13     believe the term "sex" is ambiguous?  Let me ask you that.

14              Does the Department believe it is ambiguous?

15              MS. GHEIBI:  I can't answer that question as to

16     whether or not the Department believes that the term "sex"

17     is ambiguous.  What I can say is that it wasn't -- that that

18     question was not relevant to the regulation.

19              I want to step back here for a second and sort of

20     explain what I think is the important inquiry here.

21              THE COURT:  No.  I understand you don't believe it

22     is important here.  I understand that the Department has

23     assumed it to be true.

24              I'm just trying to understand how it is that you

25     are operating based upon an assumption when Congress has
```

```
 1   specified a particular term, and the Department is

 2   refusing -- it sounds like the Department is refusing to

 3   explain what the Department believes the term to mean.

 4            MS. GHEIBI:  So and I think that the reasoning

 5   behind that is that the important inquiry here is, what does

 6   the phrase encompass?

 7            The phrase "discrimination on the basis of sex."

 8   What does that encompass?

 9            THE COURT:  Right.

10            MS. GHEIBI:  The Department of Education concluded

11   that it can clarify the scope of on the basis of sex without

12   defining sex the same way Bostock did.

13            Now, because it was unnecessary to define sex, the

14   Department of Education didn't go out of its way to define a

15   term that it didn't want -- that it didn't need to define.

16            I think, if anything, I think plaintiffs would be

17   standing here saying that the Department of Education is

18   exceeding its authority by defining a term.

19            THE COURT:  Depends on how they define it.

20            MS. GHEIBI:  I'm sorry?

21            THE COURT:  I would think that would depend on how

22   the Department would define it, don't you think?

23            And you're just assuming that the Department would

24   define it on a base level to include gender identity and

25   sexual orientation?
```

```
1              MS. GHEIBI:  I'm saying that's what plaintiff's

2    argument is.  That that's what the Department did.

3              THE COURT:  Right.

4              MS. GHEIBI:  That would be very different, Your

5    Honor.  It would be very different if the Department were to

6    define sex as including gender identity, then it would

7    trigger all the sort of counterarguments that Your Honor

8    outlined in Texas vs. Cardona, plaintiffs outlined, and the

9    dissent in Bostock outlined.

10             They would say that, at the time this is not what

11   sex meant.  And it would trigger sort of textualist

12   arguments that were outlined by the dissenting opinion in

13   Bostock.  That's not what the majority did here.

14             I think what's key is that, what really shows that

15   this is not a redefinition of sex, is the fact that the

16   arguments are just as applicable if we assume sex is binary

17   and biological.

18             If we assume sex is binary and biological, then

19   discrimination on the basis of sex would mean exactly what

20   the Department has outlined -- the Department of Education

21   has outlined.

22             And if anything shows that the definition of sex

23   is irrelevant is that on its own.  The fact that it's just

24   as applicable.  So it wasn't necessary and the Department

25   didn't do it.
```

```
 1                 THE COURT:  I guess I'm wondering, did the

 2     Department agree, in the Tennessee litigation, didn't they

 3     agree that the definition of sex is binary?

 4                 MS. GHEIBI:  In the Tennessee regulation

 5     litigation?

 6                 The Department in that Tennessee litigation said

 7     that, for purposes of that case, the Court can assume that

 8     sex is binary.

 9                 THE COURT:  All right.

10                 MS. GHEIBI:  But, yeah.

11                 THE COURT:  Just footnote one of it says that both

12     sides agree that there are two sexes.  And you're saying

13     that that footnote is wrong?

14                 MS. GHEIBI:  What I'm saying is during argument

15     what the government said is that we are assuming, for

16     purposes of this argument, that sex is binary, and sex is

17     biological and binary.

18                 We are not assuming that the Department of

19     Education has defined sex to be binary or biological.

20     Because again, it wasn't relevant.

21                 So I think that that footnote may be phrased

22     differently than I would have phrased it.  I was there

23     during argument.  The government's position was that, for

24     purposes of this argument, the Court can assume the same way

25     the Court did in Bostock.
```

1          The Court in Bostock saw no reason to define sex

2    as binary or biological.  And it saw no reason to redefine

3    sex as including gender identity.  Again, it's the same line

4    of reasoning.

5          Because there's no material way to distinguish the

6    two, the Department of Education followed that logic.  It

7    didn't define sex, because it didn't need to.  It didn't

8    regulate more than it needed to.  It's exactly what the

9    courts have asked federal agencies to do:  Regulate what you

10   must, but don't regulate more than that.

11         THE COURT:  The gender identity is, as I

12   understand the definition, it is a subjective determination

13   by the student or by the participant?  A deep sense of

14   theirself or whatever it is.

15         MS. GHEIBI:  Yes.  I mean, the regulations don't

16   define gender identity, but they go into gender identity is

17   really a student's sort of sense of which gender they

18   identify with that could be independent of their biological

19   sex.

20         I want to be clear that the regulations are not --

21   it's not a sort of free-for-all that anybody can say, today

22   I feel like a girl, tomorrow I feel like a boy.  The

23   regulations do say that the schools can provide some sort of

24   documentation from the parents or counselors that this is a

25   genuinely held belief of their gender identity, yes.

1           THE COURT:  Would a student be able to change

2    their gender identity over time?

3           MS. GHEIBI:  If at one point they felt that they

4    wanted to -- that they somehow began identifying with a

5    different gender, then, yes, that would be their gender

6    identity, yes.

7           THE COURT:  And if a student changed their

8    identity to other things, race, national origin, species,

9    would they be able to do that as well?

10          MS. GHEIBI:  Well, that isn't before this Court.

11   With respect to gender identity in particular, I want to --

12   there is sort of overwhelming evidence that there are people

13   that identify with a different gender than their biological

14   sex.

15          That's not really present with respect to species

16   or national origin or whatnot, sort of like outliers in

17   other contexts are not particularly relevant in this

18   context.  Well, since human species were documented, people

19   would identify as a gender that didn't align with their

20   biological sex.

21          THE COURT:  Why is someone who identifies as a

22   different race, why does the Department consider that an

23   outlier?

24          MS. GHEIBI:  If someone identifies as a different

25   race?

```
 1                    THE COURT:  Yes.

 2                    MS. GHEIBI:  Again, I want to clarify --

 3                    THE COURT:  I'm just asking why you consider it an

 4     outlier?  You're the one who said it was an outlier.  Why is

 5     it an outlier?

 6                    MS. GHEIBI:  There hasn't really been --

 7                    THE COURT:  What do you mean by "an outlier"?

 8                    MS. GHEIBI:  I guess what I was simply trying to

 9     say is I think the examples of someone identifying as a

10     different race or national origin or a different species,

11     for instance, someone identifying as a cat or a dog, I think

12     those are extremely rare instances where people would

13     identify that way.

14                    They're not really sort of a mass group of people

15     that we would really even sort of try to remedy or engage

16     in.  I think the question of gender identity is very, very

17     different.

18                    THE COURT:  What are the numbers for gender

19     identity?

20                    MS. GHEIBI:  I'm not sure of the number.  I don't

21     know.

22                    THE COURT:  What makes it not an outlier then?

23                    Like how do you characterize people who identify

24     as a different race as an outlier, but people who identify

25     as a different sex are not an outlier?
```

1      What's the numbers that help me understand that

2  argument?

3      MS. GHEIBI:  Well, I think that the question

4  really is, when it comes to the least regulation, where the

5  government sort of steps in and regulates, the question

6  really is, is there sort of a material number of people who

7  are facing this harm that the government needs to sort of

8  roll up its sleeve and begin to regulate.

9      And as the government sort of reviewed the

10  evidence here, there are many students -- I mean, I don't

11  have the numbers for you, but I think -- it's always a

12  question of is it affecting a material number of people or,

13  like, items, products, such that the government decides to

14  regulate it, right?  That's always the question.

15      The federal government doesn't impose a 200-page

16  rule based on one person in some state or 10 people in a

17  different school district.  I mean, this had to rise to a

18  certain level.  The government --

19      The Department of Education was reviewing

20  testimonial evidence, witness interviews, medical journals

21  and whatnot.  There was a sort of material number, such that

22  there was a sufficient harm, where the Department of

23  Education felt the need to sort of engage and regulate.

24      Whereas, students who identify as cats, I'm not

25  sure how many students in this country would identify as

 1    cats such that we would even engage in a discussion as to

 2    whether or not they would be discriminated against.  So I'm

 3    not sure if those analogies are particularly relevant.

 4              THE COURT:  Well, people do identify as different

 5    races and species, of course.

 6              And so, if it's not reached a certain threshold

 7    level as transgender students have, what would be that level

 8    for them to be able to get the Department's attention?

 9              MS. GHEIBI:  Again, I don't think that that

10    question is really before the Court.  The inquiry as to what

11    is the threshold as to whether --

12              THE COURT:  What makes it material?

13              I used the word "threshold."  You used the word

14    "material."

15              What makes it material, is my question?

16              MS. GHEIBI:  I think that that question really

17    goes into why the Department of Education chooses to

18    regulate in the first place, right?

19              Does it see the harm as sufficient enough such

20    that it chooses to regulate?  That is a question left to the

21    discretion of the Department of Education.  That's quite

22    literally its job to determine, am I going to regulate in

23    this area or not?

24              THE COURT:  To determine it in a way that's not

25    arbitrary.

1          MS. GHEIBI:  That's exactly right.  Sorry, I

2     didn't mean to cut you off.  Go ahead.

3          THE COURT:  Go ahead.

4          MS. GHEIBI:  Yeah.  To regulate in a way that's

5     not arbitrary.  That's exactly right.

6          THE COURT:  All I'm asking you is, how do they

7     come about this so that we know they haven't done it in an

8     arbitrary fashion?

9          MS. GHEIBI:  Sure.  The Department of Education on

10    pincite, I'm looking at the preamble here, 33819 starts to

11    sort of go into discussion as to why it felt the need to

12    start regulating.

13          It talked about that the different federal courts

14    that have found excluding transgender students from

15    sex-separate educational programs have caused a significant

16    harm on the student's mental and overall health.

17          It talks about the studies that have shown that

18    allowing students to partake in activities consistent with

19    their gender identity is critical to their health and

20    well-being and so on and so forth.

21          So it did look into the type of evidence.  And it

22    determined that -- now, again, I can't give you a number as

23    to how many students, but it was getting -- the Department

24    of Education was clearly getting -- you know, whether it was

25    court opinions -- I mean, on page 33820, it goes through a

1    litany of court cases where this was clearly becoming an

2    issue.

3            This was an issue that are percolating.  Students

4    were identifying or sort of voicing the fact that they're

5    identifying with a gender that doesn't align with their

6    biological sex.  And the Department of Education then, after

7    Bostock, it sort of went into the regulation itself.

8            THE COURT:  Okay.  And you've got me off my

9    outline here, but in one of the footnotes in the discussion

10   of the comments, you talk about the studies that you just

11   mentioned, and you cite to two studies, and then you cite to

12   an AMA support, which you included the hyperlink.

13           So I looked at the hyperlink and the hyperlink was

14   just a press release from the AMA as to some amicus brief

15   that they had filed.  I wasn't able to pull the two studies

16   that the rule or the discussion of the rule cites.

17           So, in those studies, you're saying that those

18   studies that talk about the harm to transgender people,

19   since I couldn't read them, couldn't get to them, or don't

20   know how to get to them, my question to you is, did those

21   studies talk about the harm to students who feel like their

22   privacy is invaded?

23           They have included a couple of affidavits talking

24   about the harm to biological -- to students who go into

25   these private areas, showers, really, showers and bathrooms,

```
 1   and they sense and feel real harm.  Do those studies address
 2   those students?
 3          MS. GHEIBI:  Now, I'm not sure if those particular
 4   studies address those students.  But what I can tell you is
 5   that the Department of Education did.  The Department of
 6   Education considered those comments.  This idea that
 7   cisgender students that are sort of having to share
 8   bathrooms and locker rooms with transgender students are
 9   voicing these concerns.
10          And the Department ultimately concluded that there
11   isn't a substantial harm.  That there is no real safety harm
12   by just the mere presence of transgender students.
13          And it cited to a brief that was, that sort of
14   echoes the brief, the Amicus brief that was filed here,
15   essentially saying that these sort of disruptions of
16   students posing as transgender in order to harass other
17   students, there's really no basis for that.
18          Again, to the extent that there are fears or sort
19   of discomfort that students are going to feel uncomfortable
20   because there will be transgender students, as opposed to
21   safety concerns, so the fear that there will be safety
22   concerns or privacy concerns is unfounded.
23          The Department of Education looked at the evidence
24   and said there is no evidence showing that transgender
25   students are more likely to sexually assault or sexually
```

1    harass the other students.  They're not any more likely to

2    violate the privacy by peeking under the door of a bathroom

3    stall for instance.

4            The question as to comfort level, which is what

5    plaintiffs are arguing here, that students feel

6    uncomfortable over the fact that there will be transgender

7    students.  Those are things that the Department of Education

8    considered.  That was one of the factors that they

9    considered and had to.

10           And then, it also considered the sort of privacy

11   and safety issues to transgender students.  Who, if somebody

12   identifies as a girl and is being forced to use the boys'

13   bathroom, they have serious harm, safety concerns, privacy

14   concerns, and whatnot.

15           And it had to weigh these factors among other

16   factors.  I want to be very clear.  The standard of review

17   here is arbitrary and capricious.  The fact that Carroll ISD

18   does not like the way in which the Department of Education

19   weighed the different factors.  It doesn't agree.  Like,

20   Carroll ISD would have weighed them differently, clearly.

21   It's not up to Carroll ISD.  It's up to the Department of

22   Education.

23           All the Department of Education had to do was

24   provide a reasoned decision-making that said this is how I

25   chose to weigh it.  I weighed the relevant factors.  I came

1    up with the conclusion I did.  It doesn't need to persuade

2    the plaintiff.

3            THE COURT:  Thank you.

4            And so, my question to you though was, the

5    Department is relying on the psychological studies that say

6    it is harmful to require a student to the use the bathroom

7    of his or her sex, if they identify as the sex of another

8    one?

9            That it's harmful --

10           MS. GHEIBI:  Yes.

11           THE COURT:  -- for them to do so?

12           And my question to you is, do these studies

13   discuss the harm, the psychological harm for elementary

14   school girls or middle school girls having to shower with

15   someone of a different sex?

16           The psychological harm.  Not that they're going to

17   be raped or peeked at, but the psychological harm.  Do those

18   studies address that?

19           MS. GHEIBI:  Again, I don't know.  I can't answer

20   that.

21           THE COURT:  So let me stop you there.

22           MS. GHEIBI:  Okay.

23           THE COURT:  So if you don't know that, then what

24   evidence did the Department rely on to assure itself that

25   girls, let's say in this example, aren't psychologically

1    harmed from having their unclothed body viewed by a person

2    of the opposite sex?

3            MS. GHEIBI:  So the fact that the studies didn't

4    consider them doesn't mean that the agency's decision-making

5    wasn't relevant.

6            THE COURT:  Hold on.  Hold on.

7            MS. GHEIBI:  As long as the agency considered

8    them.

9            THE COURT:  Because you told me a moment ago that

10   these studies from AMA, Ph.Ds, whatever they are, have

11   opined, and the Department relied on this, that it causes

12   harm to require a student to use the shower and the bathroom

13   of its biological sex, if that student identifies as another

14   sex.  Okay?  Is that right or not right?

15           MS. GHEIBI:  Yes.

16           THE COURT:  That's what the Department is relying

17   on --

18           MS. GHEIBI:  Yes.

19           THE COURT:  -- to say that it is harmful.  It's

20   more than de minimis harm for this to occur.

21           MS. GHEIBI:  Yes.

22           THE COURT:  And you're saying that the Department

23   concluded that there was no psychological harm for a student

24   to have their unclothed body in middle school, elementary

25   school, high school, to be viewed by a student of the

```
1   opposite biological sex?

2           All I'm asking you is, what authority are you

3   relying on?

4           What professional authority is the Department

5   relying on to make that conclusion, right?

6           In other words, if the Department simply dismissed

7   that without relying on any authority, would it then have

8   acted arbitrary and capricious?

9           MS. GHEIBI:  So several points, Your Honor.  One,

10  at this moment, I'm looking at the preamble.  I'm unable to

11  sort of identify a sort of medical study that looked at

12  that, but that might be just a shortcoming on my part.

13          THE COURT:  Okay.

14          MS. GHEIBI:  Not the fact that the regulation or

15  preamble doesn't address that.

16          THE COURT:  Yeah.

17          MS. GHEIBI:  What I can tell you is that the

18  Department of Education in the preamble does say that it did

19  look, it did consider the comments of the concerns of the

20  cisgender students.

21          This is not to say that those concerns aren't

22  real, but the Department ultimately determined that there

23  are ways to address those concerns that don't necessarily

24  include excluding a transgender from the bathrooms.

25          They can have privacy curtains.  They can provide
```

1    single-stall bathrooms, and whatnot.  The Department of

2    Education goes through and provides some guidance as to how

3    to do that.

4             But it had to make a sort of totality of the

5    circumstances analysis.  It had to say, I understand there

6    are comfort level concerns.  The Department of Education

7    looked and said, you know, there's no evidence there's

8    safety concerns.

9             There's no evidence of this sort of privacy

10   peeping Tom concern as a result of transgender students.

11   There is evidence that transgender students face privacy

12   harm concerns.

13            THE COURT:  There's evidence that what?

14            MS. GHEIBI:  That transgender students face safety

15   concerns, if they're forced to use the bathroom that aligns

16   with their biological sex.

17            But it did acknowledge that there are sort of

18   comfort level concerns, which is what you're discussing

19   here, a student being, like sort of exposed to genitals --

20            THE COURT:  I'm not asking about comfort.  I'm

21   asking about psychological harm.

22            Did you consider whether there would be any

23   psychological harm to biological female students having to

24   have their unclothed body be seen by biological male

25   students or the reverse?  That's all I'm asking.

1          MS. GHEIBI:  Again --

2          THE COURT:  Hold on.  I understand and you talk

3    really fast, and you throw out all of the things you've

4    looked at.  I understand all that.  I don't want you to

5    think that I'm not hearing you.  I hear all that, but I'm

6    asking just a specific question.  So if you could answer my

7    specific question, I would appreciate it.

8          MS. GHEIBI:  Yes.  And with respect to that

9    specific question, I can't right now identify evidence of

10   that.  But again, that might be just a shortcoming on my

11   part.

12         THE COURT:  Right.

13         MS. GHEIBI:  What I can tell you is, to the extent

14   that there were people, commentators that sort of raised

15   that concern, that there would be psychological harm to

16   students, if plaintiffs can point me to comments by

17   commentators saying there will be psychological harm to

18   students if they're exposed to genitals of the opposite sex,

19   and then point me to a part in the rule where the Department

20   of Education said, nah, I'm not going to actually look at

21   that, then that would raise an arbitrary and capricious

22   review question.

23         But if it was never raised, then I think that

24   that's a different question.  If it wasn't actually raised,

25   then the Department of Education had the sort of independent

1    authority to go out of its way and think of all the

2    different arguments that could possibly be raised by the

3    other side that weren't actually raised and try to rebut

4    them; I don't think that would prevail on an arbitrary and

5    capricious review.

6             THE COURT:  So you're saying, just to end that,

7    even if it wasn't raised by anybody, it would have never

8    occurred to the Department on its own that there's potential

9    psychological harm to elementary schoolgirls having their

10   unclothed body viewed by elementary school boys or middle

11   school girls, middle school boys, or high school girls, high

12   school boys, they wouldn't have done that on their own?

13            Only if somebody would have brought it up and only

14   if they would have supported it, the Department would have

15   looked at it?

16            MS. GHEIBI:  No.  No.  That's not my position.

17            THE COURT:  What were you just saying then?

18   You're saying if no one brought this up --

19            MS. GHEIBI:  Right.

20            THE COURT:  -- if no one gave us a study --

21            MS. GHEIBI:  Yeah.

22            THE COURT:  -- then you can't fault us for not

23   addressing psychological harms to biological girls who are

24   biological females.  You can't hold that against us.

25            I'm just saying that seems a little surprising to

```
 1    me that the Department would not take that issue up just

 2    inherent in what they are promulgating here.

 3              MS. GHEIBI:  So I want to be very clear.  I think

 4    it was probably an error on my part for making an assumption

 5    about what you meant by psychological.  I thought maybe you

 6    meant psychological in terms of like medically recognized

 7    sort of medical studies out there, that this is going to

 8    have deep sort of, again, like, medical clinical --

 9              THE COURT:  Yes, I am meaning that.

10              MS. GHEIBI:  Okay.

11              THE COURT:  I am meaning that.  If an

12    elementary-aged or middle school-aged girl, I am told, since

13    I am a male, that it is very easy for that segment of our

14    population to have real self-esteem problems, did the

15    Department consider that or --

16              Let's move on because you don't know.

17              MS. GHEIBI:  Yeah, I don't know the answer to

18    that.  Just to clarify, I don't know the answer to that.

19              THE COURT:  Yes.

20              MS. GHEIBI:  It's possible it did.  It's possible

21    it didn't.  I don't know the answer to that.

22              THE COURT:  Right.  And you're saying, if they

23    didn't bring it up or if no commentator brought it up, the

24    Department had no obligation to look at it on their own?

25              MS. GHEIBI:  I think the Department has an
```

1    obligation to look at the various different relevant

2    factors.  I think that the concern -- that concern strikes

3    me at least as quite niche sort of.  So I don't know of any

4    studies where --

5            THE COURT:  So it would be irrelevant in your

6    view?

7            MS. GHEIBI:  Well, no, it wouldn't be irrelevant.

8            THE COURT:  What do you mean by "niche"?

9            Some people would say trans students are niche.

10           So how do you distinguish the niche here?

11           How do you define "niche"?

12           How does the Department define "niche"?  Let me

13    ask it that way.

14           MS. GHEIBI:  Well, I think it's always been the

15    case that when promulgating a rule, a Department doesn't

16    have to consider every possible factor ever.  I mean, the

17    Supreme Court has said that, lower courts have said that.

18           THE COURT:  Sure.  And I agree with that.

19           MS. GHEIBI:  So the question of whether or not

20    this particular issue of the studies that have shown the

21    real psychological damage to young children of being exposed

22    to separate body parts, again, I don't know if such study

23    exists to begin with.  So that's why it strikes me as niche.

24           I'm not saying that's what the Department of

25    Education thought.  It's entirely possible that the

```
 1    Department of Education considered that, thought it was

 2    relevant, and ultimately concluded the other way.

 3           Again, it might be a shortcoming on my part that I

 4    just don't have the answer to that question.

 5           THE COURT:  Let me ask you this then.  If a school

 6    district has in their fifth grade curriculum in their health

 7    class that they will send all fifth grade boys to a room to

 8    talk about health issues and all fifth grade girls to a room

 9    to talk about health issues, and the purpose is that they

10    want, uninterrupted by the immaturity of the kids, that they

11    want to explain to the kid what's going to happen

12    developmentally over the next year, two or three years, and

13    if they say all boys to the gym with coach so-and-so and all

14    girls to the gym with coach so-and-so to talk about that, if

15    you have one of the students who identifies not in align, I

16    guess, with their biological sex, could the school force

17    that student to go to the group with their biological sex?

18           MS. GHEIBI:  I think that that question goes to

19    106.31(a), the sex separation.  Would it cause more than de

20    minimis harm?

21           And in that situation, if it would cause the

22    student more than de minimis harm to be forced to go and sit

23    with the students that are the biological sex that, in that

24    case, the exclusion would be a violation of 106.31(a)(2).

25           THE COURT:  Okay.  Even if the school said it's
```

1    important for us and for the student because, if we allow

2    the student to go with the group that the student identifies

3    with, that student won't learn about that student's body and

4    imminent development.  It would still be a violation?

5    That's their policy and their belief?

6            MS. GHEIBI:  Again, the question is, would it

7    cause more than de minimis harm to that student, whether

8    it's a stigmatization to feel like that they are being

9    grouped with a gender that they don't identify as and that

10   harm would cause -- in that case -- again, I'm hesitant to

11   answer a hypothetical that the rule doesn't speak on.

12           So I want to reserve, like, ultimate judgment as

13   to whether or not I think the rule would really demand that

14   this be violative.

15           The rule doesn't speak to that particular issue,

16   but I think the rule provides the standard that, does it

17   cause more than de minimis harm to that student to be

18   excluded based on their sex?  Then, if it does then, yes, it

19   would violate it.

20           THE COURT:  In this fact scenario, it would cause

21   them more than de minimis harm?

22           MS. GHEIBI:  Again, I'm hesitant to answer that

23   question, because the rule doesn't speak specifically to

24   that scenario of separating out students in, like, a sex

25   education class.

 1          So I am hesitant to answer that question but

 2   again, what I can say is that the relevant standard would be

 3   more than de minimis harm.  And because it's not expressly

 4   excluded from 106.31(a)(2), then the de minimis harm

 5   standard would apply.

 6          Now, how would that standard apply in that

 7   particular situation?  I think the Department of Education

 8   would need to know more facts.  So I'm hesitant to answer

 9   that question without more facts.

10          THE COURT:  What more facts would they need to

11   know?

12          MS. GHEIBI:  I think, again, the relevant facts

13   would be, one, is this exclusion on the basis of sex, which

14   in that case it seems like it is, and does it cause the

15   student more than de minimis harm?

16          Does it, in the form of stigmatization, in the

17   form of whatever else the harm may be?  It's entirely

18   possible that the student faces no harm.

19          And in that case, that the student would feel that

20   they would want to be in the area or in the group where they

21   have their particular biological genitals where they can

22   learn more about that area.

23          So again, the question of de minimis harm is going

24   to be a fact-specific inquiry.

25          THE COURT:  And so, what if the facts showed you

 1    that the student would be deeply disturbed about having to

 2    be in the group associated with that student's biological

 3    sex, because the student doesn't believe the student is of

 4    that biological sex?

 5          Would that be more than de minimus harm, and

 6    therefore, violative of Title IX?

 7          MS. GHEIBI:  Again, Your Honor, I'm hesitant to

 8    answer that question.

 9          THE COURT:  Just tell me what facts you need, and

10    I will supply them so I can better understand how the

11    Department would review the funding allocations to

12    Southlake, for instance, or Carroll ISD?

13          I just want to understand better what the

14    Department would do.  I'm happy to give you whatever

15    hypothetical fact you need to know to be able to answer my

16    question.

17          MS. GHEIBI:  I think, based on those facts, the

18    school is, at that point, adopting a policy or engaging in a

19    practice that prevents the student from participating in

20    that educational program or activity that's consistent with

21    that person's gender identity.  And so, yes, it would

22    violate, yes.

23          THE COURT:  So now let me ask you this.  What if

24    the parent of that student told the school, we want you to

25    send our child to the health group of our child's biological

```
 1    sex.

 2                It's going to cause him harm, stigmatization, all

 3    of the things that you say you need to know, but the parent

 4    says, Southlake, I direct you to do that?

 5                And Southlake says, Okay.  Well, that's consistent

 6    with our policy.  So we're going to go do that.

 7                Would they then violate Title IX in your view?

 8                MS. GHEIBI:  To the extent the parent has the

 9    right, independent of this regulation, whether through state

10    regulations, local regulations, whatnot, has the right to

11    act on behalf of their child, their minor child, the rule

12    doesn't alter that.  And the preamble of the rule is very

13    clear about that.

14                The preamble of the rule, I'm looking at 33822, it

15    says, "Where a parent and a minor student disagree about a

16    decision with respect to filing a complaint of gender

17    identity discrimination, a recipient may defer to the

18    parent."  There's another aspect of the rule --

19                THE COURT:  I'm sorry, you said a recipient?  You

20    talk kind of fast and away from the microphone.

21                MS. GHEIBI:  I'm sorry.  Sorry.

22                THE COURT:  The recipient may do something?

23                And the recipient is the Department of Education,

24    right?

25                MS. GHEIBI:  No.  The recipient is the school.
```

```
 1                THE COURT:  The school.

 2                MS. GHEIBI:  I'm sorry, I know I speak fast.  I

 3     will try to slow it down.

 4                It says, "Where a parent and a minor student

 5     disagree about a decision to file a complaint of gender

 6     identity discrimination, a recipient may defer to the parent

 7     with the legal right to act on behalf of that student."

 8                THE COURT:  Okay.

 9                MS. GHEIBI:  The preamble of the rule also goes on

10     to very expressly say, "The Department restates that nothing

11     in the final rule -- regulation restricts the right of a

12     parent to act on behalf of a minor child or requires

13     withholding of information about a minor child from their

14     parents."  That's in the regulation.

15                THE COURT:  When you say "a recipient may defer to

16     the parent," does that mean they don't have to defer to the

17     parent?

18                MS. GHEIBI:  No.  Nothing in the rule -- as I

19     understand the rule, the rule does not require the recipient

20     to defer to the parent.  Again, there may be state rules and

21     regulations that make that requirement.

22                But the rule is not sort of imposing an

23     affirmative requirement, if one doesn't otherwise exist in

24     the state, and maybe even school policy, for instance.

25     Because it goes out of its way to say no, no, you must defer
```

```
 1    to the parent, but schools can if they want to.

 2              THE COURT:  Now, let me ask you this.  Let's say

 3    that you have an elementary school-aged boy who is

 4    uncomfortable using the urinals in the boys' bathroom.  And

 5    so, and uncomfortable using the stalls in the boys'

 6    bathroom.

 7              And so, that boy would prefer to use a bathroom

 8    where everyone uses a stall with a door, and that is the

 9    elementary school girls' bathroom.

10              Could Southlake prevent -- and he's stigmatized

11    because he wants to use a stall, and a bunch of bullies in

12    there stigmatize him, he's uncomfortable, he's disturbed by

13    it, and so, he wants to use the biological girls' bathroom.

14              Could Southlake prevent him from doing that?

15              MS. GHEIBI:  The short answer is yes.

16              I think what's key here is that the Department of

17    Education looked at the sort of, this concern which

18    plaintiffs also raised, is cisgender students are also being

19    excluded from using the bathroom, yes.

20              THE COURT:  Cisgender students?  You use cisgender

21    students --

22              MS. GHEIBI:  Cisgender, yes.

23              THE COURT:  -- and you use biological sex; are

24    those the same things?

25              MS. GHEIBI:  Well, a cisgender student is somebody
```

1    who identifies -- whose gender identity is the same as their

2    biological identity.

3            So a biological boy can be a cisgender boy, if he

4    also identifies as a boy, but a biological boy could also be

5    a trans girl, if the biological boy identifies as a trans

6    girl.  So cisgender is not the same as biological.

7            THE COURT:  Okay.

8            MS. GHEIBI:  So the Department of Education looked

9    at the evidence that the cisgender students are also being

10   excluded on the basis of sex, just as your hypothetical

11   points out, but it said on the whole, there is no harm to

12   them.

13           This sort of hypothetical of a boy who doesn't

14   want to use the girls' -- sorry, the boys' urinal, and would

15   rather use the bathroom with the girls, just has no basis in

16   reality.

17           There aren't students who feel that way.  That

18   concern wasn't really raised.  So there's no harm, which

19   means that's why the exclusion.  The exclusion is still on

20   the basis of sex.  You're correct.

21           The exclusion is on the basis of sex, because had

22   that biological boy been born a biological girl, he would be

23   allowed to use the girls' restroom.  So there is exclusion,

24   but it's not discrimination because there's no harm.

25           THE COURT:  How do you determine there's no harm

```
 1    if he's deeply disturbed and stigmatized in the same manner

 2    that a trans person would be disturbed and stigmatized?

 3              How do you distinguish between the harm?

 4              MS. GHEIBI:  Well, I think the Department of

 5    Education looked at the evidence.  Looked at, you know, the

 6    concerns people were raising.  And that just wasn't present.

 7    That there weren't cisgender students who were claiming that

 8    they're deeply disturbed and stigmatized by being forced to

 9    use the restroom of their biological sex.  It's just a

10    hypothetical; it's not real.

11              THE COURT:  Okay.  So it's not real.

12              You're not saying that it doesn't exist?  You just

13    don't know.  There's no evidence that it does?

14              MS. GHEIBI:  Well, the Department of Education

15    looked at the evidence that was presented to it.

16              THE COURT:  Right.

17              MS. GHEIBI:  It found that evidence didn't support

18    the conclusion that cisgender students face the harm.

19              Could there be a student somewhere out there who

20    feels that way?  Perhaps.

21              THE COURT:  Yeah.  And if there is that person and

22    that person did suffer harm, would Southlake's policy

23    violate Title IX?

24              MS. GHEIBI:  No, it wouldn't.

25              Again, I want to emphasize that rules and
```

```
1    regulations are not going to capture every single person in

2    every single instance.  That's the nature of rules and

3    regulations.

4            The question is really, you know, again, goes to

5    the question of, like, what is a threshold and which

6    regulation is appropriate?

7            To the extent that student exists, they may very

8    well exist, but the Department of Education is not going to

9    promulgate rules that are going to sort of capture those one

10   or two outliers.

11           Again, the Department of Education looked at the

12   evidence, and it promulgated the rule based on the evidence.

13           THE COURT:  Right.  And so, what you're telling me

14   is that, and what you just said is, that the Department

15   would believe that that is discrimination on the basis of

16   sex?

17           And if that person was harmed by it, similar to a

18   trans person, you would not conclude that Southlake, Carroll

19   ISD, violated Title IX, correct?

20           MS. GHEIBI:  I want to make one point clear.

21           THE COURT:  Let me just ask you.  Hold on a

22   second.  Let's just say that that student exists, and that

23   student is harmed --

24           MS. GHEIBI:  Yeah.

25           THE COURT:  -- and started seeing a counselor
```

1    because of it.  He reads about this, he reads this

2    transcript here today, and says, well that's me; I am

3    harmed, and their policy discriminates against me on the

4    basis of sex, according to the government, and they file a

5    claim.

6              The Department of Education would not take action

7    against Carroll ISD?

8              MS. GHEIBI:  No.

9              THE COURT:  Okay.

10             MS. GHEIBI:  And let me clarify that the reason

11   for that is because it wouldn't be discrimination under

12   106.31(a)(2).  106.31(a)(2) provides that, if a student is

13   being denied access, that the sex-based exclusion amounts to

14   being denied access on the basis -- because they're sort of

15   denied access for a facility or program that doesn't align

16   with their gender identity, that's not what this student is

17   facing.

18             THE COURT:  Right.

19             MS. GHEIBI:  So it wouldn't be discrimination

20   under Title IX.

21             THE COURT:  Why?  Why wouldn't it be

22   discrimination?

23             Other people of the same biology as this student

24   are allowed to go into the bathroom that has only stalls or

25   doors on it, why wouldn't it be discrimination?

```
1                    He's being treated worse, isn't he?

2            MS. GHEIBI:  Like I said, the rule and regulation

3    attempts to promulgate --

4            THE COURT:  No, I understand.  You say it's not

5    discrimination.  I'm just trying to understand why it is not

6    discrimination, in your view, or in the Department's view?

7            MS. GHEIBI:  Because it doesn't fall within the

8    scope of the regulation.  Again --

9            THE COURT:  Is it discrimination though?

10           Is he being treated worse?

11   MS. GHEIBI:  No.

12           THE COURT:  He's not?  Why?

13           MS. GHEIBI:  It wouldn't be discrimination under

14   Title IX.

15           THE COURT:  Right.  Would it be discrimination on

16   the basis of sex?

17           MS. GHEIBI:  It would be exclusion on the basis

18   of -- I mean, it would be -- the student would be excluded

19   on the basis of sex, but it wouldn't amount to

20   discrimination on the basis of sex.

21           Because again, Title IX -- and I think this goes

22   back to the point, the regulation rules, as is the case with

23   statutes, are not going to capture every instance.

24           THE COURT:  Well, but Title IX, the statute Title

25   IX, uses the word "exclusion."  To be excluded from.
```

1          So why wouldn't this be a Title IX violation?

2          MS. GHEIBI:  Because the --

3          THE COURT:  On the basis of sex, this student is

4    being excluded from using the facilities of that person's

5    choice.

6          MS. GHEIBI:  That's because of regulation 106.33.

7    That's the regulation that the Department of Education said

8    you can have sex-separate bathrooms.

9          So, I mean, that's a sort of recognition by both

10   the government and Congress, because it enacted exclusion,

11   that there will be instances where there are sex-separate --

12   sex-separate facilities and sex-based exclusions that are

13   not going to fall under Title IX.

14         So this student, the Southlake, or the school's,

15   or Carroll ISD's conduct here, would be protected by 106.33,

16   because it's excluding the student because of sex, and the

17   exclusion is not based on gender identity.

18         So 106.31(a)(2) wouldn't kick in, if I'm

19   explaining that correctly.

20         THE COURT:  Okay.

21         MS. GHEIBI:  So it would have to be based on

22   gender identity for the provision to kick in.  The fact that

23   this is just comfort-level based, it doesn't actually

24   trigger 106.31(a)(2).  It would just fall within the scope

25   of 106.33.  So the school's conduct would be protected by

1    that provision.

2              THE COURT:  Let me ask you this.  What do you

3    believe the difference is between conduct associated with

4    sex and status -- sex status?

5              Homosexuality, transgenderism?  Help me understand

6    the difference between those two.

7              MS. GHEIBI:  Do you mind clarifying that question

8    for me?

9              THE COURT:  Yeah.  So Bostock basically says,

10   we're not making sexual orientation a protected class,

11   transgender a protected class, but if you wear certain

12   clothes that are not traditionally aligned with how we view

13   people of a certain sex looking, or otherwise engage in acts

14   that are different from that, then it's based on sex.

15             And so, what is the difference then between sexual

16   orientation, transgender, what I'm calling status, maybe

17   that's the wrong word, I don't know all of these

18   definitions?

19             What's the difference between that and this sort

20   of conduct-based viewpoint?

21             MS. GHEIBI:  Right.  So I think that the

22   regulation here sort of, as you said, much like Bostock,

23   it's not creating a category.  It's not saying we are

24   creating all these protections for transgender students or

25   students that are gay or lesbian.

1            What it's saying is it's sort of recognizing that,

2   when you tolerate a behavior in a student, because, you

3   know, that behavior is gender normative for that student's

4   biological sex, but it's not -- but you won't tolerate those

5   same exact behaviors in a student where it wouldn't be

6   gender normative for their biological sex, then you are

7   discriminating on the basis of sex.

8            So a hypothetical, a biological boy wears a skirt

9   or has, like a boyfriend, is in a relationship with another

10  boyfriend in school, that -- if that boy had been born a

11  biological girl, that relationship would have been

12  tolerated, but because he was born a biological boy, that

13  relationship is not tolerated.

14           So again, it's not a protected class.  But rather,

15  the fact that the school or the institution is not

16  tolerating a particular behavior, where they would have

17  tolerated it in another student, had the student had a

18  different biological sex, that is discrimination on the

19  basis of sex.

20           THE COURT:  So it's not a protected class, but is

21  it always functionally a protected class?

22           MS. GHEIBI:  I wouldn't say it's functionally a

23  protected class, because again, the question is always --

24           THE COURT:  Is it always de facto a protected

25  class?

 1            MS. GHEIBI:  Well, I think the question is conduct

 2    based, right?  Not person based.  It's situation based.

 3    It's conduct based.

 4            If, for instance, a gay student is not engaging

 5    in, I guess, a romantic relationship with another boy, it

 6    just never becomes an issue, that gay student doesn't --

 7    isn't sort of like protected in a sense that other students

 8    aren't or is not granted a sort of special classification.

 9            It's only when there is conduct that then the rule

10    attempts to regulate it.  I'm not sure if I'm explaining

11    that correctly.  But again, it's not a classification.  It's

12    not some sort of a grant of protection, but it's rather a

13    recognition that there are certain conducts that would have

14    been protected or would have been tolerated, had the

15    biological -- if you flip the biological sex, that conduct

16    would have been tolerated.  So it means the intolerance is

17    on the basis of sex.

18            THE COURT:  And any policy that sets aside sexual

19    orientation, treats sexual orientation, gender identity

20    different, then is always going to be -- unless allowed by

21    Congress -- is always going to be unlawful under Title IX by

22    school districts?

23            MS. GHEIBI:  I'm sorry, can you repeat that?

24            THE COURT:  Any policy that prohibits a student

25    who is trans from participating in the sex-specific class

 1    that that student wants to participate in is always going to

 2    be illegal under Title IX -- class or program or activity is

 3    always going to be illegal under Title IX, unless Congress

 4    has specified otherwise?

 5             MS. GHEIBI:  And unless it is exempted under

 6    106.31(a)(2), and it must -- so I think, yes, if a

 7    transgender student has been denied the right to a sort of

 8    program that's based or is being forced to engage in a

 9    particular school activity that aligns with their biological

10    sex, but not gender identity, that exclusion would violate

11    Title IX, unless it's exempted under 106.31(a)(2), which

12    includes the statutory exemptions, as well as a few

13    regulatory exemptions, I think mainly the sports one.

14             THE COURT:  The sports one?

15             MS. GHEIBI:  Yeah.

16             THE COURT:  Anything other than the sports one?

17             MS. GHEIBI:  I don't think it's anything other.  I

18    think it's -- yeah.

19             THE COURT:  Yeah, I think that's right too, but

20    you would know better than me.

21             Does Congress have the constitutional power to

22    make these sex-specific delineations that they have in 1681

23    and 1686?

24             In other words, the Department has no concerns

25    about the equal protection constitutionality of Congress

```
 1    enacting 1681(a)(1) through whatever?

 2              MS. GHEIBI:  You are referring to exemptions for

 3    Boy Scouts or whatnot.

 4              THE COURT:  Yes.  Yes.

 5              MS. GHEIBI:  So those are exemptions to Title IX,

 6    which of course, as this Court knows better than I do,

 7    Congress can promulgate a statute.  It can create its own

 8    exemptions.

 9              The question as to whether or not those exemptions

10    would be unconstitutional, I don't know if they've been

11    challenged.  In any event, the challenge wouldn't be brought

12    by the government.

13              THE COURT:  Well, the government would defend it

14    presumably, right?

15              The Department of Justice would, right?

16              They're charged with defending the

17    constitutionality statute?

18              MS. GHEIBI:  Yes, I think as a general matter, the

19    Department would engage in, yes, defending it.  But the

20    challenge wouldn't be brought.  The government would have to

21    intervene, yes.

22              THE COURT:  Yeah.  Yeah.  And what would the

23    government's argument be that this is permissible, that a

24    beauty pageant -- Carroll ISD can put on a beauty pageant

25    and only biological females can participate in it?
```

```
 1              Given what you're saying about harm and your

 2    regulations and these studies, these trans studies about the

 3    harm of exclusions, what would the government's argument be?

 4              MS. GHEIBI:  I think that --

 5              THE COURT:  It's unfair to you, but just as you

 6    stand here.

 7              MS. GHEIBI:  Because it would be under the equal

 8    protection.  Presumably, it would be under equal protection.

 9    That's a different standard.  The question isn't before the

10    Court.  So I don't think it would be appropriate for me to

11    represent the government's position, even in a hypothetical.

12              THE COURT:  Right.  I'm just asking you, as you

13    stand here today, what would the government's position be on

14    that?

15              Given that the government has taken this

16    affirmative view, in fact, your briefing seems to indicate

17    that there's harm to these exceptions under 1681.  There is

18    harm there to doing this.

19              So what would your position be?

20              MS. GHEIBI:  I mean, I think to the extent that

21    it's relevant to our argument here as Your Honor is sort of

22    highlighting, that this sort of recognition, that there are

23    exclusions, sex-based exclusions that do cause more than de

24    minimis harm, and they're permitted by statute.  Congress

25    chose to permit them.
```

1          THE COURT:  I'm just asking you, is that legal?

2          Is that constitutional, right?

3          That's actually a more important question, it

4    seems, not to Carroll ISD today, but really, a more

5    important question, it seems to me is, is the Department of

6    Justice, Department of Education taking a position or

7    locking itself into a position about relying on these

8    studies that actually 1681 exceptions and 1686 exceptions

9    are unconstitutional?

10          MS. GHEIBI:  No, because the de minimis harm

11    standard is not the same standard for the equal protection.

12    I mean, the Constitution has a different bar.

13          The de minimis harm standard is really, as the

14    Supreme Court identified is Muldrow, sort of civil rights

15    violations.  The question is, like, was there some harm?

16          Now, the question as to whether or not this is

17    going to be an equal protection violation is a completely

18    different question.

19          So it would be entirely consistent for something

20    to cause more than de minimis harm while the Congress

21    exempted, and say, it causes more than de minimis harm, but

22    for whatever reason, we think there's enough value in the

23    sex separation that we will keep it, and while at the same

24    time, not violate the equal protection clause.  Again,

25    different standards different outcomes.

```
 1              THE COURT:  Clearly different standards.  I agree
 2    with you there.
 3              With respect to the definition of to discriminate
 4    on the basis of sex, what do you understand the term or what
 5    is the Department's definition of the term "discrimination"?
 6    What does it mean?
 7              Treat someone worse off?  Treat someone
 8    differently for no reason?  What is your take on that?
 9              MS. GHEIBI:  Again, the most relevant court
10    opinion that sort of outlined this is the Muldrow opinion,
11    where the court said it needs to cause some harm, some
12    injury.  That the exclusion or the differentiation based on
13    sex needs to cause some injury.
14              And the rule or provision 106.31(a)(2) tracks that
15    by saying more than de minimis harm.  That it's not just
16    sort of de minimis or nonexistent harm.  That it's some harm
17    is exactly what Muldrow says.
18              THE COURT:  Does that necessarily mean that
19    there's no basis for the separation, or even if there is a
20    legitimate basis for the separation -- even if there is a
21    legitimate basis for the separation, then it's violative of
22    Title IX, then it's unlawful discrimination?
23              MS. GHEIBI:  Well, I mean, what I think is
24    important here is that, in areas where "legitimate-based
25    separations" that the Department of Education -- I mean, no.
```

```
 1              For example, let's use bathrooms or locker rooms.
 2    There's a legitimate basis to separate based on sex.  So
 3    schools can separate based on sex.  106.33 identifies that,
 4    but it then creates a sort of carve-out for students who
 5    have a different gender identity.
 6              It's for that narrow number of students, even if
 7    there is sort of an interest in keeping them separated, for
 8    those students there's more than de minimis harm, such that
 9    it makes sense to sort of allow them to use the bathroom.
10              So this is -- I mean, and it's important to
11    highlight that the rule doesn't do away with sex separation
12    all together, of course not.  That's embedded in the
13    statute.  Title IX has the exemption.  The regulations
14    themselves.
15              Again, 106.33 has an exemption.  There's
16    sex-separation athletics that have exemptions.  There's a
17    recognition that there are differences.
18              But the question is always, is the exclusion going
19    to cause more than de minimus harm?
20              THE COURT:  And what is the legitimate basis?
21              MS. GHEIBI:  For?
22              THE COURT:  Well, you said there's a legitimate
23    basis for separation of locker rooms and showers and that
24    sort of thing, what is the legitimate basis?
25              MS. GHEIBI:  I think in some of those instances,
```

1    maybe the privacy, students feel more comfortable sort of

2    sharing a locker room with other people who identify as

3    women versus, you know, people feel more comfortable sharing

4    bathrooms with people who identify as men.

5            So schools can provide those, as long as -- sex

6    separate them as long as they're comparable, and they're not

7    causing more than de minimis harm to any student on the

8    basis of sex.

9            THE COURT:  Okay.  So it's a legitimate basis.

10   And then, so the Department takes no issue with sex

11   separation of bathrooms and showers?

12           No issue with the fact that there are

13   legitimate -- there is a legitimate basis to separate on the

14   basis of biological sex?

15           MS. GHEIBI:  The regulations recognize that, yes.

16           THE COURT:  And then, it's the kickover to de

17   minimis harm?

18           MS. GHEIBI:  Yes, that's exactly right.  There's a

19   recognition that schools can have those separations, so long

20   as it doesn't cause more than de minimis harm on the basis

21   of sex.

22           THE COURT:  All right.  So you've worn me out

23   here, but I have to ask this last question.  And that is,

24   you don't think this case should go forward because of the

25   claim splitting argument?

```
 1              MS. GHEIBI:  Yeah.  Yes.

 2              THE COURT:  And my question to you on that is

 3    that, I understand that the Amarillo case has jurisdiction

 4    or standing issues raised, but there's no jurisdiction or

 5    standing issues raised here.

 6              So why shouldn't this case go forward in light of

 7    the fact that the Amarillo case may be dismissed for lack of

 8    jurisdiction?

 9              MS. GHEIBI:  Well, I think if the Amarillo case is

10    not dismissed on the basis of standing, then this case would

11    be in privity with the other one.  And so, in that context,

12    claim splitting would kick in.

13              But if that case were to be dismissed on

14    jurisdictional grounds in which there wouldn't be a

15    substantive issue for the Court to reach, then claim

16    splitting would not be relevant.

17              THE COURT:  I'm sorry, my last question to you is,

18    under Rule 705, does the statute permit me, under the rule,

19    to stay the effect of -- I'm sorry, I got two questions --

20    does it allow me to stay it only as it applies to Carroll

21    ISD and not across the board --

22              MS. GHEIBI:  Yes.

23              THE COURT:  -- Rule 705?

24              MS. GHEIBI:  Yes.  Yes.  As the other three courts

25    that have reached this question have recognized, yes, it
```

```
 1   would, only with respect to plaintiff.  Only the relief that
 2   is appropriate.
 3         THE COURT:  And did they grant injunctions, or did
 4   they grant relief under the rules separate?
 5         Is there a difference, or do you not see that as
 6   being different?
 7         MS. GHEIBI:  I don't think there's a material
 8   difference.
 9         THE COURT:  Right.  In other words, you're saying
10   that I would not -- in this case, I would not issue an
11   injunction, or, in other words, I would not issue a stay
12   under Rule 705, I would issue an injunction, or you see no
13   difference between me granting relief under Rule 705, as
14   opposed to enjoining you from enforcing all of this against
15   Carroll or whomever?
16         MS. GHEIBI:  We don't think there's any -- we
17   don't think that Rule 705 was primarily intended to reflect
18   existing laws.  So it doesn't provide for a new or unique
19   form of relief here.
20         So it's not that 705 would allow a sort of
21   nationwide injunction.  Whereas a stay with respect to
22   Carroll ISD wouldn't.  I think they would both be limited to
23   Carroll ISD.
24         THE COURT:  Okay.  And let me ask you this, on the
25   major question issue, Texas has a case pending in Amarillo,
```

```
1    but you have Kansas, Kentucky, Tennessee, you have all these

2    states that have brought cases on the behalf of other states

3    as well, as you know better than me, what is the number?

4              I counted 15 or so, but is that low or high?

5              MS. GHEIBI:  I think that may be a little high.

6              THE COURT:  A little high.

7              MS. GHEIBI:  I think we may be at, don't hold me

8    to this, but I think 11 or 12.  I think we consolidated a

9    few cases.

10             THE COURT:  Okay.  Is that an indication that this

11   implicates the major question doctrine, that you have that

12   many states challenging the Department's definitions, let's

13   say, because I know you're saying not everybody is attacking

14   the entire rule as a whole, but they're clearly -- you

15   clearly have, whatever number it is, you clearly have those

16   people attacking the 106.10.

17             MS. GHEIBI:  Well, no.  Because the major

18   questions doctrine is a substantive inquiry as to what is

19   the substances being challenged?

20             The number of lawsuits is not an indication of the

21   major question doctrine.  If it were, if the Court were to

22   rule that it is, it would cause a lot of problems, because

23   then it would open the floodgates.  Every time a plaintiff

24   wants to challenge something that's a major question, just

25   rally up everybody and file enough lawsuits and make it seem
```

1    like enough people care about this that, all of a sudden,

2    it's a question.

3            THE COURT:  You don't believe that's a good

4    representative of what is a significant political issue

5    impacting the country, if they're able to gather up a

6    significant number of states?

7            MS. GHEIBI:  I do not.  The major question

8    doctrine is a substantive inquiry and goes to the substance

9    of the issue --

10           THE COURT:  I understand that.

11           MS. GHEIBI:  -- not of popularity.

12           THE COURT:  I understand that, but is it an

13   indication that enough people feel that this is a

14   significant -- substantively significant political issue

15   that impacts the country as a whole, that ought to be left

16   to Congress?

17           MS. GHEIBI:  Again, no, I do not.  I don't think

18   it would be an appropriate part of the substantive inquiry

19   that the Supreme Court has outlined.

20           THE COURT:  Anything else that I've not allowed

21   you to address that you feel like you should?

22           MS. GHEIBI:  No.  I think we've covered a lot.

23   Again, thank you for the opportunity.  Unless there are any

24   questions?

25           THE COURT:  Yes, no.  Well, thank you.

1          I will give you a chance to reply, and then I have

2     some questions for you, or whoever wants to take the lead.

3          MR. HOFFMANN:  Thank you, Your Honor.

4          I believe I have four points in rebuttal.  I think

5     we can step backwards just for relevance.  The scope of the

6     relief here.  There is a difference between a stay and a

7     preliminary injunction.  That's the Nken vs. Holder case of

8     the Supreme Court.  And the Fifth Circuit said the stay is

9     the less drastic remedy, for the reasons discussed in the

10    opening.

11         And so, 705 allows for the stay and that operates

12    across the board as the Court said in Career Colleges.  So

13    that would be the appropriate remedy here.

14         Contrary to what my colleague was saying, it's not

15    a nationwide injunction.  It does stay it, you know, for

16    everyone, but that's what the APA provides, and that's what

17    Justice Kavanaugh recognized.

18         We can then go to the Bostock point.  So, as Your

19    Honor pointed out, Title VII and Title IX are vastly

20    different statutes.  And my colleague also said that the

21    context is key.  And it is indeed key, because Bostock said

22    it didn't address bathrooms, locker rooms, or anything of

23    that kind.

24         What it did say is that gender identity is

25    irrelevant to terminating an employee, but what Title IX

 1    makes clear is that sex, as the statute contemplates, is

 2    relevant for educational opportunities.

 3         It is relevant in restrooms, locker rooms,

 4    bathrooms, and living facilities.  And so, you know, the

 5    vast number of differences between those statutes and the

 6    way that Title IX has historically treated sex separation

 7    shows that treating the sexes differently, where those

 8    differences matter, because there're enduring differences

 9    between the sexes, cannot be prohibited discrimination.

10         And then, 1686, the interpretative provision about

11    living facilities, also shows how Title IX and Title VII are

12    different.

13         The third point will be on the de minimis harm

14    issue.  That provision is nowhere found in the text of Title

15    IX, and it really flips the statute on its head and can

16    really kind of create the Title IX violation in itself.

17         Because, as kind of the discussions with my

18    colleague illuminated, it basically establishes transgender

19    status as a trump card.  Because whenever, you know, you

20    assert a gender identity inconsistent with sex that allows

21    you access, but other identities do not, which is kind of an

22    impermissible sex distinction.

23         The administrative record before the agency did

24    reflect that there are issues of harm in allowing gender

25    identities inconsistent with sex in private spaces.  We

1    pointed them out in the appendix at 91 and 92.

2         So to the extent that the Department of Education

3    claims there's kind of a stigmatic injury or privacy injury

4    from not allowing access consistent with gender identity, it

5    ignores why that would not also be the case, you know, for

6    the females who are now forced to undress next to a male.

7    You can see that in the appendix at pages 91 through 93.

8         So, you know, for example, in the Lia Thomas case,

9    in ivy league mother talked about how her daughter would

10   have to change next to Lia Thomas in the bathroom and was

11   said still physically intact and had been using the female

12   locker rooms.

13        Again, appendix page 92, the victim of a violent

14   rape, a female victim of violent rape said that she wouldn't

15   feel safe undressing next to biological males.

16        She had a heightened need to control her

17   environment because of her past trauma and that would not be

18   met when males are allowed in female locker rooms.

19        All the Department said in response to that is

20   that Federal Register, page 33820, which it just said, "it

21   does not agree with commentators who allege there's evidence

22   that transgender students pose a safety risk or that the

23   mere presence of a transgender person in single sex space

24   compromises anyone's legitimate privacy interest."  That's

25   all they said in response to that.

```
 1              But again, that would privilege the one side, the

 2    transgender-identifying students who allegedly have a

 3    stigmatic injury against what the Department calls cisgender

 4    students, who the Department completely ignores.  And that

 5    shows how the de minimus harm standard would be arbitrary

 6    and capricious for failing to acknowledge those real harms.

 7              And then, under the de minimis harm provision as

 8    well, the logic inextricably applies to athletics.  That's

 9    the position the Department of Justice has taken in the BPJ

10    litigation.  That those regulations would require access to

11    athletics based on gender identity inconsistent with sex.

12              The Department cannot take an inconsistent

13    position here, especially when the regulations make clear

14    that the nondiscrimination mandate in athletics still

15    applies, this de minimis harm provision still applies to it.

16              And then, lastly, on the hostile environment

17    standard.  The Carroll ISD makes clear that it challenges

18    both the broadened definition and the definition as it

19    applies and encompasses the undefined gender identity term;

20    it's both.

21              The 2020 regulations, which first put this

22    definition in the regulations, the preamble to that has a

23    good discussion of why there are First Amendment concerns

24    with the lower standard, and why the Department chose this

25    standard.  And so, the Department offers no good reason to
```

1    deviate from that, especially in light of those

2    constitutional concerns.  I believe that's all I have to

3    say, Your Honor.

4            THE COURT:  Let me ask you a few questions.  So in

5    Bostock, the Supreme Court said that, when we're talking

6    about terms, as sex, the purpose of the Title VII statute,

7    that this a very broad sweeping proclamation from the

8    Congress which may result in unexpected results.  So why

9    wouldn't that same concept apply here to Title IX?

10           MR. HOFFMANN:  First of all, Title VII is not

11   spending clause litigation -- spending clause legislation,

12   excuse me.  Title IX is.  So that means that Title IX must

13   have unambiguous conditions.

14           And as the Eleventh Circuit held in the Adams

15   case, Title IX has not ever been unambiguously understood to

16   prohibit or require participation based on gender identity

17   inconsistent with sex.  So I think that would be the first

18   reason.

19           The second reason really goes back to the whole

20   structure of Title IX.  So its purpose is to prevent

21   discrimination in education based on sex.  It's clear that

22   its purpose was to equalize opportunities for females.

23           And under 20 U.S.C. 1682, the agency must issue

24   regulations consistent with Title IX's objectives.  And so,

25   and those provisions, requirements for sex designation makes

1  clear that that's not discrimination based on sex.  Those

2  are really just a reflection of the natural and enduring

3  differences between males and females.

4        And so, for that reason, this application grafting

5  Bostock onto Title IX cannot be the case, because Congress

6  expressly provided for these designations.

7        THE COURT:  If the Fifth Circuit concludes that

8  Bostock and Bostock's reasoning should apply to Title IX,

9  does that undermine your case?

10        Should I rule against you, if the Fifth Circuit

11  rules against them?

12        MR. HOFFMANN:  I think with regards to the

13  harassment definition and those other, like the gag order

14  requirements, I think those are independent of the gender

15  identity mandate.

16        To the extent that Bostock applies, in a certain

17  sense to Title IX, I think that there would be a difference

18  because what Bostock says is it's not going to consider

19  bathrooms or locker rooms or anything of that kind.

20        So even if Bostock's logic applied in a certain

21  instance to Title IX, it would be taking into account gender

22  identity that is independent of the underlying merits of a

23  sex designation.

24        And so, you know, if you are going to expel a

25  student based on gender identity, that might be how Bostock

1    applies, although we would disagree with that, but assuming

2    the Fifth Circuit held that, but that would not mean that

3    that applies across the board to bathrooms and locker rooms.

4    So I think under that situation, we should still prevail.

5            THE COURT:  Now, the government's brief citing

6    this Birmingham -- Jackson vs. Birmingham says that Title IX

7    carves out certain limited exceptions, in essence.  I can't

8    find the quote, but that's basically what they said.

9            Why isn't that true?  Why isn't their reading of

10   Title IX true?

11           That is, you have this broad-based, sort of this

12   sweeping mandate not to discriminate on the basis of sex,

13   except in these limited instances, Boy Scouts, Girl Scouts,

14   beauty pageants, father/son, mother/daughter, whatever it

15   is, and we need to read those exceptions narrowly, and

16   therefore, they shouldn't apply beyond that, that's kind of

17   their argument.  They may disagree with it, but that's a

18   fair reading of it.

19           MR. HOFFMANN:  There are two reasons why that

20   doesn't apply.  First, for the reasons we discuss in the

21   memo, is the meaning of the term "discrimination."

22           So, you know, based on the plain text, you know,

23   based on how the statute is written, discrimination means to

24   treat someone worse, you know, on the basis of sex.  So to

25   deny an opportunity on the basis of sex, where sex, you

1    know, has no relevant qualification.

2              And so, then that discrimination, that is the

3    plain text definition.  And so, what those other provisions

4    made clear is, you know, it's not -- it informs the meaning

5    of what discrimination is not.

6              So it just says, you know, these things are not

7    discrimination, because they're not treating someone worse

8    on the basis of sex.  They're not denying an opportunity on

9    the basis of sex.

10             Rather, it's just taking into account the enduring

11   differences.  So those are not just the only limited

12   carve-outs, but rather they're ones that form the meaning of

13   discrimination.

14             The second point, and what really bolsters that

15   is, the Title IX, the statute, has no mention of athletics.

16   But in 1975, just a few years after the legislation was

17   passed, the Department of Education proposed the regulations

18   in saying that, you know, schools and recipients can still

19   have sex-designated athletic teams, and that would not

20   violate Title IX.  But that is not in the statutory text.

21             Congress did approve of those.  But what that

22   shows, really, is it again forms the meaning of

23   discrimination.  So it's not just, you know, any

24   differential treatment.  It's not just limited exceptions.

25   But rather in athletics there are, you know, common sense

1    reasons, fairness reasons why males should not compete

2    against females.

3          And so, that also shows that why discrimination is

4    kind of, you know, treating worse rather than just limited

5    to those things.

6          THE COURT:  On this structural question last week,

7    the Supreme Court decided the Fisher case involving the

8    January 6th defendants and analyzing the obstruction statute

9    in Section A, B, one or two, whatever it was, the majority

10   concluded that Section one or A, whichever, informed their

11   understanding of Section B or Section two, that is, you had

12   some specific -- Congress used some specific terms that

13   defined obstruction, and then added or otherwise committed

14   obstruction, and the Supreme Court determined that the first

15   provision informed what kinds of things could be prosecuted

16   for otherwise committing obstruction.

17         And so, how does that case apply to the statutory

18   construction in this case with Sections 1681 and 1686?

19         It uses these canons of construction, by whatever

20   Latin designation that the Supreme Court uses, that you look

21   to the provisions of the statute, the specific and the

22   general provisions, the terms mean its neighbors in the

23   statute help inform what these disputed terms mean.

24         And so, the government's position is that they

25   didn't say this, but I think it's a fair reading, that they

1    say that these exceptions carve-out some narrow exceptions.

2    So if you are going to use these canons, the only separation

3    on the basis of sex permitted are these narrow exceptions.

4           What is your take on that?

5           MR. HOFFMANN:  I think the Supreme Court's

6    decision in Muldrow, I guess informs that, because that

7    informs what discrimination is.

8           So that's treating someone worse, not just any

9    designation that would be relevant to kind of what's at hand

10   in terms of privacy or safety interests.

11          So that informs what discrimination is.  And then,

12   read in light of the 1681(a) provisions and 1686, that tells

13   you, informs you of specific instances that Congress wanted

14   to make clear what discrimination is not.

15          And so, that informs the definition of

16   discrimination to say that these things are not, but that is

17   not the universe of discrimination, because that's not how

18   Title IX has been applied, you know, across the board

19   because the regulations have, almost since the inception of

20   Title IX, provided for differences in restrooms and locker

21   rooms.

22          And so, unless those regulations themselves were

23   unlawful, that also shows that it's not discrimination to

24   have those distinctions.

25          And so, I think all of those kind of interpretive

1  canons in this case made clear, that inform that definition

2  of discrimination, as opposed to control only, you know,

3  Congress did not universally decide what discrimination is.

4  It just identifies some specific examples.

5          THE COURT:  My last question to you is, you've

6  asked for a stay under Rule 705 and a preliminary

7  injunction.  Are both of those necessary?

8          MR. HOFFMANN:  If the stay applies to the rule

9  across the board, then the preliminary injunction would not

10  be necessary in a preliminary posture.

11          I think, Your Honor, the discussion in Texas vs.

12  Cardona was instructive there, because the vacatur means

13  that the agency action has no effect.  That a stay under 705

14  is analogous to that.  And so, if there is a stay, there

15  would not be a need for a preliminary injunction.  So they

16  can kind of be an alternative.

17          Your Honor did realize that injunctive relief may

18  still be important, insofar as the Department would try

19  other kind of, you know, enforcement of this gender identity

20  mandate.  But at this point, at this preliminary phase, the

21  stay would make the most sense.

22          THE COURT:  All right.  Anything else?  Anything

23  else you have not been able to present?

24          MR. HOFFMANN:  No.  Thank you, Your Honor.

25          THE COURT:  Anything else?

1          MS. GHEIBI:  Just one.  Thank you.  Just one

2     quick, clarifying point.  There was a discussion earlier we

3     had about the standard for the equal protection clause.

4          I just want to clarify that we are not taking --

5     the equal protection clause is not before the Court.  So the

6     government is not taking a position on what that standard

7     is.

8          THE COURT:  Yeah.

9          MS. GHEIBI:  Thank you.

10         THE COURT:  Okay.  Well, thank you all.  I will

11    take it under advisement.  I appreciate it.

12         COURT SECURITY OFFICER:  All rise.

13         (The proceedings concluded at 11:32 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

REPORTER'S CERTIFICATE

    I, ZOIE WILLIAMS, RMR, RDR, FCRR, certify that

the foregoing is a true and correct transcript from

the record of proceedings in the foregoing entitled

matter to the best of my ability to hear.

    Further, due to the COVID-19 pandemic, some

participants are wearing masks, and/or appeared via

videoconferencing, so proceedings were transcribed to the

best of my ability.

    I further certify that the transcript fees format

comply with those prescribed by the Court and the Judicial

Conference of the United States.

    Signed this 11th day of July, 2024.


                    ___/s/ Zoie Williams_____
                    Zoie Williams, RMR, RDR, FCRR
                       Official Court Reporter
                    Northern District of Texas
                        Fort Worth Division

Business Address:    501 W. 10th Street
                     Fort Worth, Texas 76102
                     zwilliams.rmr@gmail.com
                     817.850.6630

COURT SECURITY
OFFICER: **[2]**  5/4 115/12
MR. DAVIS: **[1]**  5/14
MR. HOFFMANN: **[9]**
12/24 20/25 104/3 108/10
109/12 110/19 113/5 114/8
114/24
MS. ALLMAN: **[7]**  5/9
5/17 5/21 5/25 6/3 6/9
6/13
MS. GHEIBI: **[145]**
MS. THOMPSON: **[2]**
6/22 6/24
THE COURT: **[163]**

## $

$98 **[1]**  17/12

## '

'revolutionize **[1]**  19/7
's **[1]**  10/4

## /

/s **[1]**  116/17

## 1

10 **[1]**  63/16
106.1 **[1]**  43/25
106.10 **[14]**  7/22 9/17
9/21 12/9 21/8 22/16
30/13 44/9 44/25 45/9
45/16 46/8 46/9 102/16
106.11 **[1]**  33/20
106.2 **[3]**  22/11 32/13
32/14
106.31 **[24]**  8/5 9/17 9/22
21/13 21/23 25/12 26/2
26/8 26/22 28/9 28/13
41/12 45/1 46/8 77/19
77/24 79/4 87/12 87/12
89/18 89/24 93/6 93/11
97/14

106.32 **[3]**  25/23 44/8
44/10
106.33 **[5]**  89/6 89/15
89/25 98/3 98/15
106.41 **[5]**  10/23 22/3
26/2 26/6 26/12
106.45 **[2]**  38/4 44/8
106.6 **[1]**  36/23
10th **[2]**  3/3 116/20
11 **[1]**  102/8
1100 **[1]**  2/13
11:32 a.m **[1]**  115/13
11th **[1]**  116/15
12 **[1]**  102/8
12406 **[1]**  2/13
13th **[1]**  17/16
15 **[1]**  102/4
1681 **[8]**  9/7 10/4 93/22
94/1 95/17 96/8 112/18
113/12
1682 **[1]**  108/23
1686 **[7]**  10/4 26/25
93/23 96/8 105/10 112/18
113/12
19 **[1]**  116/8
1972 **[1]**  11/24
1975 **[3]**  8/7 8/13 111/16
1997 **[1]**  33/9

## 2

20 **[1]**  108/23
200-page **[1]**  63/15
20001 **[1]**  2/10
20005 **[1]**  2/14
2016 **[2]**  7/8 11/2
20176 **[1]**  2/7
202.305.3246 **[1]**  2/14
202.393.8690 **[1]**  2/10
2020 **[1]**  107/21
2021 **[1]**  8/2
2024 **[3]**  1/7 5/1 116/15
2100 **[1]**  2/3

## 3

31 **[1]**  26/12
33819 **[1]**  65/10
33820 **[2]**  65/25 106/20
33822 **[1]**  81/14
34 **[2]**  7/21 8/4

## 4

41 **[2]**  26/13 26/13
440 **[1]**  2/9
44180 **[1]**  2/6
4:24-CV-00461-O **[1]**  1/5

## 5

501 **[2]**  3/3 116/20
571.707.4708 **[1]**  2/7
573 **[1]**  50/11
598 **[1]**  50/10

## 6

600 **[1]**  2/9

## 7

705 **[13]**  6/25 13/19 18/20
18/25 100/18 100/23
101/12 101/13 101/17
101/20 104/11 114/6 114/13
706 **[2]**  18/20 19/1
76102 **[3]**  2/4 3/3 116/20
777 **[1]**  2/3

## 8

817.334.7200 **[1]**  2/4
817.850.6630 **[2]**  3/4
116/21

## 9

91 **[2]**  106/1 106/7
92 **[2]**  106/1 106/13
93 **[1]**  106/7
9:00 **[1]**  1/21

## A

a.m **[2]**  1/21 115/13

**A**

**ability [5]** 15/9 34/21 35/12 116/7 116/11
**able [10]** 55/4 55/20 56/10 61/1 61/9 64/8 66/15 80/15 103/5 114/23
**about [44]** 12/5 14/21 25/13 26/20 28/14 32/24 33/24 34/8 35/3 46/24 49/11 51/1 54/20 54/25 65/7 65/13 65/17 66/10 66/18 66/21 66/24 72/20 72/21 75/5 77/8 77/9 77/14 78/3 79/22 80/1 81/13 81/15 82/5 82/13 87/1 93/25 95/1 95/2 96/7 103/1 105/10 106/9 108/6 115/3
**above [1]** 3/8
**abuse [2]** 28/24 29/9
**abusing [1]** 29/7
**accepting [1]** 11/25
**access [13]** 27/19 27/23 28/2 33/6 34/25 40/18 40/25 87/13 87/14 87/15 105/21 106/4 107/10
**accompanying [1]** 10/6
**according [1]** 87/4
**account [2]** 109/21 111/10
**acknowledge [2]** 72/17 107/6
**acknowledged [1]** 26/19
**across [8]** 13/20 20/8 20/20 100/21 104/12 110/3 113/18 114/9
**act [5]** 19/10 20/12 81/11 82/7 82/12
**acted [1]** 71/8
**action [9]** 18/3 18/21 19/2 19/20 20/11 20/15 32/23 87/6 114/13
**actions [2]** 36/25 37/5

**activities [5]** 27/6 27/6 37/11 44/13 65/18
**activity [6]** 34/10 34/12 35/1 80/20 93/2 93/9
**acts [2]** 20/10 90/13
**actual [1]** 11/21
**actually [18]** 24/2 25/4 25/11 26/12 32/25 34/15 36/23 40/3 40/5 49/15 49/17 54/7 73/20 73/24 74/3 89/23 96/3 96/8
**ad [1]** 20/12
**Adams [1]** 108/14
**add [1]** 55/20
**added [1]** 112/13
**address [10]** 28/13 32/21 67/1 67/4 69/18 71/15 71/23 103/21 104/22 116/20
**addressed [2]** 11/13 11/18
**addressing [2]** 10/18 74/23
**adequately [1]** 28/15
**adjudications [1]** 17/6
**administrative [4]** 18/3 19/8 19/10 105/23
**admitted [1]** 17/11
**adopting [1]** 80/18
**advisement [1]** 115/11
**advisory [1]** 47/16
**affecting [1]** 63/12
**affects [1]** 35/11
**affidavits [1]** 66/23
**affirmation [1]** 15/25
**affirmative [3]** 46/14 82/23 95/16
**after [5]** 7/12 26/18 27/12 66/6 111/16
**again [63]** 18/18 19/22 23/19 24/7 24/11 24/17 24/21 26/14 26/24 27/25 28/16 30/17 31/19 34/7 37/14 38/14 39/5 39/15

43/24 45/21 46/1 48/25 49/2 49/24 53/10 53/18 54/5 59/20 60/3 62/2 64/9 65/22 67/18 69/19 73/1 73/10 75/8 76/22 77/3 78/6 78/10 78/22 79/2 79/12 79/23 80/7 82/20 85/25 86/4 86/11 88/8 88/21 91/14 91/23 92/11 96/24 97/9 98/15 103/17 103/23 106/13 107/1 111/22
**against [15]** 13/17 17/19 20/2 20/10 23/7 23/8 64/2 74/24 87/3 87/7 101/14 107/3 109/10 109/11 112/2
**age [1]** 34/25
**aged [3]** 75/12 75/12 83/3
**agencies [1]** 60/9
**agency [11]** 8/25 18/21 19/2 19/19 20/10 20/14 31/21 70/7 105/23 108/23 114/13
**agency's [2]** 20/10 70/4
**ago [4]** 7/13 11/19 19/5 70/9
**agree [12]** 29/21 49/13 49/18 53/24 55/15 59/2 59/3 59/12 68/19 76/18 97/1 106/21
**agrees [2]** 41/21 54/11
**ahead [2]** 65/2 65/3
**akin [1]** 19/12
**align [4]** 61/19 66/5 77/15 87/15
**aligned [1]** 90/12
**aligns [4]** 18/25 27/14 72/15 93/9
**all [69]** 5/4 5/6 5/6 5/8 5/19 7/23 9/2 9/5 9/6 9/8 10/1 10/25 12/7 13/12

# A

**all...** **[55]** 15/25 16/3 17/6 17/8 17/16 19/20 19/23 19/24 19/25 29/18 32/24 34/3 34/12 37/23 40/12 43/5 43/12 44/21 44/21 45/15 52/2 53/12 54/5 55/3 58/7 59/9 60/21 65/6 68/23 71/2 72/25 73/3 73/4 73/5 74/1 77/7 77/8 77/13 77/13 81/2 90/17 90/24 98/12 99/22 101/14 102/1 103/1 106/19 106/25 108/2 108/10 113/25 114/22 115/10 115/12

**allegations** **[1]** 39/2
**allege** **[1]** 106/21
**alleged** **[1]** 33/21
**allegedly** **[1]** 107/2
**ALLIANCE** **[3]** 2/6 2/9 5/22
**ALLISON** **[2]** 2/2 5/11
**ALLMAN** **[2]** 2/2 5/11
**allocations** **[1]** 80/11
**allow** **[4]** 78/1 98/9 100/20 101/20
**allowed** **[8]** 12/2 13/10 22/6 84/23 87/24 92/20 103/20 106/18
**allowing** **[4]** 16/11 65/18 105/24 106/4
**allows** **[5]** 10/16 26/3 36/24 104/11 105/20
**almost** **[2]** 19/22 113/19
**alone** **[1]** 34/7
**along** **[2]** 9/6 24/16
**already** **[2]** 42/10 42/12
**also** **[47]** 5/17 7/6 8/15 8/17 9/12 16/13 16/22 17/25 18/4 19/24 20/1 20/7 22/5 24/15 24/15 25/8 28/14 29/11 30/8 30/21 30/23 30/23 31/18 33/7 36/3 36/11 37/2 39/11 44/14 48/13 49/9 50/6 51/5 52/5 54/2 68/10 82/9 83/18 83/18 84/4 84/4 84/9 104/20 105/11 106/5 112/3 113/23

**alter** **[2]** 26/15 81/12
**alterations** **[1]** 17/4
**alternative** **[1]** 114/16
**although** **[1]** 110/1
**always** **[18]** 10/19 25/11 35/5 36/14 37/15 37/21 49/2 63/11 63/14 76/14 91/21 91/23 91/24 92/20 92/21 93/1 93/3 98/18
**am** **[7]** 64/22 75/9 75/11 75/12 75/13 79/1 87/2
**AMA** **[3]** 66/12 66/14 70/10
**Amarillo** **[4]** 100/3 100/7 100/9 101/25
**ambiguous** **[5]** 7/10 7/16 56/13 56/14 56/17
**amend** **[1]** 17/22
**Amendment** **[22]** 14/16 14/18 22/13 32/17 32/24 36/13 36/15 36/21 37/1 37/4 37/6 37/12 37/15 37/19 37/23 37/25 38/7 38/16 39/4 39/10 39/21 107/23
**amicus** **[3]** 29/4 66/14 67/14
**among** **[1]** 68/15
**amount** **[7]** 22/2 25/16 27/16 34/16 39/21 44/13 88/19
**amounts** **[4]** 21/17 33/11 38/6 87/13
**analog** **[1]** 18/20

**analogies** **[1]** 64/3
**analogous** **[1]** 44/14
**analysis** **[3]** 53/10 53/12 72/5
**analyzing** **[1]** 112/8
**animals** **[1]** 47/1
**another** **[8]** 15/13 36/5 69/7 70/13 81/18 91/9 91/17 92/5
**answer** **[19]** 45/14 45/17 45/20 46/14 51/12 56/15 69/19 73/6 75/17 75/18 75/21 77/4 78/11 78/22 79/1 79/8 80/8 80/15 83/15
**answers** **[1]** 45/18
**anti** **[4]** 16/5 31/1 31/2 31/17
**anti-commandeering** **[3]** 31/1 31/2 31/17
**anti-harassment** **[1]** 16/5
**any** **[27]** 6/13 10/16 12/10 12/20 14/24 18/16 20/22 22/25 35/9 36/3 38/17 39/1 39/24 43/6 56/8 68/1 71/7 72/22 76/3 92/18 92/24 94/11 99/7 101/16 103/23 111/23 113/8
**anybody** **[2]** 60/21 74/7
**anyone** **[1]** 12/5
**anyone's** **[1]** 106/24
**anything** **[13]** 20/14 33/11 48/11 57/16 58/22 93/16 93/17 103/20 104/22 109/19 114/22 114/22 114/25
**anywhere** **[1]** 49/17
**APA** **[4]** 7/1 19/13 19/18 104/16
**appeared** **[1]** 116/9
**appendix** **[3]** 106/1 106/7 106/13

**A**

applicable [14]  23/21 26/18 31/17 45/4 46/7 47/8 47/12 47/20 49/15 49/19 53/8 54/9 58/16 58/24

application [5]  6/4 22/21 23/19 27/25 109/4

applied [5]  16/24 18/16 18/17 109/20 113/18

applies [15]  7/4 7/6 14/20 46/9 46/16 51/25 100/20 107/8 107/15 107/15 107/19 109/16 110/1 110/3 114/8

apply [29]  7/11 10/10 18/15 19/23 26/16 43/11 43/15 43/16 43/17 44/4 44/4 44/5 44/25 45/8 46/10 46/17 47/3 49/7 49/24 50/9 51/1 51/6 79/5 79/6 108/9 109/8 110/16 110/20 112/17

applying [6]  11/10 12/7 49/4 50/14 55/25 56/1

appointment [2]  40/17 41/11

appreciate [2]  73/7 115/11

approach [1]  36/12

appropriate [14]  8/9 20/19 41/14 42/1 42/17 47/3 54/18 54/19 54/22 86/6 95/10 101/2 103/18 104/13

approve [1]  111/21

arbitrary [11]  28/12 29/19 34/2 64/25 65/5 65/8 68/17 71/8 73/21 74/4 107/5

are [135]

area [4]  16/10 64/23 79/20 79/22

areas [2]  66/25 97/24

aren't [4]  69/25 71/21 84/17 92/6

argue [6]  5/22 22/19 25/24 28/23 31/25 38/6

argued [1]  19/11

arguing [2]  40/8 68/5

argument [25]  22/22 22/23 26/20 31/2 32/2 32/21 33/17 36/12 38/4 40/9 42/2 51/9 51/17 54/15 58/2 59/14 59/16 59/23 59/24 63/2 94/23 95/3 95/21 99/25 110/17

arguments [6]  4/2 28/12 52/12 58/12 58/16 74/2

around [1]  40/13

articulation [1]  44/16

as [184]

aside [3]  19/1 19/16 92/18

ask [13]  43/7 54/10 54/19 56/13 76/13 77/5 80/23 83/2 86/21 90/2 99/23 101/24 108/4

asked [2]  60/9 114/6

asking [12]  51/6 54/25 55/11 62/3 65/6 71/2 72/20 72/21 72/25 73/6 95/12 96/1

aspect [9]  37/23 41/15 41/20 44/8 44/13 44/18 45/1 49/5 81/18

aspects [7]  40/1 40/14 43/18 44/10 45/22 45/24 46/12

assault [1]  67/25

assert [1]  105/20

ASSISTANT [2]  1/11 1/16

associated [2]  80/2 90/3

assume [5]  54/16 58/16 58/18 59/7 59/24

assumed [2]  54/16 56/23

assuming [7]  22/23 55/9

55/25 57/23 59/15 59/18 110/1

assumption [2]  56/25 75/4

assure [1]  69/24

at [60]  1/12 6/22 6/23 8/4 8/21 11/2 11/6 11/16 11/22 14/6 15/25 16/3 21/12 32/24 33/9 33/14 33/15 34/4 38/17 42/5 42/21 44/21 47/17 49/3 50/10 50/16 52/14 52/23 53/2 58/10 61/3 65/10 66/13 67/23 69/17 71/10 71/10 71/11 73/4 73/20 74/15 75/24 76/1 76/3 80/18 81/14 83/17 84/9 85/5 85/5 85/15 86/11 96/23 102/7 106/1 106/7 113/9 114/20 114/20 115/13

athletic [3]  10/24 34/5 111/19

athletics [18]  8/17 8/20 10/18 10/20 22/4 25/21 26/1 26/4 26/7 26/16 26/17 26/20 98/16 107/8 107/11 107/14 111/15 111/25

attacking [2]  102/13 102/16

attempt [1]  23/25

attempts [2]  88/3 92/10

attend [1]  20/18

attention [1]  64/8

ATTORNEY [2]  1/15 1/17

attorneys [1]  5/22

August [1]  17/16

August 13th [1]  17/16

authority [11]  14/22 20/10 33/22 54/25 55/7 56/7 57/18 71/2 71/4 71/7 74/1

authorized [3]  19/16 55/12 56/4

automatically [2]  14/3 54/1

# A

aware **[2]**  11/25 42/14

away **[3]**  13/16 81/20 98/11

# B

back **[7]**  7/9 32/1 52/19
54/5 56/19 88/22 108/19

backwards **[1]**  104/5

bakes **[1]**  14/3

balancing **[1]**  39/8

ban **[2]**  15/18 31/6

Bank **[1]**  35/16

bans **[1]**  24/15

bar **[2]**  33/3 96/12

base **[1]**  57/24

based **[54]**  7/24 8/6 8/8
9/10 11/11 12/12 12/15
12/17 12/18 13/23 14/7
22/12 25/9 27/20 28/3
35/9 36/9 36/10 37/20
42/3 45/4 53/3 56/5 56/8
56/25 63/16 78/18 80/17
86/12 87/13 89/12 89/17
89/21 89/23 90/14 90/20
92/2 92/2 92/2 92/3 93/8
95/23 97/12 97/24 98/2
98/3 107/11 108/16 108/21
109/1 109/25 110/11 110/22
110/23

bases **[2]**  7/24 9/21

basically **[3]**  90/9 105/18
110/8

basis **[79]**  12/11 21/9
22/17 22/18 23/8 23/23
24/6 24/12 24/16 25/6
25/10 27/24 30/19 30/20
30/21 31/22 35/9 37/18
40/24 42/20 43/12 44/12
45/5 45/9 47/11 48/1 48/3
48/11 49/1 49/18 49/20
51/21 51/22 51/24 52/1
53/8 53/20 55/2 55/24

57/7 57/11 58/19 67/17
79/13 84/10 84/15 84/20
84/21 86/15 87/4 87/14
88/16 88/17 88/19 88/20
89/3 91/7 91/19 92/17
97/4 97/19 97/20 97/21
98/2 98/20 98/23 98/24
99/8 99/9 99/13 99/14
99/20 100/10 110/12
110/24 110/25 111/8 111/9
113/3

bathroom **[21]**  27/14
27/20 27/23 29/1 29/8
29/14 68/2 68/13 69/6
70/12 72/15 83/4 83/6
83/7 83/9 83/13 83/19
84/15 87/24 98/9 106/10

bathrooms **[17]**  18/9
26/23 27/2 27/10 28/20
66/25 67/8 71/24 72/1
89/8 98/1 99/4 99/11
104/22 105/4 109/19 110/3

be **[183]**

beauty **[4]**  27/7 94/24
94/24 110/14

because **[98]**  7/1 9/8 9/24
10/17 11/4 13/1 15/12 15/21
15/25 16/19 19/13 20/2
20/9 23/1 23/2 24/5 24/12
24/13 24/18 26/8 26/12
27/24 29/23 30/21 33/18
34/3 34/7 35/5 37/19
41/13 43/24 45/3 47/25
48/1 48/2 48/7 48/11 49/1
49/9 49/16 50/18 50/21
51/2 51/2 51/19 51/22
51/25 52/7 53/5 53/6
53/20 56/12 57/13 59/20
60/5 60/7 67/20 70/9
75/16 78/1 78/23 79/3
80/3 82/25 83/11 84/21
84/24 87/1 87/11 87/14

88/7 88/21 89/2 89/6
89/7 89/16 90/18 90/22
91/12 91/23 95/7 96/10
99/24 102/13 102/17
102/22 104/21 105/8
105/17 105/19 106/17
109/5 109/18 111/7 113/6
113/17 113/19 114/12

becomes **[1]**  92/6

becoming **[1]**  66/1

been **[33]**  7/21 9/6 9/7
9/19 11/2 11/16 13/4 15/16
27/24 28/1 35/6 35/15
36/14 37/21 40/9 42/12
45/23 46/11 46/13 62/6
76/14 84/22 91/10 91/11
92/14 92/14 92/16 93/7
94/10 106/11 108/15 113/18
114/23

before **[15]**  1/22 13/15
17/16 19/19 20/17 26/17
42/15 47/17 48/16 52/8
61/10 64/10 95/9 105/23
115/5

began **[1]**  61/4

begin **[2]**  63/8 76/23

behalf **[4]**  81/11 82/7
82/12 102/2

behavior **[3]**  91/2 91/3
91/16

behaviors **[1]**  91/5

behind **[1]**  57/5

being **[29]**  5/6 5/15 5/19
6/2 6/19 15/6 15/12
27/13 27/19 27/22 28/20
29/14 65/20 68/12 72/19
76/21 78/8 83/18 84/9
85/8 87/13 87/14 88/1
88/10 89/4 93/8 101/6
102/19

belief **[2]**  60/25 78/5

believe **[14]**  30/13 30/15

**B**

**believe…  [12]**  38/3 49/22 50/6 56/13 56/14 56/21 80/3 86/15 90/3 103/3 104/4 108/2

**believes [4]**  17/24 46/6 56/16 57/3

**benefit [1]**  35/12

**best [2]**  116/7 116/11

**better [6]**  9/19 80/10 80/13 93/20 94/6 102/3

**between [15]**  11/8 14/17 36/14 47/21 53/23 85/3 90/3 90/6 90/15 90/19 101/13 104/6 105/5 105/9 109/3

**beyond [2]**  38/22 110/16

**binary [9]**  54/12 58/16 58/18 59/3 59/8 59/16 59/17 59/19 60/2

**binding [1]**  52/24

**binds [1]**  52/6

**biological [57]**  11/8 22/24 23/5 27/24 28/1 44/3 44/4 45/4 54/17 55/2 55/9 58/17 58/18 59/17 59/19 60/2 60/18 61/13 61/20 66/6 66/24 70/13 71/1 72/16 72/23 72/24 74/23 74/24 77/16 77/17 77/23 79/21 80/2 80/4 80/25 83/13 83/23 84/2 84/3 84/4 84/5 84/6 84/22 84/22 85/9 91/4 91/6 91/8 91/11 91/12 91/18 92/15 92/15 93/9 94/25 99/14 106/15

**biology [1]**  87/23

**Birmingham [4]**  46/19 48/23 110/6 110/6

**bit [1]**  9/16

**blind [1]**  10/3

**board [11]**  5/17 13/20 20/8 20/20 46/20 46/23 100/21 104/12 110/3 113/18 114/9

**body [6]**  70/1 70/24 72/24 74/10 76/22 78/3

**bolsters [1]**  111/14

**bona [1]**  25/6

**born [6]**  23/4 27/24 28/1 84/22 91/10 91/12

**Bostock [64]**  7/5 11/11 12/5 12/5 12/10 22/21 22/21 23/6 23/20 23/21 24/12 27/25 30/11 30/19 31/23 32/3 32/5 32/10 43/11 43/14 43/17 43/20 44/25 45/7 45/10 45/11 46/4 46/4 46/6 46/11 46/16 46/17 47/13 48/8 49/4 49/5 49/21 51/10 51/18 51/20 52/24 52/24 52/25 53/2 53/3 54/16 55/25 56/1 57/12 58/9 58/13 59/25 60/1 66/7 90/9 90/22 104/18 104/21 108/5 109/5 109/8 109/16 109/18 109/25

**Bostock's [5]**  22/25 46/9 51/24 109/8 109/20

**both [7]**  52/11 59/11 89/9 101/22 107/18 107/20 114/7

**bound [1]**  51/6

**boy [17]**  27/5 60/22 83/3 83/7 84/3 84/3 84/4 84/4 84/5 84/13 84/22 91/8 91/10 91/12 92/5 94/3 110/13

**boyfriend [2]**  91/9 91/10

**boys [6]**  29/8 74/10 74/11 74/12 77/7 77/13

**boys' [6]**  8/23 27/20

68/12 83/4 83/5 84/14 107/5 107/7

**Branch [1]**  2/13

**break [1]**  9/16

**brief [12]**  18/6 29/4 30/11 40/4 40/10 47/20 55/10 66/14 67/13 67/14 67/14 110/5

**briefing [2]**  38/5 95/16

**briefly [2]**  28/13 38/3

**bright [2]**  35/4 39/7

**bring [1]**  75/23

**brings [4]**  16/25 18/12 25/11 53/14

**broad [3]**  52/8 108/7 110/11

**broad-based [1]**  110/11

**broadened [2]**  13/2 107/18

**broader [1]**  13/22

**brought [7]**  38/3 74/13 74/18 75/23 94/11 94/20 102/2

**bullies [1]**  83/11

**bunch [1]**  83/11

**burdensome [2]**  41/3 43/2

**business [2]**  47/15 116/20

**but [112]**  7/6 8/15 8/20 9/7 10/7 10/9 10/14 12/13 13/1 14/11 14/23 14/24 16/5 19/12 19/19 22/2 23/4 23/11 23/17 24/1 24/9 27/1 27/1 27/20 33/20 36/3 36/18 38/4 38/14 39/15 44/9 44/15 45/2 45/14 45/16 46/11 46/24 47/19 47/22 48/3 49/19 51/2 53/18 53/25 54/15 59/10 60/10 60/16 62/24 63/11 65/23 66/9 67/4 69/17 71/12 71/22 72/4 72/17 73/5 73/10 73/23 78/16 79/1 81/3

## B

**but…** **[48]**  82/22 83/1
84/4 84/11 84/24 86/8
88/19 88/24 90/11 91/4
91/4 91/12 91/14 91/20
92/11 92/12 93/10 93/19
94/19 95/5 96/4 96/21
98/4 98/18 99/23 100/4
100/13 102/1 102/4 102/8
102/14 103/12 104/16
104/25 105/21 107/1 110/1
110/2 110/8 110/17 111/12
111/16 111/20 111/21 111/25
112/25 113/16 114/20

## C

**California [1]**  42/10
**call [1]**  7/24
**called [2]**  15/14 15/24
**calling [1]**  90/16
**calls [1]**  107/3
**came [2]**  23/12 68/25
**campus [2]**  34/4 34/5
**can [54]**  9/14 9/23 10/15
10/20 11/15 14/16 14/23
15/15 15/20 16/2 16/23
25/5 35/18 37/10 39/3
41/7 41/7 45/17 45/20
46/14 54/16 55/8 56/17
57/11 59/7 59/24 60/21
60/23 67/4 71/17 71/25
71/25 73/13 73/16 79/2
79/21 80/10 83/1 84/3
89/8 92/23 94/7 94/7
94/24 94/25 98/3 99/5
99/19 104/5 104/18 105/15
106/7 111/18 114/16
**can't [24]**  7/15 7/15 8/22
10/3 11/4 31/10 34/2 39/13
41/9 41/12 45/14 48/10
49/16 50/18 50/23 52/6
56/12 56/15 65/22 69/19

73/9 74/22 74/24 110/7
**cannot [7]**  8/11 16/3
55/2 105/9 107/12 109/5
**canon [10]**  24/7 24/9
49/22 50/2 50/3 50/4 51/1
52/3 53/15 54/1
**canons [4]**  51/7 112/19
113/2 114/1
**CAPACITY [4]**  1/9 1/11
1/14 1/16
**capricious [7]**  28/12 29/19
68/17 71/8 73/21 74/5
107/6
**capricious-type [1]**  28/12
**capture [3]**  86/1 86/9
88/23
**card [1]**  105/19
**CARDONA [7]**  1/8 11/14
13/7 13/25 18/22 58/8
114/12
**care [1]**  103/1
**Career [5]**  17/1 18/18
19/21 19/22 104/12
**CARROLL [35]**  1/4 5/12
13/11 13/18 17/2 17/8
17/14 17/18 17/25 18/2
18/5 18/17 20/19 30/17
35/6 35/8 41/24 42/2
42/4 42/8 42/21 68/17
68/20 68/21 80/12 86/18
87/7 89/15 94/24 96/4
100/20 101/15 101/22
101/23 107/17
**Cartwright [1]**  16/7
**carve [4]**  8/20 98/4 111/12
113/1
**carve-out [3]**  8/20 98/4
113/1
**carve-outs [1]**  111/12
**carves [1]**  110/7
**case [49]**  1/5 11/14 13/7
14/12 14/17 15/18 16/7

17/1 17/3 18/18 18/23
19/11 23/10 29/22 29/24
35/16 43/11 48/23 49/25
50/22 51/3 51/6 52/8 59/7
76/15 77/24 78/10 79/14
79/19 88/22 99/24 100/3
100/6 100/7 100/9 100/10
100/13 101/10 101/25 104/7
106/5 106/8 108/15 109/5
109/9 112/7 112/17 112/18
114/1
**cases [8]**  16/18 31/7 37/8
41/24 46/18 66/1 102/2
102/9
**cat [1]**  62/11
**categorical [1]**  39/20
**category [1]**  90/23
**CATHERINE [1]**  1/10
**cats [2]**  63/24 64/1
**cause [22]**  3/8 22/1 22/8
25/17 27/15 28/4 44/17
77/19 77/21 78/7 78/10
78/17 78/20 79/14 81/2
95/23 96/20 97/11 97/13
98/19 99/20 102/22
**caused [1]**  65/15
**causes [4]**  21/17 37/17
70/11 96/21
**causing [1]**  99/7
**certain [11]**  26/24 29/13
52/15 63/18 64/6 90/11
90/13 92/13 109/16 109/20
110/7
**certainly [3]**  15/1 19/23
52/2
**CERTIFICATE [1]**  116/2
**Certificate…………………
………116 [1]**  4/7
**certify [2]**  116/4 116/12
**cetera [1]**  27/7
**CFR [1]**  8/4
**challenge [16]**  22/13 32/11

# C

challenge... **[14]** 32/12
32/16 32/17 33/18 33/19
34/6 34/7 40/4 41/10 44/7
44/21 94/11 94/20 102/24
challenged **[2]** 94/11
102/19
challenges **[5]** 21/6 21/7
22/15 30/9 107/17
challenging **[2]** 43/22
102/12
chance **[1]** 104/1
change **[8]** 14/25 16/2
17/14 17/17 31/21 45/16
61/1 106/10
changed **[1]** 61/7
changes **[2]** 15/5 45/16
characterize **[1]** 62/23
charged **[1]** 94/16
child **[5]** 80/25 81/11 81/11
82/12 82/13
child's **[1]** 80/25
children **[1]** 76/21
chilling **[2]** 15/2 36/13
choice **[1]** 89/5
chooses **[2]** 64/17 64/20
chose **[3]** 68/25 95/25
107/24
Circuit **[26]** 7/11 11/18
16/7 16/10 16/22 17/1 17/3
18/14 18/19 18/23 19/21
20/8 23/22 35/17 35/19
41/4 43/10 43/17 44/1
44/24 48/22 104/8 108/14
109/7 109/10 110/2
Circuit's **[1]** 46/24
circumstance **[1]** 50/9
circumstances **[6]** 10/1
10/3 14/8 34/18 36/11
72/5
cisgender **[16]** 27/18 27/19
28/16 67/7 71/20 83/18

83/20 83/20 83/22 83/25
84/3 84/6 84/7 84/7
85/18 107/3
cite **[5]** 31/3 35/16 46/18
66/11 66/11
cited **[3]** 33/8 33/14 67/13
cites **[2]** 15/17 66/16
citing **[1]** 110/5
civil **[4]** 1/12 1/17 2/13
96/14
claim **[6]** 7/15 35/18 87/5
99/25 100/12 100/15
claiming **[1]** 85/7
claims **[2]** 13/23 106/3
clarifies **[1]** 22/16
clarify **[9]** 44/22 44/24
55/23 56/5 57/11 62/2
75/18 87/10 115/4
clarifying **[2]** 90/7 115/2
CLARKE **[1]** 1/16
class **[13]** 12/14 15/12
77/7 78/25 90/10 90/11
91/14 91/20 91/21 91/23
91/25 92/25 93/2
classes **[4]** 8/16 8/16 8/17
12/11
classification **[2]** 92/8
92/11
classroom **[1]** 36/17
clause **[11]** 11/11 11/14
30/8 30/10 30/15 30/24
96/24 108/11 108/11 115/3
115/5
clear **[31]** 10/10 10/13
11/16 11/16 11/20 11/22
14/19 15/3 17/2 18/14
18/19 18/23 23/17 29/18
32/14 36/19 37/22 44/23
60/20 68/16 75/3 81/13
86/20 105/1 107/13 107/17
108/21 109/1 111/4 113/14
114/1

clearly **[8]** 30/5 65/24
66/1 65/20 99/21 102/14
102/15 102/15
clinical **[1]** 75/8
clothes **[1]** 90/12
coach **[2]** 77/13 77/14
cocounsel **[1]** 5/13
codified **[2]** 7/21 8/4
cognizable **[1]** 9/9
colleague **[4]** 12/21 104/14
104/20 105/18
colleagues **[1]** 46/22
college **[2]** 9/3 16/9
Colleges **[5]** 17/1 18/18
19/21 19/22 104/12
come **[1]** 65/7
comes **[4]** 11/7 11/7 24/14
63/4
comfort **[5]** 68/4 72/6
72/18 72/20 89/23
comfort-level **[1]** 89/23
comfortable **[2]** 99/1 99/3
commandeering **[3]** 31/1
31/2 31/17
commentator **[1]** 75/23
commentators **[3]** 73/14
73/17 106/21
comments **[4]** 66/10 67/6
71/19 73/16
committed **[1]** 112/13
committing **[1]** 112/16
common **[1]** 111/25
comparable **[1]** 99/6
compared **[1]** 8/1
comparison **[5]** 46/20
48/19 48/22 48/24 49/1
compels **[1]** 16/16
compete **[1]** 112/1
competitions **[1]** 18/7
complainant's **[1]** 15/9
complaint **[2]** 81/16 82/5
completely **[2]** 96/17 107/4

# C

**compliance [4]** 17/4 17/8 17/11 20/18
**comply [2]** 11/22 116/13
**component [1]** 14/4
**comport [2]** 32/19 43/2
**compromised [1]** 38/14
**compromises [1]** 106/24
**computer [1]** 3/9
**computerized [1]** 3/9
**concept [2]** 7/19 108/9
**concern [11]** 28/19 28/21 37/19 37/23 37/25 72/10 73/15 76/2 76/2 83/17 84/18
**concerns [22]** 34/14 35/22 37/3 37/4 67/9 67/21 67/22 67/22 68/13 68/14 71/19 71/21 71/23 72/6 72/8 72/12 72/15 72/18 85/6 93/24 107/23 108/2
**conclude [2]** 20/23 86/18
**concluded [10]** 27/13 28/20 32/4 32/5 57/10 67/10 70/23 77/2 112/10 115/13
**concludes [4]** 43/18 44/1 44/24 109/7
**conclusion [6]** 30/4 38/22 51/23 69/1 71/5 85/18
**concurrence [1]** 19/5
**condition [1]** 11/21
**conditions [2]** 11/15 108/13
**condoning [1]** 36/4
**conduct [15]** 14/13 33/21 34/24 35/1 35/9 35/10 36/4 89/15 89/25 90/3 90/20 92/1 92/3 92/9 92/15
**conduct-based [1]** 90/20
**conducts [1]** 92/13
**Conference [1]** 116/14

**confused [1]** 28/6
**Congress [27]** 8/25 9/8 19/14 22/6 27/3 27/8 49/23 49/24 52/3 52/18 53/16 56/25 89/10 92/21 93/3 93/21 93/25 94/7 95/24 96/20 103/16 108/8 109/5 111/21 112/12 113/13 114/3
**connection [1]** 52/19
**consider [9]** 28/15 61/22 62/3 70/4 71/19 72/22 75/15 76/16 109/18
**considered [7]** 30/6 67/6 68/8 68/9 68/10 70/7 77/1
**consistent [10]** 15/16 15/19 16/1 19/20 65/18 80/20 81/5 96/19 106/4 108/24
**consolidated [1]** 102/8
**constitute [1]** 15/15
**constitutes [1]** 21/15
**Constitution [1]** 96/12
**constitutional [6]** 16/23 30/9 38/18 93/21 96/2 108/2
**constitutionality [2]** 93/25 94/17
**construction [7]** 10/5 49/23 51/1 52/3 54/2 112/18 112/19
**construe [1]** 8/11
**contemplates [1]** 105/1
**contempt [1]** 20/13
**context [7]** 36/10 36/10 47/6 47/10 61/18 100/11 104/21
**contexts [2]** 34/1 61/17
**continued [1]** 19/9
**Contrary [2]** 22/19 104/14
**control [5]** 33/23 34/9 34/12 106/16 114/2
**convinced [1]** 7/10

**convoluted [2]** 10/17 10/25
**coordinator [1]** 17/19
**coordinators [2]** 40/18 41/12
**Corner [2]** 19/5 19/11
**correct [6]** 30/19 43/16 55/17 84/20 86/19 116/5
**correctly [2]** 89/19 92/11
**cost [1]** 17/11
**costly [1]** 17/5
**costs [4]** 17/4 17/9 17/11 20/18
**could [13]** 13/16 15/11 20/5 44/10 60/18 73/6 74/2 77/16 83/10 83/14 84/4 85/19 112/15
**couldn't [2]** 66/19 66/19
**counseling [1]** 37/11
**counselor [1]** 86/25
**counselors [1]** 60/24
**counted [1]** 102/4
**counterarguments [1]** 58/7
**country [3]** 63/25 103/5 103/15
**County [1]** 14/12
**couple [2]** 11/19 66/23
**coupled [1]** 15/5
**course [10]** 7/4 8/7 26/8 33/2 36/17 44/20 46/4 64/5 94/6 98/12
**court [94]** 1/1 1/23 3/2 3/2 6/24 7/12 7/12 7/13 9/13 11/13 13/6 13/19 14/11 14/15 15/18 18/22 19/19 20/21 20/22 23/9 23/15 24/11 24/19 29/25 31/7 32/4 32/22 35/15 39/24 40/15 40/23 41/2 41/2 41/25 42/6 42/14 42/16 42/17 42/24 43/3 43/5 45/7 47/15 47/17 48/7 48/16 48/18 48/18 48/21

**C**

**court... [45]** 48/22 49/5 49/8 49/13 49/15 49/20 50/14 50/19 50/21 51/3 52/5 52/13 52/14 52/15 52/20 53/5 53/11 53/15 54/16 59/7 59/24 59/25 60/1 61/10 64/10 65/25 66/1 76/17 94/6 95/10 96/14 97/9 97/11 100/15 102/21 103/19 104/8 104/12 108/5 112/7 112/14 112/20 115/5 116/13 116/18

**Court's [8]** 24/23 31/12 47/11 50/7 53/12 54/3 56/6 113/5

**Court..........................**

**.43 [1]** 4/6

**courts [15]** 13/8 13/24 15/10 15/24 16/4 16/13 41/18 47/22 50/7 50/8 53/11 60/9 65/13 76/17 100/24

**covered [1]** 103/22

**COVID [1]** 116/8

**COVID-19 [1]** 116/8

**create [12]** 7/18 8/19 8/22 8/25 9/18 9/19 11/15 12/10 27/9 27/9 94/7 105/16

**created [5]** 8/3 8/13 8/17 9/1 14/15

**creates [3]** 9/22 13/22 98/4

**creating [3]** 10/5 90/23 90/24

**critical [1]** 65/19

**curriculum [1]** 77/6

**curtains [1]** 71/25

**cut [2]** 44/19 65/2

**CV [1]** 1/5

**D**

**D.C [2]** 2/10 2/14

**damage [1]** 76/21

**damages [3]** 32/23 33/1 33/7

**date [1]** 13/19

**daughter [3]** 27/6 106/9 110/14

**DAVIS [11]** 2/2 5/13 14/12 14/18 32/19 32/21 32/22 33/8 33/13 33/17 46/22

**day [1]** 116/15

**days [1]** 19/4

**de [38]** 6/3 8/5 21/18 22/1 22/9 25/18 27/15 28/4 28/7 44/13 70/20 77/19 77/22 78/7 78/17 78/21 79/3 79/4 79/15 79/23 80/5 91/24 95/23 96/10 96/13 96/20 96/21 97/15 97/16 98/8 98/19 99/7 99/16 99/20 105/13 107/5 107/7 107/15

**deal [1]** 46/25

**dealing [1]** 10/23

**debate [3]** 18/7 33/25 34/4

**debates [1]** 42/5

**decade [1]** 9/20

**decades [1]** 8/10

**decide [2]** 42/17 114/3

**decided [3]** 7/2 10/19 112/7

**decides [1]** 63/13

**decision [12]** 18/19 30/2 30/3 30/7 46/24 46/25 47/14 68/24 70/4 81/16 82/5 113/6

**decision-making [4]** 30/2 30/3 68/24 70/4

**decisions [1]** 52/20

**deep [2]** 60/13 75/8

**deeply [4]** 34/23 80/1 85/1 85/8

**defend [1]** 94/13

**defendants [4]** 1/19 2/12 20/13 112/8

**defendants' [1]** 19/6

**defending [5]** 2/6 2/9 5/22 94/16 94/19

**defer [6]** 81/17 82/6 82/15 82/16 82/20 82/25

**deference [2]** 7/11 7/15

**define [24]** 10/7 52/17 54/21 54/23 55/13 55/19 55/20 55/22 56/2 56/4 56/7 56/12 57/13 57/14 57/15 57/19 57/22 57/24 58/6 60/1 60/7 60/16 76/11 76/12

**defined [4]** 9/7 54/15 59/19 112/13

**defines [1]** 35/8

**defining [2]** 57/12 57/18

**definition [28]** 6/6 13/2 13/21 14/6 14/19 16/3 16/20 18/1 18/4 22/12 32/13 32/15 54/11 54/12 55/5 56/8 58/22 59/3 60/12 97/3 97/5 107/18 107/18 107/22 109/13 111/3 113/15 114/1

**definitions [3]** 32/15 90/18 102/12

**degree [1]** 34/24

**delay [6]** 13/19 18/14 18/20 20/8 20/9 20/20

**delays [1]** 20/14

**delineations [1]** 93/22

**demand [1]** 78/13

**denied [8]** 15/6 27/19 27/22 28/2 87/13 87/14 87/15 93/7

**D**

denies [2]  14/9 34/20
deny [1]  110/25
denying [2]  14/14 111/8
departed [1]  19/14
DEPARTMENT [147]
Department's [8]  13/8
 16/18 45/7 46/16 64/8
 88/6 97/5 102/12
depend [1]  57/21
Depends [1]  57/19
describe [1]  37/3
describes [1]  21/8
describing [5]  26/15 50/22
 51/3 51/20 51/22
designated [1]  111/19
designation [4]  108/25
 109/23 112/20 113/9
designations [1]  109/6
determination [1]  60/12
determine [5]  50/17 50/17
 64/22 64/24 84/25
determined [3]  65/22
 71/22 112/14
determines [1]  43/10
development [1]  78/4
developmentally [1]  77/12
deviate [1]  108/1
DEYO [1]  2/8
dictate [1]  31/10
dictating [1]  31/14
did [35]  8/19 12/10 23/3
 23/4 30/7 31/16 33/13
 44/19 46/22 49/5 52/23
 57/12 58/2 58/13 59/1
 59/25 65/21 66/20 67/5
 69/1 69/24 71/18 71/19
 72/17 72/22 75/14 75/20
 85/22 101/3 101/3 104/24
 105/23 111/21 114/3 114/17
didn't [23]  24/19 27/9
 28/15 29/6 33/16 41/25

47/18 57/14 57/15 57/15
 58/25 59/2 60/7 60/7
 60/7 61/19 65/2 70/3
 75/21 75/23 85/17 104/22
 112/25
difference [10]  24/13
 90/3 90/6 90/15 90/19
 101/5 101/8 101/13 104/6
 109/17
differences [12]  11/8
 47/20 47/21 47/22 47/23
 98/17 105/5 105/8 105/8
 109/3 111/11 113/20
different [70]  8/12 9/2
 21/21 22/5 22/15 23/5
 24/1 24/4 25/19 27/3 27/5
 29/5 32/15 34/15 34/22
 35/13 36/7 38/17 40/13
 41/24 42/16 43/18 44/23
 45/21 45/24 46/19 47/1
 48/12 49/17 49/23 49/24
 50/14 51/1 51/5 52/4 52/4
 53/25 54/4 58/4 58/5
 61/5 61/13 61/22 61/24
 62/10 62/10 62/17 62/24
 62/25 63/17 64/4 65/13
 68/19 69/15 73/24 74/2
 76/1 90/14 91/18 92/20
 95/9 96/12 96/18 96/25
 96/25 97/1 98/5 101/6
 104/20 105/12
differential [1]  111/24
differentiating [1]  25/10
differentiation [1]  97/12
differently [6]  10/20
 53/17 59/22 68/20 97/8
 105/7
direct [1]  81/4
directed [1]  8/25
disagree [4]  81/15 82/5
 110/1 110/17
disagreed [1]  23/10

disagrees [3]  15/12 40/15
 40/23
disciplinary [2]  14/22
 33/22
discipline [1]  14/23
discomfort [1]  67/19
discretion [1]  64/21
discriminate [4]  23/7 55/2
 97/3 110/12
discriminated [1]  64/2
discriminates [1]  87/3
discriminating [2]  23/8
 91/7
discrimination [80]  7/5 7/6
 7/20 7/24 8/3 9/6 9/6
 9/21 9/22 10/21 12/13
 12/15 12/17 12/18 21/9
 21/15 21/17 21/20 22/7
 22/9 22/17 22/17 23/2
 23/5 23/23 24/16 25/16
 25/17 26/7 26/10 27/16
 27/21 27/23 28/5 30/18
 30/20 30/21 32/7 45/4
 51/19 53/6 55/24 57/7
 58/19 81/17 82/6 84/24
 86/15 87/11 87/19 87/22
 87/25 88/5 88/6 88/9
 88/13 88/15 88/20 91/18
 97/5 97/22 105/9 108/21
 109/1 110/21 110/23 111/2
 111/5 111/7 111/13 111/23
 112/3 113/7 113/11 113/14
 113/16 113/17 113/23 114/2
 114/3
discriminatory [2]  25/11
 33/21
discuss [5]  5/25 6/5 12/22
 69/13 110/20
discussed [5]  12/25 18/5
 18/22 40/16 104/9
discussing [3]  39/2 39/12
 72/18

**D**

discussion [11]  4/6 14/17 25/12 33/1 64/1 65/11 66/9 66/16 107/23 114/11 115/2

discussions [1]  105/17

dismissed [4]  71/6 100/7 100/10 100/13

disputed [1]  112/23

disregard [1]  51/7

disruptions [1]  67/15

dissent [2]  14/17 58/9

dissenting [2]  32/2 58/12

distinct [1]  53/22

distinction [4]  24/17 48/2 53/23 105/22

distinctions [6]  8/8 11/5 25/9 25/9 54/6 113/24

distinguish [4]  23/25 60/5 76/10 85/3

district [17]  1/1 1/2 1/4 1/23 3/2 5/12 13/17 15/18 16/8 16/10 17/22 18/7 18/11 42/16 63/17 77/6 116/18

district's [1]  15/18

districts [2]  17/12 92/22

disturbed [5]  80/1 83/12 85/1 85/2 85/8

DIVISION [4]  1/3 1/17 2/13 116/19

do [47]  16/4 17/15 17/23 29/15 31/9 31/11 43/20 46/12 47/17 48/19 53/11 55/7 55/7 55/13 58/25 60/9 60/23 61/9 62/7 62/23 64/4 65/6 67/1 68/23 69/11 69/12 69/17 72/3 76/8 76/10 76/11 80/14 81/4 81/6 81/22 84/25 85/3 90/2 90/7 94/6 95/23 97/4 98/11

101/5 103/7 103/17 105/21 105/21 106/3

doctrine [11]  9/12 31/1 31/2 31/17 31/18 31/19 32/9 102/11 102/18 102/21 103/8

documentation [1]  60/24

documented [1]  61/18

documents [3]  8/1 11/13 23/12

does [53]  12/13 17/23 20/12 20/12 20/13 21/10 22/8 22/23 26/2 26/15 26/23 27/15 27/16 28/3 38/21 39/22 43/11 43/15 43/16 43/17 44/25 49/24 51/9 52/16 52/24 52/25 53/11 54/1 56/8 56/14 57/5 57/8 61/22 64/19 68/18 71/18 76/12 78/16 78/18 79/14 79/16 82/16 82/19 85/13 93/21 97/6 97/18 100/18 100/20 104/15 106/21 109/9 112/17

doesn't [43]  14/25 19/18 25/2 25/24 26/6 26/8 26/9 26/13 27/1 30/3 32/19 35/4 39/4 39/19 44/2 44/17 47/19 51/1 54/21 54/23 63/15 66/5 68/19 69/1 70/4 71/15 76/15 78/11 78/15 78/23 80/3 81/12 82/23 84/13 85/12 87/15 88/7 89/23 92/6 98/11 99/20 101/18 110/20

dog [1]  62/11

doing [6]  19/20 23/19 31/21 53/2 83/14 95/18

don't [57]  22/2 25/25 28/9 28/25 28/25 29/14 29/21 36/23 37/11 37/18 37/25 38/3 38/20 41/13

44/21 46/3 46/14 48/9 50/11 52/13 53/3 53/25 56/11 56/21 57/22 60/10 60/15 62/20 63/10 64/9 66/19 69/19 69/23 71/23 73/4 74/4 75/16 75/17 75/18 75/21 76/3 76/22 77/4 78/9 82/16 85/13 90/17 93/17 94/10 95/10 99/24 101/7 101/16 101/17 102/7 103/3 103/17

done [3]  49/13 65/7 74/12

door [2]  68/2 83/8

doors [1]  87/25

dormitories [2]  10/8 10/9

dormitory [1]  10/11

down [2]  9/16 82/3

downplay [1]  46/3

Dr. [1]  5/18

Dr. Ledbetter [1]  5/18

drastic [3]  20/8 20/16 104/9

draw [3]  35/4 39/7 46/21

driving [1]  46/4

due [4]  38/19 39/11 40/12 116/8

during [6]  9/25 38/3 38/10 38/23 59/14 59/23

**E**

earlier [2]  25/14 115/2

easy [1]  75/13

echo [1]  29/6

echoes [1]  67/14

education [82]  1/8 1/10 1/13 8/2 8/16 8/16 9/14 11/25 21/25 22/7 22/22 23/12 23/16 23/18 26/11 27/12 28/15 28/18 29/11 29/17 29/22 29/24 30/6 35/21 36/8 36/19 37/10 38/15 39/6 45/22 46/6 46/23 52/23 52/23 53/2

**education...** **[47]** 54/14 54/23 56/2 56/4 57/10 57/14 57/17 58/20 59/19 60/6 63/19 63/23 64/17 64/21 65/9 65/24 66/6 67/5 67/6 67/23 68/7 68/18 68/22 68/23 71/18 72/2 72/6 73/20 73/25 76/25 77/1 78/25 79/7 81/23 83/17 84/8 85/5 85/14 86/8 86/11 87/6 89/7 96/6 97/25 106/2 108/21 111/17

**Education's** **[3]** 12/25 23/10 46/1

**educational** **[9]** 14/10 14/14 15/6 15/10 33/6 37/10 65/15 80/20 105/2

**EEOC** **[1]** 35/16

**effect** **[6]** 13/10 14/14 15/2 17/16 100/19 114/13

**effective** **[1]** 13/19

**eight** **[1]** 42/8

**Electric** **[1]** 41/5

**electronic** **[1]** 36/1

**elementary** **[8]** 9/2 69/13 70/24 74/9 74/10 75/12 83/3 83/9

**elementary-aged** **[1]** 75/12

**Eleventh** **[2]** 16/7 108/14

**Eleventh Circuit** **[1]** 16/7

**else** **[7]** 45/3 49/17 79/17 103/20 114/22 114/23 114/25

**embedded** **[1]** 98/12

**embodies** **[1]** 7/17

**emphasize** **[1]** 85/25

**employee** **[2]** 12/12 104/25

**employees'** **[1]** 13/13

**employers** **[1]** 25/5

**enacted** **[4]** 11/17 20/4

32/2 89/10

**enacting** **[1]** 54/7

**enactment** **[1]** 11/23

**enacts** **[1]** 7/18

**encompass** **[3]** 46/2 57/6 57/8

**encompasses** **[1]** 107/19

**encouraging** **[1]** 36/4

**end** **[2]** 29/12 74/6

**endanger** **[1]** 17/24

**ender** **[1]** 15/1

**endorsing** **[1]** 33/15

**enduring** **[3]** 105/8 109/2 111/10

**enforce** **[1]** 17/25

**enforcement** **[4]** 18/3 33/4 33/5 114/19

**enforcing** **[1]** 101/14

**engage** **[6]** 62/15 63/23 64/1 90/13 93/8 94/19

**engaging** **[2]** 80/18 92/4

**enjoined** **[2]** 16/14 42/12

**enjoining** **[2]** 42/25 101/14

**enough** **[5]** 64/19 96/22 102/25 103/1 103/13

**ensure** **[1]** 38/13

**ensuring** **[1]** 39/8

**entire** **[2]** 40/8 102/14

**entirely** **[4]** 46/7 76/25 79/17 96/19

**entirety** **[1]** 42/25

**entitled** **[1]** 116/6

**entitlement** **[1]** 7/3

**environment** **[9]** 13/22 13/23 14/4 16/24 32/12 32/13 34/17 106/17 107/16

**EPA** **[1]** 41/5

**equal** **[9]** 8/22 93/25 95/7 95/8 96/11 96/17 96/24 115/3 115/5

**equalize** **[1]** 108/22

**equity** **[1]** 43/3

**error** **[1]** 75/4

**especially** **[2]** 107/15 108/1

**essence** **[1]** 110/7

**essentially** **[7]** 21/24 23/16 32/18 44/11 44/15 51/9 67/15

**established** **[1]** 14/12

**establishes** **[1]** 105/18

**esteem** **[1]** 75/14

**et** **[1]** 27/7

**evaluation** **[1]** 45/6

**even** **[29]** 7/10 8/8 9/12 10/17 10/21 11/20 13/3 14/24 15/4 15/21 16/9 16/11 18/8 22/8 33/14 36/4 40/11 40/14 41/25 62/15 64/1 74/7 77/25 82/24 95/11 97/19 97/20 98/6 109/20

**event** **[1]** 94/11

**ever** **[2]** 76/16 108/15

**every** **[8]** 25/15 47/7 47/8 76/16 86/1 86/2 88/23 102/23

**everybody** **[2]** 102/13 102/25

**everyone** **[5]** 8/20 9/3 11/24 83/8 104/16

**everything** **[2]** 45/3 47/7

**evidence** **[24]** 28/3 29/3 29/9 39/13 61/12 63/10 63/20 65/21 67/23 67/24 69/24 72/7 72/9 72/11 72/13 73/9 84/9 85/5 85/13 85/15 85/17 86/12 86/12 106/21

**exact** **[1]** 91/5

**exactly** **[12]** 27/8 47/16 50/1 50/1 53/1 55/11 58/19 60/8 65/1 65/5 97/17 99/18

**example** **[3]** 69/25 98/1

# E

example... **[1]** 106/8
examples **[3]** 38/25 62/9 114/4
exceeding **[1]** 57/18
exceeds **[1]** 13/8
except **[1]** 110/13
exceptions **[12]** 10/4 25/20 27/3 95/17 96/8 96/8 110/7 110/15 111/24 113/1 113/1 113/3
excluded **[10]** 10/8 27/11 28/2 78/18 79/4 83/19 84/10 88/18 88/25 89/4
excluding **[4]** 44/12 65/14 71/24 89/16
exclusion **[16]** 27/20 28/3 77/24 79/13 84/19 84/19 84/21 84/23 87/13 88/17 88/25 89/10 89/17 93/10 97/12 98/18
exclusions **[4]** 89/12 95/3 95/23 95/23
excuse **[2]** 56/5 108/12
exempt **[6]** 10/20 25/24 25/25 26/6 26/12 27/2
exempt 106.41 **[1]** 26/6
exempted **[4]** 21/22 93/5 93/11 96/21
exemption **[5]** 8/20 25/21 26/25 98/13 98/15
exemptions **[11]** 25/20 26/25 27/5 27/9 93/12 93/13 94/2 94/5 94/8 94/9 98/16
exempts **[3]** 26/2 26/23 26/24
exercises **[1]** 33/22
exist **[3]** 82/23 85/12 86/8
existed **[1]** 19/3
existing **[1]** 101/18

exists **[3]** 76/23 86/7 86/22
expands **[1]** 13/23
expel **[1]** 109/24
explain **[8]** 23/13 46/15 47/4 52/9 55/23 56/20 57/3 77/11
explained **[2]** 19/4 43/19
explaining **[2]** 89/19 92/10
explains **[1]** 28/18
explanation **[1]** 46/9
exposed **[3]** 72/19 73/18 76/21
expression **[1]** 36/1
expressly **[6]** 22/6 39/22 47/13 79/3 82/10 109/6
extend **[3]** 18/10 18/11 38/22
extends **[2]** 14/7 15/4
extent **[18]** 27/11 28/23 29/21 31/25 35/23 39/1 39/15 40/7 40/23 43/4 44/1 67/18 73/13 81/8 86/7 95/20 106/2 109/16
extraterritorial **[1]** 33/19
extreme **[1]** 19/6
extremely **[1]** 62/12

# F

face **[4]** 29/15 72/11 72/14 85/18
faces **[1]** 79/11
facilities **[10]** 8/12 8/15 10/5 21/11 27/1 27/4 89/4 89/12 105/4 105/11
facility **[1]** 87/15
facing **[2]** 63/7 87/17
fact **[28]** 19/14 24/10 24/19 26/5 27/17 30/18 32/6 35/6 39/6 42/3 44/16 50/3 53/25 58/15 58/23 66/4 68/6 68/17 70/3 71/14 78/20 79/24

80/15 89/22 91/15 95/16 99/12 100/7
fact-specific **[1]** 79/24
facto **[1]** 91/24
factor **[1]** 76/16
factors **[14]** 27/13 29/18 29/23 30/1 30/7 34/15 34/22 35/2 68/8 68/15 68/16 68/19 68/25 76/2
facts **[7]** 79/8 79/9 79/10 79/12 79/25 80/9 80/17
factual **[1]** 34/24
fail **[2]** 21/7 22/16
failing **[2]** 36/5 107/6
fails **[1]** 34/7
fair **[2]** 110/18 112/25
fairness **[2]** 38/13 112/1
fall **[18]** 29/6 38/20 40/4 40/6 40/8 40/22 41/1 41/14 44/9 44/14 44/18 44/25 45/2 53/24 56/8 88/7 89/13 89/24
fallback **[1]** 7/14
falls **[2]** 43/14 43/15
far **[2]** 13/8 41/19
fashion **[1]** 65/8
fast **[3]** 73/3 81/20 82/2
father **[2]** 27/6 110/14
father/son **[2]** 27/6 110/14
fault **[1]** 74/22
FCRR **[3]** 3/2 116/4 116/17
fear **[1]** 67/21
fears **[1]** 67/18
federal **[15]** 2/13 7/2 11/15 11/25 20/3 29/25 31/5 31/8 31/9 31/13 31/15 60/9 63/15 65/13 106/20
feel **[14]** 60/22 60/22 66/21 67/1 67/19 68/5 78/8 79/19 84/17 99/1 99/3 103/13 103/21 106/15
feels **[3]** 31/8 37/9 85/20

# F

**fees [1]** 116/12
**felt [3]** 61/3 63/23 65/11
**female [8]** 11/8 27/25 28/1 54/12 72/23 106/11 106/14 106/18
**females [6]** 74/24 94/25 106/6 108/22 109/3 112/2
**few [10]** 7/13 13/15 19/4 20/17 30/9 43/7 93/12 102/9 108/4 111/16
**fide [1]** 25/6
**fifth [26]** 11/18 16/22 17/1 17/3 18/14 18/19 18/23 19/21 20/7 23/22 35/17 35/19 41/4 43/10 43/17 44/1 44/24 46/24 48/21 77/6 77/7 77/8 104/8 109/7 109/10 110/2
**fifth grade [2]** 77/7 77/8
**file [3]** 82/5 87/4 102/25
**filed [2]** 66/15 67/14
**filing [1]** 81/16
**final [3]** 18/21 45/1 82/11
**finally [2]** 16/18 18/2
**find [1]** 110/8
**finds [1]** 8/5
**firing [2]** 12/12 23/1
**first [46]** 2/9 7/18 7/21 14/16 14/18 16/6 16/7 17/12 21/8 22/13 22/16 25/23 32/17 32/21 32/24 35/24 35/25 36/6 36/7 36/13 36/14 36/21 36/25 37/4 37/6 37/12 37/15 37/19 37/23 37/25 38/7 38/16 39/4 39/10 39/21 40/9 40/12 41/17 53/19 64/18 107/21 107/23 108/10 108/17 110/20 112/14
**Fisher [1]** 112/7

**five [2]** 6/9 8/10
**flag [1]** 90/20
**flip [1]** 92/15
**flips [1]** 105/15
**floodgates [1]** 102/23
**Florida [1]** 42/22
**follow [2]** 53/4 56/11
**followed [1]** 60/6
**following [1]** 56/6
**follows [1]** 30/14
**footnote [3]** 59/11 59/13 59/21
**footnotes [1]** 66/9
**force [3]** 13/10 17/25 77/16
**forced [7]** 29/14 68/12 72/15 77/22 85/8 93/8 106/6
**forces [1]** 46/4
**forecloses [1]** 12/7
**foregoing [2]** 116/5 116/6
**forfeited [1]** 40/9
**form [7]** 8/3 9/22 10/21 79/16 79/17 101/19 111/12
**format [1]** 116/12
**forms [1]** 111/22
**FORT [6]** 1/3 1/6 2/4 3/3 116/19 116/20
**forth [2]** 31/20 65/20
**forward [2]** 99/24 100/6
**found [4]** 33/10 65/14 85/17 105/14
**four [2]** 42/13 104/4
**fourth [2]** 7/11 38/2
**free [4]** 13/13 17/19 34/3 60/21
**free-speech [2]** 13/13 17/19
**FREEDOM [3]** 2/6 2/9 5/22
**frequency [1]** 34/25
**front [2]** 23/11 24/14

**fully [1]** 12/1
**functionally [2]** 91/21 91/22
**fundamental [1]** 55/12
**funding [3]** 11/15 11/25 80/11
**further [3]** 13/1 116/8 116/12

# G

**gag [4]** 38/6 39/21 44/7 109/13
**gambling [1]** 31/6
**GARLAND [1]** 1/14
**gather [1]** 103/5
**gathering [1]** 39/13
**gave [1]** 74/20
**gay [3]** 90/25 92/4 92/6
**gears [1]** 40/5
**gender [72]** 6/1 7/2 7/6 7/7 7/19 7/22 9/18 10/8 10/21 11/3 11/10 12/18 13/24 14/3 15/23 16/1 22/18 27/14 29/1 29/14 30/22 37/17 37/20 37/22 44/2 44/5 44/12 45/2 46/13 55/3 57/24 58/6 60/3 60/11 60/16 60/16 60/17 60/25 61/2 61/5 61/5 61/11 61/13 61/19 62/16 62/18 65/19 66/5 78/9 80/21 81/16 82/5 84/1 87/16 89/17 89/22 91/3 91/6 92/19 93/10 98/5 104/24 105/20 105/24 106/4 107/11 107/19 108/16 109/14 109/21 109/25 114/19
**general [6]** 1/15 1/17 26/6 26/9 94/18 112/22
**generally [1]** 50/19
**genitals [3]** 72/19 73/18 79/21

# G

genuine [2]  28/25 29/1
genuinely [1]  60/25
Georgia [1]  42/22
get [3]  64/8 66/19 66/20
gets [1]  10/17
getting [2]  65/23 65/24
GHEIBI [2]  2/12 6/17
Gheibi.........................
..............20 [1]  4/5
girl [11]  27/5 27/19 27/22
60/22 68/12 75/12 84/5
84/6 84/22 91/11 110/13
girl's [1]  27/23
girls [11]  29/8 29/8 69/14
69/14 69/25 74/11 74/11
74/23 77/8 77/14 84/15
girls' [4]  83/9 83/13 84/14
84/23
give [4]  6/11 65/22 80/1
104/1
given [3]  46/17 95/1 95/15
gives [1]  38/25
gmail.com [2]  3/4 116/21
go [25]  13/10 20/17 21/7
22/14 24/3 26/12 27/2
28/11 32/11 39/24 57/14
60/16 65/2 65/3 65/11
66/24 74/1 77/17 77/22
78/2 81/6 87/24 99/24
100/6 104/18
goal [2]  33/5 33/6
goes [23]  17/15 21/13
25/19 26/14 34/22 37/2
38/4 38/15 38/21 40/17
41/11 53/19 54/5 64/17
65/25 72/2 77/18 82/9
82/25 86/4 88/21 103/8
108/19
going [45]  8/24 12/1 17/15
23/16 25/16 26/17 26/19
28/24 29/1 31/15 34/10
34/23 34/24 36/12 37/5
39/1 35/6 41/4 42/6 42/9
47/8 51/9 64/22 67/19
69/16 73/20 75/7 77/11
79/23 81/2 81/6 86/1 86/8
86/9 88/23 89/13 92/20
92/21 93/1 93/3 96/17
98/18 109/18 109/24 113/2
good [14]  5/11 5/14 5/15
5/24 6/8 6/16 6/19 21/1
21/2 23/24 47/14 103/3
107/23 107/25
got [4]  7/16 12/14 66/8
100/19
government [33]  7/2 7/10
7/14 7/23 8/1 8/5 8/13
8/17 9/19 19/9 19/11 20/3
20/10 31/8 31/9 31/13
31/16 41/21 42/15 59/15
63/5 63/7 63/9 63/13
63/15 63/18 87/4 89/10
94/12 94/13 94/20 95/15
115/6
government's [11]  7/9
20/1 21/4 40/24 59/23
94/23 95/3 95/11 95/13
110/5 112/24
grade [3]  77/6 77/7 77/8
grafting [1]  109/4
grant [5]  20/21 33/6
92/12 101/3 101/4
granted [1]  92/8
granting [1]  101/13
great [3]  26/15 37/2
38/15
green [1]  36/20
grievance [6]  38/5 38/11
38/14 38/22 38/23 45/23
ground [1]  40/11
grounds [3]  24/4 32/18
100/14
group [6]  62/14 77/17

78/2 79/20 80/2 80/25
grouped [1]  78/9
guess [6]  48/17 59/1 62/8
77/16 92/5 113/6
guidance [10]  8/1 11/13
23/12 33/9 33/13 52/21
53/10 53/13 54/4 72/2
gym [2]  77/13 77/14

# H

had [30]  8/10 19/2 23/2
23/13 27/24 28/1 29/5
29/17 43/5 46/11 49/13
49/15 63/17 66/15 68/9
68/15 68/23 72/4 72/5
73/25 75/24 84/21 91/10
91/17 91/17 92/14 106/11
106/16 112/11 115/3
hand [1]  113/9
handful [1]  42/21
happen [1]  77/11
happened [2]  19/17 23/4
happy [1]  80/14
harass [4]  29/2 29/8
67/16 68/1
harassing [1]  37/20
harassment [29]  6/6 13/3
13/21 13/23 14/5 15/4
15/15 16/5 16/11 16/24
18/1 22/12 32/12 32/13
33/9 33/10 34/3 34/17
35/5 35/7 35/8 35/18
36/15 36/16 37/14 43/23
44/3 44/5 109/13
harassments [1]  37/9
harm [84]  6/3 8/5 21/18
21/20 22/2 22/9 25/18
27/16 27/21 28/4 28/7
28/21 29/15 44/13 44/17
63/7 63/22 64/19 65/16
66/18 66/21 66/24 67/1
67/11 67/11 68/13 69/13
69/13 69/16 69/17 70/12

# H

**harm...** **[53]** 70/20 70/23 72/12 72/21 72/23 73/15 73/17 74/9 77/20 77/22 78/7 78/10 78/17 78/21 79/3 79/4 79/15 79/17 79/18 79/23 80/5 81/2 84/11 84/18 84/24 84/25 85/3 85/18 85/22 95/1 95/3 95/17 95/18 95/24 96/10 96/13 96/15 96/20 96/21 97/11 97/15 97/16 97/16 98/8 98/19 99/7 99/17 99/20 105/13 105/24 107/5 107/7 107/15

**harmed [4]** 70/1 86/17 86/23 87/3

**harmful [4]** 12/9 69/6 69/9 70/19

**harms [3]** 29/12 74/23 107/6

**has [90]** 7/2 7/12 7/14 7/21 8/3 9/6 9/19 9/24 10/12 10/14 10/19 11/21 12/20 14/14 14/21 15/1 15/16 16/22 17/8 17/19 19/9 20/22 23/12 23/22 24/11 24/11 25/4 26/18 31/21 32/14 34/8 34/18 34/19 35/17 35/21 36/14 37/21 37/24 39/24 40/9 41/2 42/12 42/14 43/6 45/22 47/15 48/7 48/18 48/21 48/22 49/16 51/3 52/5 52/15 52/24 53/5 53/15 53/18 54/14 56/22 56/25 58/20 58/21 59/19 75/25 76/17 77/6 81/8 81/10 84/15 87/24 91/9 93/4 93/7 93/24 95/15 96/12 98/13 98/15 100/3 101/25 103/19 105/6 107/9

**hasn't [1]** 62/6

**have [100]** 7/16 8/21 11/16 11/16 13/4 13/8 13/14 13/25 15/10 15/24 16/13 16/15 17/15 17/22 28/19 28/25 29/5 32/1 32/6 34/16 35/5 35/15 35/21 37/15 41/8 41/16 41/18 41/19 42/10 43/20 45/16 46/12 46/13 47/22 50/16 51/24 55/7 59/22 60/9 63/11 64/7 65/14 65/15 65/17 66/23 68/13 68/20 70/10 70/24 71/7 71/25 72/24 74/7 74/12 74/13 74/14 74/14 75/8 75/14 76/16 76/17 76/20 77/4 77/15 79/21 82/16 83/3 89/8 89/21 91/11 91/16 92/13 92/14 92/16 93/21 93/22 94/20 98/5 98/16 99/19 99/23 100/25 100/25 102/1 102/1 102/2 102/11 102/15 102/15 104/1 104/4 106/10 107/2 108/2 108/13 110/11 111/19 113/19 113/24 114/23

**haven't [1]** 65/7

**having [6]** 67/7 69/14 70/1 72/23 74/9 80/1

**he [11]** 15/12 19/13 83/11 83/13 84/3 84/22 87/1 87/1 88/1 88/10 91/12

**he's [6]** 83/10 83/12 83/12 85/1 88/1 88/12

**head [1]** 105/15

**health [6]** 65/16 65/19 77/6 77/8 77/9 80/25

**hear [2]** 73/5 116/7

**hearing [2]** 1/22 73/5

**heavily [1]** 35/23

**heightened [1]** 106/16

**held [8]** 13/6 13/8 19/21 30/11 35/17 60/25 108/14 110/2

**help [3]** 63/1 90/5 112/23

**her [6]** 1/11 1/16 69/7 106/9 106/16 106/17

**here [80]** 5/6 5/8 5/16 5/19 6/2 6/19 6/25 18/13 18/15 21/4 21/6 21/12 22/13 22/15 22/19 22/22 23/17 23/21 24/7 24/10 24/23 29/6 29/18 30/6 30/16 31/15 31/22 32/10 38/1 40/1 40/16 41/7 41/10 41/16 41/23 42/2 42/11 46/1 46/22 47/6 47/23 49/21 50/24 52/14 52/23 53/2 53/4 53/20 53/24 54/6 56/19 56/20 56/22 57/5 57/17 58/13 63/10 65/10 66/9 67/14 68/5 68/17 72/19 75/2 76/10 83/16 87/2 89/15 90/22 95/6 95/13 95/21 97/24 99/23 100/5 101/19 104/6 104/13 107/13 108/9

**herring [1]** 26/21

**hesitant [5]** 78/10 78/22 79/1 79/8 80/7

**high [6]** 70/25 74/11 74/11 102/4 102/5 102/6

**higher [1]** 33/3

**highlight [1]** 98/11

**highlighting [1]** 95/22

**highlights [1]** 29/4

**him [3]** 81/2 83/12 83/14

**hire [1]** 25/5

**his [4]** 1/8 1/14 19/5 69/7

**historically [1]** 105/6

**HOFFMANN [2]** 2/5 6/5

**H**

Hoffmann....................
................**13 [1]** 4/4
**hold [7]** 28/25 70/6 70/6
73/2 74/24 86/21 102/7
**Holder [1]** 104/7
**holding [2]** 11/20 12/6
**holistic [1]** 46/2
**Homosexuality [1]** 90/5
**Honor [17]** 5/10 6/16
12/20 12/24 21/1 47/6
58/5 58/7 71/9 80/7 95/21
104/3 104/19 108/3 114/11
114/17 114/24
**Honor's [1]** 51/8
**HONORABLE [1]** 1/22
**hook [2]** 10/22 12/15
**hostile [8]** 13/22 13/23
14/4 16/24 32/12 32/13
34/16 107/16
**housing [1]** 10/16
**how [39]** 10/10 12/4 14/21
16/15 16/16 27/8 28/7
28/8 44/18 45/7 46/9
48/19 52/14 52/20 56/24
57/19 57/21 62/23 63/25
65/6 65/23 66/20 68/24
72/2 76/10 76/11 76/12
79/6 80/10 84/25 85/3
90/12 105/11 106/9 107/5
109/25 110/23 112/17
113/17
**however [1]** 46/19
**huh [1]** 55/16
**human [1]** 61/18
**hundreds [1]** 11/6
**hyperlink [3]** 66/12 66/13
66/13
**hypothetical [7]** 78/11
80/15 84/10 84/13 85/10
91/8 95/11

**I**

**I'll [2]** 28/13 52/12
**I'm [54]** 6/16 43/21 44/19
45/17 45/20 51/13 52/2
52/5 52/9 54/25 55/11
56/10 56/24 57/20 58/1
59/1 59/14 62/3 62/20
63/24 64/2 65/6 65/10
67/3 71/2 71/10 71/10
72/20 72/20 72/25 73/5
73/5 73/20 74/25 76/24
78/10 78/22 79/8 80/7
80/14 81/14 81/19 81/21
82/2 88/5 89/18 90/16
92/10 92/10 92/23 95/12
96/1 100/17 100/19
**I've [2]** 55/10 103/20
**idea [4]** 9/13 16/1 38/12
67/6
**identified [2]** 23/3 96/14
**identifies [11]** 61/21 61/24
68/12 70/13 77/15 78/2
84/1 84/4 84/5 98/3 114/4
**identify [23]** 12/2 24/25
29/13 29/15 42/8 48/9
49/5 55/23 60/18 61/13
61/19 62/13 62/23 62/24
63/24 63/25 64/4 69/7
71/11 73/9 78/9 99/2 99/4
**identifying [6]** 61/4 62/9
62/11 66/4 66/5 107/2
**identities [2]** 105/21
105/25
**identity [64]** 6/1 7/3 7/6
7/7 7/19 7/23 9/18 10/8
10/21 11/3 11/11 12/19
13/24 15/1 15/23 16/1
22/18 27/15 29/1 30/22
37/17 37/20 37/22 44/2
44/5 44/12 45/2 46/13
55/3 57/24 58/6 60/3
60/11 60/16 60/16 60/25

61/2 61/6 61/8 61/11 62/16
62/19 63/19 80/21 81/17
82/6 84/1 84/2 87/16
89/17 89/22 92/19 93/10
98/5 104/24 105/20 106/4
107/11 107/19 108/16
109/15 109/22 109/25
114/19
**if [111]** 7/15 8/22 9/13
11/20 13/10 17/15 18/16
19/2 19/17 20/4 21/17
21/19 22/8 22/25 27/13
30/19 30/22 39/12 40/15
41/7 43/5 43/10 43/14
43/16 43/17 44/23 44/24
48/18 49/13 49/15 50/4
51/19 53/5 53/23 54/7
54/21 55/5 55/13 55/19
56/12 57/16 58/5 58/16
58/18 58/22 61/3 61/7
61/24 64/3 64/6 67/3
68/11 69/7 69/23 70/13
71/6 72/15 73/6 73/16
73/18 73/23 73/24 74/7
74/13 74/14 74/18 74/20
75/11 75/22 75/23 76/22
77/5 77/13 77/14 77/21
77/25 78/1 78/18 79/25
80/23 82/23 83/1 84/3
84/5 85/1 85/21 86/17
87/12 89/18 90/11 91/10
92/4 92/10 92/15 93/6
94/10 97/19 97/20 98/6
100/9 100/13 102/21
102/21 103/5 109/7 109/10
109/20 109/24 113/2 114/8
114/14
**ignores [2]** 106/5 107/4
**illegal [4]** 31/6 51/21 93/2
93/3
**illuminated [1]** 105/18
**immaturity [1]** 77/10

immediate **[1]**  17/5
imminent **[1]**  78/4
impact **[1]**  15/9
impacting **[1]**  103/5
impacts **[1]**  103/15
impermissible **[1]**  105/22
implementing **[2]**  43/12
43/13
implicates **[1]**  102/11
importance **[2]**  46/3 55/14
important **[12]**  15/2 20/7
31/8 56/20 56/22 57/5
78/1 96/3 96/5 97/24
98/10 114/18
impose **[2]**  9/8 63/15
imposed **[1]**  36/3
imposing **[2]**  16/19 82/22
improper **[2]**  12/19 50/13
in **[313]**
inapplicable **[4]**  30/15
31/19 32/10 35/24
inappropriate **[2]**  41/22
41/23
inception **[1]**  113/19
incident **[2]**  15/4 35/17
include **[5]**  12/17 13/24
44/2 57/24 71/24
included **[3]**  35/25 66/12
66/23
includes **[10]**  7/22 22/3
22/5 22/17 30/21 37/16
37/20 44/2 53/6 93/12
including **[10]**  7/13 8/16
12/18 14/24 26/25 27/4
35/15 48/8 58/6 60/3
incoherent **[1]**  20/2
inconsistent **[6]**  17/20
105/20 105/25 107/11
107/12 108/17
incorporate **[1]**  51/10
incorporates **[2]**  15/22

43/25
increased **[1]**  11/17
indeed **[1]**  104/21
independent **[9]**  1/4 5/12
37/24 53/21 60/18 73/25
81/9 109/14 109/22
independently **[2]**  12/9
12/19
Index........................
..............117 **[1]**  4/8
indicate **[1]**  95/16
indication **[3]**  102/10
102/20 103/13
individual **[1]**  9/9
individual's **[1]**  14/2
individuals **[1]**  25/6
inextricably **[1]**  107/8
inform **[2]**  112/23 114/1
information **[1]**  82/13
informed **[2]**  112/10 112/15
informs **[6]**  111/4 113/6
113/7 113/11 113/13 113/15
infringe **[3]**  37/12 38/16
38/18
infringing **[5]**  36/20 37/6
39/9 39/11 39/15
inherent **[1]**  75/2
inherently **[2]**  15/24 38/19
initial **[1]**  40/7
injunction **[21]**  7/1 19/12
19/15 20/12 41/16 41/17
41/20 41/22 42/1 42/3
42/7 42/20 42/25 101/11
101/12 101/21 104/7 104/15
114/7 114/9 114/15
injunctions **[1]**  101/3
injunctive **[1]**  114/17
injury **[13]**  6/6 9/9 13/18
16/25 17/2 17/7 17/18
18/10 97/12 97/13 106/3
106/3 107/3
inquiry **[11]**  34/24 35/6

49/12 53/19 56/20 57/5
64/10 73/24 89/9 102/3
103/18
insofar **[1]**  114/18
instance **[15]**  23/1 27/19
37/8 39/12 41/9 41/13
54/13 62/11 68/3 80/12
82/24 86/2 88/23 92/4
109/21
instances **[14]**  13/3 21/13
21/25 22/8 25/1 31/20
34/8 34/11 37/3 62/12
89/11 98/25 110/13 113/13
institution **[1]**  91/15
instructed **[1]**  52/5
instruction **[1]**  50/7
instructive **[2]**  19/5 114/12
intact **[1]**  106/11
intended **[1]**  101/17
intensive **[3]**  34/23 35/6
39/6
interacted **[1]**  37/15
interaction **[1]**  36/14
interacts **[1]**  28/8
interchangeably **[2]**  24/12
48/8
interest **[2]**  98/7 106/24
interests **[2]**  28/16 113/10
interferes **[1]**  37/9
interpret **[1]**  10/15
interpretation **[15]**  7/12
11/12 12/4 23/11 24/3
24/14 24/23 40/24 47/7
47/9 47/11 47/25 48/5
52/7 54/4
interpretative **[2]**  53/10
105/10
interpreted **[2]**  52/15
52/21
interpreting **[1]**  52/8
interpretive **[1]**  113/25
interscholastic **[1]**  18/7

Case 4:24-cv-00461-O   Document 75   Filed 07/18/24   Page 136 of 157   PageID 4043

**intervene [2]** 36/5 94/21

**interviews [1]** 63/20

**into [27]** 12/2 13/10 14/4
17/15 21/7 21/13 22/14
24/3 25/19 26/14 27/2
28/11 32/11 34/22 37/2
38/15 39/24 60/16 64/17
65/11 65/21 66/7 66/24
87/24 96/7 109/21 111/10

**intolerance [1]** 92/16

**introduce [2]** 5/13 5/21

**introductions [1]** 5/9

**invaded [1]** 66/22

**invalidate [1]** 16/5

**invalidated [1]** 16/10

**investigation [1]** 39/2

**invoke [1]** 24/7

**invoked [2]** 13/16 30/24

**involving [1]** 112/7

**Iowa [1]** 42/22

**irrelevant [5]** 32/7 58/23
76/5 76/7 104/25

**irreparable [6]** 6/6 16/25
17/2 17/6 17/18 18/10

**irrespective [1]** 16/2

**is [433]**

**ISD [28]** 13/11 13/18 17/2
17/8 17/15 17/18 17/25
18/2 18/5 18/17 20/19
30/17 41/24 42/4 42/8
42/21 68/17 68/20 68/21
80/12 86/19 87/7 94/24
96/4 100/21 101/22 101/23
107/17

**ISD's [4]** 35/6 35/8 42/2
89/15

**isn't [9]** 49/21 53/25
61/10 67/11 88/1 92/7
95/9 110/9 110/9

**issue [30]** 11/18 21/12
23/15 26/5 27/17 28/7
41/19 42/7 42/15 42/24
47/18 54/20 66/2 66/3
75/1 76/20 78/15 92/6
99/10 99/12 100/15 101/10
101/11 101/12 101/25 103/4
103/9 103/14 105/14
108/23

**issued [3]** 8/2 11/19 41/19

**issues [9]** 25/22 28/9
39/23 68/11 77/8 77/9
100/4 100/5 105/24

**it [375]**

**it's [117]**

**items [1]** 63/13

**its [28]** 12/6 13/2 13/9
13/11 13/12 13/12 13/14
14/19 30/2 42/25 46/17
49/4 49/6 52/19 57/14
57/18 58/23 63/8 64/22
70/13 74/1 74/8 82/25
94/7 105/15 108/20
108/22 112/22

**itself [19]** 8/8 8/19 12/6
16/19 24/13 31/10 31/16
35/17 37/24 40/11 42/14
48/8 52/16 53/11 54/1
66/7 69/24 96/7 105/16

**ivy [1]** 106/9

**IX [82]** 7/4 8/9 8/11 10/3
11/4 11/9 11/14 12/8 13/9
17/13 22/3 22/10 23/17
23/24 24/2 24/5 25/1
25/8 27/4 30/15 30/18
33/10 33/10 35/13 36/9
40/18 40/24 41/11 43/11
43/17 44/25 45/8 46/7
46/17 46/20 47/9 47/14
47/17 47/21 49/6 51/25
54/12 55/1 80/6 81/7
85/23 86/19 87/20 88/14
88/21 88/24 88/25 89/1
89/13 92/21 93/2 93/3
93/11 94/5 97/22 98/13
104/19 104/25 105/5 105/6
105/11 105/15 105/16 108/9
108/12 108/12 108/15
108/20 109/5 109/8 109/17
109/21 110/6 110/10 111/15
111/20 113/18 113/20

**IX's [4]** 9/15 21/9 51/25
108/24

**J**

**JACKSON [5]** 2/3 5/11
46/18 48/23 110/6

**January [1]** 112/8

**January 6th defendants
[1]** 112/8

**job [1]** 64/22

**journals [1]** 63/20

**JUDGE [1]** 1/23

**judgment [2]** 52/24 78/12

**Judicial [1]** 116/13

**JULY [3]** 1/7 4/9 116/15

**jurisdiction [3]** 100/3
100/4 100/8

**jurisdictional [1]** 100/14

**just [95]** 7/13 8/23 9/7
10/22 11/1 11/12 11/19 12/4
12/11 12/16 13/15 14/2
18/16 19/4 20/9 20/14
23/4 26/18 28/13 28/21
31/18 31/22 32/9 32/15
41/24 43/7 44/4 44/5
44/15 45/3 47/8 48/20
49/4 49/15 49/21 52/7
53/8 54/8 54/15 54/25
55/11 55/24 55/25 56/24
57/23 58/16 58/23 59/11
62/3 66/10 66/14 67/12
71/12 73/6 73/10 74/6
74/17 74/25 75/1 75/18
77/4 80/9 80/13 84/10
84/15 85/6 85/9 85/12
86/14 86/21 86/22 88/5

**J**

just... **[23]**  89/23 89/24 92/6 95/5 95/12 96/1 97/15 102/24 104/5 106/20 109/2 111/6 111/10 111/11 111/16 111/23 111/24 112/4 113/8 114/4 115/1 115/1 115/4

**JUSTICE [9]**  1/13 1/18 2/12 19/4 19/12 94/15 96/6 104/17 107/9

justification **[1]**  52/9

**K**

Kansas **[1]**  102/1

Kavanaugh **[3]**  19/4 19/12 104/17

keep **[1]**  96/23

keeping **[1]**  98/7

Kentucky **[2]**  42/11 102/1

key **[7]**  24/9 50/2 52/14 58/14 83/16 104/21 104/21

kick **[3]**  89/18 89/22 100/12

kickover **[1]**  99/16

kid **[1]**  77/11

kids **[1]**  77/10

kind **[14]**  18/11 81/20 104/23 105/16 105/17 105/21 106/3 109/19 110/16 112/4 113/9 113/25 114/16 114/19

kinds **[1]**  112/15

knew **[1]**  27/8

know **[55]**  10/14 14/23 15/11 16/14 44/3 44/9 45/12 48/6 62/21 65/7 65/24 66/20 69/19 69/23 72/7 75/16 75/17 75/18 75/21 76/3 76/22 79/8 79/11 80/15 81/3 82/2 85/5 85/13 86/4 90/17

91/3 93/20 94/10 99/3 102/3 102/13 104/24 105/9 105/19 106/5 106/8 109/24 110/22 110/22 110/24 111/1 111/4 111/6 111/18 111/23 111/25 112/4 113/18 114/2 114/19

knows **[1]**  94/6

KRISTEN **[1]**  1/15

**L**

lack **[1]**  100/7

lactation **[3]**  40/19 40/25 45/25

Lakoski **[1]**  23/22

language **[16]**  9/15 15/5 24/1 30/11 32/1 32/8 35/14 50/7 50/8 50/12 50/14 50/16 50/17 52/9 52/15 54/6

languages **[1]**  24/1

Lansdowne **[1]**  2/7

last **[5]**  44/11 99/23 100/17 112/6 114/5

lastly **[1]**  107/16

Latin **[1]**  112/20

law **[1]**  35/10

law.' **[1]**  19/8

lawful **[1]**  9/4

laws **[4]**  31/6 36/15 36/16 101/18

lawsuits **[2]**  102/20 102/25

lead **[3]**  6/21 36/12 104/2

leads **[1]**  15/23

league **[1]**  106/9

learn **[2]**  78/3 79/22

least **[6]**  11/2 11/6 33/14 33/15 63/4 76/3

leave **[1]**  45/25

Ledbetter **[1]**  5/18

left **[3]**  42/19 64/20 103/15

legal **[2]**  82/7 96/1

legally **[1]**  9/9

legislation **[3]**  31/12 108/11 111/16

legislative **[1]**  31/14

legislatures **[1]**  31/10

legitimate **[12]**  37/18 97/20 97/21 97/24 98/2 98/20 98/22 98/24 99/9 99/13 99/13 106/24

legitimate-based **[1]**  97/24

lesbian **[1]**  90/25

less **[3]**  20/8 20/16 104/9

let **[15]**  43/7 45/15 54/10 54/19 56/13 69/21 76/12 77/5 80/23 83/2 86/21 87/10 90/2 101/24 108/4

let's **[6]**  69/25 75/16 83/2 86/22 98/1 102/12

level **[9]**  39/20 57/24 63/18 64/7 64/7 68/4 72/6 72/18 89/23

LHAMON **[1]**  1/10

Lia **[2]**  106/8 106/10

liability **[2]**  17/6 33/7

light **[3]**  100/6 108/1 113/12

like **[48]**  5/13 5/21 6/22 13/24 15/23 20/14 21/5 22/21 24/17 25/8 31/21 31/23 37/11 39/24 41/17 45/24 45/24 49/8 50/8 50/25 51/9 52/17 54/15 57/2 60/22 60/22 61/16 62/23 63/13 66/21 68/18 68/19 72/19 75/6 75/8 78/8 78/12 78/24 79/14 86/5 88/2 90/22 91/9 92/7 96/15 103/1 103/21 109/13

likely **[3]**  44/14 67/25 68/1

limit **[3]**  15/8 34/25 39/3

**limitation [1]** 39/8
**limitations [3]** 36/18 39/1 39/9
**limited [12]** 18/24 41/6 46/21 48/19 48/24 49/2 101/22 110/7 110/13 111/11 111/24 112/4
**limiting [1]** 15/7
**limits [3]** 14/9 15/5 34/20
**line [4]** 35/4 39/7 53/24 60/3
**lines [1]** 34/1
**list [1]** 12/18
**litany [1]** 66/1
**literally [1]** 64/22
**litigation [9]** 13/17 18/4 19/10 20/15 59/2 59/5 59/6 107/10 108/11
**little [4]** 9/16 74/25 102/5 102/6
**living [6]** 8/12 10/5 27/1 27/4 105/4 105/11
**LLP [1]** 2/3
**local [1]** 81/10
**location [1]** 35/1
**locker [16]** 8/14 12/1 12/3 18/9 27/10 67/8 98/1 98/23 99/2 104/22 105/3 106/12 106/18 109/19 110/3 113/20
**locking [1]** 96/7
**logic [3]** 60/6 107/8 109/20
**logical [2]** 12/11 53/24
**long [8]** 19/7 39/3 39/8 44/17 70/7 99/5 99/6 99/19
**long-settled [1]** 19/7
**look [10]** 14/6 19/18 50/16 52/19 65/21 71/19 73/20 75/24 76/1 112/20

**looked [13]** 53/2 66/13 67/23 71/11 72/7 73/4 74/15 83/17 84/8 85/5 85/5 85/15 86/11
**looking [5]** 52/14 65/10 71/10 81/14 90/13
**looks [1]** 19/19
**lost [1]** 32/3
**lot [3]** 52/18 102/22 103/22
**low [1]** 102/4
**lower [5]** 16/9 50/7 53/11 76/17 107/24
**Lucchese [1]** 46/24

# M

**Ma'am [1]** 6/15
**made [5]** 18/23 32/3 45/16 111/4 114/1
**main [6]** 2/3 7/18 21/5 22/11 25/22 28/9
**mainly [1]** 93/13
**maintain [4]** 30/5 30/20 31/1 39/19
**major [12]** 9/12 29/9 31/18 31/19 31/21 32/9 101/25 102/11 102/17 102/21 102/24 103/7
**majority [5]** 14/17 32/5 32/23 58/13 112/9
**make [13]** 5/9 12/13 19/9 26/11 71/5 72/4 82/21 86/20 93/22 102/25 107/13 113/14 114/21
**makes [11]** 14/19 15/3 18/19 20/4 62/22 64/12 64/15 98/9 105/1 107/17 108/25
**making [7]** 30/2 30/3 47/13 68/24 70/4 75/4 90/10
**male [5]** 11/8 54/12 72/24 75/13 106/6

**males [4]** 106/15 106/18 109/15 112/1
**mandate [9]** 6/1 7/19 9/18 10/9 52/25 107/14 109/15 110/12 114/20
**manner [2]** 14/24 85/1
**many [4]** 63/10 63/25 65/23 102/12
**masks [1]** 116/9
**mass [1]** 62/14
**material [12]** 24/2 24/6 24/18 47/23 60/5 63/6 63/12 63/21 64/12 64/14 64/15 101/7
**materially [1]** 49/17
**MATHEW [2]** 2/5 6/5
**matter [5]** 11/8 40/7 94/18 105/8 116/7
**may [18]** 6/24 22/1 42/22 42/23 59/21 79/17 81/17 81/22 82/6 82/15 82/20 86/7 100/7 102/5 102/7 108/8 110/17 114/17
**maybe [4]** 75/5 82/24 90/16 99/1
**me [49]** 6/13 25/11 43/7 45/15 46/15 47/4 48/21 50/19 50/25 51/6 53/14 54/10 54/19 56/5 56/13 63/1 66/8 69/21 70/9 73/16 73/19 75/1 76/3 76/12 76/23 77/5 80/9 80/23 83/2 86/13 86/21 87/2 87/3 87/10 90/2 90/5 90/8 93/20 95/10 96/5 99/22 100/18 100/20 101/13 101/24 102/3 102/7 108/4 108/12
**mean [33]** 22/24 36/6 36/14 40/23 45/13 47/19 48/11 50/15 52/4 57/3 58/19 60/15 62/7 63/10

# M

**mean...** [19] 63/17 65/2 65/25 70/4 76/8 76/16 82/16 88/18 89/9 95/20 96/12 97/6 97/18 97/23 97/25 98/10 110/2 112/22 112/23

**meaning** [8] 49/11 49/16 75/9 75/11 110/21 111/4 111/12 111/22

**meaningful** [22] 24/7 24/10 24/13 24/21 48/4 48/6 48/10 48/14 48/15 49/14 49/19 50/2 50/3 50/4 51/2 51/2 51/10 53/14 53/18 54/2 54/7 54/7

**means** [14] 7/2 7/5 19/16 49/24 50/18 54/21 55/1 55/9 55/24 84/19 92/15 108/12 110/23 114/12

**meant** [7] 22/25 32/1 46/2 53/16 58/11 75/5 75/6

**media** [2] 39/3 39/3

**medical** [4] 63/20 71/11 75/7 75/8

**medically** [1] 75/6

**members** [1] 5/18

**memo** [1] 110/21

**men** [3] 10/12 12/2 99/4

**mens'** [1] 10/11

**mental** [1] 65/16

**mention** [1] 111/15

**mentioned** [3] 25/14 46/22 66/11

**mere** [3] 28/21 67/12 106/23

**merely** [1] 15/6

**Meritor** [1] 35/16

**merits** [1] 109/22

**MERRICK** [1] 1/14

**met** [3] 30/5 34/16 106/18

**microphone** [1] 81/20

**middle** [6] 9/23 69/14 70/24 74/10 74/11 75/12

**might** [4] 71/12 73/10 77/3 109/25

**MIGUEL** [1] 1/8

**million** [1] 17/12

**mind** [2] 14/16 90/7

**minimis** [34] 6/3 8/5 21/18 22/2 22/9 25/18 27/15 28/4 28/7 44/13 70/20 77/20 77/22 78/7 78/17 78/21 79/3 79/4 79/15 79/23 95/24 96/10 96/13 96/20 96/21 97/15 97/16 98/8 99/7 99/17 99/20 105/13 107/7 107/15

**minimus** [3] 80/5 98/19 107/5

**minor** [5] 81/11 81/15 82/4 82/12 82/13

**minutes** [1] 6/9

**mirror** [3] 29/6 35/20 42/10

**mirrors** [1] 36/9

**misgendering** [1] 15/15

**misunderstands** [1] 31/2

**moment** [2] 70/9 71/10

**momentous** [1] 12/6

**Monroe** [3] 14/12 46/23 46/23

**more** [40] 9/16 10/17 18/5 21/17 22/1 22/9 25/17 27/15 28/4 41/3 55/12 60/8 60/10 67/25 68/1 70/20 77/19 77/22 78/7 78/17 78/21 79/3 79/8 79/9 79/10 79/15 79/22 80/5 95/23 96/3 96/4 96/20 96/21 97/15 98/8 98/19 99/1 99/3 99/7 99/20

**morning** [12] 5/7 5/11 5/14 5/19 5/20 5/23 8/16 6/18 6/20 21/1 21/2 21/4

**most** [2] 97/9 114/21

**mother** [3] 27/6 106/9 110/14

**mother/daughter** [2] 27/6 110/14

**motion** [3] 20/21 40/2 40/10

**MOTIONS** [1] 1/22

**move** [1] 75/16

**moving** [1] 34/13

**MR** [3] 2/2 2/5 4/4

**MS** [5] 2/2 2/8 2/12 4/3 4/5

**Ms.** [1] 6/14

**Ms. Thompson** [1] 6/14

**much** [3] 22/21 25/8 90/22

**Muldrow** [4] 96/14 97/10 97/17 113/6

**Murphy** [4] 31/3 31/4 31/4 31/13

**must** [12] 24/10 24/21 31/9 37/5 38/9 38/12 50/3 60/10 82/25 93/6 108/12 108/23

**my** [25] 5/13 12/21 25/11 48/17 51/12 64/15 66/8 66/20 69/4 69/12 71/12 73/6 73/10 74/16 75/4 77/3 80/15 100/2 100/17 104/14 104/20 105/17 114/5 116/7 116/11

# N

**nah** [1] 73/20

**narrow** [3] 98/6 113/1 113/3

**narrowly** [3] 10/7 10/15 110/15

**NATALIE** [2] 2/8 5/25

# N

**national [8]** 24/17 24/20 49/9 49/10 50/10 61/8 61/16 62/10
**nationwide [16]** 19/12 20/2 20/4 20/5 20/5 41/16 41/17 41/19 41/21 42/1 42/2 42/7 42/20 42/24 101/21 104/15
**natural [2]** 31/23 109/2
**naturally [2]** 30/14 46/16
**nature [2]** 36/15 86/2
**necessarily [3]** 49/14 71/23 97/18
**necessary [8]** 10/2 17/4 39/13 41/4 43/4 58/24 114/7 114/10
**necessity [1]** 19/15
**need [20]** 6/12 11/24 26/10 29/24 30/3 39/17 56/2 57/15 60/7 63/23 65/11 69/1 79/8 79/10 80/9 80/15 81/3 106/16 110/15 114/15
**needed [1]** 60/8
**needs [7]** 11/22 25/17 30/1 30/2 63/7 97/11 97/13
**neighbors [1]** 112/22
**never [6]** 19/2 19/17 54/14 73/23 74/7 92/6
**new [17]** 7/16 8/3 8/5 9/5 9/22 10/8 12/10 12/14 12/25 13/8 13/14 13/21 16/14 20/18 37/14 45/5 101/18
**next [4]** 77/12 106/6 106/10 106/15
**niche [7]** 76/3 76/8 76/9 76/10 76/11 76/12 76/23
**Nken [1]** 104/7
**no [87]** 1/5 6/11 10/18 10/22 21/20 23/5 23/6

24/13 26/10 26/11 27/21 28/21 29/2 29/3 31/22 31/25 32/6 40/14 40/16 40/21 40/25 41/3 41/8 43/15 43/21 43/21 43/21 44/17 44/20 44/20 49/19 49/20 52/23 54/8 55/21 55/22 56/2 56/21 60/1 60/2 60/5 67/11 67/17 67/24 70/23 72/7 72/9 74/16 74/16 74/18 74/20 75/23 75/24 76/7 79/18 81/25 82/18 82/25 82/25 84/11 84/15 84/18 84/24 84/25 85/13 85/24 87/8 88/4 88/11 93/24 96/10 97/8 97/19 97/25 99/10 99/12 100/4 101/12 102/17 103/17 103/22 103/25 107/25 111/1 111/15 114/13 114/24
**nondiscrimination [2]** 40/20 107/14
**none [1]** 41/19
**nonexistent [1]** 97/16
**nonverbal [1]** 35/9
**normative [2]** 91/3 91/6
**NORTHERN [2]** 1/2 116/18
**not [238]**
**note [1]** 20/7
**nothing [6]** 36/24 37/14 43/20 46/12 82/10 82/18
**notice [1]** 30/18
**noting [1]** 41/18
**notion [1]** 23/15
**notwithstanding [1]** 12/5
**novel [1]** 7/25
**now [25]** 7/14 8/7 8/19 13/15 17/9 22/14 24/25 26/5 28/11 29/1 37/16 37/19 40/8 45/12 51/24 57/13 65/22 67/3 73/9

79/6 80/23 83/2 96/16 106/6 110/5 110/5
**nowhere [2]** 49/4 105/14
**number [12]** 8/15 62/20 63/6 63/12 63/21 65/22 98/6 102/3 102/15 102/20 103/6 105/5
**numbered [1]** 3/8
**numbers [3]** 62/18 63/1 63/11
**NW [2]** 2/9 2/13

# O

**O'CONNOR [1]** 1/22
**objective [4]** 15/20 15/22 15/25 16/3
**objectively [3]** 14/8 14/13 34/19
**objectives [1]** 108/24
**obligation [5]** 11/21 36/3 55/22 75/24 76/1
**obligations [1]** 40/21
**obstruction [4]** 112/8 112/13 112/14 112/16
**occupational [1]** 25/7
**occur [1]** 70/20
**occurred [1]** 74/8
**off [9]** 6/21 21/5 34/4 34/4 41/18 44/19 65/2 66/8 97/7
**offensive [3]** 14/8 14/13 34/19
**offers [1]** 107/25
**OFFICIAL [5]** 1/8 1/11 1/14 1/16 116/18
**Ohio [1]** 42/12
**okay [23]** 6/21 9/7 29/23 43/23 44/16 54/10 55/19 66/8 69/22 70/14 71/13 75/10 77/25 81/5 82/8 84/7 85/11 87/9 89/20 99/9 101/24 102/10 115/10
**on [189]**

**O**

**one [44]**  8/3 12/16 21/8 22/16 24/4 25/23 31/25 32/6 32/15 32/18 32/19 34/18 36/7 36/8 40/2 42/13 46/4 46/18 48/2 48/2 59/11 61/3 62/4 63/16 66/9 68/8 69/8 71/9 74/18 74/20 77/15 79/13 82/23 86/9 86/20 93/13 93/14 93/16 100/11 107/1 112/9 112/10 115/1 115/1

**ones [1]**  111/12

**online [2]**  14/20 14/24

**only [30]**  8/14 10/7 10/15 10/15 11/15 15/8 20/17 21/17 22/12 26/9 26/13 33/21 36/2 40/3 41/20 43/3 43/24 44/2 48/1 74/13 74/13 87/24 92/9 94/25 100/20 101/1 101/1 111/11 113/2 114/2

**onto [1]**  109/5

**oOo [1]**  5/2

**open [1]**  102/23

**opening [1]**  104/10

**operates [1]**  104/11

**operating [3]**  17/4 17/18 56/25

**opined [1]**  70/11

**opinion [13]**  32/2 32/3 32/5 32/23 35/16 35/19 41/4 50/8 50/14 56/7 58/12 97/10 97/10

**opinions [4]**  41/21 47/16 50/11 65/25

**opportunities [3]**  8/22 105/2 108/22

**opportunity [8]**  14/10 14/14 15/6 21/3 23/13 103/23 110/25 111/8

**opposed [3]**  67/20 101/14

114/2

**opposite [4]**  29/2 70/2 71/1 73/18

**or [146]**

**oral [1]**  38/4

**order [13]**  24/21 25/16 29/2 34/16 38/6 39/16 39/21 42/25 44/7 55/22 55/23 67/16 109/13

**ordinary [1]**  20/6

**Oregon [1]**  42/10

**orientation [8]**  30/22 53/7 55/3 57/25 90/10 90/16 92/19 92/19

**origin [7]**  24/17 24/20 49/9 49/10 61/8 61/16 62/10

**original [1]**  40/2

**other [49]**  11/10 12/22 13/7 13/24 15/10 16/13 19/10 21/19 24/16 26/24 28/11 29/12 32/19 35/1 36/9 37/5 37/11 40/14 42/11 44/21 46/12 48/2 51/3 51/4 52/7 54/3 61/8 61/17 67/16 68/1 68/15 71/6 74/3 77/2 87/23 92/7 93/16 93/17 93/24 99/2 100/11 100/24 101/9 101/11 102/2 105/21 109/13 111/3 114/19

**otherwise [8]**  9/9 33/22 38/19 82/23 90/13 93/4 112/13 112/16

**ought [1]**  103/15

**our [11]**  7/11 10/20 18/6 30/10 31/22 47/20 75/13 80/25 80/25 81/6 95/21

**out [23]**  8/20 8/23 12/11 15/10 18/6 18/6 18/8 18/11 23/12 57/14 73/3 74/1 75/7 78/24 82/25 84/11

85/19 98/4 99/22 104/19 106/1 110/7 113/1

**outcomes [1]**  96/25

**outlier [8]**  61/23 62/4 62/4 62/5 62/7 62/22 62/24 62/25

**outliers [2]**  61/16 86/10

**outline [3]**  44/18 47/20 66/9

**outlined [12]**  27/3 29/11 30/10 33/2 58/8 58/8 58/9 58/12 58/20 58/21 97/10 103/19

**outlines [3]**  21/16 21/21 26/14

**outlining [3]**  21/5 25/19 49/6

**outs [1]**  111/12

**outside [5]**  10/9 14/20 33/25 34/11 42/4

**over [8]**  6/14 12/21 17/12 33/21 50/24 61/2 68/6 77/12

**overall [1]**  65/16

**overarching [1]**  9/18

**overbreadth [2]**  34/14 35/22

**overbroad [3]**  6/5 16/15 32/20

**overrule [2]**  33/13 33/16

**overwhelming [1]**  61/12

**own [9]**  35/6 35/8 46/17 49/4 58/23 74/8 74/12 75/24 94/7

**P**

**page [4]**  63/15 65/25 106/13 106/20

**pageant [2]**  94/24 94/24

**pageants [2]**  27/7 110/14

**pages [1]**  106/7

**pains [3]**  26/15 37/2 38/15

**pandemic [1]**  116/8

# P

**parameters [1]** 34/2
**paramount [1]** 55/14
**PARDIS [2]** 2/12 6/16
**parent [12]** 80/24 81/3
81/8 81/15 81/18 82/4
82/6 82/12 82/16 82/17
82/20 83/1
**parents [2]** 60/24 82/14
**Parkway [1]** 2/6
**parse [5]** 50/8 50/11 50/11
52/6 52/13
**parsed [1]** 50/8
**parsing [1]** 50/13
**part [10]** 7/25 9/20 19/18
46/8 71/12 73/11 73/19
75/4 77/3 103/18
**partake [1]** 65/18
**participant [1]** 60/13
**participants [2]** 19/24
116/9
**participate [4]** 15/9 35/12
93/1 94/25
**participating [2]** 80/19
92/25
**participation [1]** 108/16
**particular [14]** 36/2 40/15
47/23 49/3 56/9 57/1
61/11 67/3 76/20 78/15
79/7 79/21 91/16 93/9
**particularly [4]** 33/8 41/23
61/17 64/3
**parties [1]** 41/25
**parties' [1]** 38/9
**parts [1]** 76/22
**party [2]** 18/15 18/24
**passed [1]** 111/17
**past [1]** 106/17
**peeked [1]** 69/17
**peeking [1]** 68/2
**peeping [1]** 72/10
**pendency [2]** 38/10 38/23

**pending [2]** 20/15 101/25
**people [26]** 28/25 29/2
29/7 55/1 61/12 61/18
62/12 62/14 62/23 62/24
63/6 63/12 63/16 64/4
66/18 73/14 76/9 85/6
87/23 90/13 99/2 99/3
99/4 102/16 103/1 103/13
**percolating [1]** 66/3
**Perhaps [1]** 85/20
**permissible [1]** 94/23
**permit [2]** 95/25 100/18
**permitted [4]** 21/14 25/2
95/24 113/3
**persistent [2]** 33/12 35/10
**person [12]** 23/3 23/7
63/16 70/1 85/2 85/21
85/22 86/1 86/17 86/18
92/2 106/23
**person's [4]** 14/10 34/20
80/21 89/4
**personam [1]** 20/12
**persons [1]** 23/1
**persuade [2]** 29/24 69/1
**persuasive [2]** 30/4 33/12
**pervasive [6]** 14/9 14/13
15/3 34/20 35/11 35/14
**Ph.Ds [1]** 70/10
**phase [1]** 114/20
**phrase [4]** 51/22 52/20
57/6 57/7
**phrased [2]** 59/21 59/22
**phrases [4]** 48/7 48/10
52/17 54/4
**physical [5]** 8/16 34/1 34/1
35/9 35/25
**physically [1]** 106/11
**pincite [1]** 65/10
**place [3]** 33/25 39/7
64/18
**placed [1]** 49/16
**plain [2]** 110/22 111/3

**plainly [2]** 25/3 43/1
**plaintiff [12]** 4/5 2/2 5/8
5/12 6/9 21/6 25/22 27/1
38/3 69/2 101/1 102/23
**plaintiff's [6]** 21/7 22/15
31/1 37/16 42/20 58/1
**plaintiffs [28]** 6/25 22/12
22/19 23/25 25/23 26/5
27/17 28/6 28/23 29/21
29/24 30/8 30/25 31/25
32/12 35/23 38/5 40/2
40/12 41/8 41/16 44/21
48/9 57/16 58/8 68/5
73/16 83/18
**plausible [2]** 9/11 9/13
**please [3]** 5/5 6/23 6/24
**podium [2]** 6/22 6/23
**point [14]** 25/14 38/23
52/23 61/3 73/16 73/19
80/18 86/20 88/22 104/18
105/13 111/14 114/20 115/2
**pointed [3]** 15/10 104/19
106/1
**points [4]** 38/17 71/9 84/11
104/4
**police [1]** 16/20
**policed [1]** 36/2
**policies [5]** 16/5 17/14
17/17 17/19 17/23
**policy [13]** 13/11 13/12
16/11 35/7 35/8 78/5
80/18 81/6 82/24 85/22
87/3 92/18 92/24
**political [3]** 15/2 103/4
103/14
**popularity [1]** 103/11
**population [1]** 75/14
**Pork [1]** 50/10
**portions [1]** 12/22
**pose [1]** 106/22
**posing [1]** 67/16
**position [16]** 7/15 19/6

# P

**position…** **[14]**  19/10 21/4 31/22 59/23 74/16 95/11 95/13 95/19 96/6 96/7 107/9 107/13 112/24 115/6
**possible [5]**  75/20 75/20 76/16 76/25 79/18
**possibly [1]**  74/2
**Post [2]**  19/5 19/11
**posture [1]**  114/10
**potential [2]**  18/2 74/8
**power [3]**  13/9 41/5 93/21
**practice [1]**  80/19
**preamble [9]**  17/10 65/10 71/10 71/15 71/18 81/12 81/14 82/9 107/22
**precedent [1]**  18/14
**prefer [1]**  83/7
**preliminarily [1]**  16/14
**preliminary [8]**  7/1 19/15 104/7 114/6 114/9 114/10 114/15 114/20
**prescribe [1]**  20/3
**prescribed [1]**  116/13
**presence [3]**  28/22 67/12 106/23
**present [6]**  38/1 49/6 49/21 61/15 85/6 114/23
**presented [3]**  23/3 50/23 85/15
**preserving [1]**  17/20
**press [1]**  66/14
**presumably [2]**  94/14 95/8
**prevail [2]**  74/4 110/4
**prevent [3]**  83/10 83/14 108/20
**prevented [1]**  27/13
**prevents [1]**  80/19
**previous [1]**  52/19
**primarily [2]**  45/6 101/17
**principle [1]**  53/20
**prior [1]**  39/20

**privacy [20]**  11/7 17/20 28/14 28/16 28/21 29/15 38/10 39/17 66/22 67/22 68/2 68/10 68/13 71/25 72/9 72/11 99/1 106/3 106/24 113/10
**private [8]**  13/11 13/16 18/4 32/23 32/25 33/7 66/25 105/25
**privilege [1]**  107/1
**privity [1]**  100/11
**probably [2]**  41/20 75/4
**problem [6]**  11/10 26/22 31/12 37/6 37/16 37/17
**problematic [1]**  12/22
**problems [3]**  16/23 75/14 102/22
**Procedure [1]**  19/10
**procedures [3]**  17/5 17/18 38/11
**proceed [1]**  15/20
**proceeding [5]**  33/4 33/5 38/5 38/14 45/23
**proceedings [6]**  38/22 38/24 39/12 115/13 116/6 116/10
**process [5]**  30/2 30/3 31/14 38/19 39/11
**proclamation [1]**  108/7
**produced [1]**  3/9
**Producers [1]**  50/10
**products [1]**  63/13
**professional [1]**  71/4
**program [5]**  15/10 80/20 87/15 93/2 93/8
**programs [2]**  2/13 65/15
**prohibit [4]**  8/11 11/4 39/14 108/16
**prohibited [5]**  13/3 31/5 35/10 37/21 105/9
**prohibition [4]**  21/9 23/23 26/7 26/10

**prohibits [2]**  30/18 92/24
**promulgate [3]**  75/4 86/9 88/3 94/7
**promulgated [5]**  35/21 36/8 46/8 46/13 86/12
**promulgating [2]**  75/2 76/15
**prong [1]**  17/1
**pronouns [4]**  13/4 15/16 15/19 17/20
**proper [2]**  18/12 29/19
**properly [2]**  25/24 25/25
**proposed [2]**  45/5 111/17
**proposition [1]**  31/3
**prosecuted [1]**  112/15
**protect [3]**  17/19 38/9 39/17
**protected [17]**  12/10 12/14 13/4 14/25 16/16 16/16 89/15 89/25 90/10 90/11 91/14 91/20 91/21 91/23 91/24 92/7 92/14
**protecting [2]**  13/11 13/12
**protection [9]**  92/12 93/25 95/8 95/8 96/11 96/17 96/24 115/3 115/5
**protections [1]**  90/24
**protects [1]**  14/18
**protest [1]**  20/1
**provide [10]**  24/4 37/10 40/18 41/3 43/1 60/23 68/24 71/25 99/5 101/18
**provided [4]**  10/16 41/8 109/6 113/20
**provides [10]**  25/4 33/20 34/15 36/24 38/8 40/13 72/2 78/16 87/12 104/16
**providing [3]**  43/3 45/25 47/16
**provision [35]**  6/3 8/10 9/25 10/4 10/18 12/9 21/10 21/12 21/16 21/21 22/11

**P**

provision... **[24]** 25/4
25/12 25/14 32/16 38/2
38/4 38/6 38/8 38/20
40/17 41/6 41/9 41/11
43/24 43/24 44/7 89/22
90/1 97/14 105/10 105/14
107/7 107/15 112/15
provisions **[20]** 7/18 9/17
12/21 19/23 21/6 22/6
22/15 40/3 40/16 40/18
40/19 40/20 40/21 41/10
44/21 108/25 111/3 112/21
112/22 113/12
psychological **[14]** 69/5
69/13 69/16 69/17 70/23
72/21 72/23 73/15 73/17
74/9 74/23 75/5 75/6
76/21
psychologically **[1]** 69/25
public **[2]** 29/24 36/17
pull **[1]** 66/15
purport **[1]** 33/13
purporting **[1]** 33/16
purpose **[4]** 77/9 108/6
108/20 108/22
purposes **[6]** 22/23 24/18
54/15 59/7 59/16 59/24
put **[5]** 8/3 10/22 39/1
94/24 107/21

**Q**

qualification **[2]** 25/7 111/1
query **[2]** 45/12 45/18
question **[81]** 24/18 31/18
31/19 32/9 32/25 42/17
45/21 46/14 47/5 47/6
47/10 47/24 47/25 48/5
48/13 48/15 48/17 48/25
49/2 49/3 51/9 52/12 53/9
53/19 55/12 56/3 56/15
56/18 62/16 63/3 63/5

63/12 63/14 64/10 64/15
64/16 64/20 66/20 68/2
69/4 69/12 73/6 73/7
73/9 73/22 73/24 76/19
77/4 77/18 78/6 78/23
79/1 79/9 79/23 80/8
80/16 86/4 86/5 90/7
91/23 92/1 94/9 95/9 96/3
96/5 96/15 96/16 96/18
98/18 99/23 100/2 100/17
100/25 101/25 102/11
102/21 102/24 103/2 103/7
112/6 114/5
questions **[12]** 6/13 9/12
12/20 20/22 39/24 43/6
43/8 100/19 102/18 103/24
104/2 108/4
quick **[2]** 5/9 115/2
quite **[2]** 64/21 76/3
quote **[1]** 110/8

**R**

race **[11]** 24/17 24/20
36/9 36/10 49/9 49/10
61/8 61/22 61/25 62/10
62/24
race-based **[2]** 36/9 36/10
races **[1]** 64/5
raise **[4]** 30/9 37/19
37/23 73/21
raised **[11]** 40/9 73/14
73/23 73/24 74/2 74/3
74/7 83/18 84/18 100/4
100/5
raising **[1]** 85/6
rally **[1]** 102/25
range **[1]** 35/25
rape **[2]** 106/14 106/14
raped **[1]** 69/17
rare **[3]** 31/20 31/20
62/12
rather **[9]** 19/19 20/14
84/15 91/14 92/12 111/10

111/12 111/25 112/4
rationale **[2]** 127/1 115/13
RDR **[3]** 3/2 116/4 116/17
reach **[4]** 7/17 11/1 47/18
100/15
reached **[4]** 30/4 30/7
64/6 100/25
read **[6]** 11/4 55/8 55/10
66/19 110/15 113/12
reading **[8]** 9/11 9/23
10/25 30/14 31/24 110/9
110/18 112/25
reads **[2]** 87/1 87/1
real **[8]** 67/1 67/11 71/22
75/14 76/21 85/10 85/11
107/6
reality **[2]** 16/3 84/16
realize **[1]** 114/17
realized **[1]** 9/24
really **[49]** 10/12 26/21
26/23 28/6 28/9 31/20
32/22 32/24 32/25 33/19
33/24 34/6 37/12 37/16
38/23 40/21 41/5 41/8
42/19 47/6 47/10 47/25
53/9 53/19 56/2 58/14
60/17 61/15 62/6 62/14
62/15 63/4 63/6 64/10
64/16 66/25 67/17 73/3
78/13 84/18 86/4 96/4
96/13 105/15 105/16
108/19 109/2 111/14 111/22
reason **[26]** 23/24 37/24
40/14 40/16 40/21 40/25
41/8 41/13 44/17 47/14
48/6 48/9 48/10 53/3
53/7 53/21 54/8 60/1 60/2
87/10 96/22 97/8 107/25
108/18 108/19 109/4
reasonable **[6]** 11/5 12/4
38/9 38/13 39/16 39/17
reasoned **[4]** 23/6 30/3

**R**

**reasoned... [2]** 49/8 68/24

**reasoning [23]** 22/25 45/6 45/10 45/10 46/9 47/12 47/19 49/6 49/7 49/18 51/11 51/24 52/25 53/3 53/4 53/24 54/8 55/25 56/1 56/6 57/4 60/4 109/8

**reasons [7]** 30/13 32/9 104/9 110/19 110/20 112/1 112/1

**rebut [1]** 74/3

**rebuttal [2]** 6/10 104/4

**recent [1]** 18/19

**recently [3]** 11/18 18/22 23/9

**recipient [15]** 10/16 11/21 18/17 33/20 37/5 38/8 38/12 81/17 81/19 81/22 81/23 81/25 82/6 82/15 82/19

**recipient's [3]** 14/22 34/11 38/10

**recipients [6]** 16/20 19/24 19/25 36/20 36/25 111/18

**recognition [10]** 8/14 21/24 25/15 34/23 39/5 89/9 92/13 95/22 98/17 99/19

**recognize [2]** 23/9 99/15

**recognized [13]** 8/9 10/4 11/6 12/6 13/25 16/15 16/22 23/22 24/11 47/22 75/6 100/25 104/17

**recognizes [5]** 11/9 25/1 25/5 25/8 35/7

**recognizing [1]** 91/1

**record [2]** 105/23 116/6

**recordkeeping [2]** 40/20 41/9

**red [1]** 26/21

**redefine [1]** 60/2

**redefines [3]** 7/1 9/21 12/17

**redefining [1]** 23/17

**redefinition [4]** 7/22 22/20 23/14 58/15

**REED [1]** 1/22

**reference [1]** 43/25

**references [2]** 49/9 49/10

**referring [2]** 54/24 94/2

**refers [1]** 54/17

**reflect [2]** 101/17 105/24

**reflection [1]** 109/2

**refused [1]** 46/17

**refusing [3]** 47/17 57/2 57/2

**regard [3]** 34/6 34/7 51/7

**regards [1]** 109/12

**Register [1]** 106/20

**regs [2]** 8/13 10/6

**regulate [12]** 31/9 60/8 60/9 60/10 63/8 63/14 63/23 64/18 64/20 64/22 65/4 92/10

**regulates [1]** 63/5

**regulating [3]** 31/10 31/16 65/12

**regulation [25]** 7/21 8/4 17/15 20/19 22/7 25/25 26/3 26/14 26/23 55/8 56/18 59/4 63/4 66/7 71/14 81/9 82/11 82/14 86/6 88/2 88/8 88/22 89/6 89/7 90/22

**regulations [29]** 8/7 8/18 9/1 9/1 10/20 16/15 26/16 36/23 54/20 55/5 60/15 60/20 60/23 81/10 81/10 82/21 86/1 86/3 95/2 98/13 99/15 107/10 107/13 107/21 107/22 108/24 111/17 113/19 113/22

**regulatory [2]** 10/23 93/13

**reinterpret [1]** 99/14

**reject [1]** 9/13

**rejected [2]** 7/12 19/13

**related [1]** 34/9

**relates [1]** 43/22

**relation [2]** 52/18 52/18

**relationship [4]** 91/9 91/11 91/13 92/5

**release [1]** 66/14

**relevance [2]** 24/22 104/5

**relevant [27]** 24/22 24/23 31/5 33/8 35/4 48/4 48/15 49/11 50/5 54/6 56/18 59/20 61/17 64/3 68/25 70/5 76/1 77/2 79/2 79/12 95/21 97/9 100/16 105/2 105/3 111/1 113/9

**relied [4]** 35/23 48/23 49/20 70/11

**relief [21]** 6/7 18/12 18/25 19/1 19/7 20/2 20/5 20/19 39/25 40/1 41/3 41/6 41/15 43/1 43/3 101/1 101/4 101/13 101/19 104/6 114/17

**rely [2]** 24/19 69/24

**relying [6]** 69/5 70/16 71/3 71/5 71/7 96/7

**remaining [1]** 42/13

**remedy [8]** 13/18 18/21 20/9 20/16 37/6 62/15 104/9 104/13

**removes [1]** 20/9

**repeal [3]** 13/11 17/17 17/22

**repealing [1]** 31/6

**repeat [1]** 92/23

**repeatedly [1]** 15/17

**reply [4]** 18/6 40/4 40/10 104/1

**reported [1]** 3/8

**R**

REPORTER [3]  3/2 3/2 116/18

Reporter's [2]  4/7 116/2

represent [2]  21/4 95/11

representative [1]  103/4

representing [1]  6/17

request [1]  40/3

requested [1]  41/17

requesting [1]  6/25

requests [3]  6/9 13/18 20/20

require [6]  37/12 69/6 70/12 82/19 107/10 108/16

required [2]  10/2 33/3

requirement [3]  8/6 82/21 82/23

requirements [2]  108/25 109/14

requires [4]  14/13 15/8 15/25 82/12

requiring [1]  16/20

reserve [1]  78/12

respect [14]  28/12 28/19 40/12 42/18 45/2 45/23 47/14 61/11 61/15 73/8 81/16 97/3 101/1 101/21

respectfully [1]  20/20

response [3]  52/11 106/19 106/25

responsible [2]  33/21 34/11

rest [1]  44/15

restates [1]  82/10

restraint [1]  39/20

restricted [1]  18/24

restriction [1]  16/16

restrictive [1]  18/15

restricts [1]  82/11

restroom [2]  84/23 85/9

restrooms [5]  8/14 10/9 10/11 105/3 113/20

result [5]  7/17 11/2 12/8 72/10 106/8

results [2]  20/6 108/8

retaliation [1]  40/19

retreated [1]  7/14

reverse [1]  72/25

review [5]  29/20 68/16 73/22 74/5 80/11

reviewed [2]  51/18 63/9

reviewing [2]  27/12 63/19

reviews [1]  29/19

rewrite [1]  9/14

right [50]  5/6 5/8 9/8 27/19 27/22 32/23 32/25 37/10 37/13 40/12 47/2 47/5 50/1 50/2 50/20 57/9 58/3 59/9 63/14 64/18 65/1 65/5 70/14 70/14 71/5 73/9 73/12 74/19 75/22 81/9 81/10 81/24 82/7 82/11 85/16 86/13 87/18 88/15 90/21 92/2 93/7 93/19 94/14 94/15 95/12 96/2 99/18 99/22 101/9 114/22

rightly [1]  35/5

rights [14]  1/12 1/17 13/13 17/19 36/20 36/22 37/7 37/16 38/16 38/18 39/10 39/11 39/16 96/14

rise [6]  5/4 35/18 39/19 56/8 63/17 115/12

risk [2]  18/4 106/22

Riverside [1]  2/6

RMR [3]  3/2 116/4 116/17

role [1]  34/25

roll [1]  63/8

romantic [1]  92/5

room [5]  2/13 12/3 77/7 77/8 99/2

rooms [14]  8/14 12/1 18/9 27/10 67/8 98/1 98/23

104/22 105/3 106/12 106/17 109/19 110/3 113/21

Rosa [1]  46/25

routes [1]  44/24

routinely [1]  16/5

rule [91]  7/17 8/2 9/5 10/5 10/14 11/11 12/16 12/22 13/1 13/8 13/10 13/14 13/16 13/22 14/1 14/6 17/10 17/10 17/25 18/3 18/15 18/16 19/23 20/3 26/16 26/17 26/18 26/19 28/25 29/6 29/7 29/10 33/20 35/3 36/24 37/2 40/5 40/8 40/13 41/7 41/14 42/6 42/11 42/12 42/15 42/23 42/25 43/12 43/19 45/6 45/13 45/22 46/5 46/12 54/3 63/16 66/16 66/16 73/19 76/15 78/11 78/13 78/15 78/16 78/23 81/11 81/12 81/14 81/18 82/9 82/11 82/18 82/19 82/19 82/22 86/12 88/2 92/9 97/14 98/11 100/18 100/18 100/23 101/12 101/13 101/17 102/14 102/22 109/10 114/6 114/8

rule's [2]  6/4 40/25

ruled [1]  41/18

rulemaking [1]  9/25

rules [16]  29/5 35/5 35/5 39/7 42/13 42/20 43/22 54/20 55/4 82/20 85/25 86/2 86/9 88/22 101/4 109/11

**S**

sad [1]  15/12

safe [1]  106/15

safety [10]  29/16 67/11 67/21 67/21 68/11 68/13

# S

**safety...** **[4]**  72/8 72/14 106/22 113/10

**said** **[57]**  10/14 17/3 17/11 19/13 19/15 19/22 20/1 31/7 31/23 41/2 41/5 45/24 46/23 47/13 47/15 48/18 48/20 48/21 48/22 49/15 51/18 51/21 51/21 52/24 53/2 53/5 53/15 55/11 59/6 59/15 62/4 67/24 68/24 72/7 73/20 76/17 76/17 77/25 81/19 84/11 86/14 88/2 89/7 90/22 97/11 98/22 104/8 104/12 104/20 104/21 106/11 106/14 106/19 106/20 106/25 108/5 110/8

**same** **[25]**  7/7 7/17 11/2 12/7 23/24 27/18 30/13 35/14 46/23 46/25 50/15 52/22 53/4 57/12 59/24 60/3 83/24 84/1 84/6 85/1 87/23 91/5 96/11 96/23 108/9

**satisfy** **[1]**  17/6

**Savings** **[1]**  35/16

**saw** **[2]**  60/1 60/2

**Saxe** **[1]**  16/9

**say** **[52]**  7/16 10/12 11/24 24/5 24/15 28/14 30/9 32/18 32/20 33/15 33/19 34/3 38/21 40/5 43/5 46/11 47/7 50/15 50/18 50/23 51/24 55/5 55/21 56/17 58/10 60/21 60/23 62/9 69/5 69/25 70/19 71/18 71/21 72/5 76/9 77/13 79/2 81/3 82/10 82/15 82/25 83/2 86/22 88/4 91/22 96/21 102/13 104/24 108/3 112/25 113/1

113/16

**saying** **[37]**  12/11 31/4 38/15 50/19 50/21 50/24 50/25 51/15 51/18 52/2 52/5 52/10 52/13 55/1 57/17 58/1 59/12 59/14 66/17 67/15 70/22 73/17 74/6 74/17 74/18 74/25 75/22 76/24 85/12 90/23 91/1 95/1 97/15 101/9 102/13 104/14 111/18

**says** **[40]**  8/11 14/2 15/8 15/21 16/4 17/9 20/8 20/19 21/16 22/8 24/5 24/5 24/15 27/1 32/8 32/8 35/11 38/17 39/7 39/22 44/11 46/19 46/25 48/2 48/3 49/23 50/11 52/3 52/17 59/11 81/4 81/5 81/15 82/4 87/2 90/9 97/17 109/18 110/6 111/6

**scenario** **[2]**  78/20 78/24

**school** **[45]**  1/4 5/12 9/3 13/15 13/17 15/18 16/10 17/12 17/16 17/22 20/17 34/2 34/2 34/8 34/10 37/10 37/12 39/13 46/20 63/17 69/14 69/14 70/24 70/25 70/25 74/10 74/11 74/11 74/11 74/12 75/12 77/5 77/16 77/25 80/18 80/24 81/25 82/1 82/24 83/3 83/9 91/10 91/15 92/22 93/9

**school's** **[4]**  33/25 34/10 89/14 89/25

**school-aged** **[2]**  75/12 83/3

**schoolgirls** **[1]**  74/9

**schools** **[9]**  14/23 16/9 39/3 60/23 83/1 98/3 99/5 99/19 111/18

**scope** **[19]**  6/6 13/9 18/12 18/24 18/25 19/4 20/5 21/8 38/20 39/25 40/1 41/15 56/4 56/5 56/7 57/11 88/8 89/24 104/5

**Scouts** **[5]**  27/5 27/6 94/3 110/13 110/13

**seated** **[1]**  5/5

**second** **[12]**  7/25 17/17 21/12 26/22 27/2 41/15 52/12 52/12 56/19 86/22 108/19 111/14

**SECRETARY** **[2]**  1/9 1/11

**secretly** **[2]**  9/6 9/7

**Section** **[8]**  18/20 18/20 18/25 19/1 112/9 112/10 112/11 112/11

**Sections** **[1]**  112/18

**see** **[7]**  14/16 53/3 53/7 64/19 101/5 101/12 106/7

**seeing** **[1]**  86/25

**seeking** **[1]**  42/20

**seem** **[2]**  33/16 102/25

**seems** **[6]**  12/16 74/25 79/14 95/16 96/4 96/5

**seen** **[1]**  72/24

**segment** **[1]**  75/13

**self** **[1]**  75/14

**self-esteem** **[1]**  75/14

**send** **[2]**  77/7 80/25

**sense** **[12]**  14/3 20/4 20/16 26/11 60/13 60/17 67/1 92/7 98/9 109/17 111/25 114/21

**sentence** **[2]**  44/11 45/2

**separate** **[23]**  8/11 10/11 10/24 16/2 21/10 22/3 25/25 26/4 26/15 26/17 26/19 26/20 32/18 65/15 76/22 89/8 89/11 89/12 98/2 98/3 99/6 99/13 101/4

separated **[1]**  98/7

separating **[2]**  9/10 78/24

separation **[27]**  10/1 11/5 21/14 21/14 21/17 21/19 22/7 22/8 25/2 25/13 25/15 25/17 26/9 28/8 44/16 46/10 77/19 96/23 97/19 97/20 97/21 98/11 98/16 98/23 99/11 105/6 113/2

separations **[5]**  8/6 21/22 22/1 97/25 99/19

serious **[5]**  15/4 29/12 29/15 37/4 68/13

seriously **[1]**  28/19

set **[2]**  12/11 31/20

sets **[1]**  92/18

setting **[3]**  19/1 19/16 32/22

settled **[1]**  19/7

severability **[1]**  40/2

several **[2]**  28/11 71/9

severe **[7]**  14/9 14/13 15/3 33/11 34/20 35/10 35/14

severed **[4]**  41/7 41/7 41/10 41/12

sex **[217]**

sex-based **[9]**  8/6 8/8 12/17 13/23 22/12 45/4 87/13 89/12 95/23

sex-designated **[1]**  111/19

sex-separate **[12]**  10/24 21/10 22/3 25/25 26/4 26/15 26/17 26/20 65/15 89/8 89/11 89/12

sex-separation **[1]**  98/16

sex-specific **[4]**  8/15 9/1 92/25 93/22

sexes **[4]**  8/12 59/12 105/7 105/9

sexual **[9]**  30/22 33/9

53/6 55/3 57/25 90/10 90/15 52/18 52/19

sexually **[2]**  67/25 67/25

share **[1]**  67/7

sharing **[2]**  99/2 99/3

she **[7]**  15/12 27/24 28/1 28/1 28/2 106/14 106/16

short **[1]**  83/15

shortcoming **[3]**  71/12 73/10 77/3

should **[17]**  9/13 18/15 40/5 40/8 41/1 41/2 41/6 42/7 42/24 44/18 45/8 99/24 103/21 109/8 109/10 110/4 112/1

shouldn't **[3]**  24/23 100/6 110/16

show **[2]**  29/7 30/2

showed **[1]**  79/25

shower **[3]**  8/15 69/14 70/12

showers **[5]**  27/10 66/25 66/25 98/23 99/11

showing **[1]**  67/24

shown **[2]**  65/17 76/20

shows **[12]**  10/25 27/8 28/3 33/14 58/14 58/22 105/7 105/11 107/5 111/22 112/3 113/23

side **[3]**  12/16 74/3 107/1

sides **[1]**  59/12

sign **[1]**  53/16

Signed **[1]**  116/15

significant **[5]**  65/15 103/4 103/6 103/14 103/14

similar **[2]**  13/6 86/17

simply **[10]**  15/15 16/6 22/16 22/20 30/1 31/17 37/19 38/8 62/8 71/6

since **[8]**  8/7 11/2 23/11 23/11 61/18 66/19 75/12 113/19

single **[7]**  13/3 15/4 35/17 72/1 86/1 86/2 106/23

single-stall **[1]**  72/1

sit **[1]**  77/22

situation **[5]**  15/24 77/21 79/7 92/2 110/4

skirt **[1]**  91/8

sky **[1]**  29/6

sleeve **[1]**  63/8

slight **[1]**  15/11

slow **[1]**  82/3

so **[219]**

so-called **[1]**  15/14

social **[1]**  39/3

some **[27]**  5/17 11/20 15/8 29/9 34/5 36/18 37/8 51/3 51/4 60/23 63/16 66/14 72/2 76/9 92/12 96/15 97/11 97/11 97/13 97/16 98/25 104/2 112/12 112/12 113/1 114/4 116/8

somebody **[3]**  68/11 74/13 83/25

somehow **[2]**  39/12 61/4

someone **[10]**  61/21 61/24 62/9 62/11 69/15 97/7 97/7 110/24 111/7 113/8

something **[12]**  15/11 17/14 17/23 17/24 31/21 34/16 49/10 52/4 53/16 81/22 96/19 102/24

somewhere **[1]**  85/19

son **[2]**  27/6 110/14

sorry **[18]**  35/14 36/10 43/21 44/19 44/23 51/13 56/5 56/11 57/20 65/1 81/19 81/21 81/21 82/2 84/14 92/23 100/17 100/19

sort **[97]**  22/6 25/15 25/24 28/6 28/11 28/15 30/25 31/13 33/3 33/14 33/18 33/25 34/1 34/13

**sort...** **[83]**  35/22 36/3
36/4 36/8 36/13 36/19
37/5 38/6 38/13 38/18
39/23 40/4 43/25 45/12
45/13 46/7 46/8 52/21
53/12 53/24 54/3 54/4
56/6 56/19 58/7 58/11
60/17 60/21 60/23 61/12
61/16 62/14 62/15 63/5
63/6 63/7 63/9 63/21
63/23 65/11 66/4 66/7
67/7 67/13 67/15 67/18
68/10 71/11 71/11 72/4
72/9 72/17 72/19 73/14
73/25 75/7 75/8 76/3
82/22 83/17 84/13 86/9
87/14 89/9 90/19 90/22
91/1 92/7 92/8 92/12 93/7
95/21 95/22 96/14 97/10
97/16 98/4 98/7 98/9
98/24 99/1 101/20 110/11
**sorts** **[1]**  21/22
**sounds** **[2]**  50/25 57/2
**source** **[1]**  20/9
**Southern** **[1]**  16/8
**Southlake** **[7]**  80/12 81/4
81/5 83/10 83/14 86/18
89/14
**Southlake's** **[1]**  85/22
**Southwestern** **[1]**  41/5
**space** **[1]**  106/23
**spaces** **[6]**  13/11 17/21
40/19 40/25 45/25 105/25
**speak** **[10]**  21/10 26/9
26/13 38/2 40/19 40/20
78/11 78/15 78/23 82/2
**speaker** **[1]**  37/13
**speaking** **[1]**  42/4
**speaks** **[2]**  26/9 26/13
**special** **[1]**  92/8
**species** **[5]**  61/8 61/15

61/18 62/10 64/5
64/17 78/19 78/22
**specific** **[20]**  8/15 8/21 9/1
12/1 12/21 19/18 27/5 35/3
40/3 73/6 73/7 73/9
79/24 92/25 93/22 112/12
112/12 112/21 113/13 114/4
**specifically** **[2]**  14/6 78/23
**specified** **[2]**  57/1 93/4
**spectrum** **[1]**  29/12
**speculative** **[1]**  17/9
**speech** **[23]**  13/4 13/13
14/7 14/18 14/20 14/21
14/25 15/1 15/2 16/6 16/7
16/16 16/17 16/21 17/19
33/24 34/4 35/24 35/25
36/2 36/6 36/7 36/13
**spending** **[2]**  108/11 108/11
**splitting** **[3]**  99/25 100/12
100/16
**sports** **[11]**  6/4 8/21 9/2
11/7 18/8 25/24 26/24
34/5 93/13 93/14 93/16
**square** **[2]**  36/18 48/19
**staff** **[2]**  13/14 17/13
**stall** **[4]**  68/3 72/1 83/8
83/11
**stalls** **[2]**  83/5 87/24
**stand** **[5]**  28/10 43/19
43/24 95/6 95/13
**standard** **[38]**  13/22 14/5
14/11 14/15 14/18 15/3
15/20 15/22 16/12 16/24
17/7 20/4 28/7 29/19 30/5
32/22 33/2 33/18 34/15
35/20 35/24 36/6 44/3
68/16 78/16 79/2 79/5
79/6 95/9 96/11 96/11
96/13 107/5 107/17 107/24
107/25 115/3 115/6
**standards** **[6]**  35/13 35/20
36/9 37/15 96/25 97/1
**standing** **[4]**  57/17 100/4

100/5 100/10
**start** **[7]**  21/9 34/1 36/20
41/18 50/13 52/12 65/12
**started** **[1]**  86/25
**starts** **[2]**  17/16 65/10
**state** **[8]**  16/9 18/6 18/8
31/10 63/16 81/9 82/20
82/24
**states** **[27]**  1/1 1/7 1/9
1/12 1/13 1/15 1/18 1/23
2/12 3/2 6/17 14/20 29/5
29/7 31/6 31/14 41/25
42/8 42/9 42/11 42/13
42/19 102/2 102/2 102/12
103/6 116/14
**stations** **[1]**  8/6
**status** **[6]**  12/12 12/14
90/4 90/4 90/16 105/19
**statute** **[34]**  9/11 9/24 11/1
11/14 11/17 30/11 31/5 31/5
31/22 31/24 32/8 46/20
50/9 50/16 50/17 51/5
51/18 52/6 56/5 56/7
88/24 94/7 94/17 95/24
98/13 100/18 105/1 105/15
108/6 110/23 111/15 112/8
112/21 112/23
**statute's** **[1]**  11/23
**statutes** **[4]**  52/13 88/23
104/20 105/5
**statutory** **[26]**  8/8 8/19
9/15 10/18 10/22 22/5
24/3 24/14 25/20 26/24
26/25 48/4 48/15 49/3
50/12 50/15 51/4 51/23
51/25 52/7 54/3 55/13
55/14 93/12 111/20 112/17
**stay** **[16]**  6/25 42/23 45/3
100/19 100/20 101/11
101/21 104/6 104/8 104/11
104/15 114/6 114/8 114/13
114/14 114/21

**stayed [1]** 16/14
**stenography [1]** 3/9
**step [2]** 56/19 104/5
**steps [7]** 38/9 38/13
38/16 38/18 39/16 39/17
63/5
**stigmatic [2]** 106/3 107/3
**stigmatization [3]** 78/8
79/16 81/2
**stigmatize [1]** 83/12
**stigmatized [4]** 83/10 85/1
85/2 85/8
**still [10]** 12/14 44/4 78/4
84/19 106/11 107/14 107/15
110/4 111/18 114/18
**stop [3]** 36/5 45/15 69/21
**straightforward [5]** 22/20
23/19 27/25 31/23 45/10
**Street [5]** 2/3 2/9 2/13
3/3 116/20
**strikes [2]** 76/2 76/23
**strikingly [1]** 13/6
**striving [3]** 11/1 11/1 11/1
**structural [1]** 112/6
**structure [1]** 108/20
**student [57]** 15/11 15/13
27/13 36/3 36/5 37/9
60/13 61/1 61/7 69/6
70/12 70/13 70/23 70/25
72/19 77/17 77/22 78/1
78/2 78/2 78/3 78/7
78/17 79/15 79/18 79/19
80/1 80/3 80/3 80/19
80/24 81/15 82/4 82/7
83/25 85/19 86/7 86/22
86/23 87/12 87/16 87/23
88/18 89/3 89/14 89/16
91/2 91/5 91/17 91/17 92/4
92/6 92/24 93/1 93/7
99/7 109/25
**student's [8]** 11/3 11/3

35/11 60/17 65/16 78/3
80/2 91/3
**students [72]** 9/10 13/12
14/23 17/24 18/5 27/18
28/16 28/19 28/20 28/22
28/24 29/13 36/21 37/20
42/3 42/9 42/21 44/12
54/13 63/10 63/24 63/25
64/7 65/14 65/18 65/23
66/3 66/21 66/24 67/2
67/4 67/7 67/8 67/12
67/16 67/17 67/19 67/20
67/25 68/1 68/5 68/7
68/11 71/20 72/10 72/11
72/14 72/23 72/25 73/16
73/18 76/9 77/15 77/23
78/24 83/18 83/20 83/21
84/9 84/17 85/7 85/18
90/24 90/25 92/7 98/4
98/6 98/8 99/1 106/22
107/2 107/4
**students' [1]** 13/12
**studies [20]** 65/17 66/10
66/11 66/15 66/17 66/18
66/21 67/1 67/4 69/5
69/12 69/18 70/3 70/10
75/7 76/4 76/20 95/2
95/2 96/8
**study [3]** 71/11 74/20
76/22
**styled [1]** 3/8
**subject [3]** 20/13 42/6
42/23
**subjective [2]** 15/22 60/12
**subjectively [2]** 14/8 34/19
**subjectivity [1]** 14/4
**subsection [2]** 10/23 26/3
**substance [1]** 103/8
**substances [1]** 102/19
**substantial [3]** 33/23 34/9
67/11
**substantially [1]** 34/9

**substantive [6]** 39/23
40/11 100/15 102/18 103/8
103/18
**substantively [1]** 103/14
**such [9]** 13/4 39/20 49/16
63/13 63/21 64/1 64/19
76/22 98/8
**sudden [2]** 37/23 103/1
**sued [1]** 42/14
**suffer [3]** 17/2 18/2 85/22
**sufficient [2]** 63/22 64/19
**sufficiently [1]** 33/11
**suggests [1]** 15/14
**Suite [2]** 2/3 2/9
**sum [1]** 44/22
**superintendent [1]** 5/18
**superstar [1]** 45/13
**supply [1]** 80/10
**support [2]** 66/12 85/17
**supported [1]** 74/14
**Supreme [40]** 14/11 14/15
24/11 24/19 24/22 31/7
31/12 32/22 35/15 41/2
45/7 47/15 48/7 48/18
48/18 48/21 48/22 50/7
50/13 50/19 50/21 51/3
52/5 52/15 52/20 53/5
53/11 53/12 53/15 54/3
56/6 76/17 96/14 103/19
104/8 108/5 112/7 112/14
112/20 113/5
**sure [10]** 43/9 45/17
45/20 62/20 63/25 64/3
65/9 67/3 76/18 92/10
**surprising [2]** 12/7 74/25
**surrounded [1]** 24/20
**survive [4]** 44/6 44/8
44/10 44/22
**survived [1]** 35/21
**suspending [6]** 11/11 11/14
30/8 30/10 30/15 30/23
**sweep [3]** 13/3 30/25 32/6

**S**

sweeping **[2]** 108/7 110/12

switch **[1]** 40/4

**T**

take **[16]** 19/9 26/5 27/17
33/25 36/25 37/5 38/9
38/12 50/23 75/1 87/6
97/8 104/2 107/12 113/4
115/11

taken **[3]** 39/18 95/15
107/9

takes **[3]** 25/23 28/18
99/10

taking **[5]** 96/6 109/21
111/10 115/4 115/6

talk **[10]** 28/14 46/24
66/10 66/18 66/21 73/2
77/8 77/9 77/14 81/20

talked **[2]** 65/13 106/9

talking **[6]** 26/20 32/24
33/24 34/8 66/23 108/5

talks **[3]** 14/21 25/13
65/17

tandem **[1]** 9/18

teacher's **[1]** 36/17

teachers **[1]** 36/21

team **[2]** 8/23 34/5

teams **[3]** 9/2 10/24 111/19

Telephone **[4]** 2/4 2/7
2/10 2/14

tell **[6]** 8/23 9/23 67/4
71/17 73/13 80/9

telling **[1]** 86/13

tells **[2]** 49/10 113/12

temporary **[1]** 42/23

Tennessee **[6]** 13/7 13/25
59/2 59/4 59/6 102/1

term **[17]** 13/25 51/4
51/23 54/11 55/13 55/14
56/9 56/13 56/16 57/1
57/3 57/15 57/18 97/4

97/5 107/19 110/21

terminating **[1]** 104/25

terms **[17]** 15/22 15/23
17/8 29/15 30/4 49/23
50/15 51/1 52/4 52/4
55/20 75/6 108/6 112/12
112/22 112/23 113/10

testimonial **[1]** 63/20

TEXAS **[18]** 1/2 1/6 2/4
3/3 11/13 11/19 13/7 16/8
18/22 23/10 42/14 42/14
42/18 58/8 101/25 114/11
116/18 116/20

text **[8]** 8/8 8/19 51/25
52/7 105/14 110/22 111/3
111/20

textualist **[1]** 58/11

than **[34]** 21/18 22/1 22/9
25/18 27/15 28/4 33/3
41/3 59/22 60/8 60/10
61/13 70/20 77/19 77/22
78/7 78/17 78/21 79/3
79/15 80/5 93/16 93/20
94/6 95/23 96/20 96/21
97/15 98/8 98/19 99/7
99/20 102/3 112/4

thank **[19]** 5/6 5/15 5/19
6/2 6/19 12/23 12/24
20/24 20/25 21/3 47/5
69/3 103/23 103/25 104/3
114/24 115/1 115/9 115/10

that **[860]**

that's **[94]** 7/7 7/17 7/22
8/24 9/11 10/14 12/4 12/19
16/6 17/14 21/12 23/18
25/3 26/19 28/16 29/23
30/22 31/15 32/2 33/1
33/6 33/17 33/19 35/18
35/24 36/4 36/15 37/17
37/18 38/1 38/7 43/1 43/5
44/18 45/13 46/7 47/16
49/6 49/14 50/1 50/1

50/20 50/23 52/9 53/1
53/11 58/1 58/1 58/13
61/15 63/14 64/21 64/24
65/1 65/4 65/5 70/16
72/25 73/24 74/16 76/23
76/24 78/5 80/20 81/5
82/14 84/19 86/2 87/2
87/16 89/6 89/7 89/9
90/17 93/8 93/19 95/9
96/3 98/12 99/18 102/24
103/3 104/7 104/16 104/16
106/24 107/8 108/2 109/1
110/8 110/16 110/17 113/8
113/17

their **[61]** 7/4 14/3 17/13
17/13 17/14 17/24 27/14
32/11 33/17 33/19 34/6
34/13 36/12 36/21 36/21
37/9 38/5 40/2 40/10
42/23 51/23 52/6 52/9
60/18 60/25 61/2 61/5
61/7 61/13 61/19 65/19
65/19 66/5 66/21 70/1
70/24 72/16 72/24 74/9
74/12 75/24 77/6 77/6
77/16 77/17 78/5 78/5
78/18 79/21 81/11 81/11
82/13 84/1 85/9 87/3
87/16 91/6 93/9 110/9
110/17 112/10

theirself **[1]** 60/14

them **[28]** 8/23 9/10 16/20
18/11 23/8 27/10 30/1
41/19 42/13 52/8 64/8
66/19 66/19 66/20 68/20
69/11 70/4 70/8 74/4
78/21 80/10 84/12 95/25
98/7 98/9 99/6 106/1
109/11

themselves **[3]** 23/3 98/14
113/22

then **[89]** 7/9 10/17 15/5

**T**

**then...** **[86]**  15/20 16/13 16/25 18/12 20/1 21/6 21/20 21/21 22/11 23/11 25/19 25/20 26/22 26/24 27/15 28/8 30/8 30/23 31/18 34/13 34/22 35/11 37/4 38/21 38/25 39/13 39/17 41/15 42/11 44/20 46/10 46/15 48/14 49/18 49/22 50/4 50/6 50/23 53/23 54/2 54/7 55/20 55/23 55/23 58/6 58/18 61/5 62/22 66/6 66/11 68/10 69/23 71/7 73/19 73/21 73/23 73/25 74/17 74/22 77/5 78/18 78/18 79/4 81/7 90/14 90/15 91/6 92/9 92/20 97/21 97/22 98/4 99/10 99/16 100/10 100/15 102/23 104/1 104/18 105/10 107/7 107/16 111/2 112/13 113/11 114/9

**theory [4]**  7/4 7/9 7/16 9/5

**there [133]**

**there're [2]**  39/16 105/8

**there's [46]**  9/17 10/18 10/22 12/14 16/6 21/19 26/19 29/2 29/9 39/5 40/14 40/16 40/21 40/25 41/4 44/17 53/21 54/8 55/21 55/22 60/5 67/17 72/7 72/7 72/9 72/13 74/8 81/18 84/18 84/24 84/25 85/13 95/17 96/22 97/19 98/2 98/8 98/15 98/16 98/22 99/18 100/4 101/7 101/16 106/3 106/21

**therefore [8]**  28/4 30/24 42/6 42/24 46/21 51/5

80/6 110/16 111/15 113/2

**these [55]**  8/25 9/17 12/20 16/5 38/12 40/15 45/16 50/22 55/3 66/25 67/9 67/15 68/15 69/12 70/10 90/17 90/24 93/22 95/2 95/2 95/17 96/7 102/1 109/6 110/13 111/6 112/19 112/23 113/1 113/2 113/3 113/16

**they [92]**  9/1 10/7 11/16 13/4 19/24 22/2 23/3 23/4 23/4 24/4 24/5 24/15 24/25 28/14 28/14 29/14 30/9 31/3 32/16 32/17 32/18 32/19 33/18 33/18 40/4 40/5 40/9 41/7 41/10 42/8 42/23 44/7 46/25 50/15 51/4 51/20 51/21 51/22 51/23 52/8 57/19 58/10 59/2 60/16 60/17 61/3 61/3 61/4 61/9 64/2 65/6 65/7 66/15 66/23 67/1 68/8 68/13 69/7 70/10 71/25 71/25 74/12 74/14 75/2 75/22 77/7 77/9 77/10 77/13 78/8 78/9 79/10 79/20 79/20 79/21 81/7 82/16 83/1 86/7 87/4 91/16 93/22 101/3 101/4 101/22 106/25 110/8 110/16 110/17 112/24 112/25 114/15

**they're [28]**  17/9 23/1 24/7 39/1 39/11 40/8 42/5 43/22 52/8 53/25 54/7 62/14 66/4 68/1 69/16 72/15 73/18 85/8 87/14 94/16 95/24 99/6 99/6 102/14 103/5 111/7 111/8 111/12

**they've [2]**  11/2 94/10

**thing [6]**  7/7 46/23 46/25 50/15 53/11 98/24

**things [18]**  12/18 14/24 24/16 35/4 37/11 40/14 46/3 49/24 55/3 61/8 68/7 73/3 81/3 83/24 111/6 112/5 112/15 113/16

**think [100]**  20/7 25/22 33/8 35/24 37/18 38/1 40/7 40/11 41/13 41/25 42/16 43/1 43/5 43/18 43/23 44/8 44/9 44/22 45/9 45/14 45/19 45/21 46/14 47/6 48/10 51/8 51/12 52/14 52/22 53/19 55/8 55/21 56/20 57/4 57/16 57/16 57/21 57/22 58/14 59/21 62/9 62/11 62/16 63/3 63/11 64/9 64/16 73/5 73/23 74/1 74/4 75/3 75/25 76/2 76/14 77/18 78/13 78/16 79/7 79/12 80/17 83/16 85/4 88/21 90/21 92/1 93/6 93/13 93/17 93/18 93/19 94/18 95/4 95/10 95/20 96/22 97/23 98/25 99/24 100/9 101/7 101/16 101/17 101/22 102/5 102/7 102/8 102/8 103/17 103/22 104/4 108/17 109/12 109/14 109/17 110/4 112/25 113/5 113/25 114/11

**thinks [1]**  9/8

**third [4]**  16/10 22/11 24/25 105/13

**this [167]**

**Thomas [2]**  106/8 106/10

**THOMPSON [3]**  2/8 5/25 6/14

**Thompson.....................
...............06 [1]**  4/3

**T**

**those [72]** 17/23 19/25 22/8 27/11 28/8 29/7 29/18 29/23 32/9 34/1 38/15 39/9 39/16 39/17 39/23 40/21 41/20 41/24 42/9 44/22 47/22 48/7 48/9 52/4 52/11 53/21 55/4 62/12 64/3 66/17 66/17 66/20 67/1 67/2 67/3 67/4 67/6 68/7 69/17 71/21 71/23 80/17 83/24 86/9 90/6 91/4 94/5 94/9 98/8 98/25 99/5 99/19 102/15 105/5 105/7 107/6 107/10 108/1 108/25 109/1 109/13 109/14 110/15 111/3 111/11 111/21 112/5 113/22 113/24 113/25 114/7 116/13

**though [6]** 10/21 12/10 15/21 56/9 69/4 88/9

**thought [6]** 12/5 32/1 32/6 75/5 76/25 77/1

**threat [1]** 20/13

**threats [1]** 17/5

**three [9]** 13/7 16/13 17/8 21/5 22/14 41/18 42/19 77/12 100/24

**threshold [4]** 64/6 64/11 64/13 86/5

**through [6]** 44/23 65/25 72/2 81/9 94/1 106/7

**throw [1]** 73/3

**thus [1]** 41/19

**Tim [1]** 5/13

**time [15]** 6/10 6/11 8/21 11/16 11/22 24/11 33/9 40/10 40/12 47/18 53/12 58/10 61/2 96/24 102/23

**TIMOTHY [1]** 2/2

**Tinker [1]** 16/11

**Title [109]** 7/4 8/9 8/11 9/15 10/3 11/7 11/7/9 11/14 12/8 12/13 13/9 16/18 16/23 17/13 21/9 22/3 22/10 23/17 23/24 23/24 24/2 24/2 24/5 24/5 24/15 25/1 25/2 25/4 25/8 25/8 27/4 30/15 30/18 33/10 33/10 35/13 35/15 35/18 36/9 36/10 40/17 40/24 41/11 43/11 43/17 44/25 45/8 46/7 46/16 46/19 46/20 47/8 47/9 47/11 47/14 47/17 47/21 47/21 49/5 49/6 49/8 51/25 51/25 54/12 55/1 80/6 81/7 85/23 86/19 87/20 88/14 88/21 88/24 88/24 89/1 89/13 92/21 93/2 93/3 93/11 94/5 97/22 98/13 104/19 104/19 104/25 105/6 105/11 105/11 105/14 105/16 108/6 108/9 108/10 108/12 108/12 108/15 108/20 108/24 109/5 109/8 109/17 109/21 110/6 110/10 111/15 111/20 113/18 113/20

**today [16]** 6/25 7/8 21/6 21/12 22/19 22/22 23/18 24/24 29/6 40/16 41/10 42/11 60/21 87/2 95/13 96/4

**together [2]** 34/12 98/12

**told [3]** 70/9 75/12 80/24

**tolerate [2]** 91/2 91/4

**tolerated [5]** 91/12 91/13 91/17 92/14 92/16

**tolerating [1]** 91/16

**Tom [1]** 72/10

**tomorrow [1]** 60/22

**too [3]** 43/1 44/9 93/19

**took [1]** 23/15

**topic [1]** 15/2

**topics [1]** 15/2

**tortured [1]** 9/23

**totality [4]** 14/7 34/18 36/11 72/4

**touch [1]** 36/23

**tournament [1]** 34/4

**tournaments [4]** 18/8 18/8 33/25 42/5

**tracks [1]** 97/14

**traditionally [3]** 13/5 15/17 90/12

**traditions [1]** 43/3

**train [3]** 13/14 17/12 17/13

**trans [8]** 27/22 76/9 84/5 84/5 85/2 86/18 92/25 95/2

**transcribed [1]** 116/10

**transcript [4]** 1/22 87/2 116/5 116/12

**transgender [31]** 12/12 12/14 23/1 23/2 23/7 28/20 28/22 29/13 53/6 64/7 65/14 66/18 67/8 67/12 67/16 67/20 67/24 68/6 68/11 71/24 72/10 72/11 72/14 90/11 90/16 90/24 93/7 105/18 106/22 106/23 107/2

**transgender-identifying [1]** 107/2

**transgenderism [1]** 90/5

**trauma [1]** 106/17

**travel [4]** 18/6 42/4 42/9 42/22

**treat [3]** 97/7 97/7 110/24

**treated [5]** 10/19 11/3 88/1 88/10 105/6

**treating [6]** 19/2 19/16 105/7 111/7 112/4 113/8

**T**

**treatment [1]** 111/24
**treats [1]** 92/19
**trigger [5]** 54/1 54/2 58/7 58/11 89/24
**true [9]** 7/7 16/6 25/3 27/18 28/17 56/23 110/9 110/10 116/5
**truly [1]** 37/9
**trump [1]** 105/19
**trustee [1]** 5/18
**try [6]** 8/23 24/25 62/15 74/3 82/3 114/18
**trying [7]** 9/19 11/2 24/7 52/17 56/24 62/8 88/5
**turn [2]** 6/13 12/21
**turning [1]** 13/21
**turns [1]** 15/1
**two [27]** 7/18 9/16 9/17 17/19 23/25 25/22 28/9 32/18 40/1 42/9 42/11 46/25 48/9 51/7 53/21 53/23 59/12 60/6 66/11 66/15 77/12 86/10 90/6 100/19 110/19 112/9 112/11
**type [7]** 21/14 28/12 32/7 34/25 35/1 35/3 65/21

**U**

**U.S [2]** 48/18 50/10
**U.S.C [3]** 7/22 13/19 108/23
**Uh [1]** 55/16
**Uh-huh [1]** 55/16
**ultimate [1]** 78/12
**ultimately [6]** 18/25 32/4 32/5 67/10 71/22 77/2
**unable [2]** 55/13 71/10
**unambiguous [5]** 30/12 30/17 30/23 30/23 108/13
**unambiguously [2]** 30/14 108/15

**unavailing [1]** 16/19
**unclear [1]** 47/7
**unclothed [4]** 70/1 70/24 72/24 74/10
**uncomfortable [5]** 67/19 68/6 83/4 83/5 83/12
**unconstitutional [3]** 18/1 94/10 96/9
**undefined [3]** 13/25 15/23 107/19
**under [42]** 6/25 7/5 8/9 12/13 13/9 13/19 16/11 17/1 18/3 18/14 18/18 18/25 19/1 22/2 22/9 22/13 32/17 55/1 68/2 87/11 87/20 88/13 89/13 92/21 93/2 93/3 93/5 93/11 95/7 95/8 95/17 100/18 100/18 101/4 101/12 101/13 107/7 108/23 110/4 114/6 114/13 115/11
**underlying [1]** 109/22
**undermine [3]** 38/19 43/12 109/9
**understand [21]** 51/8 51/17 55/10 56/21 56/22 56/24 60/12 63/1 72/5 73/2 73/4 80/10 80/13 82/19 88/4 88/5 90/5 97/4 100/3 103/10 103/12
**understanding [2]** 19/14 112/11
**understood [4]** 8/21 9/3 15/17 108/15
**undress [1]** 106/6
**undressing [1]** 106/15
**unexpected [1]** 108/8
**unfair [1]** 95/5
**unfounded [1]** 67/22
**uniform [1]** 20/3
**uninterrupted [1]** 77/10
**unique [2]** 49/16 101/18

**UNITED [13]** 1/1 1/7 1/9 1/12 1/15 1/18 1/23 2/12 3/2 6/17 14/20 116/14
**universally [1]** 114/3
**universe [1]** 113/17
**unlawful [14]** 13/1 13/1 17/5 18/3 18/16 18/21 19/1 19/23 19/24 41/6 51/19 92/21 97/22 113/23
**unless [10]** 12/20 19/24 20/22 39/24 92/20 93/3 93/5 93/11 103/23 113/22
**unnecessary [1]** 57/13
**unreasonable [1]** 38/19
**up [14]** 29/7 38/3 44/22 63/8 68/21 68/21 69/1 74/13 74/18 75/1 75/23 75/23 102/25 103/5
**upcoming [1]** 13/15
**upheld [1]** 35/15
**upholding [1]** 15/18
**upon [1]** 56/25
**upset [1]** 15/12
**urges [1]** 46/21
**urinal [1]** 84/14
**urinals [1]** 83/4
**us [12]** 5/17 6/22 16/25 18/12 40/15 46/21 49/10 50/23 74/20 74/22 74/24 78/1
**use [27]** 18/8 28/24 29/1 29/14 35/14 46/21 48/19 48/24 49/2 51/4 52/8 68/12 69/6 70/12 72/15 83/7 83/11 83/13 83/20 83/23 84/14 84/15 84/23 85/9 98/1 98/9 113/2
**used [10]** 13/5 24/11 48/7 50/22 51/5 51/22 51/23 64/13 64/13 112/12
**uses [9]** 15/21 20/3 49/23 52/3 52/18 83/8 88/25

**U**

uses... **[2]**  112/19 112/20
using **[13]**  13/4 15/16 15/19
17/20 27/14 53/9 53/12
54/3 83/4 83/5 83/19
89/4 106/11

**V**

vacatur **[4]**  18/20 19/11
19/16 114/12
vague **[1]**  32/20
vagueness **[3]**  34/13 34/14
35/22
value **[1]**  96/22
variation **[17]**  24/6 24/8
24/9 24/21 24/25 48/3
48/14 48/15 49/14 49/20
50/2 50/3 50/4 51/10
53/14 53/18 54/2
variations **[2]**  24/1 53/16
variety **[2]**  40/13 46/2
various **[24]**  21/21 22/5
22/14 24/4 25/19 27/3
27/4 27/12 29/5 29/23
30/6 32/14 34/15 34/22
35/1 35/13 38/17 41/24
43/18 43/20 44/23 45/21
45/24 76/1
vast **[1]**  105/5
vastly **[2]**  46/19 104/19
verbal **[2]**  35/9 35/25
versus **[4]**  48/1 48/11 49/1
99/3
very **[34]**  5/24 6/8 6/9
9/23 10/15 10/15 23/17
27/5 27/5 29/18 29/18
31/20 33/14 33/15 35/3
35/6 36/7 36/7 36/19
36/19 39/6 46/2 47/13
58/4 58/5 62/16 62/16
68/16 75/3 75/13 81/12
82/10 86/7 108/7

via **[1]**  116/9
viable **[1]**  36/18
victim **[2]**  106/13 106/14
videoconferencing **[1]**
116/10
view **[8]**  45/7 46/16 76/6
81/7 88/6 88/6 90/12
95/16
viewed **[3]**  70/1 70/25
74/10
viewpoint **[3]**  15/13 16/1
90/20
VII **[23]**  12/13 16/18 16/23
23/24 24/2 24/5 24/15
25/2 25/4 25/8 35/15
35/18 36/10 46/19 47/8
47/11 47/21 49/5 49/8
104/19 105/11 108/6 108/10
violate **[11]**  36/25 39/4
39/21 68/2 78/19 80/22
81/7 85/23 93/10 96/24
111/20
violated **[1]**  86/19
violates **[3]**  9/12 14/11
30/10
violation **[7]**  33/10 38/7
77/24 78/4 89/1 96/17
105/16
violations **[1]**  96/15
violative **[3]**  78/14 80/6
97/21
violent **[2]**  106/13 106/14
Virginia **[1]**  2/7
voicing **[2]**  66/4 67/9
VOLUME **[1]**  1/21

**W**

waive **[1]**  12/16
WALKER **[2]**  2/3 5/11
want **[26]**  17/23 23/9
23/17 29/18 32/14 34/14
46/3 56/19 57/15 60/20
61/11 62/2 68/16 73/4

75/3 77/10 77/11 78/12
79/20 80/13 80/21 83/1
84/14 85/25 86/20 115/4
wanted **[3]**  27/9 61/4
113/13
wants **[6]**  6/21 83/11 83/13
93/1 102/24 104/2
was **[80]**  3/8 7/8 7/9 9/3
11/17 11/19 11/25 12/6 12/6
17/11 18/16 19/12 24/19
26/16 30/3 30/5 30/17
30/17 31/4 31/5 31/7 31/12
31/13 31/13 32/2 32/10
32/22 32/25 33/1 33/2
33/11 36/7 42/1 46/1 46/2
46/4 47/10 47/16 47/17
49/19 49/20 52/20 53/2
56/1 56/18 57/13 59/22
59/23 62/4 62/8 63/19
63/21 63/22 65/23 65/24
65/24 66/1 66/3 66/13
67/13 67/14 68/8 68/23
69/4 70/23 73/23 75/4
77/1 85/15 86/17 91/12
96/15 101/17 104/14 106/10
108/22 111/16 112/9 114/12
115/2
Washington **[2]**  2/10 2/14
wasn't **[15]**  24/22 32/24
33/15 33/16 44/23 49/8
56/17 58/24 59/20 66/15
70/5 73/24 74/7 84/18
85/6
way **[27]**  8/3 9/2 9/15
23/3 23/4 23/6 29/22
29/25 50/11 51/4 52/6
52/14 57/12 57/14 59/24
60/5 62/13 64/24 65/4
68/18 74/1 76/13 77/2
82/25 84/17 85/20 105/6
ways **[1]**  71/23
we **[63]**  7/15 7/15 10/14

# W

**we...** **[60]** 10/20 10/22 11/24 15/20 18/5 30/5 30/10 30/13 30/15 30/19 31/1 33/15 33/24 35/16 35/24 37/18 37/25 39/19 40/7 40/11 40/16 41/13 42/16 43/1 43/18 43/23 47/13 47/20 48/6 50/11 50/11 50/24 51/24 54/16 58/16 58/18 59/15 59/18 62/15 64/1 65/7 78/1 80/24 90/12 90/23 96/22 96/23 101/16 101/16 102/7 102/8 104/5 104/18 105/25 110/1 110/4 110/15 110/20 115/2 115/4

**we're [8]** 34/3 34/4 34/8 42/19 51/6 81/6 90/10 108/5

**we've [7]** 7/16 8/10 10/19 11/5 50/18 50/22 103/22

**wear [1]** 90/11

**wearing [1]** 116/9

**wears [1]** 91/8

**week [1]** 112/6

**weeks [4]** 7/13 11/19 13/16 20/17

**weigh [4]** 29/17 30/1 68/15 68/25

**weighed [5]** 29/22 29/25 68/19 68/20 68/25

**well [48]** 7/1 7/15 8/23 10/19 11/20 11/25 12/10 20/6 24/6 24/15 25/3 26/6 27/17 28/23 31/25 34/3 38/25 40/5 49/8 51/13 54/19 54/22 61/9 61/10 61/18 63/3 64/4 65/20 76/7 76/14 81/5 83/25 85/4 85/14 86/8 87/2 88/24 92/1 93/12

94/13 97/23 98/22 100/9 102/3 102/17 103/25 107/8 115/10

**well-being [1]** 65/20

**went [2]** 44/23 66/7

**were [18]** 9/13 12/1 39/23 40/12 50/24 58/5 58/12 61/18 66/4 73/14 74/17 85/6 85/7 100/13 102/21 102/21 113/22 116/10

**weren't [3]** 29/7 74/3 85/7

**what [122]**

**what's [11]** 18/5 24/9 31/15 33/8 52/14 58/14 63/1 77/11 83/16 90/19 113/9

**whatever [13]** 6/11 26/16 51/21 60/14 70/10 79/17 80/14 94/1 96/22 102/15 110/14 112/9 112/19

**whatnot [10]** 36/13 42/5 44/3 45/25 61/16 63/21 68/14 72/1 81/10 94/3

**when [30]** 11/7 11/7 14/25 15/22 18/17 24/13 25/6 27/9 32/1 33/15 35/10 41/23 49/23 50/22 51/20 51/20 51/22 52/3 52/7 52/17 53/15 56/25 63/4 76/15 82/15 91/2 92/9 106/18 107/13 108/5

**whenever [1]** 105/19

**where [30]** 10/1 21/13 21/19 22/6 25/1 31/8 31/20 34/8 34/11 37/3 37/8 50/17 62/12 63/4 63/22 66/1 73/19 76/4 79/20 79/21 81/15 82/4 83/8 89/11 91/5 91/16 97/11 97/24 105/7 110/25

**whereas [5]** 24/5 25/2

27/22 63/24 101/21

**whether [21]** 23/21 45/12 47/12 48/13 48/14 48/25 49/2 53/20 54/5 56/3 56/16 64/2 64/11 65/24 72/22 76/19 78/7 78/13 81/9 94/9 96/16

**which [59]** 10/23 11/19 13/15 13/24 14/3 14/12 15/5 15/15 17/17 18/18 18/21 18/22 19/1 19/2 19/5 19/16 21/8 21/13 21/13 22/1 22/3 25/11 25/12 26/3 26/6 26/25 28/9 28/13 29/22 29/25 30/19 33/9 33/14 33/22 34/24 36/24 38/4 39/21 49/20 50/10 51/9 52/18 53/10 60/17 66/12 68/4 68/18 72/18 79/13 83/17 84/18 86/5 93/11 94/6 100/14 105/21 106/20 107/21 108/8

**whichever [1]** 112/10

**while [5]** 17/9 20/15 42/22 96/20 96/23

**who [34]** 5/22 6/21 12/2 16/13 28/25 28/25 29/13 42/4 42/21 61/21 62/4 62/23 62/24 63/6 63/24 66/21 66/24 68/11 74/23 77/15 83/3 84/1 84/13 84/17 85/7 85/19 92/25 98/4 99/2 99/4 106/6 106/21 107/2 107/4

**Who's [1]** 5/8

**whoever [1]** 104/2

**whole [8]** 12/17 18/15 40/5 41/14 84/11 102/14 103/15 108/19

**whomever [1]** 101/15

**whose [1]** 84/1

# W

**why [45]** 21/7 22/15 24/3 27/2 37/22 37/25 40/14 40/17 40/21 40/25 41/9 44/17 46/7 48/6 48/9 48/10 49/7 53/3 53/7 53/21 54/8 61/21 61/22 62/3 62/4 64/17 65/11 76/23 84/19 87/21 87/21 87/25 88/5 88/12 89/1 100/6 106/5 107/23 107/24 108/8 110/9 110/9 110/19 112/1 112/3

**wide [2]** 35/25 46/2

**will [44]** 5/9 5/22 5/25 6/5 6/11 6/13 6/17 12/21 13/14 17/2 17/22 17/24 17/25 18/2 20/18 20/22 21/7 21/25 22/14 24/3 27/2 28/11 29/9 31/11 32/11 32/21 36/18 37/3 38/2 42/3 42/21 52/19 67/20 67/21 68/6 73/17 77/7 80/10 82/3 89/11 96/23 104/1 105/13 115/10

**WILLIAMS [4]** 3/2 116/4 116/17 116/17

**wing [2]** 10/12 10/12

**withholding [1]** 82/13

**within [4]** 14/21 38/20 88/7 89/24

**without [5]** 23/7 37/6 57/11 71/7 79/9

**witness [1]** 63/20

**witnesses' [1]** 38/10

**women [4]** 8/22 10/12 12/2 99/3

**womens' [2]** 10/11 12/2

**won't [5]** 55/5 55/19 55/20 78/3 91/4

**wondering [1]** 59/1

**Woods [1]** 35/19

**word [7]** 4/8 7/10 55/22 64/13 64/13 68/23 90/17 101/9 101/9 103/24

**words [8]** 13/2 21/19 50/22 51/4 71/6 93/24 101/9 101/11

**work [3]** 8/24 9/17 46/1

**working [1]** 45/23

**works [1]** 28/7

**worn [1]** 99/22

**worse [7]** 88/1 88/10 97/7 110/24 111/7 112/4 113/8

**WORTH [6]** 1/3 1/6 2/4 3/3 116/19 116/20

**would [189]**

**wouldn't [28]** 28/1 28/2 44/5 49/7 49/19 50/9 53/4 53/7 54/8 74/12 76/7 85/24 87/11 87/19 87/21 87/25 88/13 88/19 89/1 89/18 91/5 91/22 94/11 94/20 100/14 101/22 106/14 108/9

**written [4]** 50/18 50/22 51/3 110/23

**wrong [2]** 59/13 90/17

**wrote [1]** 51/20

# Y

**yeah [16]** 51/14 59/10 65/4 71/16 74/21 75/17 85/21 86/24 90/9 93/15 93/18 93/19 94/22 94/22 100/1 115/8

**year [4]** 13/15 17/12 17/16 77/12

**years [3]** 11/6 77/12 111/16

**Yellen [1]** 11/19

**yes [44]** 6/23 27/20 27/24 43/7 48/3 49/13 49/18 51/16 53/15 54/17 55/16 55/18 60/15 60/25 61/5 61/6 62/1 69/10 70/15 70/18 70/21 73/8 75/9

75/19 78/18 80/21 80/22 83/15 83/19 83/22 93/6 94/4 94/4 94/18 94/19 94/21 99/15 99/18 100/1 100/22 100/24 100/24 100/25 103/25

**you [220]**

**you're [20]** 39/9 50/25 51/6 51/15 51/18 57/23 59/12 62/4 66/17 70/22 72/18 74/6 74/18 75/22 84/20 85/12 86/13 95/1 101/9 102/13

**you've [4]** 66/8 73/3 99/22 114/5

**you-all [2]** 43/12 45/15

**young [3]** 29/8 29/8 76/21

**your [33]** 5/9 6/16 12/20 12/24 21/1 45/18 46/22 47/6 51/8 51/17 54/25 55/10 58/4 58/7 71/9 76/5 80/7 81/7 84/10 88/6 95/1 95/16 95/19 95/21 97/8 104/3 104/18 108/3 109/9 113/4 114/11 114/17 114/24

# Z

**ZOIE [4]** 3/2 116/4 116/17 116/17

**zwilliams.rmr [2]** 3/4 116/21