IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CARROLL INDEPENDENT SCHOOL DISTRICT,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION; MIGUEL CARDONA, in his official capacity as Secretary of the United States Department of Education; CATHERINE E. LHAMON, in her official capacity as Assistant Secretary for Civil Rights at the United States Department of Education; UNITED STATES DEPARTMENT OF JUSTICE; MERRICK B. GARLAND, in his official capacity as Attorney General of the United States; and KRISTEN CLARKE, in her official capacity as Assistant Attorney General for the Civil Rights Division of the United States Department of Justice,<br><br>*Defendants*. | Civil Action No. 4:24-cv-00461-O |

**UNOPPOSED MOTION FOR THE GOLDWATER INSTITUTE AND
THE TEXAS PUBLIC POLICY FOUNDATION TO
PARTICIPATE AS *AMICI CURIAE***

Pursuant to Local Rule 7.2(b), the Goldwater Institute ("GI") and the Texas Public Policy Foundation ("TPPF") respectfully move for leave to file a brief as amici curiae in support of Plaintiff's request for the stay of the August 1, 2024, effective date for the Department of Education's ("DOE") final rule ("Final Rule") interpreting Title IX's prohibition of sex-based

discrimination to include not only biological sex but also sexual orientation and gender identity. The proposed brief is attached as Exhibit A. All parties consented to the filing of this brief.[1]

Amicus participation is appropriate where, as here, "the amicus has unique information or perspectives that can help the court beyond the help that the lawyers for the parties are able to provide." *Schaghticoke Tribal Nation v. Norton*, No. 6-81(PCD), 2007 WL 971929, at *3 (D. Conn. Aug. 2, 2007) (internal quotation marks omitted). District Courts "have broad discretion to permit the filing of an amicus brief," and "[f]actors relevant to the determination include whether the proffered information is timely and useful or otherwise necessary to the administration of justice." *Cina v. Cemex, Inc.*, No. 4:23-cv00117, 2023 WL 5493814, at *1 (S.D. Tex. Aug. 17, 2023) (quoting *United States v. Oli*s, No. H07-3295, 2008 WL 620520, at *7 (S.D. Tex. Mar. 3, 2008)).

This Court regularly permits amici to participate in its proceedings. *See e.g.*, *Planned Parenthood of Greater Tex. Surgical Health Servs. v. City of Lubbock*, 542 F. Supp. 3d 465, 475 (N.D. Tex. 2021); *Texas v. United States*, 201 F. Supp. 3d 810, 815 n.1 (N.D. Tex. 2016). In fact, this Court has permitted amici to participate in the earlier proceedings in this case. *Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, No. 4:24-cv-00461 (N.D. Texas 2024) (O'Connor, J.), EFC Nos. 25, 40.

## INTEREST OF *AMICI CURIAE*

These amici provide a perspective informed by their role as state based public interest think tanks that litigate cases across the country.

GI is a nonprofit, nonpartisan public policy and research foundation established in 1988, and is dedicated to advancing the principles of limited government and individual liberty. GI

---

[1] Pursuant to Local Rule 7.1, counsel for Amici met and conferred with counsel for all parties by email on July 15, 2024. Matthew Hoffmann, esq., consented on behalf of Plaintiff and Elizabeth Tulis, esq., consented on behalf of Defendants.

Case 4:24-cv-00461-O   Document 47   Filed 07/18/24   Page 3 of 18   PageID 1068

advances these principles through litigation, research papers, editorials, etc. Through its Scharf-Norton Center for Constitutional Litigation, GI litigates and files amicus briefs when its or its clients' objectives are directly affected. GI litigates on behalf of parents across the country in cases involving situations that the Final Rule implicates. *See, e.g.*, *Lavigne v. Great Salt Bay Cmty. Sch. Bd.*, No. 2:23-cv-00158-JDL, 2024 WL 1975596 (D. Me. May 3, 2024). GI has also appeared in this Court as an amicus before. *See Brackeen v. Zinke*, 338 F. Supp. 3d 514, 535–36 (N.D. Tex. 2018). This case presents a rule that violates parents' rights, but many parents remain unprotected from the rule and unaware of whether the rule applies to the public schools they send their children. GI's litigation and policy experience informs its perspective regarding how parents interact with this Final Rule and the confusion the current patchwork of injunctions creates—a perspective not currently offered by any party in this case.

The Texas Public Policy Foundation (the "Foundation") is a non-profit, non-partisan research organization dedicated to promoting liberty, personal responsibility, and free enterprise through academically sound research and outreach. Since its inception in 1989, the Foundation has emphasized the importance of limited government, free market competition, private property rights, and freedom from regulation.  Since 2015, the Foundation has litigated constitutional public interest matters versus the federal government via its Center for the American Future. In this case, as with others that TPPF has litigated, it is important that the Court grant the proper scope of relief under the Administrative Procedures Act when finding that a federal executive regulation is unlawful that protects all affected persons whether parties or not.

GI and TPPF submit this brief to provide helpful context regarding the scope of court-ordered injunctions and stays, which has given rise to a perilous situation in some states. This

proposed brief also highlights the situations that many schools in states may be confronted absent the issuance of a universal stay.

The accompanying brief is short—2016 words—and complies with all applicable rules. For these reasons, and because all parties consent to this motion, GI and TPPF respectfully request that the Court grant leave to participate as amici and accept the accompanying proposed brief. GI and TPPF have paid all of the costs and fees incurred in the preparation of this brief.

## CONCLUSION

The motion for leave to file should be granted.

**RESPECTFULLY SUBMITTED** this 18th day of July, 2024 by:

>*/s/Robert Henneke*
>ROBERT HENNEKE
>Texas Bar No. 24046058
>rhenneke@texaspolicy.com
>CHANCE WELDON
>Texas Bar No. 24076767
>cweldon@texaspolicy.com
>TEXAS PUBLIC POLICY FOUNDATION
>901 Congress Avenue
>Austin, Texas 78701
>Phone: (512) 472-2700
>Fax:    (512) 472-2728
>*Attorneys for Amici Curiae*
>
>Timothy Sandefur (Ariz. 033670)
>Adam Shelton (Ariz. 038252)
>Jon Riches (Ariz. 0257)
>Scott Freeman (Ariz. 019784)
>**Scharf-Norton Center for Constitutional Litigation**
>**at the GOLDWATER INSTITUTE**
>500 East Coronado Road
>Phoenix, Arizona 85004
>(602) 462-5000
>Fax (602) 256-7045
>litigation@goldwaterinstitute.org

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2024, I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court for the Northern District of Texas by using the CM/ECF system, which will serve a copy of same on all counsel of record.

> /s/Robert Henneke
> ROBERT HENNEKE

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1, counsel for Amicus Curiae met and conferred with counsel for all parties by email on July 15, 2024. Counsel for all parties have advised that they consent to this motion.

> /s/Robert Henneke
> ROBERT HENNEKE

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| CARROLL INDEPENDENT SCHOOL DISTRICT,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION; MIGUEL CARDONA, in his official capacity as Secretary of the United States Department of Education; CATHERINE E. LHAMON, in her official capacity as Assistant Secretary for Civil Rights at the United States Department of Education; UNITED STATES DEPARTMENT OF JUSTICE; MERRICK B. GARLAND, in his official capacity as Attorney General of the United States; and KRISTEN CLARKE, in her official capacity as Assistant Attorney General for the Civil Rights Division of the United States Department of Justice,<br><br>*Defendants*. | Civil Action No. 4:24-cv-00461-O |

**BRIEF *AMICI CURIAE* OF GOLDWATER INSTITUTE AND THE TEXAS PUBLIC POLICY FOUNDATION IN SUPPORT OF PLAINTIFF'S REQUEST FOR A UNIVERSAL STAY**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................... i

TABLE OF AUTHORITIES............................................................................................................... ii

INTEREST OF AMICI CURIAE ........................................................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................................................................1

ARGUMENT .................................................................................................................................2

I.    The APA requires universal, rather than plaintiff-specific relief. ..........................................2

II.    Even if Section 705 and Section 706 do not require universal relief, a universal stay would still be warranted under the circumstance.................................................................................4

CONCLUSION ..............................................................................................................................7

CERTIFICATE OF SERVICE  ..........................................................................................................8

# TABLE OF AUTHORITIES

**Cases**

*Carroll Indp. Sch. Dist. v. U.S. Dep't of Educ.*, No. 4: 24-cv-00461-O, 2024 WL 3381901 (N.D. Tex. July 11, 2024) ................................................................................................................ 2, 4

*Career Coll. and Schs. of Tex. v. U.S Dep't of Educ.*, 98 F.4th 220 (5th Cir. 2024) .................. 2, 4

*Earth Island Inst. v. Ruthenbeck,* 490 F.3d 687 (9th Cir. 2007), *rev'd on other grounds sub nom. Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ................................................................ 3

*Kansas v. U.S. Dep't of Educ.,* No. 24-4041-JWB, 2024 WL 3273285 (D. Kan., July 2, 2024)  . 1, 4, 5, 7

*Louisiana v. U.S. Dep't of Educ.*, No. 3:24-CV-00563, 2024 WL 2978786 (W.D. La. June 13, 2024) ................................................................................................................................ 4, 5, 6

*N.M. Health Connections v. U.S. Dep't of Health & Human Servs.*, 340 F. Supp. 3d 1112 (D.N.M. 2018) ........................................................................................................................ 3

*O.A. v. Trump*, 404 F. Supp. 3d 109 (D.D.C. 2019) ..................................................................... 3

*Tennessee v. Cardona*, No. 2: 24-072-DCR, 2024 WL 3019146 (N.D. Tenn. June 17, 2024) . 4, 5, 6

*Texas v. Cardona*, No. 4:23-cv-00604-O, 2024 WL 2947022 (N.D. Tex. June 11, 2024) ............ 4

*Texas v. United States*, No. 2:24-CV-86-Z, 2024 WL 3405342 (N.D. Tex. July 11, 2024) ................................................................................................................................................ 5

*Troxel v. Granville*, 530 U.S. 578 (2000) ..................................................................................... 6

**Statutes**

5 U.S.C. § 705 ...................................................................................................................... 2, 3, 4, 7

5 U.S.C. § 706 ............................................................................................................................ 3, 4, 7

**Other Authorities**

Jonathan Mitchell, T*he Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 1013 (2018)) .............. 3, 4

Madeleine Parrish, *Dysart Schools' Governing Board Publicly Opposes New Title IX Rules*, Arizona Republic (July 12, 2024)) ........................................................................................ 6

Mila Sohoni, *The Power to Vacate a Rul*e, 88 Geo. Wash. L. Rev. 1121, 1175 (2020)6 .............. 3

**INTEREST OF AMICI CURIAE**

The interests of amici are set forth in the accompanying motion for leave to file.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

This Court should universally stay the August 1, 2024, effective date of the Final Rule, which interprets Title IX as prohibiting discrimination based on "sex" to *effectively*[2] redefine sex as including sextual orientation and gender-identity. This Rule is, of course, controversial and has led to nationwide litigation, which has left school districts and states in uncertainty regarding the current state of the law.

This confusion is compounded by the fact that the injunction granted in *Kansas v. U.S. Department of Education*, No. 24-4041-JWB, 2024 WL 3273285 (D. Kan., July 2, 2024), includes associations as well as states. There, the court enjoined the Final Rule and stayed the effective date of August 1, 2024, with respect to Kansas, Alaska, Utah, and Wyoming, and against *any* school "attended by the members of Young America's Foundation or Female Athletes United, as well as the schools attended by the children of the members of Moms for Liberty." *Id*. at 22. This leads to a confusing situation: the status of the law for a school outside of those states (or other states which have received injunctions in other cases) is based entirely on whether a student in the district belongs to these two private organizations, or has a parent who is a Mom's for Liberty member.

Remarkably, it appears that the Kansas District Court does not know which schools these are *See Kansas*, 2024 WL 3273285, at *22. The Court ordered the parties to submit lists of those schools or before July 15, after it issued its injunction, meaning that an injunction was in place before the court even knew to whom it did or could apply. Naturally, students can move from

---

[2] Although the DOE maintains that the Rule does not define "sex," Draft Tr. Of July 8, 2024, Hr'g at 49, the only reasonable conclusion from the Final Rule holistically is that the definition "sex" includes not just biological sex, but gender-identity and sexual orientation.

1

school to school, too, leading to a situation in which a school's requirements under the law can change in an instant based on who attends a school in the district.

That is untenable. The correct option is a universal stay, which in addition to being more practical given the current patchwork of litigation, is *required* under the Administrative Procedure Act ("APA"). Ultimately, if a plaintiff is successful on the merits, a court may "set aside" a final rule—which is a universal remedy, because if an agency did not follow the proper procedure in enacting a rule, that failure is not specific to any party. If the ultimate relief is necessarily universal, there is no reason the preliminary relief under the APA should be different—especially absent any textual directive for a more limited remedy.

Thus, this Court should enter a universal stay of the Final Rule's effective date under the APA.

## ARGUMENT

**I. The APA *requires* universal, rather than plaintiff-specific relief.**

This Court ordered supplemental briefing regarding whether a stay issued pursuant to 5 U.S.C. § 705 can be limited to the specific Plaintiff before the Court or if the Section 705 stay is *inherently* universal. *See Carroll Indp. Sch. Dist. v. U.S. Dep't of Educ.*, No. 4: 24-cv-00461-O, 2024 WL 3381901, at *8 (N.D. Tex. July 11, 2024). The answer, as the Fifth Circuit declared earlier this year, is that a stay under Section 705 must be universal. *See Career Coll. and Schs. of Tex. v. U.S Dep't of Educ.*, 98 F.4th 220, 255-56 (5th Cir. 2024). Thus, this Court should stay the effective date of the Final Rule universally.

The APA gives judges power to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusions of the review proceedings." 5 U.S.C. § 705. This is the main preliminary relief available under the APA.

This alone does not say whether a stay be universal or party specific, but when read alongside Section 706—which deals with permanent relief—the answer becomes clear: Section 706 empowers a court to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion …. contrary to constitution right, power, privilege, or immunity … [or] in excess of statutory jurisdiction." That is a significant power. Its extent has been noted by courts over the decades since the APA's enactment. *See, e.g.*, *Earth Island Inst. v. Ruthenbeck*, 490 F.3d 687, 699 (9th Cir. 2007), *rev'd on other grounds sub nom. Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) (noting that courts are "compelled" to issue "nationwide" relief under the APA with respect to unlawful agency action).

Some lower courts have expressed confusion and bewilderment at government arguments that a rule could be "set aside" only for one set of plaintiffs. *O.A. v. Trump*, 404 F. Supp. 3d 109, 153 (D.D.C. 2019) ("[T]he Court would be at a loss to understand what it would mean to vacate a regulation, but only as applied to the parties before the Court?"); *N.M. Health Connections v. U.S. Dep't of Health & Human Servs.*, 340 F. Supp. 3d 1112, 1183 (D.N.M. 2018) ("The Court does not know how a court vacates a rule only as to one state, one district, or one part."); *see also* Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121, 1175 (2020) ("some courts have expressed frank bewilderment at the idea that rules could be set aside only as to the plaintiffs."). Even staunch critics of universal injunctions outside of the APA, and of robust judicial power more generally, acknowledge the sweeping power of Sections 705 and 706. *See, e.g.,* Jonathan Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 1013 (2018) (under section 705, "the disapproved agency action is treated as though it had never happened.").

The Fifth Circuit has held that the set-aside language is inherently universal and thus that the APA's stay provisions are likewise universal, as they are the preliminary step once a party has

shown a likelihood of success on the merits. In *Career Coll.*, 98 F.4th at 255, the court explained "[n]othing in the text of Section 705, nor of Section 706, suggests that either preliminary or ultimate relief under the APA needs to be limited to" the parties only. Rather, "the scope of preliminary relief under Section 705 aligns with the scope of ultimate relief under Section 706, which is not party-restricted and allows a court to 'set aside' an unlawful agency action." *Id*. The court further explained the logic of this universal relief as the court concluded that the challenged rules were "almost certainly unlawful" and "**apply to all Title IV participants** and are thus almost certainly unlawful **as to all Title IV participants**." *Id*. at 256 (emphasis added).

That same logic applies here. This Court, like others, has found that the Final Rule is likely unlawful and/or unconstitutional. *See Carroll Indp. Sch. Dist.*, 2024 WL 3381901; *Kansas*, 2024 WL 3273285; *Texas v. Cardona*, No. 4:23-cv-00604-O, 2024 WL 2947022 (N.D. Tex. June 11, 2024); *Louisiana v. U.S. Dep't of Educ.*, No. 3:24-CV-00563, 2024 WL 2978786 (W.D. La. June 13, 2024); *Tennessee v. Cardona*, No. 2: 24-072-DCR, 2024 WL 3019146 (N.D. Tenn. June 17, 2024). Thus, this Court should enter a universal stay of the Final Rule's effective date.

II.     **Even if Section 705 and Section 706 do not require universal relief, a universal stay would still be warranted under the circumstances.**

Multiple federal courts have held that the Final Rule is likely unlawful and/or unconstitutional. In so holding, those courts have issued injunctions that protect a number of states and associations from having the Final Rule in effect in their state or school districts. But none of these injunctions or stays have been *universal*. That has led to a confusing patchwork situation: what is supposed to be a nationwide Final Rule is not actually being applied equally nationwide.

Currently, the Rule is preliminarily enjoined in:

- Kansas, Alaska, Utah, Wyoming, *Kansas*, 2024 WL 3273285, at *22;

4

- Tennessee, Kentucky, Ohio, Indiana, Virginia, West Virginia, *Tennessee*, 2024 WL 3019146, at *44;

- Louisiana, Mississippi, Montana, Idaho, *Louisiana*, at 2024 WL 2978786. *21; and

- Texas, *Texas v. United States*, No. 2:24-CV-86-Z, 2024 WL 3405342, at *16 (N.D. Tex. July 11, 2024).

That means the Rule is now enjoined in 15 states. But some school districts *outside* those states will also have the Rule enjoined based on the identity of their students (which could fluctuate).

Associations also challenged the Final Rule, and in *Kansas*, the court enjoined the Rule with respect to any school where members of Young America's Foundation or Female Athletes United attend, or where a child of a member of Moms for Liberty attends. No. 24-4041-JWB, 2024 WL 3273285, at *22 (D. Kan., July 2, 2024). Consequently, school districts in states that have not challenged the Rule will nevertheless be enjoined from implementing based on their student populations, and even if neighboring schools are not bound by such a rule.

That is obviously a recipe for confusion. The 15 states in which the Rule is enjoined do not neatly map onto federal circuit lines: Kansas is in the Tenth Circuit, but the injunction applies in Alaska, which is in the Ninth Circuit; the injunction entered by the Tennessee District Court in the Sixth Circuit applies in both Virginia and West Virginia, in the Fourth Circuit, and Indiana, in the Seventh Circuit. And the injunction issued by the court in Louisiana governs in Montana and Idaho, in the Ninth Circuit.

This chaos infringes on the rights of parents, among other things. Parents have a fundamental right to control and direct the education and upbringing of their children. *Troxel v. Granville*, 530 U.S. 578 (2000). To fully exercise their rights, they need access to information

5

about what rules, regulations, and laws apply to public schools where their children attend (or would attend); that information is necessary to make adequately informed decisions about, e.g., whether one or another public school is still the best option for their children. The Final Rule has already been found likely to violate these rights. *See Tennessee*, 2024 WL 3019146, at *30-31. But with the patchwork of injunctions, parents may struggle to identify which states—and which schools, given the associational plaintiffs—are covered. And that hinders their ability to choose what educational options best fit their children. That alone is enough warrants employing the APA stay option instead of further adding to the confusion.

Second, school districts are starting to take matters into their own hands, which will lead to even more confusion. The Governing Board of the Dysart School District in Arizona[3] adopted a resolution on July 11, 2024, affirming its commitment to the pre-Final Rule interpretation of Title IX, formally determining that the Final Rule is contrary to the statutory text.[4] In other words, the Governing Board has effectively declared that it will not implement the Final Rule. As Arizona is not covered by an injunction, however, the Rule will go into effect—yet an injunction might *still* cover the school district at some point, given that there may be a student who qualifies for the Kansas injunction.

Things will only get more complicated as school districts struggle to follow the Final Rule as they are required by law to do, but still ensure their policies respect the fundamental and constitutionally protected rights of parents. The Dysart situation—likely to recur in other

---

[3]   Located about 30 miles northwest of Phoenix.
[4]   Madeleine Parrish, *Dysart Schools' Governing Board Publicly Opposes New Title IX Rules*, Arizona Republic (July 12, 2024), https://www.azcentral.com/story/news/local/surprise-education/2024/07/12/dysart-school-board-opposes-new-federal-sex-discrimination-rules/74371936007/.

6

districts—may lead to a situation in which DOE is forced to sue a district to force compliance with the Rule—a rule which has been enjoined or stayed in at least 15 other states.

All of this militates in favor of employing the APA powers instead of adding another layer to the already complex, potentially conflicting mix of injunctions. Even if Section 705 and Section 706 when taken together did not *require* a universal stay, the prudential considerations warrant a universal stay under those sections.

## CONCLUSION

The Court should grant the Plaintiff's request for a universal stay under the APA.

**RESPECTFULLY SUBMITTED** this 18th day of July, 2024 by:

/s/Robert Henneke
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Phone: (512) 472-2700
Fax:    (512) 472-2728
*Attorneys for Amici Curiae*

Timothy Sandefur (Ariz. 033670)
Adam Shelton (Ariz. 038252)
Jon Riches (Ariz. 0257)
Scott Freeman (Ariz. 019784)
**Scharf-Norton Center for Constitutional Litigation at the GOLDWATER INSTITUTE**
500 East Coronado Road
Phoenix, Arizona 85004
(602) 462-5000
Fax (602) 256-7045
litigation@goldwaterinstitute.org

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 18, 2024, I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court for the Northern District of Texas by using the CM/ECF system, which will serve a copy of same on all counsel of record.

                                        */s/Robert Henneke*
                                        ROBERT HENNEKE