**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| CARROLL INDEPENDENT SCHOOL DISTRICT, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, <br><br> Defendants. | Case No. 4:24-cv-00461-O <br> District Judge Reed O'Connor |

**DEFENDANTS' SUPPLEMENTAL BRIEF**
**IN RESPONSE TO THE COURT'S QUESTIONS**

## <u>TABLE OF CONTENTS</u>

I.      A § 705 Stay Is Not the Default Form of Preliminary Relief in a Challenge to an Agency Rule.................................................................................................................... 1

II.     A § 705 Stay Does Not "Exclusively Contemplate[] a Universal Scope."......................... 3

III.    The Court's Preliminary Injunction Fully Redresses Any Imminent, Irreparable Injury Carroll ISD Arguably Has Shown. ...................................................................................... 6

IV.     Other Equitable Limitations on Preliminary Relief, Such as Staying Only Provisions of the Rule with Respect to Which Plaintiff Has Shown a Likelihood of Success and Irreparable Harm, Are Also Appropriate. ........................................................................ 11

CONCLUSION............................................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*All. for Hippocratic Med. v. FDA*,
    78 F.4th 210 (5th Cir. 2023) .................................................................................. 5

*American Fuel & Petrochemical Mfrs. v. EPA*,
    3 F.4th 373 (D.C. Cir. 2021) ................................................................................ 12

*Avon Dairy Co. v. Eisaman*,
    69 F. Supp. 500 (N.D. Ohio 1946) ........................................................................ 3

*Bostock v. Clayton County*,
    590 U.S. 644 (2020) ............................................................................................. 13

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ............................................................................................. 11

*Career Colleges & Schools of Texas v. U.S. Department of Education*,
    98 F.4th 220 (5th Cir. 2024) ...................................................................... 4, 5, 11, 14

*Covington v. Schwartz*,
    230 F. Supp. 249 (N.D. Cal. 1964) ........................................................................ 2

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
    710 F.3d 579 (5th Cir. 2013) .................................................................................. 7

*Dennis Melancon, Inc. v. City of New Orleans*,
    703 F.3d 262 (5th Cir. 2012) .................................................................................. 7

*Doe v. Texas Christian Univ.*,
    601 F. Supp. 3d 78 (N.D. Tex. 2022) .................................................................... 9

*Doe v. Univ. of So. Indiana*,
    43 F.4th 784 (7th Cir. 2022) .................................................................................. 8

*Doe v. Univ. of the South*,
    687 F. Supp. 2d 744 (E.D. Tenn. 2009) ................................................................ 8

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ......................................................................................... 4, 5, 6

*Finnbin, LLC v. Consumer Prod. Safety Comm'n*,
    45 F.4th 127 (D.C. Cir. 2022) ............................................................................. 12

*Gebser v. Lago Vista Indep. Sch. Dist.*,
  524 U.S. 274 (1998) ................................................................................. 8

*Gill v. Whitford*,
  585 U.S. 48 (2018) ................................................................................... 12

*Hamlin Testing Lab'ys, Inc. v. United States Atomic Energy Comm'n*,
  337 F.2d 221 (6th Cir. 1964) .................................................................... 2

*Janvey v. Alguire*,
  647 F.3d 585 (5th Cir. 2011) .................................................................... 7

*Labrador v. Poe*,
  144 S. Ct. 921 (2024) ............................................................................... 12

*Murthy v. Missouri*,
  144 S. Ct. 1972 (U.S. June 26, 2024) ..................................................... 4, 6

*Ross v. Corp. of Mercer Univ.*,
  506 F. Supp. 2d 1325 (M.D. Ga. 2007) ................................................... 8

*Sampson v. Murray*,
  415 U.S. 61 (1974) ................................................................................... 3

*Shannon v. Bd. of Trustees of Univ. of Ill.*,
  No. 24-cv-2010, 2024 WL 218103 (C.D. Ill. Jan. 19, 2024) ................. 8

*Simpson v. Univ. of Colo.- Boulder*,
  500 F.3d 1170 (10th Cir. 2007) ............................................................... 8

*Sinclair Oil Corp. v. Smith*,
  293 F. Supp. 1111 (S.D.N.Y. 1968) ........................................................ 3

*Southwestern Elec. Power Co. v. U.S. EPA*,
  920 F.3d 999 (5th Cir. 2019) ................................................................... 12

*Stanard v. Olesen*,
  74 S. Ct. 768 (1954) ................................................................................. 2

*Starbucks Corp. v. McKinney*,
  144 S. Ct. 1570 (2024) ............................................................................. 3, 4

*Tennessee v. Cardona*,
  --- F. Supp. 3d ---, 2024 WL 3019146 (E.D. Ky. June 17, 2024) .......... 10

*Trans World Airlines* v. *Civil Aeronautics Bd.*,
   184 F.2d 66 (2d Cir. 1950)...................................................................................... 2

*VanDerStok v. BlackHawk Mfg. Grp. Inc.*,
   659 F. Supp. 3d 736 (N.D. Tex. 2023) ................................................................. 7

**Statutes**

5 U.S.C. § 705 ............................................................................................................. 2, 4, 11

5 U.S.C. § 706 ..................................................................................................................... 5

**Legislative Materials**

H.R. Rep. No. 79-1980 (1946) ........................................................................................... 4

**Rules and Regulations**

34 C.F.R. § 106.9 .............................................................................................................. 12

34 C.F.R. § 106.24 ............................................................................................................ 12

34 C.F.R. § 106.62 ............................................................................................................ 12

34 C.F.R. § 106.72 ............................................................................................................ 12

34 C.F.R. § 106.82 ............................................................................................................ 12

89 Fed. Reg. 33,474 (Apr. 29, 2024) ...................................................................... 8, 13, 14

Defendants United States Department of Education; Miguel Cardona, in his official capacity as Secretary of Education; Catherine Lhamon, in her official capacity as Assistant Secretary for Civil Rights, Department of Education; United States Department of Justice; Merrick B. Garland, in his official capacity as Attorney General of the United States; and Kristen Clarke, in her official capacity as Assistant Attorney General for the Civil Rights Division of the United States Department of Justice (together "Defendants") respectfully submit this supplemental brief in response to the questions listed by the Court in its memorandum opinion and order dated July 11, 2024 (Mem. Op. & Order, ECF No. 43 ("Mem. Op.")).  The preliminary injunction entered by the Court already sweeps at least as far as necessary to provide Carroll ISD complete relief, and no further or different preliminary relief is needed. In answer to the Court's individual questions, as set forth in more detail below: (1) postponement of the Rule's effective date under § 705—much less a "universal" stay—is not the "default" form of preliminary relief in a challenge to an agency rule; (2) a § 705 stay is not limited to universal relief; (3) neither a § 705 stay nor any form of universal relief is necessary to redress Plaintiff Carroll Independent School District's ("Plaintiff's" or "Carroll ISD's") asserted injuries; and (4) if any § 705 stay is entered, it should be limited in accordance with equitable principles, including that it should reach only those provisions of the Rule as to which Plaintiff has established a likelihood of success on the merits and irreparable harm.

**I.      A § 705 Stay Is Not the Default Form of Preliminary Relief in a Challenge to an Agency Rule.**

The Court's first question asks whether a stay is "the default remedy at the preliminary stage of an APA challenge to agency action." Mem. Op. 15. The answer to this question is no. A stay is not a "default" form of relief in a case, such as this one, challenging an agency rule. The

1

text of § 705 says that a court "*may* issue all necessary and appropriate process to postpone the effective date of an agency action *or* to preserve status or rights." 5 U.S.C. § 705 (emphasis added). In other words, (at a minimum) a court has discretion—the use of "may" does not require entry of any relief at all, and the "or" offers a court a choice between action to postpone the effective date or action to preserve status or rights. The text of § 705 thus puts traditional preliminary injunctions on at least equal footing with stays, making clear that stays, no less than preliminary injunctions, are a matter for the equitable discretion of the court.

The history of courts' application of § 705 supports this clear textual implication. Consistent with the legislative history, *see* Part II *infra*, early case law shows that courts understood Section 10(d) of the Administrative Procedure Act ("APA") (now codified at 5 U.S.C. § 705) to confer equitable discretion on district courts to enter stays to maintain the status quo where the failure to do so would result in irreparable injury, and that courts primarily exercised that discretion in the context of requests to stay particular agency actions taken with respect to the complainant— not to stay the effective date of a generally applicable regulation in its entirety. Most of these cases involved agency decisions to deny or revoke some benefit to the complaining party specifically, rather than facial challenges to generally applicable rules. *See, e.g.*, *Hamlin Testing Lab'ys, Inc. v. United States Atomic Energy Comm'n*, 337 F.2d 221, 222 (6th Cir. 1964) (denying request to stay order revoking a license); *Trans World Airlines v. Civil Aeronautics Bd.*, 184 F.2d 66, 69 (2d Cir. 1950) (denying stay of agency order permitting airline merger for lack of jurisdiction, and noting that court would also deny stay on merits, based on equitable factors); *Covington v. Schwartz*, 230 F. Supp. 249, 253 (N.D. Cal. 1964) (granting a stay to temporarily prevent petitioner's dishonorable discharge pending the outcome of his district court challenge to his army discharge proceedings), *affirmed as modified*, 341 F.2d 537 (9th Cir. 1965); *see also Stanard v. Olesen*, 74

S. Ct. 768, 772 (1954) (on application to Circuit Justice seeking release of mail impounded by Post Office, denying stay where Circuit Justice determined that such relief was not necessary to prevent irreparable injury or provide an adequate judicial remedy); *Sinclair Oil Corp. v. Smith*, 293 F. Supp. 1111, 1115 (S.D.N.Y. 1968) (noting, with respect to potential claim based on decision not to grant oil import license, plaintiff would have "right to appeal from any final order of either agency and to obtain a stay pending appeal" under Section 10(d) of the APA); *cf. Avon Dairy Co. v. Eisaman*, 69 F. Supp. 500, 501 (N.D. Ohio 1946) (in challenge to regulation pertaining to "the handling of milk in the Cleveland marketing area," denying for lack of jurisdiction a request for a stay "as applied to [the petitioner]").

## II.     A § 705 Stay Does Not "Exclusively Contemplate[] a Universal Scope."

With respect to the Court's second question, a stay under 5 U.S.C § 705 does not "exclusively contemplate[] a universal scope." Mem. Op. 15. Indeed, the better understanding of § 705 is that it does not authorize universal relief at all. Section 705 (like other APA provisions) "was primarily intended to reflect existing law," not "to fashion new rules of intervention for District Courts." *Sampson v. Murray*, 415 U.S. 61, 68 n.15 (1974). Plaintiff does not identify, and Defendants have not found, any pre-APA practice of district courts granting universal stays of agency regulations.

But even assuming § 705 permits universal relief in some cases, there is no basis to find that § 705 authorizes *only* universal relief. The Supreme Court recently instructed that "[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity." *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024).  In *Starbucks*, the Supreme Court explained that

it did "not understand the statutory directive [before it] to grant relief when the district court 'deems' it 'just and proper' to jettison the normal equitable rules." *Id.*

There is no basis to interpret § 705 to jettison the normal equitable rules. Section 705 explicitly incorporates traditional equitable principles by authorizing temporary relief only "to the extent necessary to prevent irreparable injury" and "to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. That is paradigmatic equitable relief. The House Report that accompanied the APA thus explained that the relief authorized by § 705 "is equitable" and "*would normally, if not always, be limited to the parties complainant*." H.R. Rep. No. 79-1980, at 43 (1946) (emphasis added).

Grave Article III problems would arise if § 705 were interpreted to require or routinely permit district courts to extend relief to nonparties. The Supreme Court has emphasized that "plaintiffs must demonstrate standing . . . for each form of relief that they seek." *Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (U.S. June 26, 2024) (quotation marks omitted). Furthermore, the Supreme Court has explained that a plaintiff generally has no cognizable Article III interest in interfering with an agency's regulation of third parties. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 374 (2024) ("*Alliance*") (explaining that, "[u]nder Article III of the Constitution, a plaintiff's desire to make a drug less available *for others* does not establish standing to sue").

This Court has cited the Fifth Circuit's statement in *Career Colleges & Schools of Texas v. U.S. Department of Education*, 98 F.4th 220 (5th Cir. 2024), that "the scope of preliminary relief under Section 705 aligns with the scope of ultimate relief under Section 706, which is not party-restricted" and its rejection of the government's position that the panel "is require[d] . . . to limit any relief to the named parties," 98 F.4th at 255. *See* Mem. Op. 15. But although that case concluded that nothing in the statutory text meant that "either preliminary or ultimate relief under

4

the APA *needs to be* limited to" parties, 98 F.4th at 255 (emphasis added), it did not hold that universal relief was invariably required under § 705, or that § 705 somehow forbids party-specific relief.  *See id.* (rejecting argument that "the relief awarded under Section 705 can *only* be specific to the plaintiff" (emphasis added)). Indeed, even assuming *arguendo* that relief under § 706 is not necessarily party-restricted (a premise with which the government disagrees), there is no reason that courts would be barred from concluding in a particular case that they should tailor relief under § 705, which by its terms authorizes relief that is equitable in nature and thus constrained by traditional equitable principles.[1] The Fifth Circuit itself has recognized that the "preliminary-injunction factors apply" to "a stay under 5 U.S.C. § 705," which "has the practical effect of an injunction." *All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 241–42 (5th Cir. 2023), *rev'd on other grounds*, 602 U.S. 367 (2024).

Furthermore, the Fifth Circuit did not have the benefit of the Supreme Court's decisions in *Starbucks*, *Alliance*, and *Murthy* when it issued the *Career Colleges* decision. The Supreme Court's reasoning in those cases confirms that interpreting § 705 to require or routinely permit district courts to issue "universal" stays, Mem. Op. 15, would raise serious Article III issues. The traditional equitable principle that a judicial remedy may be no broader than necessary to redress the party-complainant's injury is part and parcel of Article III's "case or controversy requirement," which "limits the role of the Federal Judiciary in our system of separated powers." *Alliance*, 602

---

[1] For the suggestion that "a stay pursuant to § 705 cannot be limited to specific parties," the Court also cites two law review articles. Mem. Op. 15 (citing Mila Sohoni, *The Power to Vacate a Rule*, 88 GEO. WASH. L. REV. 1121, 1173 (2020); Jonathan Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933, 1012–13 (2018)). However, the cited passages do not directly address § 705, and neither source provides a persuasive ground to conclude that relief under § 705 is necessarily "universal." *Id.* The quoted statement from the Sohoni article is discussing the meaning of the phrase "set aside" in 5 U.S.C. § 706; it does not directly address § 705 or contend with the equitable principles that constrain courts' issuance of relief under the latter provision. The cited language from the Mitchell article similarly is focused on § 706's "set aside" language.

U.S. at 378. Because "standing is not dispensed in gross," plaintiffs "must demonstrate standing . . . for each form of relief that they seek." *Murthy*, 144 S. Ct. at 1988 (citation omitted).

Defendants disagree with *Career Colleges* and preserve their position that 5 U.S.C. § 705 does not authorize universal stays of agency policies. Recognizing that *Career Colleges* is binding precedent, however, Defendants maintain that narrow relief is appropriate here even if, as *Career Colleges* held, broader relief could be theoretically available in other cases. Because Carroll ISD has not demonstrated standing to seek relief *for other regulated parties*, any relief under § 705 should be limited to postponing the Rule's effective date for Carroll ISD only. As the Supreme Court recently admonished, a plaintiff cannot premise standing on the regulation of nonparties unless the plaintiff demonstrates that such regulation has a concrete and nonattenuated impact on the plaintiff itself. *See Alliance*, 602 U.S. at 381–85. Plaintiff made no such showing here and therefore has no Article III interest in postponing the date on which other recipients of federal funding must comply with the challenged provisions of the Final Rule.

### III.    The Court's Preliminary Injunction Fully Redresses Any Imminent, Irreparable Injury Carroll ISD Arguably Has Shown.

The Court's third question asks whether complete relief is possible for Carroll ISD in the absence of a § 705 stay. Mem. Op. 15. The answer is yes.

The existing preliminary injunction already sweeps at least as far as necessary to provide Carroll ISD full relief for the sole irreparable injury found by the Court, that is, the costs that Carroll ISD asserts it would incur to comply with the challenged provisions of the Final Rule. *See id.* 11–12. The order issued by the Court enjoins the Department from enforcing the Rule "against Carroll ISD." *Id.* 14. The relief thus runs to Carroll ISD itself and applies whether Carroll ISD personnel are performing their duties within the school district or are supervising students on an out-of-state trip. Because the preliminary injunction precludes the Department from enforcing the

6

specified provisions of the Rule against Carroll ISD, any compliance costs Carroll ISD would have incurred with respect to such provisions are fully redressed by the Court's order.

No other imminent irreparable injury has been shown by Carroll ISD or found by the Court, much less one that would necessitate entry of a § 705 stay. Plaintiff's "concern regarding private lawsuits," *id.* 15, is speculative and unsupported, as the regulatory provisions challenged by Plaintiffs are not even enforceable by private parties. In its opening brief on its motion for preliminary relief, Carroll ISD merely asserted that, "absent an injunction," it would "immediately risk private lawsuits and enforcement action," citing equally conclusory statements in its Complaint. Pl.'s Mem. in Supp. of Mot. To Delay Effective Date & For Prelim. Inj. 24, ECF No. 16 ("Pl.'s Mem."). In its reply, Carroll ISD revised this assertion, arguing for the first time that "unless the Rule is stayed, the gender-identity mandate could be invoked in private lawsuits even after Defendants are enjoined from enforcing it." Pl.'s Reply 15, ECF No. 36 ("Pl.'s Reply"). Plaintiff again cited no evidence or authority in support of this proposition.

Plaintiff's supposition about arguments private parties might raise in hypothetical future lawsuits does not establish its entitlement to a § 705 stay. *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (noting that a showing of "speculative injury is not sufficient" to satisfy irreparable harm element (alteration and citation omitted)); *see VanDerStok v. BlackHawk Mfg. Grp. Inc.*, 659 F. Supp. 3d 736, 742 (N.D. Tex. 2023) (O'Connor, J.) ("Irreparable harm must be concrete, non-speculative, and more than merely de minimis." (citing *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013), and *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012))), *appeal filed*, No. 23-10463 (5th Cir. May 5, 2023). The Rule addresses recipients' obligations with respect to the Department's enforcement of Title IX; it does not create any private right of action or establish standards for private litigants bringing

7

claims in federal court under Title IX's implied private cause of action. *See, e.g.*, 89 Fed. Reg. 33,474, 33,498–01 (Apr. 29, 2024) (explaining why the hostile environment harassment definition in the Rule is distinct from the standard the Supreme Court has held is applicable when a private litigant sues under Title IX's implied cause of action). With respect to Plaintiff's specific concern, *see* ECF No. 36 at 15, a private lawsuit alleging that gender identity discrimination is prohibited by Title IX would turn on a hypothetical future court's interpretation and application of 20 U.S.C. § 1681—not of 34 C.F.R. § 106.10.

Notably, numerous courts have concluded that there is no private right of action to enforce the Department's Title IX regulations. *See, e.g.*, *Doe v. Univ. of So. Indiana*, 43 F.4th 784, 793–94 (7th Cir. 2022) (explaining that "a plaintiff cannot prove gender discrimination [under Title IX] by merely identifying mistakes" in recipient's application of regulatory provisions); *Simpson v. Univ. of Colo.- Boulder*, 500 F.3d 1170, 1175–76 (10th Cir. 2007) (noting Supreme Court's rejection of contention that liability could be based on recipient's "failure to promulgate and publicize an effective policy and grievance procedure" in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)); *Shannon v. Bd. of Trustees of Univ. of Ill.*, No. 24-cv-2010, 2024 WL 218103, *9 (C.D. Ill. Jan. 19, 2024) (explaining that plaintiff was unlikely to succeed on Title IX claim premised on recipient's failure to promulgate grievance procedure as required by regulation); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 758 (E.D. Tenn. 2009) (explaining that "the University's alleged failure to comply with Title IX regulations promulgated by the United States Department of Education[] does not confer a private right of action"); *Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325, 1353–54 (M.D. Ga. 2007) (explaining that plaintiff did not have right of action to sue university for violating Title IX regulations). In evaluating whether a recipient had suspended a student in violation of Title IX, this Court in a prior case found that a

recipient's "circumventing" of the Department's Title IX regulations "to [the plaintiff's] detriment [was] solid *evidence* of gender discrimination." *Doe v. Texas Christian Univ.*, 601 F. Supp. 3d 78, 91 (N.D. Tex. 2022) (emphasis added), *appeal dismissed*, No. 22-10505, 2023 WL 3568171 (5th Cir. Jan. 10, 2023). But the Court did not suggest—nor could it—that the plaintiff's right of action was grounded in the regulations, as opposed to Title IX itself.

Carroll ISD's speculation that private litigants might invoke the Rule's provisions addressing gender identity discrimination to support hypothetical litigation does not suffice to establish that Carroll ISD is likely to suffer imminent irreparable injury in the absence of preliminary relief. And such speculation certainly does not demonstrate that a § 705 stay or other relief beyond the party-limited preliminary injunction already entered by the Court is necessary to provide "complete relief" to Carroll ISD. Mem. Op. 15.

Finally, Carroll ISD has not shown that a § 705 stay is necessary to afford it complete relief on the basis that "Carroll ISD's students will be harmed" in the absence of such a stay. Pl.'s Reply 15. Carroll ISD argues that, on unspecified dates "[i]n the upcoming school year, Carroll ISD athletes and debaters plan to compete against other schools, both within Texas and in [other states]," and that "[i]f other schools have males playing on girls' teams or using girls' locker rooms and bathrooms, Carroll ISD's students will be harmed." *Id.* As an initial matter, this argument, raised for the first time on reply, ignores that Carroll ISD lacks standing to raise claims on behalf of its students. Carroll ISD does not even attempt to explain why alleged harms to students' interests are an injury, or justify relief, to Carroll ISD itself. As noted above, *see* Part II *supra*, the traditional equitable principle that a judicial remedy may be no broader than necessary to redress the party-complainant's injury is bound up in Article III's case or controversy requirement. Basing

9

the scope of relief entered on alleged harms to individuals other than the party-complainant would violate both principles of equity and constitutional limits on the Court's jurisdiction.

Moreover, even if Carroll ISD could demonstrate a basis to seek relief on behalf of students, Carroll ISD has not shown that its students face any imminent, irreparable harm due to the Rule. Specifically, Carroll ISD does not offer evidence (1) that current Carroll ISD students actually object to the requirement, explained in § 106.31(a)(2) of the Rule, that recipients must allow individuals to use restrooms and locker rooms consistent with their gender identity; (2) that those same students will be traveling to the referenced in-state and out-of-state interscholastic competitions; (3) that the referenced trips are imminent; (4) that any students who object to sharing a sex-separate locker room or restroom with transgender students are likely to encounter transgender students in the restroom or locker room on such trips;[2] and (5) that staying the effective date of the Rule would have any effect on policies for use of sex-separate facilities in the school, school district, or state to which any such students are traveling.[3]

---

[2] While Plaintiff also invokes potential encounters with transgender students playing on "girls' [athletic] teams," Pl.'s Reply 15, the Rule does not address the Department's regulation concerning sex-separate athletic teams or affect the issue of eligibility criteria for sex-separate athletic teams, as explained in Defendants' prior briefing. *See* Br. in Supp. of Defs.' Resp. 5, ECF No. 29.

[3] In a declaration submitted with Plaintiff's reply, Carroll ISD's Superintendent states that in 2024-25, there are planned trips for Carroll ISD students to participate in interscholastic competitions in Ohio, Florida, Georgia, Kentucky, Iowa, California, and Oregon, as well as other locations in Texas. Pl.'s Reply Appx. 476, ECF No. 37. The Department's enforcement of § 106.31(a)(2)—the relevant provision of the Rule—is already preliminarily enjoined in Kentucky and Ohio, *see Tennessee v. Cardona*, --- F. Supp. 3d ---, 2024 WL 3019146, at *44 (E.D. Ky. June 17, 2024), *appeal filed*, No. 24-5588 (6th Cir. June 26, 2024), and the Department did not seek to stay that portion of the injunction pending appeal. *See* Emergency Mot. for Partial Stay Pending Appeal 3, 21–22, *Tennessee v. Cardona*, No. 24-5588 (6th Cir. July 1, 2024), ECF No. 19. The Department's enforcement of the relevant provision has also been enjoined in Texas. *See* Mem. Op. & Order 32, *Texas v. United States*, No. 2:24-cv-00086-Z (N.D. Tex. July 11, 2024), ECF No. 48. Further, even without the Final Rule, both California and Oregon already have sex-separate school bathroom and locker policies that require schools to allow students to use such facilities consistent with their gender identity. *See* Cal. Sch. Bds. Ass'n, Final Guidance: AB 1266, Transgender and Gender

In sum, the Court already has provided complete relief to Carroll ISD in the form of a preliminary injunction. Carroll ISD has not demonstrated the existence of any imminent, irreparable harm that would support issuance of a stay under 5 U.S.C. § 705.

**IV. Other Equitable Limitations on Preliminary Relief, Such as Staying Only Provisions of the Rule with Respect to Which Plaintiff Has Shown a Likelihood of Success and Irreparable Harm, Are Also Appropriate.**

Other equitable limitations on preliminary relief, such as staying only provisions of the Rule with respect to which Plaintiff has shown a likelihood of success on the merits and irreparable harm, would also properly circumscribe the scope of any stay entered under 5 U.S.C. § 705. *See, e.g.*, *Career Colleges*, 98 F.4th at 255–56 ("The Department's argument that it would be improper to enjoin portions of the Rule that are unchallenged or for which CCST has not shown a likelihood of success on the merits is correct.").

As set forth in Defendants' prior briefing, equitable principles demand that an injunction be no broader than "necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). These same principles apply to relief under § 705. *See* Part II *supra*. Indeed, § 705 provides that courts may delay an action's effective date only "to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705.

---

Nonconforming Students, Privacy, Programs, Activities & Facilities 2 (Mar. 2014), https://www.csba.org/Advocacy/~/media/CSBA/Files/Advocacy/ELA/2014_03_AB1266_Final Guidance.ashx (last accessed July 18, 2024); Or. Dep't of Educ., Supporting Gender Expansive Students: Guidance for Schools 24–26 (Jan. 5, 2023), https://www.oregon.gov/ode/students-and-family/equity/civilrights/Documents/ODE-Supporting-Gender-Expansive-Students.pdf (last accessed July 18, 2024). Florida, Georgia, and Iowa are plaintiffs in other suits challenging the Final Rule, in which motions for preliminary relief remain pending. *See* Mot. for a 5 U.S.C. 705 Stay & Prelim. Inj., *Arkansas v. U.S. Dep't of Educ.*, No. 4:24-cv-636 (E.D. Mo. May 21, 2024), ECF No. 9; Pls.' Mot. for Stay of Effective Date or Prelim. Inj., *Alabama v. Cardona*, No. 7:24-cv-00533-ACA (N.D. Ala. May 8, 2024), ECF No. 7.

Any relief under § 705 therefore must take into account the severability of the Final Rule. When a rule provision is deemed invalid, the remainder may go into effect "unless there is 'substantial doubt' that the agency would have left the balance of the rule intact." *Finnbin, LLC v. Consumer Prod. Safety Comm'n*, 45 F.4th 127, 136 (D.C. Cir. 2022). Here, as Plaintiff does not dispute, the Rule's provisions are severable. Indeed, the Department made an express severability determination, explaining that "each of the provisions of these final regulations discussed in this preamble serve an important, related, but distinct purpose." 89 Fed. Reg. at 33,848; *see id.* (discussing the Rule's severability provisions to be codified at 34 C.F.R. §§ 106.16 and 106.48, and existing provisions at 34 C.F.R. §§ 106.9, 106.24, 106.62, 106.72, and 106.82). This express severability determination resolves any doubt as to whether the agency would have adopted the unchallenged portions of the Rule to "operate[] independently" on their own. *American Fuel & Petrochemical Mfrs. v. EPA*, 3 F.4th 373, 384 (D.C. Cir. 2021).

It would contravene bedrock principles of equity to stay provisions of the Rule beyond those which Plaintiff has substantively challenged and with respect to which Plaintiff has demonstrated irreparable harm. *See, e.g.*, *Gill v. Whitford*, 585 U.S. 48, 73 (2018); *see also Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (mem.) (Gorsuch J., concurring in the grant of stay) (concluding that the "the district court clearly strayed from equity's traditional bounds" in enjoining provisions of a law that plaintiffs "failed to 'engage' with" and that "don't presently affect them"); *Southwestern Elec. Power Co. v. U.S. EPA*, 920 F.3d 999, 1033 (5th Cir. 2019) (limiting relief to "unlawful[] . . . portions" of agency rule). Plaintiff challenged the lawfulness of only a few parts of the Rule, and Plaintiff has tied the alleged harms supporting its request for preliminary relief to only a subset of the provisions it challenged as unlawful. Specifically, the "example[s]" set forth by Plaintiff's declarant indicate that the harms alleged by Plaintiff and relied

on by the Court in its issuance of preliminary relief are related to (1) § 106.31(a)(2)'s specification that recipients must not prevent a person from participating in a recipient's sex-separate education programs or activities consistent with the person's gender identity, and (2) potential applications of § 106.2's "hostile environment harassment" definition to speech about gender identity. *See* Pl.'s Mem. 24 (citing Pl.'s Appx. 5–6); Pl.'s Appx. 5–6, ECF No. 17 (asserting that compliance would be burdensome to Carroll ISD because the school district would have to "amend or repeal" district policies regarding access to single-sex restrooms, locker rooms, and showers, and regarding pronoun use, and would have to train staff on the new policies).

Plaintiff does not tie its alleged harms to any other provisions of the Rule. For example, although Plaintiff objects to what it terms the Rule's "gender-identity mandate," *e.g.*, Pl.'s Reply 8, Plaintiff has not demonstrated that it is harmed by the Rule's recognition in § 106.10 that Title IX's antidiscrimination requirement has the same meaning that the Supreme Court gave to the materially similar text of Title VII in *Bostock*. Plaintiff has not suggested that it will suffer harm if it cannot engage in quintessential discrimination prohibited by Title IX—such as giving a student detention or barring a student from band for being transgender. Section 106.10 reflects only a straightforward application of *Bostock*'s reasoning to Title IX's prohibition of discrimination "on the basis of sex," *see* 89 Fed. Reg. at 33,802–03; it does "not purport to address bathrooms, locker rooms, or anything else of the kind," *Bostock*, 590 U.S. at 681. Title IX's limitations on sex separation or differentiation in contexts like bathrooms and locker rooms are instead addressed in § 106.31(a)(2) of the Rule. *See, e.g.*, 89 Fed. Reg. at 33,809 (declining "the suggestion to revise § 106.10 to address separation of students based on sex" and noting that issue is addressed instead in § 106.31(a)(2)).

It likewise would be "improper" to enjoin or stay "portions of the Rule that are unchallenged or for which [Plaintiff] has not shown a likelihood of success on the merits." *Career Colleges*, 98 F.4th at 256; *see, e.g.*, 89 Fed. Reg. at 33,885 (administrative requirements related to Title IX coordinators (to be codified at 34 C.F.R. § 106.8(a))); *id.* at 33,885–86 (revisions to recipients' notice of nondiscrimination and record-keeping requirements (to be codified at 34 C.F.R. § 106.8(c), (f))); *id.* at 33,888 (ensuring access to lactation spaces for breastfeeding students (to be codified at 34 C.F.R. § 106.40(b)(3)(v))).

Accordingly, if the Court were to enter a stay under § 705, it should limit any relief to provisions of the Rule with respect to which Plaintiff has demonstrated both likelihood of success on the merits and irreparable harm. [4]

## CONCLUSION

For the foregoing reasons, the preliminary injunction issued on July 11, 2024, provided complete relief to Plaintiff, and there is no basis for the Court to issue a stay under 5 U.S.C. § 705, let alone a stay that applies to parties beyond Plaintiff or that reaches provisions of the Rule with respect to which Plaintiff has not shown a likelihood of success on the merits and irreparable harm.

---

[4] The Fifth Circuit's recent decision in *Louisiana v. U.S. Department of Education* does not require a contrary conclusion. In *Louisiana*, the district court denied the government's request for a partial stay of a broad injunction, determining in an unpublished order that the government had failed to satisfy its "heavy burden" of demonstrating its entitlement to that "extraordinary relief." Order at 3, *Louisiana v. U.S. Dep't of Educ.*, No. 24-30399 (5th Cir. July 17, 2024), ECF No. 73-1. In contrast, this Court has already determined that the Rule is severable and limited its preliminary injunction to certain provisions of the Rule, *see* Mem. Op. 14; the burden is on Plaintiffs to demonstrate why they are entitled to additional relief. The Fifth Circuit's order addressing the government's stay motion in *Louisiana* does not control that analysis.

Dated: July 18, 2024                     Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney General

                                         EMILY B. NESTLER
                                         Assistant Branch Director

                                         /s/ Elizabeth Tulis
                                         _____
                                         ELIZABETH TULIS
                                         REBECCA KOPPLIN
                                         BENJAMIN TAKEMOTO
                                         HANNAH SOLOMON-STRAUSS
                                         PARDIS GHEIBI
                                         Trial Attorneys
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street NW
                                         Washington, DC 20005
                                         Phone: 202-514-9237
                                         Fax: (202) 616-8470
                                         E-mail: elizabeth.tulis@usdoj.gov

                                         *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2024, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/ECF system.


*/s/ Elizabeth Tulis*

16