# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| CARROLL INDEPENDENT SCHOOL DISTRICT, | |
| *Plaintiff,* | **Case No.** 4:24-cv-00461-O |
| v. | |
| UNITED STATES DEPARTMENT OF EDUCATION; ET AL., | |
| *Defendants.* | |

## PLAINTIFF CARROLL INDEPENDENT SCHOOL DISTRICT'S
## SUPPLEMENTAL BRIEF ON 5 U.S.C. § 705

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Introduction ........................................................................................................... 1

I.      A stay of agency action is the APA's default preliminary relief ..................... 2

II.     A stay suspends the source of authority for the agency action, so it is not
        party-specific by definition. .................................................................... 5

III.    The Rule will continue to injure Carroll ISD without a stay. ......................... 6

IV.     This Court should stay the entire Rule. ....................................................... 8

Conclusion ............................................................................................................ 13

Certificate of Service ............................................................................................ 15

i

# TABLE OF AUTHORITIES

## Cases

*A.B. v. Hawaii State Department of Education,*
    30 F.4th 828 (9th Cir. 2022) ................................................................................ 7

*Alliance for Hippocratic Medicine v. United States Food & Drug
    Administration,*
    78 F.4th 210 (5th Cir.) .................................................................................... 2, 4

*Alliance for Hippocratic Medicine v. United States Food & Drug
    Administration,*
    602 U.S. 367 (2024) ......................................................................................... 2

*Americans for Beneficiary Choice v. United States Department of Health &
    Human Services,*
    No. 4:24-CV-00439-O, 2024 WL 3297527 (N.D. Tex. July 3, 2024) ................. 6

*Career Colleges & Schools of Texas v. United States Department of Education,*
    98 F.4th 220 (5th Cir. 2024) .................................................................. 2, 4, 5, 6, 13

*Corner Post, Inc. v. Board of Governors of Federal Reserve System,*
    144 S. Ct. 2440 (2024) ................................................................................ 2, 4, 5, 6

*Department of Homeland Security v. Regents of the University of California,*
    140 S. Ct. 1891 (2020) ....................................................................................... 2

*Doster v. Kendall,*
    54 F.4th 398 (6th Cir. 2022) ............................................................................... 9

*Franciscan Alliance, Inc. v. Becerra,*
    47 F.4th 368 (5th Cir. 2022) ............................................................................... 2

*Garland v. Blackhawk Manufacturing Group Inc.,*
    144 S. Ct. 338 (2023) ......................................................................................... 3

*Griffin v. HM Florida-ORL, LLC,*
    144 S. Ct. (2023) ................................................................................................ 2

*Harmon v. Thornburgh,*
    878 F.2d 484 (D.C. Cir. 1989) ............................................................................ 2

*Kansas v. United States Department of Education,*
    No. 24-4041-JWB, 2024 WL 3273285 (D. Kan. July 2, 2024) ......................... 11

*Louisiana v. United States Department of Education,*
No. 24-30399 (5th Cir. July 17, 2024), ECF 73-1 ............................. 8, 9, 11, 12

*Louisiana v. United States Department of Education,*
No. 3:24-CV-00563, 2024 WL 2978786 (W.D. La. June 13, 2024) ................... 11

*Lowrey v. Texas A&M University System,*
117 F.3d 242 (5th Cir. 1997) ............................................................... 7

*Mayor of Baltimore v. Azar,*
973 F.3d 258 (4th Cir. 2020) ............................................................... 9

*Minnesota v. Mille Lacs Band of Chippewa Indians,*
526 U.S. 172 (1999) ........................................................................ 11

*Nken v. Holder,*
556 U.S. 418 (2009) .................................................................. 3, 4, 7

*Ohio v. EPA,*
144 S. Ct. 2040 (2024) ..................................................................... 11

*Sampson v. Murray,*
415 U.S. 61 (1974) ....................................................................... 3, 6

*Scripps-Howard Radio, Inc. v. FCC,*
316 U.S. 4 (1942) .............................................................................. 3

*Tennessee v. Cardona,*
No. 24-5588 (6th Cir. July 17, 2024), ECF 41-1 ....................................... 9, 10

*Tennessee v. Cardona,*
No. CV 2: 24-072-DCR, 2024 WL 3019146
(E.D. Ky. June 17, 2024) ......................................................... 1, 4, 11, 12

*Tennessee v. Department of Education,*
104 F.4th 577 (6th Cir. 2024) ............................................................. 10

*Texas v. Cardona,* --- F. Supp. 3d ----,
2024 WL 2947022 (N.D. Tex. June 11, 2024) ............................................. 4

*Texas v. EPA,*
829 F.3d 405 (5th Cir. 2016) ................................................................. 8

*Texas v. United States,*
40 F.4th 205 (5th Cir. 2022) ............................................................. 4, 8

iii

*Texas v. United States*,
  691 F. Supp. 3d 763 (S.D. Tex. 2023) ................................................................. 9

*Texas v. United States*,
  No. 2:24-cv-00086-Z (N.D. Tex. July 11, 2024) ECF 48 ................................... 11

*United States v. Booker*,
  543 U.S. 220 (2005) ............................................................................................ 11

*Utility Air Regulatory Group. v. EPA*,
  573 U.S. 302 (2014) .............................................................................................. 1

*VanDerStok v. BlackHawk Manufacturing Group Inc.*,
  692 F. Supp. 3d 616 (N.D. Tex.) .......................................................................... 3

*Wages & White Lion Investments, LLC v. FDA*,
  16 F.4th 1130 (5th Cir. 2021) ..................................................................... 3, 4, 12

*Watterson v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  2024 WL 897595 (E.D. Tex. Mar. 1, 2024) .......................................................... 5

*Whitman-Walker Clinic, Inc. v. United States Department of Health & Human Services*,
  485 F. Supp. 3d 1 (D.D.C. 2020) ........................................................................ 13

*Whole Woman's Health v. Jackson*,
  141 S. Ct. 2494 (2021) .......................................................................................... 7

**<u>Statutes</u>**

5 U.S.C. § 705 ............................................................................................... 1, 3, 4

5 U.S.C. § 706 ........................................................................................................ 5

**<u>Regulations</u>**

34 C.F.R. §106.2 .................................................................................................... 9

34 C.F.R. § 106.8 ................................................................................................... 9

34 C.F.R. § 106.10 ................................................................................................. 9

34 C.F.R. §106.31(a)(2) ......................................................................................... 9

89 Fed. Reg. 33,474 (Apr. 29, 2024) ....................................................... 9, 10, 11, 12

## <u>Other Authorities</u>

Black's Law Dictionary
    (6th ed.1990).................................................................................................. 3

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*,
    104 Va. L. Rev. 933 (2018) ........................................................................ 2

Mila Sohoni, *The Power to Vacate a Rule*,
    88 Geo. Wash. L. Rev. 1121 (2020) ........................................... 2, 3, 5

Thomas W. Merrill, *Fair and Impartial Adjudication*,
    26 Geo. Mason L. Rev. 897 (2019) .................................................. 5

## INTRODUCTION

The Department of Education issued a universal Rule unlawfully attempting to rewrite Title IX. It seeks to effect "an enormous and transformative expansion in [the Department's] regulatory authority" by telling school districts nationwide to implement its gender-identity mandate. *Tennessee v. Cardona*, No. CV 2:24-072-DCR, 2024 WL 3019146, at *14 (E.D. Ky. June 17, 2024) (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014)). Doing so jeopardizes privacy, safety, and opportunities for women coast-to-coast. It also would restrict the free-speech rights of students and employees in a multitude of school districts.

Congress provided the solution to such agency aggrandizement. It authorized courts to delay the effective date of agency action to maintain the status quo. 5 U.S.C. § 705. A § 705 delay, enforced through a stay, serves as the default preliminary remedy under the APA. That stay operates against the agency action itself, so it does not allow for party-specific relief (unless the agency's action itself is party-specific). Having attempted to regulate universally, the Department cannot now complain that Congress authorized the federal courts to stay that action universally. Carroll ISD needs such a stay because an injunction alone will not prevent irreparable injury. Starting August 1, it risks costly private litigation over its policies protecting sex-designated private spaces and free-speech rights. Carroll ISD students traveling to other schools and other states also risk encountering students of the opposite sex in bathrooms, locker rooms, and showers; its female students risk playing against males in athletics; and all traveling students and employees risk violations of their First Amendment rights. Finally, the Court should delay the August 1, 2024, effective date for the entire Rule.

# I.   A stay of agency action is the APA's default preliminary relief.

Judicial review of agency action culminates at 5 U.S.C. § 706: Agency action found "contrary to law" is to be "held unlawful and set aside," or vacated. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2462 (2024) (Kavanaugh, J., concurring). And "the scope of preliminary relief under Section 705 aligns with the scope of ultimate relief under Section 706." *Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024). So assessing preliminary relief in an APA case like this one starts at § 706.

Vacatur is "the only statutorily prescribed remedy for a successful APA challenge to a regulation." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374–75 (5th Cir. 2022). Vacatur is thus "the default rule." *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 255 (5th Cir.), *rev'd for lack of jurisdiction*, 602 U.S. 367 (2024); *see also Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989). "When a federal court sets aside an agency action" under § 706, "the federal court vacates that order—in much the same way that an appellate court vacates the judgment of a trial court." *Corner Post*, 144 S. Ct. at 2462 (Kavanaugh, J., concurring). The APA thus "empower[s] the judiciary to act directly against the challenged agency action." *Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1, 2 n.1 (2023) (Kavanaugh, J., statement respecting the denial of application) (quoting Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933, 1012 (2018)). "Once the rule is vacated, there is no rule to enforce; [v]acatur obliterates the agency decision." Mila Sohoni, *The Power to Vacate a Rule*, 88 GEO. WASH. L. REV. 1121, 1131 (2020) (cleaned up). In many APA cases, there is no need for further relief, injunctive or otherwise— upon vacatur, the agency action is simply "treated as though it had never happened." *Griffin*, 144 S. Ct. at 2 n.1 (Kavanaugh, J.) (quoting Mitchell, *supra*, at 1012–13); *see, e.g., Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1901 (2020) (holding that agency action must "be vacated").

As to preliminary relief, the APA empowers courts "to the extent necessary to prevent irreparable injury" to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. Before the APA, a court could stay challenged agency action—in much the same way that an appellate court stays the judgment of a trial court. *See* Sohoni, *supra*, at 1150–51. Just as a reviewing court has well-recognized authority to stay the judgment of a lower court, as the Supreme Court held in *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4 (1942), a court reviewing *agency* action has authority to stay that action pending review. *See Sampson v. Murray*, 415 U.S. 61, 74 (1974) (discussing the *Scripps-Howard* doctrine). The Supreme Court has long understood Section 705 to codify that principle. *See id.* at 68 n.15. That provision thus authorizes a stay of agency action when necessary to preserve the status quo or prevent the irreparable injury that would result from requiring compliance with unlawful agency action. *See Wages & White Lion Investments, LLC v. FDA*, 16 F.4th 1130, 1143–44 (5th Cir. 2021).

Like vacatur, a stay functions *in rem*, operating directly against the agency action, rather than against a person. A stay works "by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability." *Nken v. Holder*, 556 U.S. 418, 428 (2009) (citing Black's Law Dictionary 1413 (6th ed.1990)); *see Sampson*, 415 U.S. at 68 n.15. In contrast, an injunction operates *in personam* by directing an individual to act or refrain from acting. *Nken*, 566 U.S. at 428. Both types of relief have the practical effect of stopping the agency from acting, but in different ways, as this Court has explained. *See VanDerStok v. BlackHawk Mfg. Grp. Inc.*, 692 F. Supp. 3d 616, 632 (N.D. Tex.), *vacated sub nom. Garland v. Blackhawk Mfg. Grp., Inc.*, 144 S. Ct. 338 (2023). An injunction prevents agency action by subjecting agency personnel to contempt if they exercise their enforcement authority, while a stay "prevent[s]" agency action "by temporarily suspending the

source of authority to act—the order or judgment in question." *Nken*, 556 U.S. at 428–29. Put another way, a stay "temporarily voids the challenged authority." *Id.*; *see also Career Colls.*, 98 F.4th at 255.

Therefore, like vacatur under § 706, a stay under § 705 is the APA's default preliminary remedy. Fifth Circuit precedent recognizes a stay as the "less drastic" remedy. *All. for Hippocratic Med.*, 78 F.4th at 254. A stay, after all, "does not order the defendant to do anything." *Id.* Indeed, it "neither compels nor restrains … further agency decision-making." *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022). And it doesn't apply *in personam*, on threat of contempt. *See Nken*, 556 U.S. at 428. When a regulation is challenged before it takes effect, the straightforward means of staying it is to temporarily postpone it by "delay[ing] the effective date." 5 U.S.C. § 705. That "simply suspends" agency "alteration of the status quo." *Nken*, 556 U.S. at 429 (cleaned up). Such a delay is the least burdensome means of maintaining the status quo. *See Wages & White Lion*, 16 F.4th at 1144.

Courts have often imposed a § 705 stay in the form of an injunction. *E.g.*, *Tennessee*, 2024 WL 3019146, at *1 ("[T]he new rule will be enjoined, and its application stayed."). But "in a general sense, every order of a court which commands or forbids is an injunction." *Nken*, 556 U.S. at 428 (cleaned up). In certain cases, a stay may not provide complete relief, so the reviewing court might issue a preliminary injunction "to preserve status or rights." 5 U.S.C. § 705; *cf. Texas v. Cardona*, --- F. Supp. 3d ----, 2024 WL 2947022, at *50 (N.D. Tex. June 11, 2024) (vacating agency action and also granting injunctive relief because "the Department has enacted similar guidance in the past and may attempt to do so again"). Conversely, in some cases, like here, an *in personam* injunction does not afford complete relief. *See Corner Post*, 144 S. Ct. at 2460 (Kavanaugh, J., concurring); *infra* Part III.

## II.   A stay suspends the source of authority for the agency action, so it is not party-specific by definition.

A stay operates against the agency action itself, not against the defendants *in personam*. That is why Fifth Circuit precedent rightly holds that § 705 relief is "not party-restricted." *Career Colls.*, 98 F.4th at 255. That binding precedent aligns with the APA's remedial scheme, its precedent, and courts' traditional powers.

Today, as in pre-APA practice, the court's "power to preserve the status quo …encompass[es] the power to suspend a rule on a wholesale basis." Sohoni, *supra*, at 1158. Because a stay operates against the agency action itself, it "cannot reasonably depend on the specific party before the court." *Corner Post*, 144 S. Ct. at 2469 (Kavanaugh, J., concurring). A stay suspends the agency's authority to perform the challenged action. That means it cannot complete that action at all—not against anyone. *See Career Colls.*, 98 F.4th at 255; *Watterson v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2024 WL 897595, at *19 (E.D. Tex. Mar. 1, 2024) (a § 705 delay stays "the agency regulation as applied to all parties and not just to the parties before the Court").

Defendants argue that § 705 relief was expected to "normally, if not always, be limited to the parties." Opp. to MPI 30 (ECF 29). But the text—not expectations—determines the meaning of the statute, and, as explained above, the text doesn't support Defendants' position. Even if Congress expected such a stay to affect only the parties, Congress also "assum[ed] that agencies [would] make policy through adjudication," not rulemaking. Thomas W. Merrill, *Fair and Impartial Adjudication*, 26 GEO. MASON L. REV. 897, 918 (2019). But the APA authorized agencies to act through rulemaking as well as adjudication, and it gave reviewing courts the same remedial authority for both. *See Corner Post*, 144 S. Ct. at 2462–63 (Kavanaugh, J., concurring). In addition, as Defendants note, the Supreme Court has observed that § 705 "was primarily intended to reflect existing law," ECF 29 at 30

(quoting *Samson*, 415 U.S. at 68 n.15), and pre-APA law supports a stay of the agency action. *See supra* Part I.

The APA instructs courts to do one thing with any unlawful agency action: set it aside. 5 U.S.C. § 706. "[B]ecause federal courts must 'set aside' agency rules in the same way that they set aside agency orders, successful challenges to agency rules must award the same remedy." *Corner Post*, 144 S. Ct. at 2462–63 (Kavanaugh, J., concurring). The same is true at the preliminary stage: federal courts must stay agency rules in the same way that they stay agency orders. *See Career Colls.*, 98 F.4th at 255. And when an agency acts by setting a nationwide policy, rather than establishing policy through adjudication, it should not be surprising that a stay (or vacatur) of that policy has a nationwide effect. *See id.* (an agency's objections to uniform "relief are incoherent in light of its use of the Rule to prescribe uniform federal standards"). Indeed, this Court recently recognized the propriety of a § 705 stay for these reasons. *See Ams. for Beneficiary Choice v. U.S. Dep't of Health & Hum. Servs.*, No. 4:24-CV-00439-O, 2024 WL 3297527, at *7 (N.D. Tex. July 3, 2024) (issuing a stay of a final rule that "seeks to prescribe uniform standards and applies to all" regulated persons, "not just the parties to these cases").

## III. The Rule will continue to injure Carroll ISD without a stay.

Without a stay, Carroll ISD remains exposed to further irreparable injury in two forms. First, private parties not covered by the Court's injunction can sue to enforce the Rule's unlawful provisions. Second, Carroll ISD students traveling out of state—and even to in-state schools not protected by the preliminary injunction—risk having to use bathrooms and locker rooms with students of the opposite sex; its female students risk having to play sports against males; and all traveling students and employees risk unconstitutional restrictions on their speech.

Starting August 1, costly private litigation based on the unlawful Rule threatens Carroll ISD. The district's policies safeguard sex-designated bathrooms,

locker rooms, and showers. MPI App.2 (ECF 17). And it also protects its students and employees from being forced to use pronouns inconsistent with sex. *Id*. An injunction preventing Defendants from enforcing the Rule against Carroll ISD does not bind independent third parties who might sue to enforce the Rule's unlawful requirements. *See Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 254 (5th Cir. 1997) (holding that Title IX regulations can be invoked through the implied private right of action); *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 832 (9th Cir. 2022) ("Title IX and its implementing regulations" allow causes of action for "(1) unequal treatment and benefits in athletic programs; (2) unequal participation opportunities in athletic programs; and (3) retaliation" despite the statute not containing relevant substantive provisions). An injunction, after all, operates *in personam. Nken*, 566 U.S. at 428; *cf. Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) (per curiam) (recognizing that a federal court's power to issue injunctions is "power to enjoin individuals tasked with enforcing laws, not the laws themselves"). So an injunction against Defendants still leaves Carroll ISD exposed to expensive and time-consuming litigation with large potential liability for both damages and attorney's fees. *See, e.g.*, Caroline Vakil, *Virginia school board reaches $1.3M settlement with Gavin Grimm over bathroom policy*, HILL (Aug. 26, 2021). A delay of the effective date (and eventual vacatur), however, affects the Rule itself, preventing private plaintiffs from suing over an alleged violation of the Rule's unlawful provisions.

The injunction barring Defendants from enforcing the Rule against Carroll ISD also does not protect its students when they participate in educational programs with other recipients of federal funds. And Carroll ISD students do so regularly. In the fast-approaching school year, Carroll ISD students will travel to California, Florida, Georgia, Kentucky, Iowa, Ohio, and Oregon. MPI App.476 (ECF 37). Based on the injunctions currently in place, the Rule will become effective on August 1 in California, Florida, Georgia, and Oregon. Neither California nor Oregon

7

have sued to enjoin enforcement of the Rule. *See* Amicus Br. of Cal. and Or. et al. (ECF No. 30). Carroll ISD students traveling to those states will use bathrooms, locker rooms, and changing facilities covered by the Rule. They thus run the risk of encountering students of the opposite sex in those private spaces. Carroll ISD female athletes could be forced to compete against males. And Carroll ISD students and employees on the road will have to comply with policies implementing the unconstitutional harassment definition. All that would inflict irreparable injury. *See* Order 12 (ECF 43).

California and Oregon state law doesn't change the calculus. *Contra* MPI tr. 42. That law doesn't authorize the Department's unlawful action. "When establishing redressability, a plaintiff need only show that a favorable ruling could potentially lessen its injury; it need not definitively demonstrate that a victory would completely remedy the harm." *Texas*, 40 F.4th at 219. A stay here would prevent the federal government from requiring recipients in California and Oregon to apply its unlawful Rule. What's more, to the extent California and Oregon have state laws similar to the new Rule, those laws themselves "function as impermissible sex discrimination under Title IX." Order 7. But the new Rule would prevent Carroll ISD students from seeking redress.

## IV.   This Court should stay the entire Rule.

A reviewing court may stay an administrative rule in its entirety, particularly where the agency does not demonstrate how to "craft a limited stay." *Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016). This Court should stay the entire Rule for two reasons. First, as the Fifth Circuit and other courts have recognized, Defendants have not shown that the Rule is severable. *See Louisiana v. U.S. Dep't of Education*, No. 24-30399 (5th Cir. July 17, 2024), ECF 73-1. Second, delaying the effective date for the entire Rule is the most straightforward way to maintain the status

quo. The Rule will become effective in only two weeks, putting Carroll ISD at sub-stantial risk of incurring double compliance costs and throwing school districts across the country into legal uncertainty "as to a multitude of matters." *Id.* at 6.

**A.** Preliminary relief should "maintain the status quo," which gives the court "wide latitude to craft a temporary remedy in accordance with the equities" that may be "broader than final relief." *Id.* at 4–5 (citing *Doster v. Kendall*, 54 F.4th 398, 442 (6th Cir. 2022)). Thus, severability can't get in the way of preserving the status quo. *See Doster*, 54 F.4th at 441.

Even so, Defendants haven't shown the Final Rule is severable. To determine severability, courts ask whether (1) severance would "impair the function" of the rule "as a whole" and (2) the agency would have enacted the rule absent the chal-lenged provisions. *Louisiana*, No. 24-30399 ECF 73-1 at 5. A court shouldn't sever a final rule when "there is substantial doubt that the agency would have adopted the severed portion on its own." *Mayor of Baltimore v. Azar*, 973 F.3d 258, 292 (4th Cir. 2020). "[I]nclusion of an express severability clause is an aid merely; not an inexora-ble command." *Texas v. United States*, 691 F. Supp. 3d 763, 788–89 (S.D. Tex. 2023) (cleaned up).

The challenged provisions lie "at the heart of the 423-page Rule"; the other provisions cannot function as designed without them. *Louisiana*, No. 24-30399 ECF 73-1 at 3. Defendants' "new definition of sex discrimination" in 34 C.F.R. § 106.10 "touch[es] every substantive provision of the Rule." *Tennessee v. Cardona*, No. 24-5588 (6th Cir. July 17, 2024), ECF 41-1 at 6. For example, the future 34 C.F.R. § 106.8 addresses the appointment and duties of Title IX coordinators, the recipi-ent's duty to publish a notice of nondiscrimination, and the requirement that it maintain records for at least seven years. But compliance with these provisions de-pends on whether the challenged provisions—34 C.F.R. §§ 106.10, 106.31(a)(2), and 106.2—are in effect. Consider that a school must record "each notification the Title

IX Coordinator receives of information about conduct that reasonably may constitute sex discrimination." Nondiscrimination on the Basis of Sex in Educ. Programs or Activities Receiving Fed. Fin. Assistance, 89 Fed. Reg. 33,474, 33,886 (Apr. 29, 2024) (to be codified at 34 C.F.R. § 106.8(f)(2)). Each of these provisions "implicates the new definition of sex discrimination." *Tennessee*, No. 24-5588 ECF 41-1 at 6. It's "hard to see how all of the schools covered by Title IX could comply with this wide swath of new obligations if the Rule's definition of sex discrimination remains enjoined." *Id.* at 7.

Defendants have not shown that the Department would have issued the rest of the Rule absent the unlawful portions. The Department "did not contemplate enforcement of the Rule without *any* of the core provisions." *Id.* Defendants justify the Rule and its high costs based on benefits they expect from implementing the challenged provisions. 89 Fed. Reg. at 33,861–62. But that cost-benefit analysis didn't incorporate "the idea of allowing" the rest of the Rule "to go into effect with a *different* definition of sex discrimination." *Tennessee*, No. 24-558 ECF 41-1 at 7. Indeed, it is not even apparent what that definition would be, which makes implementation even more uncertain and costly. *Id.* (citing *Tennessee v. Dep't of Educ.*, 104 F.4th 577 (6th Cir. 2024)). Defendants do not show the costs are worth it. Those costs include an estimated $98 million that funding recipients nationwide will incur just to come into initial compliance with the Rule.[1] If the Rule is rolled out in stages because of severance, it will duplicate many of those costs in a way the Department's reasoned estimates did not contemplate. *See Louisiana*, No. 24-30399 ECF 73-1 at

---

[1] The Rule itself estimates compliance costs from "reviewing and making necessary changes to policies, procedures, and training to implement the final regulations" nationwide will exceed $98 million in the first year. 89 Fed. Reg. at 33,861. Carroll ISD would suffer a portion of those estimated costs, including from training its over 1,100 employees. *See* MPI App.6 (ECF 17).

6; *cf. Ohio v. EPA*, 144 S. Ct. 2040, 2053–54 (2024) (staying a rule that imposed different burdens than the Government estimated).

Staying only certain provisions here would "involve this [C]ourt in making predictions … about the interrelated effects of the remainder of the Rule on thousands of covered educational entities"—all contrary to severability analysis. *Louisiana*, No. 24-30399 ECF 73-1 at 5. This Court should not assume Defendants "would have preferred to apply the [Rule] in as many" situations "as possible" if "key" provisions were held invalid. *United States v. Booker*, 543 U.S. 220, 248 (2005). The Rule is "highly complex" and riddled with "interrelated provisions." *Id.* It is "one coherent policy," *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 194 (1999), principally ensuring that students are not denied educational opportunities, *see* 89 Fed. Reg. at 33,476 (Rule aims "to fully effectuate … sex discrimination prohibition."). And the Department has said that its provision redefining sex discrimination is "essential" to this goal. *Id.* at 33,500. It's "not th[e] court's job" to embark on a "judicial rewriting of the Rule on" a temporary basis. *Louisiana*, No. 24-30399 ECF 73-1 at 6.

All that aligns with the four district court decisions that have issued preliminary relief against the Rule in its entirety. *See Tennessee*, 2024 WL 3019146, at *43; *Louisiana v. U.S. Dep't of Educ.*, No. 3:24-CV-00563, 2024 WL 2978786, at *21 (W.D. La. June 13, 2024); *Kansas v. U.S. Dep't of Educ.*, No. 24-4041-JWB, 2024 WL 3273285, at *18 (D. Kan. July 2, 2024); Mem. Op. and Order at 32, *Texas v. United States*, No. 2:24-cv-00086-Z (N.D. Tex. July 11, 2024) ECF 48. As one court put it, the "impermissible" definition of "sex discrimination" "permeates the entire rule," so it would be "difficult to excise the remaining regulations without also eliminating those regulations that involve sex discrimination." *Kansas*, 2024 WL 3273285, at *18. Additionally, courts have held that the Department acted arbitrarily and capriciously, making the Rule "invalid in its entirety." *Id.* "[R]ulemaking is exclusively

within the purview of the Executive Branch." *Tennessee*, 2024 WL 3019146, at *43. This Court should leave it to the agency to determine what, if any, lawful provisions of the Rule it wishes to implement through proper rulemaking. *See Louisiana*, No. 24-30399 ECF 73-1 at 5.

**B.** The Rule will become effective in just two weeks. Allowing the rest of the Rule to remain in place "would inflict enormous administrative costs and great legal uncertainty on recipients of federal funds." *Id.* Unrecoverable compliance costs— like the costs to update policies and train educators and students—impose irreparable harm. *Wages & White Lion*, 16 F.4th at 1142. Within days, school districts must "amend their policies, alter their procedures, and train their employees to comply with a partial version of the Rule." *Louisiana*, No. 24-30399 ECF 73-1 at 6. Then, districts "would have to do it all over again to comply with the Rule as it stands at the conclusion of this litigation." *Id.* That forces schools to suffer "double" the "implementation and compliance costs." *Id.* That's inconsistent with the costs the Department itself estimated, 89 Fed. Reg. at 33,860–81, and irreparably injures those whom Defendants are supposed to serve. What's more "[l]egal uncertainty would abound as to a multitude of matters like the extent of compelled recordkeeping, sufficiency of 'complaints' of sex discrimination/harassment, and obligations to monitor 'offensive' speech and behavior under any partially implemented Rule." *Louisiana*, No. 24-30399 ECF 73-1 at 6. The Department is responsible for giving "recipients only three months' time to digest and comply with its behemoth Rule, less than half of which remains." *Id.* Defendants cannot now argue that schools can easily comply with a severed Rule.

The *Texas* injunction against enforcing the Rule doesn't change the analysis. The *Texas* injunction doesn't protect Carroll students traveling out of state or protect Carroll ISD against private lawsuits. Additionally, "[c]ourts routinely grant follow-on injunctions against the [federal] Government, even in instances when an

earlier nationwide injunction" has been issued. *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 59–60 (D.D.C. 2020) (collecting cases). Without preliminary relief in *this* case, Carroll ISD cannot ensure it will not start to incur liability—the Texas case might be dismissed or the preliminary injunction stayed. *See* Order 3.

## CONCLUSION

The Department's "protests" against universal "relief are incoherent in light of its use of the Rule to prescribe uniform federal standards." *Career Colls.*, 98 F.4th at 255. The Department attempted an unlawful regulation for everyone subject to Title IX. The APA empowers this Court to provide preliminary relief against that regulation, which incidentally benefits everyone subject to that unlawful action. To prevent irreparable injury to Carroll ISD, this Court should stay the Rule in its entirety.

13

Respectfully submitted this 18th day of July 2024.

*/s/ Mathew W. Hoffmann*

| | |
|---|---|
| **Tim Davis** | **Tyson C. Langhofer\*** |
| Texas Bar No. 24086142 | Virginia Bar No. 95204 |
| **Allison Allman** | **Mathew W. Hoffmann\*** |
| Texas Bar No. 24094023 | Virginia Bar No. 100102 |
| **Trevor Paul** | **ALLIANCE DEFENDING FREEDOM** |
| Texas Bar No. 24133388 | 44180 Riverside Pkwy |
| **JACKSON WALKER LLP** | Lansdowne, Virginia 20176 |
| 777 Main Street, Suite 2100 | Telephone: (571) 707-4655 |
| Fort Worth, Texas 76102 | tlanghofer@ADFlegal.org |
| Telephone: (817) 334-7200 | mhoffmann@ADFlegal.org |
| tdavis@jw.com | |
| aallman@jw.com | **Natalie D. Thompson\*\*** |
| tpaul@jw.com | Texas Bar No. 24088529 |
| | **ALLIANCE DEFENDING FREEDOM** |
| **Jonathan A. Scruggs\*** | 440 First Street NW, Suite 600 |
| Arizona Bar No. 030505 | Washington, DC 20001 |
| **ALLIANCE DEFENDING FREEDOM** | Telephone: (202) 393-8690 |
| 15100 N. 90th Street | nthompson@ADFlegal.org |
| Scottsdale, Arizona 85260 | |
| Telephone: (480) 444-0020 | **Counsel for Plaintiff Carroll ISD** |
| jscruggs@ADFLegal.org | |
| | *\*Admitted pro hac vice* |
| | *\*\*Practice supervised by one or more D.C. Bar members while D.C. Bar application is pending.* |

14

## CERTIFICATE OF SERVICE

I certify that on July 18th, 2024, this document was served on all counsel of record via the Court's CM/ECF system.

*/s/ Mathew W. Hoffmann*

Mathew W. Hoffmann
**Counsel for Plaintiff Carroll ISD**