## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE: PROCEDURES REGARDING
THE POSSESSION AND USE OF
CAMERAS AND PERSONAL
ELECTRONIC DEVICES BY
VISITORS TO THE J. CALEB BOGGS
FEDERAL BUILDING AND UNITED
STATES COURTHOUSE

Misc. Case No.

## THE PRESS COALITION'S MOTION FOR EXEMPTION TO
## THE STANDING ORDER ON ELECTRONIC DEVICES
## AT THE TRIAL IN *U.S. v. Robert Hunter Biden*, 23-cr-61-MN

BALLARD SPAHR LLP

Beth Moskow-Schnoll (# 2900)
Lauren P. Russell (# 6576)
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4447
moskowb@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*

## PRELIMINARY STATEMENT

A coalition of local and national news media organizations (the "Press Coalition")[1] respectfully request a narrow exemption to the Court's Standing Order on Electronic Devices to permit credentialed journalists to use laptops and mobile electronic devices inside the courtroom – or at least within the courthouse – during the trial of Robert Hunter Biden, which is scheduled to begin on June 3, 2024 before the Honorable Maryellen Noreika.  The trial of a sitting President's son is of historic significance and will be closely watched, yet the Standing Order, as reaffirmed and further limited in a May 24, 2024 Public Notice,[2] prohibits journalists covering the trial in person from contemporaneously communicating with their newsrooms through text-based communications.  The Standing Order and Public Notice thus reduce access in a trial where <u>maximum</u> transparency should be the goal.

---

[1] The coalition includes American Broadcasting Companies, Inc. d/b/a ABC News, the Associated Press, Cable News Network, Inc., CBS Broadcasting Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, Gannett Co., Inc., the ultimate parent company of The News Journal and DelawareOnline.com, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBCUniversal News Group, The New York Times Company, POLITICO LLC, and WP Company LLC d/b/a The Washington Post.

[2] *See Courthouse Logistics for Media and Members of the Public Attending the Pretrial Conference (May 24, 2024) and the Jury Trial (beginning June 3, 2024) in the matter of The United States of America v. Robert Hunter Biden*, https://www.ded.uscourts.gov/sites/ded/files/PUBLIC%20NOTICE%205.20.24%20 0_0.pdf (the "Public Notice").

To be clear, the Press Coalition is not, at this time, asking for permission to record or broadcast video or audio from the courtroom.  Rather, this request narrowly seeks permission for journalists to use their devices to take notes and to transmit text to their newsrooms, providing real-time information about what is happening during the trial from the courtroom, or alternatively, from the overflow room, or at the very least, the use of laptops – the modern reporter's notebook – to take notes during the trial.

The requested limited exemption to the Standing Order for credentialed members of the media – an accommodation the Court typically extends to the District of Delaware press, but has rescinded here in a recent Public Notice – ensures accuracy and minimizes disruption of court proceedings by permitting members of the media to explain trial events from their seats, rather than repeatedly exiting the courthouse to make less complete reports.  The Press Coalition respectfully requests that the Court promptly grant this exception and increase access to this important trial.

**BACKGROUND**

A.     **Hunter Biden's Criminal Prosecution**

Hunter Biden was originally charged in June 2023 with "two misdemeanor tax offenses" and one felony count of "possession of a firearm by a person who is an unlawful user of or addicted to a controlled substance."  *See* Apr. 12, 2024

Mem. Op. at 1, *United States v. Robert Hunter Biden*, 23-cr-61-MN (D.I. 97).

That same day, the government also notified the Court that Defendant "had agreed

to plead guilty to both misdemeanor tax offenses and also agreed to enter a pretrial

diversion program as to the felony firearm charge." *Id.* A hearing on that

proposed plea agreement was set for July 2023. *Id.*

At that hearing, "the Court pressed the parties on their respective

understandings as to the government's promises in exchange for Defendant's

guilty plea on the tax charges," and the Court observed that "the parties had

different views as to the scope of the immunity provision in the Diversity

Agreement." *Id.* at 5. The Court ultimately concluded that "it could not accept or

reject the Plea Agreement as offered" and "Defendant then entered a plea of not

guilty." *Id.* at 7.

The following month, "United States Attorney David Weiss was appointed

as special counsel to conduct the ongoing investigations relating to these two

criminal matters, as well as to conduct investigations into matters arising from the

ongoing ones." *Id.* One month after that, in September 2023, "a federal grand jury

returned an indictment against Defendant charging him with three firearm

offenses," consisting of "the same unlawful possession charge that was present in

the original Information along with two additional charges for making a false

statement in connection with acquiring a firearm." *Id.* at 8 (citation omitted).

Defendant subsequently moved to dismiss the charges against him on multiple grounds, including selective prosecution, unconstitutional appointment of the Special Counsel, immunity arising from the unaccepted plea agreement, and violation of the Second Amendment. *See* D.I. 60-63. The Court denied each of those motions. *See* D.I. 97-101, 114. Defendant noticed an appeal as to his Second Amendment motion, and the Third Circuit dismissed that appeal for lack of jurisdiction. *See* D.I. 183. Defendant is therefore set to stand trial starting next week.

**B.      The District's Standing Orders**

On May 15, 2023, Chief Judge Colm F. Connolly entered a Standing Order regarding electronic devices, providing that "[u]nless ordered by the Chief Judge, or the presiding judge in a specific case," only certain professionals and jurors and potential jurors are exempt from the directive that members of the public are required to turn off electronic devices and place them in a locked pouch with the U.S. Marshal upon entry into the courthouse.[3]

---

[3] *See* Standing Order, *In re: Procedures Regarding the Possession and Use of Cameras and Personal Electronic Devices by Visitors to the J. Caleb Boggs Federal Building and United States Courthouse*, https://www.ded.uscourts.gov/sites/ded/files/general-orders/Electronic%20Devices%20Standing%20Order%205-15-23%20%281%29.pdf.

On May 17, 2024, the Chief Judge entered another Standing Order, which again limited use of electronic devices, but added the following to the list of individuals who would be permitted to have electronic devices in the courtroom: "Members of the press who cover the District of Delaware—in its entirety—on a regular basis and who have obtained from the Clerk of the Court In-House Press Credentials."[4]

The District has also made available a form application for press credentials for journalists who cover the District "in its entirety." Under District policies, such credentialed members of the press are permitted to bring electronic devices into the Federal Building (but must turn them off in the courtroom), and may use laptop computers in the courtroom "for the limited purpose of note taking."[5]

## C.     The Court's Public Notice Regarding Mr. Biden's Trial

Ahead of the jury trial set to begin on June 3, 2024, the Court issued a Public Notice on May 24, 2024, reaffirming its prohibitions on electronic devices, and

---

[4] *See* Standing Order, *In re: Procedures Regarding the Possession and Use of Cameras and Personal Electronic Devices by Visitors to the J. Caleb Boggs Federal Building and United States Courthouse*, https://www.ded.uscourts.gov/sites/ded/files/general-orders/Standing%20Order%20Procedures%20Regarding%20the%20Possession%20and%20Use%20of%20Electronic%20Devices.pdf.

[5] *See Application for Media Identification Card*, https://www.ded.uscourts.gov/sites/ded/files/Media%20Application%20and%20Guidelines.pdf.

extending the ban to even credentialed members of the District of Delaware press corps:

> Electronic devices are only authorized in accordance with the Standing Order. Other electronic devices will not be permitted in the building except for those that can fit inside the locked pouch provided by the U.S. Marshals Service. Electronic devices will remain in the locked pouch in the possession of the visitor while in the courthouse. Laptops will not be approved to bring into the building.

*See generally* Public Notice.[6]  The Public Notice provides two seats in the courtroom per news outlet, on a first-come, first-served basis, with no permission for re-entry.  *Id.*  The Public Notice also states that any members of the press or public unable to access the courtroom "may view the proceedings via video stream in the overflow room," and those observing from the overflow room "may come and go."  *Id.*

## ARGUMENT

The approved use of electronic devices enables journalists to provide real-time reporting on proceedings in cases across the country and better carry out their responsibility to serve as "representatives" of the public in observing the public's business in court.  *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 577

---

[6] We are interpreting this Public Notice as not even permitting credentialed journalists to use laptops in the courthouse. If we are misinterpreting this, however, we would appreciate the guidance.

n.12 (1980).  Because the public interest in such real-time reporting is especially

high in this historic case, and because the use of electronic devices has inarguably

improved coverage in other high-profile proceedings while causing no disruptions,

the Press Coalition seeks a limited exemption to the Standing Order for

credentialed members of the media to use mobile electronic devices and laptops in

the courthouse to report on the *U.S. v. Biden* trial.

Pursuant to the provisions of the Standing Order, this Court retains the

authority to allow journalists to use electronic devices in the courthouse.

Specifically, the Standing Order provides that certain individuals may be exempt

from putting their electronic devices in a locked pouch, but the "Chief Judge or the

presiding judge in a specific case" may order an exemption to that requirement.

The Press Coalition respectfully seeks just such an exemption here.

## I.     The Bar On Electronic Devices Limits Public Access To Public Trials.

The Supreme Court has observed that holding criminal trials in open court

ensures that "the public is aware that the law is being enforced and the criminal

justice system is functioning." *Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 509

(1984) ("*Press-Enterprise I*").  As the Third Circuit has noted, the right of access

to public trials "can be fully vindicated only if the opportunity for personal

observation is extended to persons other than those few who can manage to attend

the trial in person." *United States v. Criden*, 648 F.2d 814, 822 (3d Cir. 1981).

Prior to denying the public its right of access to criminal trials, a party must

identify "an overriding interest" advanced by the denial of access, must

demonstrate that "closure is essential to preserve higher values and is narrowly

tailored to serve that interest," and the Court must articulate findings of fact that

are "specific enough that a reviewing court can determine whether the closure

order was properly entered." *Press-Enterprise I*, 464 U.S. at 510; *see also Criden*,

648 F.2d at 827 (courts "must distinguish between those situations where there is

hypothetical prejudice and those where it can be demonstrated that there has been

actual prejudice caused by publicity").

"With respect to judicial proceedings in particular, the function of the press

serves to guarantee the fairness of trials and to bring to bear the beneficial effects

of public scrutiny upon the administration of justice." *Cox Broad. Corp. v. Cohn*,

420 U.S. 469, 492 (1975). Indeed, the public often acquires information about the

justice system not through its own attendance at a trial, but "through the print and

electronic media" with the press acting as "surrogates for the public." *Richmond*

*Newspapers*, 448 U.S. at 573. The Third Circuit further elaborated on the

importance of access in *United States v. Antar*:

> First, *openness* is ongoing—a status rather than an event.
> At the heart of the Supreme Court's right of access analysis
> is the conviction that the public should have access
> to *information*; the Court never has suggested that an open
> proceeding is only open to those who are able to be bodily
> present in the courtroom itself. True public access to a

> proceeding means access to knowledge of what occurred there. It is served not only by witnessing a proceeding firsthand, but also by learning about it through a secondary source.

38 F.3d 1348, 1360 (3d Cir. 1994).

Prohibiting journalists from using electronic devices in the courthouse is in effect denying the public contemporaneous access to information about the *U.S. v. Biden* trial. Only a handful of the interested public will be able to claim a seat in the courtroom to observe the trial in real-time. The vast majority of the public will instead rely on journalists to monitor these proceedings. Yet to relay information about the trial to the public, journalists will have to take handwritten notes, retrieve their devices from security, and exit the courthouse to pass along what they wrote in their notepads, whether to their newsrooms or directly to the public. Moreover, journalists in the courtroom will not be allowed re-entry when they leave to report, and even those observing from the overflow room will likely miss part of the proceedings and may lose their seat. The nuances of trial may therefore be lost, and never even conveyed to the public, as journalists are forced to shuffle in and out of the courthouse to report on the proceedings.

By comparison, permitting the press to type their notes and communicate with their newsrooms ensures that more details about the proceedings will be recorded and published to the public, better "bring[ing] to bear the beneficial effects of public scrutiny upon the administration of justice." *Cox Broad. Corp.*,

420 U.S. at 492.  The Public Notice does not explain what prejudice might arise from permitting journalists to use their devices, but to the extent anyone in the courtroom abuses their use of a device or causes disruptions, the Court certainly would have the authority to respond as necessary to maintain decorum.

## II.     Other High-Profile Trials Have Permitted Devices Without Incident.

The public interest in real-time trial reporting is especially high in this historic prosecution of a sitting President's son.  But this is not the only historic prosecution currently in progress today, and in those other high-profile cases—criminal proceedings against a former President—the approved use of electronic devices has enabled journalists to provide real-time reporting across the country and better carry out their responsibility to serve as "representatives" of the public in observing the public's business in court.  *See Richmond Newspapers*, 448 U.S. at 577 n.12.  Even where courts have permitted contemporaneous coverage, there is no evidence that it has caused any disruption to the proceedings.  This Court should follow their lead in allowing electronic devices.

Last summer, for example, the U.S. District Court for the District of Columbia unsealed an indictment against former President Donald Trump, charging him with four counts of conspiracy and obstruction.  *See* Indictment, *United States v. Trump*, No. 23-cr-257-TSC (D.D.C. Aug. 1, 2023), D.I. No. 1. Trump was arraigned in that case on August 3, 2023, and credentialed journalists

were permitted to use electronic devices to report from the courthouse's media

room, which received live audio and video from the courtroom where the

arraignment was held.[7]  By all accounts the hearing proceeded without incident.

*See, e.g.*, Morgan Winsor et al., *Trump pleads not guilty on Jan. 6 charges, calls it*

*'sad day for America'*, ABC NEWS (Aug. 3, 2023),

https://abcnews.go.com/US/live-updates/trump-2020-election-indictment-

charges/?id=101943446.

     That same summer, in the criminal action brought against Trump for the

alleged mishandling of classified records, one of Trump's co-defendants made his

initial appearance in the U.S. District Court for the Southern District of Florida's

Miami courthouse, and by order of Chief Magistrate Judge Edwin G. Torres,

credentialed journalists were allowed to use their electronic devices (in text-only

mode) in the courtroom during that hearing.  Again, by all accounts, the hearing

proceeded without incident.  *See, e.g.*, Hannah Rabinowitz, *Mar-a-Lago property*

*manager makes first court appearance in classified documents case*, CNN (July

31, 2023), https://www.cnn.com/2023/07/31/politics/carlos-de-oliveira-court-

appearance-classified-documents-case/index.html.

---

[7] *See* Public & Media Advisory, U.S. District Court for the District of Columbia
(Aug. 2, 2023),
https://www.dcd.uscourts.gov/sites/dcd/files/Public%20and%20Media%20Advisor
y%20for%20Thursday,%20August%203,%202023.pdf.

Trump's ongoing criminal trial in New York state court is perhaps the best indicator that the news media's use of electronic devices in a courtroom does not disrupt proceedings—even proceedings that likewise involve the Secret Service—because many news outlets are live blogging or otherwise providing real-time information about the trial from the courthouse. *See, e.g.,* Aaron Katersky et al., *Trump trial live updates*, ABC NEWS (last updated May 30, 2024), https://abcnews.go.com/US/live-updates/trump-hush-money-trial/?id=110586765; Curtis Yee, *Donald Trump's hush money trial: Highlights from first day of jury deliberations*, AP (last updated May 30, 2024), https://apnews.com/live/trump-trial-jury-deliberations-updates; Graham Kates et al., *Trump trial ends first day of jury deliberations without a verdict*, CBS NEWS (last updated May 30, 2024), https://www.cbsnews.com/live-updates/trump-trial-verdict-jury-deliberations-judge-instructions/. As one writer described the overflow room:

> They watched from the courtroom or via closed-circuit television in an overflow room — roughly 140 reporters, most with laptops or other silenced electronic devices, serving up news at its most elemental and in rapid-fire fashion.
>
> There were utterances posted a few seconds after they left a lawyer's mouth. Observations on how Donald Trump is reacting. Tidbits on what testimony is causing jurors to scribble notes. "Let me give you some quotes to make you feel like you're inside the courtroom," MSNBC's Yasmin Vossoughian said before reading the reports of colleagues.

> Trump's hush money trial is illustrating the potency of
> live blogs as a news tool — by necessity.

David Bauder, *Without cameras to go live, the Trump trial is proving the potency of live blogs as news tools*, AP (Apr. 22, 2024), https://apnews.com/article/trump-trial-blogs-camera-4f9129bdf7d53ee04eb89ec6db166c9f.

Under the terms of the Standing Order, and the even more restrictive Public Notice, journalists covering the trial in the courtroom will not be able to provide comparable updates on the proceedings until each proceeding ends, and as a result nearly every member of the public—excepting only those who manage to secure a seat in the courtroom or the overflow room—will be denied contemporaneous access to the trial proceedings.  The Court has not articulated what greater interest that denial of access possibly advances, how that denial of access will be effective at advancing that interest, or why there are no less restrictive alternatives that could achieve the same goal.  In these particular circumstances, therefore, prohibiting credentialed press from using electronic devices to report on the *U.S. v. Biden* trial falls short of the constitutional "obligat[ion] to take every reasonable measure to accommodate public attendance at criminal trials." *Presley v. Georgia*, 558 U.S. 209, 215 (2010) (per curiam).

**III.    Journalists Should Be Permitted To Take Notes On Laptops.**

Even if the Court does not grant the full exemption to the Standing Order sought here, the Press Coalition respectfully requests that its journalists be

permitted to take notes on their laptops, as the District of Delaware press corps is typically permitted to do.

Courts have recognized that the public has the right to take notes during court proceedings. *See, e.g.*, *Cox Broad. Corp.*, 420 U.S. at 496 (holding that a television station had the right to broadcast information about a rape case derived from "notes taken during the court proceedings"); *Goldschmidt v. Coco*, 413 F. Supp. 2d 949, 952 (N.D. Ill. 2006) ("A sweeping prohibition of all note-taking by any outside party seems unlikely to withstand a challenge under the First Amendment."); *see also United States v. Cabra*, 622 F.2d 182, 184-85 (5th Cir. 1980) (holding that a district-court order barring note-taking during a criminal hearing was an abuse of discretion). These decisions recognize that the right of access cannot serve its underlying purpose—that is, facilitating the "free discussion of governmental affairs"—if the right does not protect the public's ability to memorialize open proceedings. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604 (1982) (citation omitted).

The laptop is the modern notepad and is the most efficient method for journalists to thoroughly memorialize their observations about the proceedings. The Press Coalition therefore requests that its members be permitted to use this tool to ensure their reporting on this trial is as accurate and thorough as possible.

## REQUEST FOR EXPEDITED TREATMENT

The Press Coalition respectfully requests that the Court address this motion on an expedited basis before June 3, 2024, when jury selection is set to begin, or at the earliest date possible while the trial is ongoing.

## CONCLUSION

For the foregoing reasons, the Press Coalition respectfully requests that the Court make a limited exception to the Standing Order on Electronic Devices and grant permission for credentialed journalists to bring their mobile electronic devices and laptops into the courthouse during the *U.S. v. Biden* trial and to use those devices in text-only mode for the limited purpose of conveying information about the trial proceedings to their newsrooms.

Dated:  May 30, 2024          Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Beth Moskow-Schnoll*
Beth Moskow-Schnoll (# 2900)
Lauren P. Russell (# 6576)
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4447
moskowb@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*

16

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1.1</u>

Pursuant to Local Rule 7.1.1., undersigned counsel conferred with counsel for the government and Defendant on May 28 and 29, 2024. The government takes no position on this Motion, and at the time of filing, counsel for Defendant had not responded regarding Defendant's position.