**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| CARROLL INDEPENDENT SCHOOL DISTRICT,<br><br>  *Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION et al.,<br><br>  *Defendants*. | Case No. 4:24-cv-00461-O |

**<u>DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS AND CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.    The Court should dismiss the case on claim-splitting grounds............................. 2

II.   If the Court reaches the merits, it should grant summary judgment to Defendants............ 5

      A.    The Supreme Court's order denying an emergency stay does not mandate
            judgment for Plaintiff............................................................................. 5

      B.    Section 106.10 correctly sets forth the scope of Title IX's prohibition on
            sex-based discrimination......................................................................... 5

      C.    Section 106.31(a)(2) is consistent with the text and structure of Title IX. ........... 10

      D.    Section 106.2 does not conflict with *Davis* or violate the First
            Amendment............................................................................................. 15

      E.    Section 106.44's requirements for recipients' response to sex
            discrimination are consistent with the First Amendment and lawful. ................. 20

      F.    Section 106.45(b)(5)'s protection of privacy during grievance proceedings
            is consistent with the First Amendment and lawful............................................ 21

III.  To the extent Plaintiff is entitled to any relief, that relief should be limited to
      Plaintiff and to the provisions of the Rule that the Court concludes are unlawful. .......... 22

      A.    Any relief should be limited to Plaintiff. ................................................. 22

      B.    Any relief should be limited to provisions of the Rule that the Court finds
            unlawful and that cause harm to Plaintiff. ............................................... 23

CONCLUSION................................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Ams. for Prosperity Found. v. Bonta,*
    594 U.S. 595 (2021)..................................................................................... 18

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
    591 U.S. 610 (2020)..................................................................................... 25

*Bell v. Itawamba Cnty. Sch. Bd.,*
    799 F.3d 379 (5th Cir. 2015) ...................................................................... 18

*Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self–Ins. Fund,*
    212 S.W.3d 320 (Tex. 2006)......................................................................... 3

*Bennett v. Spear,*
    520 U.S. 154 (1997)..................................................................................... 25

*Bostock v. Clayton County,*
    590 U.S. 644 (2020)............................................................................. *passim*

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006)..................................................................................... 23

*Davis ex rel. LaShonda D. v. Monroe County Board of Education,*
    526 U.S. 629 (1999).............................................................................. 15, 16

*Dep't of Educ. v. Louisiana,*
    144 S. Ct. 2507 (2024)................................................................................... 5

*Doe v. Columbia Univ.,*
    831 F.3d 46 (2d Cir. 2016)............................................................................ 6

*Doe v. Princeton Univ.,*
    30 F.4th 335 (3d Cir. 2022) .......................................................................... 6

*Doe v. Purdue Univ.,*
    928 F.3d 652 (7th Cir. 2019) ........................................................................ 6

*Doe v. Samford Univ.,*
    29 F.4th 675 (11th Cir. 2022) ....................................................................... 7

*Doe v. Trs. of Bos. Coll.,*
    892 F.3d 67 (1st Cir. 2018)........................................................................... 6

*Doe v. Univ. of Denver,*
    1 F.4th 822 (10th Cir. 2021) ......................................................................... 7

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ................................................................................................ 25

*EEOC v. Boh Bros. Const. Co.*,
  731 F.3d 444 (5th Cir. 2013) .............................................................................. 9, 19

*Gebser v. Lago Vista Indep. Sch. Dist.*,
  524 U.S. 274 (1998) ............................................................................................ 7, 16

*Gen. Land Off. of Tex. v. Biden*,
  71 F.4th 264 (5th Cir. 2023) ................................................................................. 3, 4

*Jackson v. Birmingham Bd. of Educ.*,
  544 U.S. 167 (2005) ..................................................................................... 9, 10, 11

*Kluge v. Brownsburg Community School Corp.*,
  No. 21-2475, 2021 WL 5405970 (7th Cir. Nov. 8, 2021) ....................................... 17

*Muldrow v. City of St. Louis*,
  601 U.S. 346 (2024) .......................................................................................... 10, 19

*Rowles v. Curators of Univ. of Mo.*,
  983 F.3d 345 (8th Cir. 2020) ............................................................................... 6, 19

*Schwake v. Ariz. Bd. of Regents*,
  967 F.3d 940 (9th Cir. 2020) .................................................................................... 6

*Serafine v. Branaman*,
  810 F.3d 354 (5th Cir. 2016) ............................................................................. 18, 19

*Taylor-Travis v. Jackson State Univ.*,
  984 F.3d 1107 (5th Cir. 2021) .................................................................................. 6

*Tennessee v. Cardona*,
  No. 24-5588, 2024 WL 3453880 (6th Cir. July 17, 2024) ...................................... 24

*Tex. Off. of Pub. Util. Couns. v. FCC*,
  265 F.3d 313 (5th Cir. 2001) .................................................................................. 13

*Texas v. Biden*,
  20 F.4th 928 (5th Cir. 2021) ................................................................................... 22

*Texas v. Biden*,
  597 U.S. 785 (2022) ................................................................................................ 22

*Texas v. United States*,
  No. 2:24-CV-86-Z, 2024 WL 3405342 (N.D. Tex. July 11, 2024) ........................... 1

*United States v. Texas*,
    599 U.S. 670 (2023)..................................................................................................... 23

*Wood v. Fla. Dep't of Educ.*,
    No. 4:23-cv-00526, 2024 WL 3380723 (N.D. Fla. June 27, 2024) ............................ 17

**Statutes**

5 U.S.C. § 704 ............................................................................................................... 25

20 U.S.C. § 1681 .............................................................................................................. 6

20 U.S.C. § 1681(a) ......................................................................................................... 8

20 U.S.C. § 1686 .............................................................................................................. 7

42 U.S.C. § 2000e-2(a)(1)............................................................................................... 8

**Regulations**

34 C.F.R. § 106.2 ........................................................................................................... 17

34 C.F.R. § 106.30 ......................................................................................................... 16

34 C.F.R. § 106.45(b)(5) ............................................................................................... 22

34 C.F.R. § 106.45(e) .................................................................................................... 24

34 C.F.R. § 106.6(d) ...................................................................................................... 17

Nondiscrimination onthe Basis of Sex in Education Programs or Activities Receiving
    FederalFinancial Assistance, 89 Fed.Reg. 33,474 (Apr. 29, 2024) .................................. *passim*

Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or
    Third Parties, 62 Fed. Reg. 12,034 (Mar. 13, 1997) ................................................... 15

**Other Authorities**

*WPATH and USPATH Comment on the Cass Review* (May 17, 2024),
    https://www.wpath.org/media/cms/Documents/Public%20Policies/2024/17.05.24%20
    Response%20Cass%20Review%20FINAL%20with%20ed%20note.pdf?_t=1716075965 .... 13

## INTRODUCTION

This case is about five distinct provisions of an omnibus rule—a rule that addresses subjects as varied as recordkeeping requirements and access to lactation spaces—issued by the Department of Education pursuant to its authority to effectuate Title IX's broad prohibition on sex discrimination. As an initial matter, the Court should dismiss this suit on claim-splitting grounds because Plaintiff's claims and interests overlap with those asserted by Texas in *Texas v. United States ("Texas II")*, No. 2:24-CV-86-Z, 2024 WL 3405342 (N.D. Tex. July 11, 2024), and Plaintiff and the State are in privity with one another for purposes of claim splitting.

If the Court reaches the merits of Plaintiff's claims, it should enter summary judgment in favor of Defendants because the five challenged provisions are lawful. *See* Mem. in Supp. of Defs.' Resp. to Pl.'s Mot. for Summ. J. & Cross-Mot. to Dismiss or, in the Alternative, for Summ. J., ECF No. 65 ("DMSJ"). ECF No. 65 ("DMSJ"). Section 106.10 applies the reasoning of *Bostock v. Clayton County*, 590 U.S. 644 (2020), which dealt with Title VII, to Title IX's materially indistinguishable text. Section 106.31(a)(2) reflects Title IX's text and structure by making clear that Title IX proscribes sex-based separation or differentiation that causes harm unless Congress has permitted it. Section 106.2 includes a definition of "hostile environment harassment" designed to effectuate Title IX's broad reach, consistent with the standards applied under other civil-rights statutes. Section 106.44(f)(1) provides adequate guidelines to ensure that Title IX Coordinators promptly respond to allegations of sex discrimination and initiate complaints in appropriate circumstances. And § 106.45(b)(5) provides privacy protections for parties and witnesses so long as they do not restrict parties' ability to prepare for or participate in the grievance procedures. Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Reply in Support of Its Motion for Summary Judgment, ECF No. 77 ("P. Reply"), provide no basis to invalidate those

provisions.

But even if the Court were to disagree, the Court should limit any relief to Plaintiff and to the specific provisions of the Rule that the Court finds unlawful and harmful. On this more complete record, it is clear that the Rule is severable, and Plaintiff fails to demonstrate that broader relief is necessary to address its claimed irreparable harm. Equitable principles thus counsel in favor of limited relief.

For the foregoing reasons, the Court should enter judgment for Defendants. In the alternative, any relief should be limited to Plaintiff and to the provisions of the Rule that the Court concludes are unlawful and harmful to Plaintiff.

## ARGUMENT

### I.    The Court should dismiss the case on claim-splitting grounds.

Carroll ISD in this case and the State of Texas in *Texas II* have improperly split claims because (1) the two suits involve the same subject matter, and (2) Carroll ISD and Texas are in privity with one another.[1] *See* DMSJ 9-11.

In disputing claim splitting, Plaintiff makes virtually no substantive attempt to argue that the two suits do not involve the same subject matter—and rightly so. *See* P. Reply 27-29. As this Court recognized in its preliminary injunction order, this suit's Rule-related "claims perfectly overlap with [*Texas II*]." Mem. Op. & Order 3 n.10, ECF No. 43 ("PI Op."). Instead, Plaintiff's arguments focus exclusively on privity, which Plaintiff contends does not exist for two overarching reasons: (1) Carroll ISD is an independent school district, and (2) Carroll ISD has raised different

---

[1] Plaintiff and Defendants are in agreement that Counts 5 and 6 of Plaintiff's Complaint—which pertain to the Guidance Documents—should be dismissed due to this Court's decision in *Texas v. Cardona* ("*Texas I*"), No. 4:23-cv-00604-O (N.D. Tex. filed June 14, 2023). *See* DMSJ 11; P. Reply 29 n.3. Thus, Plaintiff's only remaining claims pertain to the Rule, which is also the subject of *Texas II* brought by the State of Texas.

interests in this suit than those raised by the State of Texas. *See* P. Reply 27-29. Both arguments fail because the interests of Carroll ISD—a political subdivision of the State of Texas—are adequately represented by the State in *Texas II*.

Parties are in privity "where the non-party's interests were adequately represented by a party to the original suit," *Gen. Land Off. of Tex. v. Biden*, 71 F.4th 264, 270 (5th Cir. 2023) (citation omitted). That standard is satisfied here. As an initial matter, as Texas points out in its operative Complaint, Carroll ISD is a "political subdivision[]" of the State. Am. Compl. ¶¶ 167, *Texas II* (N.D. Tex. May 13, 2024), ECF No. 12 ("*Texas II* Compl."); *see also Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self–Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006) (identifying school districts as "political subdivisions of the State"). Moreover, and crucially, Carroll ISD's interests in this suit are indistinguishable from interests already being represented by the State in *Texas II*.

Plaintiff attempts to cast Texas's interests as distinct from its own by arguing that Texas asserts "sovereign" interests, whereas Carroll ISD's interests are limited to the policies in its own district. *See* P. Reply 28 (citation omitted). This argument misses the mark. Although Texas asserts certain sovereign interests *in addition* to the interests it shares with Carroll ISD, that distinction is immaterial because Carroll ISD's narrower and more limited interests are adequately represented by at least some of Texas's asserted interests. The interests asserted by Carroll ISD—i.e., preventing the Rule from taking effect in its district and preventing loss of federal funds for Carroll ISD—are adequately encompassed by nearly identical (albeit, broader) interests asserted by the State in *Texas II*—i.e., stopping the Rule from taking effect in schools across the entire state and preventing the loss of federal funds for Texas school districts. *See* DMSJ 10. Indeed, in Texas's operative Complaint, the State explicitly references Carroll ISD's policies that allegedly conflict

with the Rule in asserting its interest in maintaining policies adopted by its "political subdivisions … pursuant to authority granted by state law." *Texas II* Compl. ¶¶ 167, 169. And in Texas's motion for a preliminary injunction, the State expressly asserted the compliance cost of Texas's "thousands of educational institutions through its constituent agencies and political subdivisions," and the potential loss of federal funds to those institutions. Pls.' Mot. for Stay of Agency Action & Prelim. Inj. 40-44, *Texas II* (N.D. Tex. May 14, 2024), ECF No. 16. Particularly given the State's own representation that it is proceeding in *Texas II* on behalf of the interests of Carroll ISD and other "political subdivisions," *id.*, Plaintiff's emphasis on Carroll ISD as an "independently incorporated body" with its own board of trustees, *see* P. Reply 27-28, is a red herring.

Lastly, the fact that Carroll ISD supports its challenge to the Rule by raising arguments with respect to certain provisions not raised by Texas is of no moment. *Contra* P. Reply 29. Texas asserts interests that encompass Carroll ISD's and seeks relief that would encompass the relief sought by Carroll ISD, as Texas seeks to vacate or enjoin the Rule in its entirety, *Texas II* Compl. at IV (Demand for Relief). The mere fact that Carroll ISD and Texas raise different *arguments* in support of their overlapping claims for relief is immaterial.[2]

In short, because Carroll ISD's "interests [are] adequately represented by [Texas]," *Gen. Land Off. of Tex.*, 71 F.4th at 270 (citation omitted), Carroll ISD and Texas are in privity for purposes of claim splitting. This Court should dismiss the suit under Rule 12(b)(6).

---

[2] Defendants maintain that the scope of relief sought by Texas in *Texas II* and Carroll ISD in this suit—namely, vacatur or injunction of the Rule in its entirety—is improper as the Rule is severable. *See infra* III.B. That said, the fact remains that Texas in *Texas II* and Carroll ISD in this suit assert the same claim for relief.

**II.    If the Court reaches the merits, it should grant summary judgment to Defendants.**

**A.    The Supreme Court's order denying an emergency stay does not mandate judgment for Plaintiff.**

Plaintiff asserts that the Supreme Court's denial of the Department's stay requests in two related challenges to the Final Rule warrants judgment in its favor here. *See* P. Reply 1. That is incorrect. *See* DMSJ 13 n.3. In denying those requests, the Supreme Court reasoned that, "[i]n this emergency posture in this Court, the burden is on the Government as applicant," and that, "[o]n this limited record and in its emergency applications, the Government has not provided this Court a sufficient basis to disturb the lower courts' interim conclusions that the three provisions found likely to be unlawful are intertwined with and affect other provisions of the rule." *Dep't of Educ. v. Louisiana*, 144 S. Ct. 2507, 2510 (2024) (per curiam). The Supreme Court noted that the dispute before it concerned only "the interim period while the Government's appeals of the preliminary injunctions are pending in the Courts of Appeals." *Id.* at 2509–10.

Moreover, the Supreme Court's order does not even mention *Bostock* or the text of Title IX, belying Plaintiff's claim that "[t]he Supreme Court . . . rejected [the Department's] justification" of the Rule. P. Reply 1. Nor did the Court address any other merits issue. The Court's order merely noted that "all Members of the Court *today* accept[ed]" that the plaintiffs were entitled to preliminary relief, a statement describing only a stay-stage determination regarding the preliminary injunctions, as the dissent made clear. *Louisiana*, 144 S. Ct. at 2509–10 (emphasis added); *see id.* at 2510–11 (Sotomayor, J., dissenting in part) ("For now, on the briefing and record currently before us, I would stay the preliminary injunctions except as to the three [challenged] provisions … .").

**B.    Section 106.10 correctly sets forth the scope of Title IX's prohibition on sex-based discrimination.**

In their opening brief, Defendants showed that § 106.10 relies on a straightforward

application of *Bostock*'s two-step reasoning to Title IX's statutory text, which is materially indistinguishable from the parallel text of Title VII. DMSJ 12–17. First, by prohibiting discrimination "on the basis of" sex, 20 U.S.C. § 1681, Title IX "incorporates" a causation standard no more stringent than "the 'simple' and 'traditional' standard of but-for causation." *Bostock*, 590 U.S. at 656. Second, whether in the workplace or in a school, "sex is necessarily a but-for cause" of discrimination on the basis of sexual orientation or gender identity. *Id.* at 660–61 (emphasis omitted). Those two propositions should dispose of Plaintiff's challenge to § 106.10.

  **1.** After arguing in its opening brief that Title IX's prohibition of discrimination "on the basis of" sex must carry a distinct meaning from Title VII's prohibition of discrimination "because of" sex (and thus that sex cannot simply be one but-for cause, as in Title VII, but rather must be the *sole or primary* cause of a challenged action), Pl. Carroll Indep. Sch. District's Mem. in Supp. of Mot. for Summ. J. 8-10, ECF No. 59 ("PMSJ"), Plaintiff now accuses the Department of "shadowbox[ing] against causation standards" because "parsing the difference between [these phrases]" does not matter. P. Reply 5. But the similar language in Title VII *does* matter because it informs how this Court should interpret Title IX. And the language is similar—indeed, materially indistinguishable. That is why the courts of appeals have uniformly concluded that discrimination is actionable under Title IX even when sex is only one but-for cause. *See Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 90 (1st Cir. 2018); *Doe v. Columbia Univ.*, 831 F.3d 46, 53 (2d Cir. 2016); *Doe v. Princeton Univ.*, 30 F.4th 335, 343 (3d Cir. 2022); *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1119-20 (5th Cir. 2021); *Doe v. Purdue Univ.*, 928 F.3d 652, 667–68 (7th Cir. 2019); *Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 359 (8th Cir. 2020); *Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940, 946 (9th Cir. 2020); *Doe v. Univ. of Denver*, 1 F.4th 822, 830 (10th Cir. 2021); *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022). Plaintiff cites no case interpreting Title IX

6

to impose a higher standard. Section 106.10 therefore faithfully elucidates the "ordinary meaning" of Title IX.

    **2.**    Plaintiff's other arguments about the meaning of Title IX also fail to overcome the fundamental textual similarity between Title VII and Title IX. *See* P. Reply 1–7, 14–15, 25–27.

    ***Section 106.10 is consistent with Title IX's statutory exclusions and implementing regulations.*** *Contra id.* at 2–4. Title IX's allowance for sex differentiation in specific contexts does not undermine the core insight that discrimination for being transgender is sex discrimination and thus barred in any context where Title IX's nondiscrimination mandate applies. Indeed, Congress's determination as to the need for statutory carve-outs only underscores the scope of Title IX's core mandate. DMSJ 14–15. And it is § 106.31(a)(2) that addresses how Title IX applies in contexts in which the statute or regulations permit sex-based differentiation or separation. *Contra* P. Reply 25–26. It makes no difference that 20 U.S.C. § 1686 frames its carve-out as an "interpretation with respect to living facilities," *contra* P. Reply 2–4; the upshot is that Title IX does not prohibit "separate living facilities for the different sexes," as § 106.31(a)(2) acknowledges. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 Fed. Reg. 33,474, 33,820-21 (Apr. 29, 2024) (citation omitted). Reading § 1686 to allow harmful differentiation or separation outside the living-facilities context, *see* P. Reply 3, would cause the exception to swallow the rule.

    ***Title IX is not a "group-based" statute.*** *Contra id.* at 4–5, 24–25. Both Title IX and Title VII "prohibit discrimination … against individuals where sex plays an impermissible role," DMSJ 14, and do not simply mandate comparable conditions at the group level. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998) ("Title IX focuses … on 'protecting' individuals from discriminatory practices."); *compare* 20 U.S.C. § 1681(a) (prohibiting discrimination against any

"person"), *with* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination against "any individual"). If Congress had intended to establish only a group comparability mandate, it could have said so. *See Bostock*, 590 U.S. at 658–59.

       ***Interpreting Title IX to encompass gender-identity discrimination would not lead to Plaintiff's parade of horribles.*** *Contra* P. Reply 6, 25. Plaintiff shies away from its atextual reliance on Title IX's purported purpose, and for good reason; as *Bostock* reiterated, "[t]he people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration," 590 U.S. at 674. But Plaintiff maintains that speculation about potential applications of § 106.10 somehow contradicts Title IX. *See* P. Reply 6. Not so. Section 106.10 does not "address separation of students based on sex." 89 Fed. Reg. at 33,809. It is § 106.31(a)(2) that does that, based on an interpretation of the term "discrimination," Title IX's structure, and the evidence before the Department. Plaintiff's arguments about hypothetical implications of § 106.10 ultimately abandon "any pretense of statutory interpretation" and invite the Court to let speculation about results drive its analysis of Title IX's text—"an invitation no court should ever take up." *Bostock*, 590 U.S. at 680-81.

       **3.**     That leaves Plaintiff's assertions that, even if Title IX imposes the traditional but-for causation standard, it still does not encompass gender-identity discrimination or the other bases listed in § 106.10. P. Reply 5. But Plaintiff has no response to *Bostock*'s recognition that "sex is *necessarily* a but-for *cause*" of discrimination on the basis of sexual orientation or gender identity "because it is *impossible* to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." 590 U.S. at 660 (emphasis added). The same is true of the other bases listed in § 106.10, which similarly require consideration of sex. That recognition does not create new "protected classes." *Contra* P. Reply 6, 25. Section 106.10

simply recognizes that giving a student detention for being gay, kicking a student out of the band for being transgender, or barring men from home economics classes based on stereotypes about women as homemakers all constitute sex discrimination. *Cf. EEOC v. Boh Bros. Const. Co.*, 731 F.3d 444, 456 (5th Cir. 2013) (observing in the Title VII context that "a plaintiff may establish a sexual harassment claim with evidence of sex-stereotyping").

4.     Because it faithfully reflects Title IX's broad and unambiguous prohibition on sex discrimination, § 106.10 does not run afoul of the Spending Clause, the major-questions doctrine, or federalism principles. *Contra* P. Reply 14–15. Like the provision in *Bostock*, Title IX is "written in starkly broad terms," and gives clear notice that it prohibits sex discrimination in all its forms, absent a statutory exception. 590 U.S. at 680; *see also Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). Any "elephant," then, "has never hidden in a mousehole; it has been standing before us all along." *Bostock*, 590 U.S. at 680. Simply recognizing that fact does not give Title IX's text a new meaning.

5.     Because Title IX's prohibition on sex discrimination unambiguously encompasses discrimination on the bases listed in § 106.10, Plaintiff is wrong that § 106.10, which simply states that straightforward textual conclusion, is arbitrary and capricious. *Contra* P. Reply 24–27. The Department was not required to—and could not—hypothesize about how Title IX's prohibition on sex discrimination might apply to every conceivable context or circumstance. *Cf. Bostock*, 590 U.S. at 681 (declining to "prejudge any such question[s]"). Plaintiff says that the Department was required to explain why it was deviating from what Plaintiff characterizes as the Department's previous view, which    "required gender identity to supersede sex anywhere sex-based differentiation is lawful," P. Reply 24, but that has never been the Department's view, and in any event, it is § 106.31(a)(2) and other regulatory provisions, not § 106.10, that address questions of

9

permissible sex separation and differentiation.

6.      Finally, Plaintiff repeats, without basis, that § 106.10 somehow affects the current regulations regarding sex-separate athletic teams. *See id.* at 26–27. But § 106.10 does not address recipients' policies regarding sex separation, and as the Department explained in the Final Rule and its opening brief, the specific issue of sex-separate athletic teams continues to be governed by the current regulations and is the subject of a separate rulemaking. *See* DMSJ 17 & n.4.

### C.      Section 106.31(a)(2) is consistent with the text and structure of Title IX.

Section 106.31(a)(2) effectuates the text and structure of Title IX, which contains "a broadly written general prohibition on discrimination, followed by specific, narrow exceptions to that broad prohibition." *Jackson*, 544 U.S. at 175; DMSJ 17–24. Section 106.31(a)(2) does so in three steps. First, § 106.31(a)(2) recognizes that Title IX's prohibition on "discrimination" means that sex-based differentiation or separation is impermissible if it "subject[s] a person to more than de minimis harm." Second, § 106.31(a)(2) recognizes that the de minimis harm standard does not apply where Congress has indicated that such differentiation or separation is not prohibited. Third, § 106.31(a)(2) identifies one example, based on substantial record evidence, where such differentiation or separation causes harm: "prevent[ing] a person from participating in an education program or activity consistent with the person's gender identity." Because each of these steps is consistent with Title IX's text and structure, § 106.31(a)(2) is neither arbitrary nor in conflict with the Spending Clause or the major questions doctrine. *Contra* P. Reply 7–15.

1.      Plaintiff apparently recognizes that a de minimis harm standard does no more than reflect the common understanding of discrimination: "distinctions or differences in treatment that injure protected individuals." *Bostock*, 590 U.S. at 681 (citation omitted); *see Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024) (same); P. Reply 11. Plaintiff instead focuses on § 1681(a)'s prohibitions on any person being "excluded from" or "denied the benefits of"

programs, P. Reply 12, but that language reinforces the common understanding of "discrimination" reflected in § 106.31(a)(2). Plaintiffs thus offer no reason to doubt that § 106.31(a)(2) effectuates Title IX's general nondiscrimination mandate by prohibiting recipients from "carry[ing] out [different treatment or separation on the basis of sex] in a manner that discriminates on the basis of sex by subjecting a person to more than de minimis harm."

2.      Nor does Plaintiff lodge any cogent objection to how § 106.31(a)(2) tracks Congress's "specific" and "narrow exceptions" and exclusions from Title IX's nondiscrimination mandate. *Jackson*, 544 U.S. at 175. *Contra* P. Reply 8, 25–26. What Plaintiff criticizes as "blam[ing] Congress," P. Reply 8, in fact reflects a careful adherence to the very distinctions that Congress itself drew. Congress "could have, but did not," exempt other sex-separate education programs and activities, including school facilities like restrooms, from the general nondiscrimination mandate. 89 Fed. Reg. at 33,821. Plaintiff's atextual speculation about Congress's supposed intent cannot overcome the "words on the page" actually "adopted by Congress and approved by the President." *Bostock*, 590 U.S. at 654.

Section 106.31(a)(2) adheres to Congress's judgments. This includes § 106.31(a)(2), which excepts sex-separate athletic teams from the de minimis harm standard because Congress "made clear"—including by passing the Javits Amendment—"that the Title IX regulations should reflect the fact that athletic competition raises unique considerations." 89 Fed. Reg. at 33,819; *Contra* P. Reply 12.

For much the same reason, the Department did not act arbitrarily by recognizing that the de minimis harm standard applies to some instances of sex separation but not others. Nor does the application of the de minimis harm standard turn on the "Department's subjective perspective." P. Reply 11. Plaintiff's arguments to the contrary either misread § 106.31(a)(2) or ignore the evidence

before the Department: § 106.31(a)(2) does not speak to Plaintiff's first example of "[a] boy excluded from field hockey," P. Reply 11, because "§ 106.31(a)(2) does not apply to male and female athletic teams a recipient offers under § 106.41(b)," 89 Fed. Reg. at 33,816. And Plaintiff does not appear to dispute that a "boy who identifies as a boy excluded from the girls' restroom" presumptively suffers no cognizable sex-based harm, P. Reply 11, as the Department explained. 89 Fed. Reg. at 33,818.

**3.**     Plaintiff principally focuses on the final sentence of § 106.31(a)(2), which, once again, expresses the Department's evidence-based conclusion that excluding persons from facilities that correspond to their gender identity causes a wide variety of physical, emotional, and dignitary harms. 89 Fed. Reg. at 33,818–19; DMSJ 19–20 & n.5. Plaintiff raises no serious objection to this evidence-based conclusion; instead, it simply asserts that the evidence has no bearing on "the public understanding of [sex discrimination] in Title IX's text in 1972." P. Reply 9. But "discrimination" has always meant differentiation or separation that causes harm; the evidence simply demonstrates that, as a *factual* matter, excluding persons from facilities that correspond to their gender identity causes harm. Plaintiff also cites two comments that describe an "interim report" and "expert declaration" about the purported harms of "social transition," *see id.* at 9–11 & nn.1, 2.[3] Consistent with the APA, the Department responded to these comments, observing, "To the extent there are also harms associated with being treated consistent with a

---

[3] Plaintiff states that these comments were "not produced in the administrative record." P. Reply 10. That is incorrect: the two comments were included in the administrative record that, per the Court's scheduling order, was sent to Plaintiff on September 20, 2024. If Plaintiff means that the comments were not included in the portions of the administrative record that were attached to the Department's opening motion, that is for the simple reason that the Department could not anticipate which portions of the administrative record would be cited in Plaintiff's Combined Opposition and Reply. And, as mentioned above, these comments are inconsistent with the weight of authority before the Department, which shows that those excluded from facilities consistent with their gender identity incur serious harm.

gender identity that differs from one's sex assigned at birth, individuals (and their parents, as appropriate) are better positioned to weigh any harms and benefits for themselves than is an educational institution," 89 Fed. Reg. at 33,819–20. The Department considered and weighed comments that it received during the comment period, regardless of whether it responded to each explicitly in writing. *See Tex. Off. of Pub. Util. Couns. v. FCC*, 265 F.3d 313, 328 n.7 (5th Cir. 2001) ("An agency need not respond to every study, and only has to address 'significant comments.'") (citation omitted). And the fact remains that the weight of authority showed serious harms incurred by those excluded from facilities consistent with their gender identity. *See* 89 Fed. Reg. at 33,818–19.[4] That some comments expressed disagreement with the Department's view is a reflection of the notice-and-comment process, not a violation of it.

As to safety and privacy, Plaintiff seems to concede that the Constitution does not support the sweeping rights that it claims, *see* DMSJ 22–24, instead repeating arguments from its opening brief to which Defendants have already responded, *see* P. Reply 12–13, 26. Plaintiff still gives short shrift to the record evidence indicating that allowing individuals to access facilities consistent with their gender identity does not diminish safety, privacy, or access to educational opportunities for other students. *See* DMSJ 22–24; 89 Fed. Reg. at 33,820. *Contra* P. Reply 12–13, 26. To the extent Plaintiff asserts that allowing access poses concrete safety risks, the Department reasonably explained that record evidence and the experience of recipients with such policies shows that it does not. *See* DMSJ 23 n.7 (citing the only study, Amira Hasenbush et al., *Gender Identity*

---

[4] By contrast, the final version of the "interim report" that is discussed in Plaintiff's cited comments has been called into question by many scientific organizations, including the World Professional Association for Transgender Health, a leading organization in the field of transgender health. *See WPATH and USPATH Comment on the Cass Review* (May 17, 2024), https://www.wpath.org/media/cms/Documents/Public%20Policies/2024/17.05.24%20Response%20Cass%20Review%20FINAL%20with%20ed%20note.pdf?_t=1716075965.

*Nondiscrimination Laws in Public Accommodations: a Review of Evidence Regarding Safety and Privacy in Public Restrooms, Locker Rooms, and Changing Rooms* (July 23, 2018), AR_293039–53, to compare jurisdictions with different policies). To the extent Plaintiff asserts that allowing access stokes generalized privacy concerns, the record similarly indicates that recipients have methods of protecting all students' privacy, including by providing "gender-neutral or single-occupancy facilities," or by "taking nondiscriminatory steps … consistent with their general codes of conduct." 89 Fed. Reg. at 33,820; *see* DMSJ 22–24.

Plaintiff's remaining arguments are either conclusory or inapposite.

**The Department reasonably addressed the application of § 106.31(a)(2) to nonbinary students**. *Contra* P. Reply 26. Plaintiff asserts that the Rule leads to "logical failure," *id.*, when applied to nonbinary students, but does not explain how the Rule's approach—coordination with the student and their parents about appropriate treatment—is inadequate. 89 Fed. Reg. at 33,818.

**Section 106.31(a)(2) does not treat Title IX as a disparate-impact statute.** *Contra* P. Reply 7. Section 106.31(a)(2) reflects that Title IX prohibits different *treatment* or *separation* on the basis of sex that causes more than de minimis harm and has not been carved out by Congress; § 106.31(a)(2) does not prohibit acts that merely have a disparate impact.

**Section 106.31(a)(2) protects all students.** *Contra* P. Reply 7. Plaintiff's insinuations that § 106.31(a)(2) protects only transgender students are self-evidently false: by its terms, § 106.31(a)(2) applies "with equal force to all students," 89 Fed. Reg. at 33,818, and thereby "protects all students from harm," *id.* at 33,820. The Department simply found no evidence that cisgender students suffer any sex-based harms from being treated consistent with their gender identity in the context of bathroom and locker room usage—and nothing akin to the wide variety of serious, concrete harms that transgender students face from being treated inconsistent with their

gender identity, *see id.* at 33,818–19. And Plaintiff provides no reason why it was unreasonable for the Department to identify one example of serious, proven harm, while not foreclosing other possible harms. P. Reply 7.

### D.   Section 106.2 does not conflict with *Davis* or violate the First Amendment.

Defendants' opening brief explained that § 106.2's definition of hostile environment harassment neither conflicts with *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999), nor infringes on protected speech. *See* DMSJ 24-31. By defining hostile environment harassment to mean "[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity," § 106.2 adopts a standard for administrative enforcement of Title IX that mirrors those applied in "numerous civil rights laws, including Title VII." 89 Fed. Reg at 33,508.

**1.**   *Davis* addressed the "scope of liability in private damages actions" under Title IX's judicially implied right of action, 526 U.S. at 641, not the scope of administrative enforcement. If the Supreme Court had intended to disturb the Department's then-applicable hostile-environment standard, which—similar to the Rule—defined harassment to include "severe, persistent, or pervasive" conduct, Office for Civil Rights; Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 62 Fed. Reg. 12,034, 12,034 (Mar. 13, 1997), it could have said so, rather than repeatedly citing it, *see Davis*, 526 U.S. at 647–48, 651.

Plaintiff's principal response is that the term "discrimination" must carry the same meaning in both contexts, *see* P. Reply 16, but that misreads *Davis*. The Court in *Davis* made clear that it was "asked to do *more* than define the scope of the behavior that Title IX proscribes," and that it instead had to determine when a recipient's inaction "can support a private suit for money damages." 526 U.S. at 639 (emphasis added). In structuring that implied cause of action, the Court

noted that "liability in private damages actions under Title IX is circumscribed" by the requirement "that funding recipients have notice of their potential liability," *id.* at 641, unlike in administrative enforcement proceedings, which may only impose sanctions after "notice and unsuccessful efforts to obtain compliance," *see Gebser*, 524 U.S. at 290. That notice requirement "also bears on the proper definition of 'discrimination' *in the context of a private damages action*." *Davis*, 526 U.S. at 649 (emphasis added). In that specific "context," *id.*, the Court concluded that schools "are properly held liable in damages only where they are deliberately indifferent to sexual harassment" that is sufficiently "severe" and "pervasive," *id.* at 650. In other words, *Davis* did not purport to establish a generally applicable definition of prohibited sex discrimination.

2.      As to all of Plaintiff's First Amendment theories, several overarching points demonstrate that § 106.2's definition of hostile environment harassment does not infringe on protected speech, as applied to gender-identity discrimination or otherwise. That definition, which "only prohibit[s] conduct that meets *all* the elements," 89 Fed. Reg. at 33,506 (emphasis added), more closely resembles the standards applied in *Harris* than the sweeping restrictions on speech invalidated in Plaintiff's cases. DMSJ 26. *Contra* P. Reply 19. Indeed, the only way in which § 106.2's definition is actually broader than the 2020 Rule's standard, *see* 34 C.F.R. § 106.30— which Plaintiff does not challenge—is that it encompasses severe *or* pervasive conduct, and Plaintiff never explains how that alone creates First Amendment implications. (Section 106.2's use of the term "limits" is functionally the same as the 2020 Rule's standard, *see infra* page 19.) And to the extent the Rule could be construed to affect speech, the Rule makes clear that "[n]othing in [the regulations] requires [or authorizes] a recipient to" violate anyone's First Amendment rights. 34 C.F.R. § 106.6(d). Regardless, Plaintiff's claims fail on their own terms.

***The definition does not compel speech or discriminate on the basis of viewpoint.***

Plaintiff's assertions that the Rule requires policies that compel the use of preferred pronouns or particular views about gender rest on distortions of § 106.2's definition of hostile environment harassment. To reiterate, the definition does neither. 89 Fed. Reg. at 33,505. It merely requires that recipients address harassment that is "subjectively and objectively offensive" and so "severe or pervasive" that it limits or denies access to their programs. 34 C.F.R. § 106.2.

Plaintiff attempts to spin general statements about § 106.2's terms as specific requirements for recipients to address "misgendering." *See* P. Reply 17–18. What the Rule *actually* said in response to comments about misgendering, however, is that "whether verbal conduct constitutes sex-based harassment is necessarily fact-specific," and "a stray remark, such as a misuse of language, would *not* constitute harassment under this standard." 89 Fed. Reg. at 33,516 (emphasis added). But the observation that certain conduct will necessarily fall outside the scope of the harassment definition self-evidently does not mean that everything beyond such conduct falls within it.

Finding no support in § 106.2's actual terms, Plaintiff again tries to manufacture a "pronoun" issue by pointing to the Government's Statement of Interest in *Wood v. Fla. Dep't of Educ.*, No. 4:23-cv-00526, 2024 WL 3380723 (N.D. Fla. June 27, 2024), and amicus brief in *Kluge v. Brownsburg Community School Corp.*, No. 21-2475, 2021 WL 5405970 (7th Cir. Nov. 8, 2021); *see* P. Reply 18. But *Wood* involved an already established and concrete school policy that prohibited teachers from expressing *their own* preferred pronouns, and *Kluge* merely argued that the school's reasonable concerns about an increased risk of liability under Title IX offered additional evidence confirming the district court's finding of undue hardship under Title VII. In neither of these cases was the Government interpreting or applying the definition at issue here. And the more fundamental problem with Plaintiff's arguments is that *neither of these filings are*

17

*the Rule*, the provisions of which speak for themselves.

**The definition is not overbroad.** Plaintiff does not, and cannot, dispute that "[a]pplying the overbreadth doctrine is strong medicine," *Serafine v. Branaman*, 810 F.3d 354, 363 (5th Cir. 2016) (citation omitted); that invalidation is only warranted "if a substantial number of [§ 106.2's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep," *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (citation omitted); or that § 106.2's definition of hostile environment harassment has many plainly legitimate applications. *See* DMSJ 27-30. Plaintiff simply asserts that the definition is "overbroad," because it resembles the definitions in *Cartwright* and *Saxe*. P. Reply 19. But, as explained in Defendants' opening brief, neither case contained standards similar to § 106.2's definition. *See* DMSJ 29-30 (explaining that the standard in *Cartwright* went beyond reaching the student's own speech and *Saxe* did not require that the conduct be severe or pervasive). Nor can Plaintiff show that the definition sweeps in protected speech simply because it may apply to speech occurring outside of the physical classroom. *Contra* P. Reply 19-20. As Defendants have explained, the Rule's application to conduct outside of a school's education program or activity is limited to conduct that contributes to a hostile educational environment in the school's education program or activity—a standard that is consistent with Fifth Circuit precedent. *See* DMSJ 29 (citing *Bell v. Itawamba Cnty. Sch. Bd.*, 799 F.3d 379, 396 (5th Cir. 2015)). In sum, Plaintiff's assertions fail to show that the extraordinary relief of facial invalidation is warranted. *See Serafine*, 810 F.3d at 363.

**The definition is not vague.** Once again, Plaintiff fails to explain why § 106.2's definition is any less clear than the standard adopted by the 2020 Rule. Plaintiff takes issue with the statement in the Rule's Preamble that a complainant must "demonstrate some impact on their ability to participate or benefit from the education program or activity," 89 Fed. Reg. at 33,511, which

Plaintiff claims "has no limiting principle," P. Reply 20. But, as the Rule explains, "some impact" is simply an alternative way to describe the definition's condition that the conduct "limits or denies" the student's ability to participate in or benefit from educational programs or activities. 89 Fed. Reg. at 33,511. And, as explained above, the 2020 Rule already interpreted "denies" to include "limits." *Id.* The term "limits" simply requires a showing of harm to one's ability to access an educational program—a common inquiry in the nondiscrimination context. *Cf. Bostock*, 590 U.S. at 681; *Muldrow*, 601 U.S. at 354–55. The only difference that Plaintiff actually identifies is the "severe *or* pervasive" requirement, but that standard uses the same terms as a "severe *and* pervasive" standard, and is commonly applied by courts—including the Fifth Circuit—without any suggestion that it is impermissibly vague. *See, e.g.*, *Boh Bros. Constr. Co.*, 731 F.3d at 457, 461-62 (deeming the evidence sufficient to find that a plaintiff suffered "sufficiently severe or pervasive" sex-based harassment where, *inter alia*, he was repeatedly called sex-based epithets by a supervisor). Thus, § 106.2 uses "language with common usage and understanding." *Rowles*, 983 F.3d at 358.

Plaintiff's other vagueness objection to "gender identity" is similarly unavailing. The term "gender identity" is "well understood" and "used widely in laws and policies." 89 Fed. Reg. at 33,809. *Contra* P. Reply 20-21. Although gender identity may differ by person, like many other qualities, that fact does not render the term itself ambiguous.

**The definition is not arbitrary.** It does not help Plaintiff to recast its First Amendment theories as arbitrary-and-capricious arguments. *See* P. Reply 27. Far from failing to justify its departure from the 2020 standard, the Department thoroughly addressed the First Amendment and *Davis*-related concerns by commenters. 89 Fed. Reg. at 33,497–517.

E.    **Section 106.44's requirements for recipients' response to sex discrimination are consistent with the First Amendment and lawful.**

Plaintiff fails to show that § 106.44 is unlawful and violates the First Amendment because it eliminates the 2020 Rule's "actual knowledge" and "deliberate indifference" requirement for recipients, and provides for self-initiation of complaints by Title IX Coordinators. *Contra* P. Reply 22-23.

The 2020 Rule's "actual knowledge" and "deliberate indifference" standard required the recipient to respond to sex discrimination only if a particular person had knowledge of the conduct, and then only subjected the recipient to administrative enforcement if the recipient showed deliberate indifference toward sex discrimination. 89 Fed. Reg. at 33,559-61. As the Department explained, the 2020 Rule extended and adapted the "actual knowledge" and "deliberate indifference" standards from *Gebser* and *Davis*, which were expressed in the context of private litigation for monetary damages. *Id.* at 33,560. As explained above, and detailed in the Rule, departing from *Gebser* and *Davis* is entirely consistent with Title IX because "the standard for administrative enforcement is not derived from the same implied remedy discussed in *Gebser* and *Davis,* and the Department is not required to adopt the *Gebser/Davis* standard for administrative enforcement purposes." *Id.* at 33,560. Moreover, the 2020 Rule's "actual knowledge" requirement "could permit a recipient to ignore sexual harassment simply because allegations of harassing conduct were not reported to 'the right' employee," *id.* at 33,561, which would fail to effectuate Title IX's mandate of eradicating sex discrimination. And the "deliberate indifference" requirement was inconsistent with Title IX in the context of administrative enforcement because "Title IX does not permit a recipient to act merely without deliberate indifference and otherwise allow sex discrimination to occur." *Id.* Nor was the Department's departure from the 2020 Rule arbitrary and capricious given the Rule's lengthy and reasoned explanation for the change. *See* 89

20

Fed. Reg. at 33,559-62; *id.* at 33,566; *Contra* P. Reply 27.

Plaintiff also is wrong to argue that the elimination of "actual knowledge" and "deliberate indifference" coupled with § 106.44(f)(1)(v)—which clarifies the circumstances under which Title IX Coordinators can initiate complaints—will compel recipients to "censor … protected speech." *Id.* at 23. To the contrary, as Defendants explained in their opening brief, far from suppressing "protected speech" and acting based on "rumors about alleged conduct," *id.* at 22, the revisions to § 106.44 provide clear, fact-intensive, and reasonably tailored factors to limit Title IX Coordinators' longstanding authority to initiate complaints, which ensures that complaints are self-initiated only in circumstances where there is imminent and serious threat to health or safety of individuals, or, where necessary, to address alleged sex discrimination. *See* DMSJ 32-33; 89 Fed. Reg. at 33,594. In promulgating these guidelines, the Department not only effectuated Title IX's mandate, but acted reasonably by providing a detailed explanation for the need for self-initiation and the relevance of the various factors that must be considered before a complaint is self-initiated. *See* 89 Fed. Reg. at 33,593-98; *Contra* P. Reply 27.

**F.    Section 106.45(b)(5)'s protection of privacy during grievance proceedings is consistent with the First Amendment and lawful.**

Finally, Plaintiff fails to show that § 106.45(b)(5)'s reasonable protections of the privacy of the parties and witnesses during grievance proceedings is effectively a "gag order" that amounts to an unconstitutional "prior restraint." *Id.* at 23. In challenging § 106.45(b)(5), Plaintiff relies primarily on the 2020 Rule's rejection of restrictions on disclosures during the grievance proceedings. *Id.* Importantly, however, § 106.45(b)(5) provides safeguards against the concerns raised by the 2020 Rule. Plaintiff relies on the 2020 Rule to argue that restrictions on disclosures will prevent parties from "seeking assistance" and discussing the grievance proceedings with friends and family. *Id.* But the Rule expressly addresses that concern by "prohibit[ing] a recipient

from restricting a party's ability to consult with their family members, confidential resources, or advisor" and "restrict[ing] the parties' ability to obtain and present evidence, consult with certain individuals, or otherwise prepare for or participate in the grievance procedures." 89 Fed. Reg. at 33,674. Moreover, Plaintiff is wrong to allege that § 106.45(b)(5) fails to provide "procedural protections." P. Reply 23. Section 106.45(b)(5)'s restrictions on disclosures are not only reasonably tailored, *see* DMSJ 33-34, but they are also restricted to a particular timeframe—specifically, during the pendency of grievance proceedings. 34 C.F.R. § 106.45(b)(5). Lastly, Plaintiff fails to show that § 106.45(b)(5) is arbitrary and capricious as the Department provided a thorough explanation for its decision to depart from the 2020 Rule and promulgate the provision. *See* 89 Fed. Reg. at 33,670; 33,674; *Contra* P. Reply 27.

### III. To the extent Plaintiff is entitled to any relief, that relief should be limited to Plaintiff and to the provisions of the Rule that the Court concludes are unlawful.

#### A. Any relief should be limited to Plaintiff.

If the Court finds that Plaintiff has succeeded on the merits, rather than vacate the challenged provisions as to every school in the country, it should only enjoin the Department from enforcing the provisions as applied to Carroll ISD. Even assuming *arguendo* that vacatur is authorized by the APA, *contra* DMSJ 38-39, it certainly is not required. *See Texas v. Biden*, 20 F.4th 928, 1000 (5th Cir. 2021), *as revised* (Dec. 21, 2021), *rev'd on separate grounds and remanded*, 597 U.S. 785 (2022) (explaining vacatur depends on "the seriousness of the deficiencies of the action" and "the disruptive consequences of vacatur" (citation omitted)).

Vacatur or a universal injunction would be inappropriate here because party-specific injunctive relief would redress any injuries Plaintiff claims to have suffered. Yet, Plaintiff argues that this Court's ruling should be extended to "broad swaths of the country" not before the Court. P. Reply 33. In its only attempt to argue that it needs broader than party-specific injunctive relief,

Carroll ISD points to upcoming travel by its students for interscholastic competitions. *See id.* at 33. But Carroll ISD lacks standing to raise claims on behalf of its students. *See* DMSJ 40-41.[5] Plaintiff erroneously argues that the standing issue is "neither here nor there" as it seeks vacatur. P. Reply 33. But to the contrary, "a plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted).

Moreover, Plaintiff's claim that it would be liable under Title IX if its students experience sex discrimination at the hands of another institution, *see* P. Reply 33, is wrong. Under Title IX, the recipient can only be held liable for its own conduct—not those of other recipients.

Lastly, nationwide relief would sweep in the many "nonparties who may not wish to receive the benefit of the court's decision." *United States v. Texas*, 599 U.S. 670, 703 (2023) (Gorsuch, J., concurring). Indeed, in their amicus brief, twenty states and the District of Columbia state that they do want any provision of the Rule enjoined. *See* Br. Amici Curiae California et al. in Supp. of Defs.' Opp'n to Pl.'s Mot. to Delay Effective Date & for Prelim. Inj., ECF No. 30. These disagreements can be addressed more equitably by an injunction limited to Carroll ISD.

### B. Any relief should be limited to provisions of the Rule that the Court finds unlawful and that cause harm to Plaintiff.

Plaintiff's arguments for relief against the entire Rule are largely a rehash of the arguments advanced in its opening briefs. Defendants thus stand mostly on their own opening brief, but address two discrete points here.

*First*, Plaintiff insists that the challenged provisions of the Rule are its "core" or "backbone." *See* P. Reply 34 (citation omitted). But it provides little support for this assertion. The out-of-circuit and nonbinding Sixth Circuit motions panel's stay-stage determination disregarded

---

[5] In any event, as explained in Defendants' opening brief, *see* DMSJ 40-42, any alleged injuries to Carroll ISD students as a result of scholastic related travel are entirely speculative at best.

key features of the Rule—including the express severability determinations—in suggesting the three provisions were "core" to the Rule. *See Tennessee v. Cardona*, No. 24-5588, 2024 WL 3453880, at *4 (6th Cir. July 17, 2024). Plaintiff points to the Rule's explanation of the "[n]eed for [r]egulatory [a]ction," claiming that the Rule characterized its purpose as "eliminating gender-identity discrimination." P. Reply 34 (quoting 89 Fed. Reg. at 33,476, 33,859-60). But the Rule in fact explains that its primary purpose is "ensur[ing] that all aspects of its regulatory framework under Title IX are well suited to implementing Title IX's prohibition on sex discrimination in education programs or activities that receive Federal financial assistance." 89 Fed. Reg. at 33,860. For instance, before any mention of the de minimis harm standard, the Rule noted the importance of "[c]larifying a recipient's obligations to students and employees who are pregnant or experiencing pregnancy-related conditions." *Id.*

Relying on this fallacy that it challenged the "core" of the Rule, Plaintiff claims that the Department could not have imagined severing §§ 106.10, 106.2, and 106.31(a). *See* P. Reply 34 (citation omitted). But that is belied by the language of the Rule's severability provisions, which specifically reference §§ 106.10, 106.2, and 106.31(a). 89 Fed. Reg. at 33,848. And the Rule clarifies that "[e]ach provision provides a distinct value … separate from, and in addition to, the value provided by the other provisions." *Id.* There is no indication that the agency would have foregone revisions to the prohibition against retaliation, pregnancy protections, or other parts of the Rule without the challenged provisions.

*Second*, contrary to Plaintiff's suggestion, Defendants have identified specific provisions that can operate independently of the challenged provisions. *See* DMSJ 43. Nor do the challenged provisions permeate these other portions of the Rule. To illustrate, consider 34 C.F.R. § 106.45(e), which provides that "[a] recipient may consolidate complaints of sex discrimination … when the

allegations of sex discrimination arise out of the same facts or circumstances." The Department found that offering recipients the discretion to consolidate cases "enables a recipient to coordinate cases involving multiple parties and minimize unnecessary burdens that could interfere with a party's ability to access their education." 89 Fed. Reg. at 33,690. But because § 106.45(e) includes the term "sex discrimination," Plaintiff claims that the provision would become confusing and unworkable if § 106.10 is enjoined. Not so. This provision on consolidation simply means that for whatever set of cases recipients investigate as "sex discrimination," they can consolidate them if they wish. This fundamental error infects the bulk of Plaintiff's severability analysis. Moreover, it is Plaintiff that bears the burden of justifying the scope of their injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). And there is a "strong presumption of severability," particularly when there is a severability clause. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 624–25 (2020) (plurality).[6]

## CONCLUSION

For the foregoing reasons, the Court should enter judgment for Defendants. In the alternative, any relief should be limited to Plaintiff and to the provisions of the Rule that the Court concludes are unlawful and harmful to Plaintiff.

---

[6] In its request for broad injunctive and declaratory relief, Plaintiff makes a single passing reference to "an injunction enjoining Defendants from enforcing the Rule and the Department's unlawful interpretations of Title IX." P. Reply 35. To the extent that Plaintiff requests relief extending beyond the challenged Rule, the Court should reject this request. Judicial review under the APA is limited to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Plaintiff clearly cannot demonstrate that any future agency actions related to gender identity, if any come to be, currently constitute final agency action. There has been no "consummation" of agency decision-making nor has there been any action from which legal consequences can flow. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Thus, to the extent Plaintiff is entitled to relief at all, the Court should do nothing more than resolve the current controversy, and enter injunctive relief limited to the Rule's offending provisions and Plaintiff.

Dated: September 26, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

*/s/ Pardis Gheibi*

ELIZABETH TULIS
REBECCA KOPPLIN
BENJAMIN TAKEMOTO
HANNAH SOLOMON-STRAUSS
JOHN T. LEWIS
PARDIS GHEIBI
CLAYTON BAILEY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: 202-305-3246
Fax: (202) 616-8460
E-mail: pardis.gheibi@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 26, 2024, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/ECF system.

*/s/ Pardis Gheibi*
Pardis Gheibi