**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| CARROLL INDEPENDENT SCHOOL DISTRICT, | |
| Plaintiff, | |
| v. | Case No. 4:24-CV-00461-O |
| UNITED STATES DEPARTMENT OF EDUCATION, et al., | |
| Defendants, | |
| and | |
| A BETTER BALANCE, | |
| [Proposed] Intervenor-Defendant. | |

**PROPOSED INTERVENOR-DEFENDANT**
**A BETTER BALANCE'S MOTION TO INTERVENE AND BRIEF IN SUPPORT**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 2

I.      A BETTER BALANCE ........................................................................................ 2

II.     THE RULE .......................................................................................................... 3

III.    THE RULE'S VACATUR .................................................................................... 4

IV.   THE NEW ADMINISTRATION SIGNALS THAT IT WILL NOT DEFEND
THE RULE ......................................................................................................... 4

ARGUMENT .................................................................................................................... 6

I.      ABB HAS STANDING ....................................................................................... 7

      A.     ABB Has Standing Because This Court's Vacatur Impairs A Core Activity
and Drains Its Resources ......................................................................... 7

      B.     ABB Has Standing Based on Its Procedural Injury ............................... 12

II.    ABB IS ENTITLED TO INTERVENTION AS OF RIGHT ......................... 14

      A.     ABB's Motion is Timely ....................................................................... 15

      B.     ABB Has Substantial Interests in Part of the Rule ............................... 18

      C.     ABB's Interests May Be Impaired if It Cannot Intervene .................... 19

      D.     The Existing Parties May Not Adequately Protect ABB's Interests ................... 20

III.   PERMISSIVE INTERVENTION IS ALSO WARRANTED ......................... 22

CONCLUSION............................................................................................................... 24

CERTIFICATE OF CONFERENCE............................................................................. 25

CERTIFICATE OF SERVICE ..................................................................................... 26

## TABLE OF AUTHORITIES

Page(s)

Cases

*Ams. United for Separation of Church & State v. City of Grand Rapids,*
    922 F.2d 303 (6th Cir. 1990) .................................................................................... 20

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler,*
    178 F.3d 350 (5th Cir. 1999) .................................................................................... 11

*Bensman v. U.S. Forest Serv.,*
    408 F.3d 945 (7th Cir. 2005) .................................................................................... 13

*Brumfield v. Dodd,*
    749 F.3d 339 (5th Cir. 2014) ............................................................................... 18, 22

*Ceres Gulf v. Cooper,*
    957 F.2d 1199 (5th Cir. 1992) .................................................................................. 16

*City of Houston v. Am. Traffic Solutions, Inc.,*
    668 F.3d 291 (5th Cir. 2012) .................................................................................... 19

*Dep't of Com. v. New York,*
    588 U.S. 752 (2019).................................................................................................. 12

*Diamond v. Charles,*
    476 U.S. 54 (1986).................................................................................................... 7

*Edwards v. City of Houston,*
    78 F.3d 983 (5th Cir. 1996) ................................................................... 14, 18, 20, 22

*El Paso Cnty. v. Trump,*
    982 F.3d 332 (5th Cir. 2020) .................................................................................... 7

*Food & Drug Admin. v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024).............................................................................................. 10, 11

*Food Mktg. Inst. v. Argus Leader Media,*
    588 U.S. 427 (2019)............................................................................................... 7, 11

*Guenther v. BP Ret. Accumulation Plan,*
    50 F.4th 536 (5th Cir. 2022) .................................................................................... 22

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982).............................................................................................. 7, 10

i

*Kneeland v. Nat'l Collegiate Athletic Ass'n*,
  806 F.2d 1285 (5th Cir. 1987) ............................................................. 23

*La Union del Pueblo Entero v. Abbott*,
  29 F.4th 299 (5th Cir. 2022) ......................................... 15, 18, 19, 20

*La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Properties, L.L.C.*,
  82 F.4th 345 (5th Cir. 2023) ............................................................. 10

*Larson v. Valente*,
  456 U.S. 228 (1982) ........................................................................... 12

*League of Latin Am. Citizens, Dist. 19 v. City of Boerne*,
  659 F.3d 421 (5th Cir. 2011) ...................................................... 18, 20

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................... 13

*Mandan, Hidatsa, & Arikara Nation v. U.S. Dep't of the Interior*,
  66 F.4th 282 (D.C. Cir. 2023) ........................................................... 21

*Massachusetts v. Env't Prot. Agency*,
  549 U.S. 497 (2007) ........................................................................... 13

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) ............................................................................. 7

*Nat'l Infusion Ctr. Ass'n v. Becerra*,
  116 F.4th 488 (5th Cir. 2024) ........................................................... 13

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
  732 F.2d 452 (5th Cir. 1984) ............................................................. 19

*Newby v. Enron Corp.*,
  443 F.3d 416 (5th Cir. 2006) ............................................................. 23

*OCA-Greater Houston v. Texas*,
  867 F.3d 604 (5th Cir. 2017) ..................................................... passim

*Perez v. Mortg. Bankers Ass'n*,
  575 U.S. 92 (2015) ............................................................................. 12

*Roe v. Town of Highland*,
  909 F.2d 1097 (7th Cir. 1990) ........................................................... 22

*Ross v. Marshall*,
  426 F.3d 745 (5th Cir. 2005) ............................................................. 15

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) ................................................................ 15, 16, 17

*Sierra Club v. U. S. Dep't of the Interior*,
    899 F.3d 260 (4th Cir. 2018) ................................................................ 12

*Stallworth v. Monsanto Co.*,
    558 F.2d 257 (5th Cir. 1977) ................................................................ 15, 22

*Sugar Cane Growers Coop. of Fla. v. Veneman*,
    289 F.3d 89 (D.C. Cir. 2002) ................................................................ 13

*Swoboda v. Manders*,
    665 F. App'x 312 (5th Cir. 2016) ................................................................ 16

*Tennessee v. Cardona*,
    No. 24-CV-072, 2025 WL 63795 (E.D. Ky. Jan. 10, 2025) ................................................................ 11

*Texas v. United States*,
    No. 18-CV-00167, 2018 WL 10562846, at *3 (N.D. Tex. May 16, 2018) ................................................................ 23

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) ................................................................ passim

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) ................................................................ 20

*United Airlines, Inc. v. McDonald*,
    432 U.S. 385 (1977) ................................................................ passim

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ................................................................ 12

*Vote.Org v. Callanen*,
    89 F.4th 459 (5th Cir. 2023) ................................................................ 7, 11

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
    834 F.3d 562 (5th Cir. 2016) ................................................................ 18, 19

Statutes & Rules

5 U.S.C. § 553(c) ................................................................ 12, 13

Fed. R. App. P. 4 ................................................................ 17

Fed. R. Civ. P. 24 ................................................................ passim

Regulations

34 C.F.R. § 106 ......................................................................................................... 3

34 C.F.R. § 106.40 ................................................................................................ 3, 4

Other Authorities

7 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*
    § 1908.2 (3d ed. 2022) ....................................................................................... 20

Proposed Intervenor-Defendant A Better Balance respectfully submits this Motion to Intervene and Brief in Support pursuant to Federal Rule of Civil Procedure 24. The existing parties, through counsel, informed A Better Balance that they do not consent to this motion.

## INTRODUCTION

A Better Balance ("ABB") is a national nonprofit organization that advocates for pregnant and caregiving workers and students. It seeks to intervene in this action to defend provisions of the U.S. Department of Education's 2024 Title IX Rule that protect pregnant and postpartum students. If these provisions become effective, they will provide essential protections to the students that ABB serves and allow ABB to assist them more effectively and efficiently. Last month, however, this Court vacated the full Rule. And, following the change in administration, the government has indicated that it does not intend to continue to defend the Rule by appealing this Court's final judgment. As a result, ABB seeks to intervene for the limited purpose of appealing a portion of the judgment to the Fifth Circuit to argue it should revive the portions of the Rule that protect pregnant and postpartum students.

ABB has Article III standing sufficient to maintain a case or controversy on appeal. The vacatur of the Rule perceptively impairs ABB's ability to assist pregnant and postpartum students who call them seeking legal assistance, one of its core activities in pursuit of its mission. In doing so, the vacatur requires ABB to expend additional resources when counseling students—resources it could otherwise devote to other efforts to protect its vulnerable client base. ABB is also suffering a procedural injury because Defendants are using collusive litigation tactics, in this case and others, to rescind the Rule without going through the required notice and comment rulemaking.

ABB also meets all the requirements for mandatory intervention under Rule 24(a). The motion is timely because ABB filed it before the deadline for a notice of appeal and soon after

1

learning of the government's changed position. ABB has a substantial interest in the pregnancy-related portions of the Rule because it has Article III standing, must expend additional resources to carry out its mission because of the Court's vacatur of the Rule, and previously advocated for the Rule's adoption. Absent intervention, the interests that ABB are seeking to protect may be impaired because the pregnancy-related parts of the Rule will be permanently vacated if Defendants do not appeal. And, because they appear unlikely to do so, Defendants may no longer adequately represent ABB's interests.

Last, permissive intervention under Rule 24(b) is also warranted. ABB's motion is timely and presents a question of law or fact common to the existing case. And ABB's motion will not prejudice any of the parties.

## FACTUAL BACKGROUND

### I.   A BETTER BALANCE

A Better Balance is a national nonprofit legal advocacy organization dedicated to advocating for pregnant, parenting, and caregiving workers and students. Declaration of Katherine Greenberg ("Greenberg Decl.") ¶ 2. ABB works to protect the rights of "these workers and students through legislative advocacy, direct legal services, and strategic litigation, among other avenues." *Id.*

ABB has played a leading role in advocating for laws and policies protecting pregnant and postpartum workers and students. *Id.* ¶ 3. "For a decade, [it] advocated for the federal Pregnant Workers Fairness Act, which passed with bipartisan support in 2022." *Id.* ABB "played a leading role in passing the federal PUMP for Nursing Mothers Act." *Id.* The organization has "helped pass a wealth of state and local policies." *Id.* Particularly relevant here, ABB advocated for the adoption of the protections for pregnant and postpartum students contained in the regulation at issue in this case." *Id.* ¶ 4.

2

Another core part of ABB's mission is providing legal assistance for pregnant, parenting, and caregiving students and workers. *Id.* ¶ 2. "A significant portion of [its] legal work consists of counseling workers and students who contact [ABB] through [its] free legal helpline." *Id.* ¶ 6. On its website, ABB explains to visitors that its "free and confidential legal helpline can help you understand your rights at work and at school around caring for yourself and your loved ones." *Id.* (quoting *Get Help*, A Better Balance, https://perma.cc/A99W-H8FL (last visited Mar. 25, 2025) (emphasis removed)). The website specifically offers "students nationwide" assistance "related to "[p]regnancy discrimination," "[a]ccommodations for pregnancy, childbirth, lactation, or related medical conditions," and "[d]iscrimination based on being a parent." *Get Help*, A Better Balance, https://perma.cc/A99W-H8FL (last visited Mar. 25, 2025). Students take ABB up on this offer: The organization "regularly receive[s] helpline calls from pregnant and postpartum students who are facing discrimination at school. These calls come from students in states across the country." Greenberg Decl. ¶ 7. These "callers, like other [pregnant and postpartum] students across the country, face significant barriers to their educations." *Id.* ¶ 8. "Some . . . miss out on significant class time, struggle academically, or even leave school because their school will not provide them adequate accommodations for their pregnancy or the opportunity and space to lactate." *Id.*

## II.    THE RULE

On April 29, 2024, the Department of Education issued a regulation implementing Title IX. *See* 34 C.F.R. § 106 (2024). Among other things, The Rule provides protections for pregnant and postpartum students. *See* 34 C.F.R. § 106.40. These include a right to lactation spaces and breaks, 34 C.F.R. §§ 106.40(b)(3)(ii), 106.40(b)(3)(v), and a right to other "reasonable modifications," such as larger desks, permission to eat, drink, or use the restroom; adjusted exam dates; remote access to classes; and excused absences for prenatal care, 34 C.F.R. § 106.40(b)(3)(ii). The regulations also require that, when students disclose their pregnancies,

3

schools must provide them with information about their Title IX rights and the school's Title IX Coordinator, who can help them request and receive the support they need. 34 C.F.R. § 106.40(b)(2).

## III.    THE RULE'S VACATUR

After the Department promulgated the Rule, Carroll Independent School District filed the present case against Defendants the U.S. Department of Education, the U.S. Department of Justice, and some federal officials within those agencies. *See* Compl., ECF No. 1. The suit does not contend that the protections related to pregnant and postpartum students' rights are unlawful, instead challenging a handful of separate provisions. *See generally id.*

On February 19, 2025, this Court granted Plaintiff's summary judgment motion and denied the government's cross-summary judgment motion on the grounds that the Rule "undermines the purpose of Title IX, . . . violate[s] the Constitution and [is] the result of arbitrary and capricious agency action." Order 1-2, ECF No. 86. The Court then vacated the entire Rule, including the segments that protect pregnant and postpartum students. *See id.* at 8.

## IV.    THE NEW ADMINISTRATION SIGNALS THAT IT WILL NOT DEFEND THE RULE

Until recently, the federal government had vigorously defended the validity of the Rule in this Court as well as other venues. But, starting in late January, the new presidential administration signaled that it was considering no longer defending the Rule. On January 31, 2025, the Department of Education first indicated that it might not appeal a decision from the Eastern District of Kentucky vacating the Rule. The Department issued a "Dear Colleague Letter" announcing that it would "enforce Title IX under the provisions of the 2020 Title IX Rule, rather than the recently invalidated 2024 Title IX Rule." Off. for Civ. Rts., U.S. Dep't of Educ., Dear Colleague Letter 1 (Jan. 31, 2025), https://perma.cc/FEQ5-93Q4 ("Jan. 31 DCL") (citing *Tennessee v. Cardona*, No.

24-072, ECF No. 143 (E.D. Ky. Jan. 9, 2025), *judgment corrected*, ECF No. 146 (Jan. 10, 2025)). The Department stated that that court's decision "expressed the proper textual and original meaning of Title IX" and "correctly repudiated the 2024 Title IX Rule[]." *Id.*

On February 4, 2025, the Department issued a revised version of its earlier Dear Colleague Letter, walking back some of its previous statements. *See* Off. for Civ. Rts., U.S. Dep't of Educ., Dear Colleague Letter (Feb. 4, 2025), https://perma.cc/Z4KJ-MCYN ("Feb. 4 DCL"). There, the Department acknowledged that "the United States Department of Justice is responsible for determining whether to appeal the United States District Court for the Eastern District of Kentucky's vacatur order." *Id.* at 1.

On February 6, 2025, the U.S. Department of Education filed an unopposed motion to postpone oral argument in a Tenth Circuit challenge to the Rule and to hold the case in abeyance. *See* Mot. to Postpone Oral Arg. & Hold Appeal in Abeyance, *Kansas v. U.S. Dep't of Educ.*, No. 24-3097 (10th Cir. Feb. 6, 2025), ECF No. 329. In its motion, the defendants explained that the "Department is under new leadership, which requires time to become familiar with the final rule and the issues presented by this litigation as well as to determine how they wish to proceed." *Id.* at 2. Soon after, the federal government reiterated the same point in motions to hold other challenges to the regulation in abeyance. *See* Mot. to Hold Appeal in Abeyance, *Arkansas v. U.S. Dep't of Educ.*, No. 24-2921 (8th Cir. Feb. 12, 2025); Mot. to Hold Appeal in Abeyance, *Oklahoma v. McMahon*, No. 24-6205 (10th Cir. Feb. 11, 2025), ECF No. 39.

On February 17, 2025, Defendants filed a joint status report in this case indicating that they might not appeal the Eastern District of Kentucky's judgment. *See* Joint Status Report, *Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, No. 4:24-cv-00461 (N.D. Tex. Feb. 17, 2025), ECF No. 85. There, the defendants wrote that the "parties agree that this case remains a live controversy

5

until either (1) the [Eastern District of Kentucky's] judgment is affirmed on appeal and no further appellate review is available, or (2) *the deadline to appeal passes without Defendants noticing an appeal*." *Id.* at 2 (emphasis added).

The government finally confirmed it was abandoning its defense of the Rule by failing to notice an appeal of the Eastern District of Kentucky's judgment, which was due on March 10, 2025. *See* Letter Mem. of Additional Citation, *Tennessee v. McMahon*, No. 24-5588 (6th Cir. Mar. 11, 2025), ECF No. 120 (noting, in Sixth Circuit filing, that "the federal defendants declined to seek further review of the district court's judgment"). The government also opposed the efforts of two putative intervenors, including ABB, who seek to intervene in that case. *See* Defs.' Resp. Opp'n Mot. Intervene By ABB, *Tennessee v. McMahon*, No. 24-CV-072 (E.D. Ky. Mar. 6, 2025), ECF No. 176; Defs.' Resp. Opp'n Mot. Intervene By VRLC, *Tennessee*, No. 24-CV-072 (E.D. Ky. Mar. 7, 2025), ECF No. 180. Soon after, federal defendants sought dismissal of their appeals to the Sixth, Eighth, and Tenth Circuits from district court orders preliminarily enjoining the Rule. *See* Letter Mem. of Additional Citation, *Tennessee*, No. 24-5588 (6th Cir. Mar. 11, 2025), ECF No. 120; Joint Stipulation for Dismissal, *Arkansas*, No. 24-2921 (8th Cir. Mar. 13, 2025); Joint Stipulation to Dismiss Appeal, *Kansas*, No. 24-3097 (10th Cir. Mar. 12, 2025), ECF No. 331; Joint Stipulation to Dismiss Appeal, *Oklahoma*, No. 24-6205 (10th Cir. Mar. 14, 2025), ECF No. 41.

## ARGUMENT

ABB has Article III standing sufficient to maintain a case or controversy on appeal. And ABB meets all four requirements for mandatory intervention under Federal Rule of Civil Procedure 24(a) and so should be allowed to intervene as a matter of right. Alternatively, the Court should grant ABB permissive intervention under Federal Rule of Civil Procedure 24(b) because

intervention is timely, ABB alleges common questions of law and facts with the existing action, and permitting ABB to step into the government's shoes will not prejudice the original parties.

## I.    ABB HAS STANDING

ABB has Article III standing to maintain a case or controversy on appeal. *See Diamond v. Charles*, 476 U.S. 54, 62 (1986). Where an organization seeks to intervene for the purpose of appealing a lower court judgment, it has standing if "it has suffered an actual or imminent injury that is 'fairly traceable' to the judgment below and that could be 'redress[ed] by a favorable ruling.'" *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 432-33 (2019) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149-50 (2010)). Here, ABB easily meets this standard based on two distinct sets of injuries.

### A.    ABB Has Standing Because This Court's Vacatur Impairs a Core Activity and Drains Its Resources

First, ABB satisfies the injury requirement because the vacatur of the pregnancy-related provisions of the Rule "'perceptibly impair[s]' the organization's activities and consequently drain[s] the organization's resources," a recognized "injury in fact." *Vote.Org v. Callanen*, 89 F.4th 459, 470 (5th Cir. 2023) (quoting *El Paso Cnty. v. Trump*, 982 F.3d 332, 343 (5th Cir. 2020)); *see Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Assisting pregnant and postpartum students who call ABB's free legal helpline is a core part of how the organization pursues its mission of protecting the rights of pregnant, parenting, and caregiving workers and students. *See* Greenberg Decl. ¶¶ 2, 6-7. And, in the absence of the Rule, it is much harder for ABB to provide that assistance through its helpline. Due to a lack of clear and robust legal protections for students

absent the Rule, ABB lawyers must spend significantly more time and resources to respond to each call, and yet they will likely achieve worse results for their callers. *Id.* ¶¶ 6-37.

For instance, if the Rule were in effect, ABB could quickly point postpartum callers to the provision of the regulation that requires their schools to provide them specifically identified "reasonable modifications" and private spaces to lactate. *Id.* ¶ 16, 24. Without the Rule, ABB must instead conduct research and craft individualized arguments for why these callers' schools should provide these accommodations, since these rights were not clearly articulated in past Title IX regulations or law. *Id.* ¶¶ 20, 28. Accordingly, ABB currently must expend "more time and other resources to counsel student callers." *Id.* ¶ 35. Consider, for example, a student, living in a state where the Rule had briefly gone into effect, who called ABB soon after the Rule was vacated nationwide. *See id.* ¶¶ 19, 23. Her school had forced her into a leave of absence rather than allowing her to reschedule an exam scheduled for her due date. *Id.* ¶ 19. "If the regulations had not been vacated, [ABB] could have quickly assisted her" by "point[ing] her to the part of the [Rule] that defines an adjusted exam date as a reasonable accommodation." *Id.* ¶ 23. "Instead, [ABB] ha[s] had to expend hours of additional staff time to try to come up with arguments to help her rectify the discrimination she has experienced and re-enroll in school." *Id.*

Sometimes ABB also must assist students through back-and-forth communications with their schools that would be unnecessary with the clarity of the Rule. *Id.* ¶¶ 15, 21, 28. For example, ABB is currently in the process of trying to help an Indiana student convince her high school to provide her with space to pump. *Id.* ¶ 30. In the absence of the Rule, which would unambiguously entitle the student to this accommodation, her school has taken the position that Title IX does not include a right to a lactation space. *Id.* As a result, ABB has had to spend significant time assisting the student in trying to convince her school otherwise. *Id.*

8

Moreover, without the Rule, ABB spends resources to provide basic information about Title IX and Title IX coordinators to pregnant and postpartum students, which the Rule, if effective, would require schools to do once students disclosed their pregnancies, reducing the need for ABB's assistance. *Id.* ¶¶ 31-34.

Despite the extensive resources ABB invests in assisting their student-callers absent the Rule, ABB achieves worse results than it would if the Rule were in place. *Id.* ¶ 36. Thus far, for example, ABB's efforts to secure a lactation space for the Indiana student mentioned above have proven unsuccessful because, post-vacatur, ABB cannot point her high school to the Rule's unambiguous right to that space, which is incompatible with the school's current interpretation of the law. *Id.* ¶ 30. The same is true for ABB's work to assist the student forced into a leave of absence because her midterm was scheduled for her due date. *See id.* ¶¶ 19, 23. Because the Rule has been vacated, ABB cannot rely on its explicit directive that required "reasonable modifications" including adjusted exam dates. *Id.* ¶ 23. As a result, the Rule's vacatur frustrates ABB's mission of protecting the rights of pregnant, parenting, and caregiving workers and students.

Finally, because ABB's helpline assistance to students requires more time and other staff resources because of the Rule's vacatur, it must divert resources away from other efforts in which it would like to engage to pursue its mission. *Id.* ¶ 35. For example, "[i]f the [Rule] went into effect," ABB "could provide full representation (including drafting demand letters, engaging in pre-suit negotiations, and filing administrative complaints and lawsuits) to more callers, rather than only providing them legal information so they can advocate for themselves." *Id.*

This impairment of ABB's mission, frustration of one of its core activities, and drain on its resources is an injury in fact. ABB's injury here is similar to that of the organizational plaintiff in

*Havens Realty Corp. v. Coleman*, a non-profit working "to make equal opportunity in housing a reality in the Richmond Metropolitan Area" through issue advocacy and counseling. 455 U.S. at 379-80, 368. The Supreme Court held there was "no question" that the organization alleged it suffered an injury-in-fact because it claimed the challenged practice had "perceptibly impaired [its] ability to provide counseling and referral services," requiring a "consequent drain on the organization's resources" to "counteract" discrimination. *Id.* at 379; *see also Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024) (reaffirming that, under *Havens*, an organization that provides a counseling service experiences an injury in fact when the challenged conduct "interfere[s] with [its] core business activities"); *La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Properties, L.L.C.*, 82 F.4th 345, 356 (5th Cir. 2023) (Ho, J., concurring) (describing *Havens* as turning on the challenged conduct "harm[ing the plaintiff's] ability to serve its clients" through its "operation of a housing counseling service"). ABB is also an organization engaged in both issue advocacy and counseling, and it too is suffering a "perceptibl[e] impairment [to its] ability to provide counseling" with a "consequent drain on the organization's resources." *Havens*, 455 U.S. at 379.

ABB's injury is similar to, though more pronounced, than many norganizational injuries in fact the Fifth Circuit has recognized after *Havens*. For example, in *OCA-Greater Houston v. Texas*, the Court held that an organization suffered an injury-in-fact because a state voting law required it to "spend extra time and money educating its members" to achieve its mission of "voter outreach and civic education." 867 F.3d 604, 610-12 (5th Cir. 2017). The challenged law had "deterred some of [the organization's members] from voting." *Id.* at 610. To counteract that effect, the organization's "employees and volunteers" had to have "in-depth conversations" with community members that "t[ook] more time" than previously required, such that the organization

10

had to "spend more time on each call (and reach[ed] fewer people in the same amount of time) because of [the state] law." *Id.*; *see also Vote.Org*, 89 F.4th at 470-71 (holding organization experienced injury in fact when, because of the challenged rule, it had to "divert[] its limited resources to less effective (and less efficient) means of increasing turnout and political engagement," impairing its "ability to pursue its mission"); *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 361 (5th Cir. 1999) (holding organization experienced injury in fact because it "expended resources registering voters . . . who would have already been registered" but for the defendant's allegedly illegal inaction). So, too, ABB: Because the pregnancy-related parts of the Rule have been vacated, ABB must counteract discrimination against its helpline callers through "in-depth conversations" and research that "take more time" than it would absent that vacatur, and as a result ABB is able to assist "fewer people in the same amount of time." *OCA-Greater Houston*, 867 F.3d at 610.

ABB also satisfies the remaining Article III standing requirements of fair traceability and redressability. *See Food Mktg. Inst.*, 588 U.S. at 432-33. ABB's injury is fairly traceable to the vacatur of the Rule's provisions that grant protections to pregnant and postpartum students. And this injury would likely be redressed by a favorable decision from the appellate court, since that decision would undo this Court's vacatur of the relevant provisions. *See All. for Hippocratic Med.*, 602 U.S. at 381 (explaining that a party can generally establish redressability if it can establish causation). True, another court has also vacated the Rule, so reversal of this Court's judgment may not, on its own, fully cure ABB's injury. *See Tennessee v. Cardona*, No. 24-CV-072, 2025 WL 63795, at *7 (E.D. Ky. Jan. 10, 2025). But ABB has moved to intervene in that case, too. *See* ABB Mot. Intervene, *Tennessee*, No. 24-CV-072 (E.D. Ky. Feb. 26, 2025), ECF No. 152. And "[t]he removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is

11

sufficient to show redressability." *Sierra Club v. U. S. Dep't of the Interior*, 899 F.3d 260, 285 (4th Cir. 2018) (citing *Larson v. Valente*, 456 U.S. 228, 241-42 (1982) (holding church had standing to challenge one rule even if it might be required to engage in the same conduct by another rule)); *see Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261-62 (1977) (holding that court enjoining "absolute barrier to constructing . . . housing" would redress injury even though other barriers would remain).

### B.    ABB Has Standing Based on Its Procedural Injury

Additionally, ABB has standing because Defendants' collusive litigation tactics are denying ABB procedural rights. Ordinarily, a federal regulation adopted through notice-and-comment rulemaking can be rescinded only through notice-and-comment rulemaking. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015). As part of that process, those who would be negatively affected by rescission of a regulation would have the right to submit input, 5 U.S.C. § 553(c), and, if needed, to challenge the final outcome of the regulatory process in court, *Dep't of Com. v. New York*, 588 U.S. 752, 773-76 (2019). Here, Defendants have deprived ABB of these rights in a brazen attempt to make an end-run around both the Administrative Procedure Act's notice-and-comment requirements as well as judicial review of any final agency action.

In this case and others, Defendants have joined the Rule's original challengers in trying to get rid of the Rule without notice and comment. In its January 31 letter, the Department announced its opposition to the Rule. *See* Jan. 31 DCL at 1. It also expressed the Department's view that the Rule could be vacated by presidential decree without following APA procedures because "[a]s a constitutional matter, the President's interpretation of the law governs." *Id.* at 2. That is not the law, *see Perez*, 575 U.S. at 101, and the Department later walked back that letter, *see* Feb. 4 DCL. But Defendants are now making litigation decisions to effectuate their goal of vacating the Rule without going through the procedures required by the APA: The Department and other federal

defendants in challenges to the Rule have not only abandoned their defense but are also working to prevent putative intervenors, including ABB, from defending the Rule in their absence. *See supra* p. 1 (noting Defendants oppose ABB's intervention in this case); Defs. Resp. Opp'n Mot. Intervene By ABB, *Tennessee*, 24-CV-072 (E.D. Ky. Mar. 6, 2025), ECF No. 176 (opposing ABB's intervention in another case concerning the Rule).

Where a party has "a procedural right to protect its concrete interests," denial of that procedural right itself establishes standing. *Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 503 (5th Cir. 2024). Here, that procedural right protects ABB's property interest in preserving its resources, *see id.* at 503-04; *see also supra* pp. 2-6 (explaining how the vacatur of the Rule costs ABB resources). And because ABB has been deprived of a procedural right to protect its concrete interests, it need not "meet[] all the normal standards for redressability and immediacy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572 n.7 (1992). "[P]arties claiming a deprivation of procedural rights afforded by statute [need not] establish that the agency would have reached a different conclusion had they been allowed to participate." *Bensman v. U.S. Forest Serv.*, 408 F.3d 945, 953 (7th Cir. 2005); *see Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 95 (D.C. Cir. 2002) ("If a party claiming the deprivation of a right to notice-and-comment rulemaking under the APA had to show that its comment would have altered the agency's rule, section 553 [of the APA] would be a dead letter."). "When a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Massachusetts v. Env't Prot. Agency*, 549 U.S. 497, 518 (2007); *accord Becerra*, 116 F.4th at 504 (holding that plaintiff-association had standing because there was "some possibility" that if notice-and-comment procedures had been followed, the government agency would have reconsidered its decision).

13

Here, there is at least a possibility that the government would not rescind the pregnancy-related provisions of the Rule if it followed the normal procedures set forth under the APA. Although Defendants have criticized other parts of the Rule, especially those regarding transgender students' rights, they have never, to ABB's knowledge, expressed a legal or policy objection to the provisions protecting pregnant and postpartum students. *See, e.g.*, Jan. 31 DCL at 1-2 (criticizing the Rule only for prohibiting discrimination based on gender identity).

## II.    ABB IS ENTITLED TO INTERVENTION AS OF RIGHT

Federal Rule of Civil Procedure 24(a) requires a district court to allow intervention where the party seeking to intervene "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). A non-party may intervene "for the purpose of appeal." *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395 (1977).

Proposed intervenors are entitled to mandatory intervention under Rule 24(a)(2) if they meet each of four factors: (1) the application to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the case; (3) absent intervention, the outcome of the case may impair the proposed intervenor's ability to protect that interest; and (4) the proposed intervenor's interest will not be adequately represented by the existing parties. *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). The Rule 24(a)(2) inquiry "is a flexible one, which focuses on the particular facts and circumstances surrounding each application," meaning that "intervention of right must be measured by a practical rather than technical yardstick." *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996). And the Fifth Circuit has held that federal courts should liberally "allow intervention 'where no one would be hurt and the greater justice could be attained.'" *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (quoting *Sierra Club v. Espy*,

18 F.3d 1202, 1205 (5th Cir. 1994)). Because ABB satisfies each of these four factors, it is entitled to mandatory intervention in this action.

### A.    ABB's Motion is Timely

Intervention is timely here because ABB has filed its motion to intervene for the purpose of appealing the final judgment before the deadline to appeal and soon after learning that Defendants may no longer represent their interests. Whether a motion to intervene is timely is "contextual; absolute measures of timeliness should be ignored." *Sierra Club*, 18 F.3d at 1205. Courts in the Fifth Circuit evaluating timeliness consider four factors:

> (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Id.* (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977)).

"A common example of post-judgment intervention that satisfies these criteria is intervention for the purpose of appealing a decision that the existing parties to a suit have decided not to pursue." *Ross v. Marshall*, 426 F.3d 745, 755 (5th Cir. 2005). The Supreme Court has made clear that a motion to intervene is generally timely when the movant seeks to intervene for purposes of appealing and the motion is filed before the deadline to notice an appeal. *See McDonald*, 432 U.S. at 391-96. As the Supreme Court explained in *United Airlines, Inc. v. McDonald*, "[t]he critical inquiry" for determining the timeliness of such a motion "is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment." *Id.* at 395-96. In this context, the proposed intervenor acts promptly if she files "her motion within the time period in which the named [parties] could have taken an appeal." *Id.* at 396. By like token, in *Ross v.*

*Marshall*, the Fifth Circuit held that a company timely moved to intervene when it "filed its motion promptly after the district court entered its amended final judgment, and within the time in which a named party could have taken an appeal." 426 F.3d at 755.

That was true even though the company "was aware that its interests were at stake long before it sought to intervene," because, "prior to judgment," its "interests were being adequately represented" by an existing party. *Id.* The relevant "length of time during which the would-be intervenor actually knew . . . of its interest in the case," the focus of the Fifth Circuit's first timeliness factor, is the time after the putative intervenor learned that its interests would no longer be protected by existing parties. *Sierra Club*, 18 F.3d at 1205-06. Accordingly, intervention is timely when the putative intervenors move quickly after learning that their interests are no longer being protected by the existing parties to a lawsuit, even if they knew about the case earlier and the case has reached a late stage. *See, e.g.*, *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1202-03 (5th Cir. 1992) (holding that motion to intervene was timely when filed a "short time" of two months after putative intervenor learned of his need to get involved in the suit); *Swoboda v. Manders*, 665 F. App'x 312, 314 (5th Cir. 2016) (holding that motion to intervene was timely where putative intervenor filed forty-five days after learning that their interests were no longer represented); *Sierra Club*, 18 F.3d at 1205-06 (noting that motion for intervention was timely when filed promptly after learning that existing parties no longer protected putative intervenor's interests, even though the lawsuit had been pending for eight years).

When a movant seeks post-judgment intervention for the purposes of an appeal that an existing party will not bring, the Fifth Circuit's second factor—prejudice to the existing parties if the court allows intervention—will also weigh in favor of intervention. This factor "must be measured by [any] delay in seeking intervention, not the inconvenience to the existing parties of

16

allowing the" intervention. *Sierra Club*, 18 F.3d at 1206. As the Supreme Court held in *McDonald*, where a proposed intervenor seeks to enter the litigation after the "entry of final judgment," a party "can hardly contend that its ability to litigate the issue was unfairly prejudiced simply because an appeal . . . was brought by [an intervenor], rather than by . . . the original named [adversary]." 432 U.S. at 394. By contrast, a movant is near-certain to be prejudiced if he is not permitted to intervene to appeal a final judgment adverse to his interests that no one else will appeal. *See Ross*, 426 F.3d at 756 (noting that putative intervenor "will suffer considerable prejudice if it is denied the opportunity to challenge this judgment on appeal"). Accordingly, the Fifth Circuit's third timeliness factor—prejudice to the would-be intervenor if the court denies intervention—will weigh in favor of timeliness.

For these reasons, ABB's motion is timely. First, ABB filed its motion to intervene for purposes of an appeal nearly a month before the April 21, 2025, deadline to notice an appeal. *See* Fed. R. App. P. 4(a)(1)(B) (setting sixty-day deadline for notice of appeal in cases in which a United States agency or United States official, in his official capacity, is a party). And ABB did so promptly after learning that Defendants will likely no longer adequately represent ABB's interests. *See infra* pp. 20-22. Second, this intervention would not prejudice the existing parties. Because Defendants will almost surely not file a notice of appeal, they will have no role in this case going forward. And Plaintiff cannot complain it will need to face an appeal from ABB rather than, as it might have expected, Defendants. *See McDonald*, 432 U.S. at 394. Third, ABB, as the prospective intervenor, would suffer substantial prejudice if intervention were denied. If ABB cannot intervene in this suit and Defendants do not appeal—as they almost surely will not, *see infra* pp. 20-22— then the 2024 Title IX Rule, including its pregnancy-related provisions, would be permanently vacated. Accordingly, ABB's motion to intervene is timely.

17

**B.      ABB Has Substantial Interests in Part of the Rule**

ABB also satisfies Rule 24(a)'s requirement that a movant for intervention must have "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). The Fifth Circuit has interpreted this language as requiring a "direct, substantial, legally protectable interest in the proceedings." *Edwards*, 78 F.3d at 1004. In practice, this substantial interest analysis "turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Texas*, 805 F.3d at 657. "The interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014).

The Fifth Circuit has recognized that a "movant who shows standing is deemed to have a sufficiently substantial interest to intervene" under Rule 24(a). *League of Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434 n.17 (5th Cir. 2011); *see Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 566 n.3 (5th Cir. 2016) (same). As demonstrated above, ABB has standing. *See supra* pp. 2-7. So, ABB also satisfies the substantial-interest requirement.

The Court need not go further in analyzing ABB's interests in this suit. However, lest there be any doubt, the Fifth Circuit has also held that an organization has a substantial interest in a law or policy that requires it to "expend resources" to "carry out" its mission. *La Union del Pueblo Entero*, 29 F.4th at 306. As explained above, in the absence of the Rule's pregnancy-related provisions, ABB must spend more staff time and other resources to provide direct legal services to student-callers, including those who seek lactation accommodations or other modifications expressly guaranteed by the Rule. Greenberg Decl. ¶¶ 6-37; *see supra* pp. 2-6.

Additionally, a "'public spirited' civic organization[] that successfully [advocates] for adoption of a law may intervene to vindicate their 'particular interest' in protecting that law." *Wal-Mart Stores*, 834 F.3d at 567 (quoting *City of Houston v. Am. Traffic Solutions, Inc.*, 668 F.3d 291, 294 (5th Cir. 2012)). For example, in *City of Houston v. American Traffic Solutions, Inc.*, the Fifth Circuit held that a group of private citizens who had organized a successful campaign to amend Houston's city charter had a sufficient interest in subsequent litigation about the scope of that charter amendment to support intervention as of right under Rule 24(a). 668 F.3d at 292-94. ABB similarly has a substantial interest in the pregnancy-related provisions of the Rule because it played a leading role in the adoption of these provisions, including by leading the drafting of two comment letters that resulted in changes between the proposed regulation and final Rule. Greenberg Decl. ¶ 4. Like the intervenors in *American Traffic Solutions, Inc.*, ABB therefore has a "particular interest" in defending those provisions. *See* 668 F.3d at 294. For all these reasons, ABB has a sufficient interest in the pregnancy-related provisions of the Rule to support intervention as of right in this lawsuit.

### C.    ABB's Interests May Be Impaired if It Cannot Intervene

With respect to this third factor for mandatory intervention under Rule 24(a), ABB must show that "disposition of the action may, as a practical matter, impair or impede [its] ability to protect [its] interest." *Texas*, 805 F.3d at 657 (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)). This is a minimal burden, requiring the movant "only [to] show that if they cannot intervene, there is a possibility that their interest could be impaired or impeded." *La Union del Pueblo Entero*, 29 F.4th at 307. This requirement is ordinarily satisfied "whenever disposition of the present action would put the movant at a practical disadvantage in protecting its interest." 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1908.2 (3d ed. 2022).

Here, it is more than possible that ABB's interests will be impaired if the Court does not grant its motion for mandatory intervention. The Court has already entered a final judgment that vacates the Rule in its entirety. *See* Judgment, ECF No. 87. If ABB is not granted intervention, it will have no way to try to restore the pregnancy-related provisions of the Rule in which ABB has substantial interests. And Defendants appear almost certain not to appeal the final judgment. *See infra* pp. 20-22. As a result, if the Court denies ABB's motion to intervene, this proceeding will almost surely result in the permanent, nationwide vacatur of the Rule's pregnancy-related protections. Therefore, ABB's substantial interest in these provisions of the Rule may be impaired if it is denied intervention in this lawsuit.

### D.    The Existing Parties May Not Adequately Protect ABB's Interests

Lastly, ABB can establish that its "interest[s] [are] inadequately represented by the existing parties to the suit," *Texas*, 805 F.3d at 857, such that it has a right to intervene under Rule 24(a). Normally, this requirement presents only a "minimal" burden. *Edwards*, 78 F.3d at 1005 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). ABB "'need not show that the representation by existing parties will be, for certain, inadequate,' but instead that it *may* be inadequate." *La Union del Pueblo Entero*, 29 F.4th at 307-08 (quoting *Texas*, 805 F.3d at 661). Representation by existing parties may be inadequate when those parties oppose relief sought by a prospective intervenor. *See, e.g.*, *City of Boerne*, 659 F.3d at 435. Similarly, an existing party's decision not to appeal a judgment can constitute inadequate representation. *See Ross*, 426 F.3d at 761 (holding that a putative intervenor could show that an existing party inadequately represented its interests based on a "well-founded belief that [the existing party] . . . would not pursue an appeal"); *Ams. United for Separation of Church & State v. City of Grand Rapids,* 922 F.2d 303, 306 (6th Cir. 1990) ("[A] decision not to appeal by an original party to the action can constitute inadequate representation of another party's interest."); *cf. Mandan, Hidatsa, & Arikara Nation v.*

*U.S. Dep't of the Interior*, 66 F.4th 282, 285 (D.C. Cir. 2023) (explaining that decision of U.S. agency to become adversary of state's claims, after starting as an ally, was sufficient to show that the agency did not represent the state's interests).

Here, recent statements and actions strongly suggest that Defendants will not appeal this Court's decision vacating the Rule. *See supra* pp. 4-6. Most importantly, after another federal district court vacated the Rule in January 2025, Defendants chose not to appeal that ruling. *See* Letter Mem. of Additional Citation, *Tennessee*, No. 24-5588 (6th Cir. Mar. 11, 2025), ECF No. 120 (noting that "the federal defendants declined to seek further review of the district court's judgment"). This is strong evidence that Defendants will not pursue an appeal in this case. After all, for the Rule to become effective, judgments in both cases must be reversed, so it would make no sense for Defendants to appeal one case but not the other. And Defendants' decision not to appeal in the other federal case confirmed their earlier signals that they intend to abandon their defense of the Rule. *See supra* pp. 4-6.

Absent ABB's intervention, therefore, Defendants' near-certain failure to appeal would allow the Court's final judgment to remain permanent and untouchable. The portions of the Rule in which ABB has an interest would be forever lost. Accordingly, because they are likely not to appeal, Defendants may no longer adequately protect ABB's interest in reviving the portions of the Rule that protect pregnant and postpartum students. To safeguard that interest, ABB must be allowed to intervention under Rule 24(a).[1]

---

[1] Neither of the Fifth Circuit's two presumptions of adequate representation applies here. First, a presumption of adequate representation arises when "one party is a representative of the [proposed intervenor] by law." *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022) (quoting *Brumfield*, 749 F.3d at 345). That presumption is clearly inapplicable here, as neither of the existing parties are legally obligated to represent the interests of ABB, a private advocacy organization. Second, a presumption of adequate representation arises "when the would-be

Finally, if the Court is not satisfied that the federal government's public statements and filings demonstrate Defendants may no longer adequately represent ABB's interest, it can defer consideration of ABB's Motion to Intervene to see if Defendants do, in fact, notice an appeal by the April 21, 2025, deadline. If the Court chooses this course, ABB requests that the Court inform the parties, so ABB knows it does not need to file a notice of appeal by that date to preserve its ability to intervene. *See Roe v. Town of Highland*, 909 F.2d 1097, 1099-1100 (7th Cir. 1990) ("[I]f the motion to intervene has not been acted upon within the time to appeal, the putative [intervenor] should nonetheless file a timely notice of appeal. Although the filing of the notice would deprive the district court of power to act on the motion to intervene, the cause may be remanded for that purpose." (cleaned up)).

## III. PERMISSIVE INTERVENTION IS ALSO WARRANTED

In the alternative, permissive intervention under Federal Rule of Civil Procedure 24(b) is appropriate. Permissive intervention requires proposed intervenors to establish that their motion is timely and that their "claim or defense and the main action have a question of law or fact in common." *Stallworth*, 558 F.2d at 263, 269. After these two requirements are met, a court must "exercise its discretion in deciding whether intervention should be allowed." *Id.* In making this determination, the Court should "consider, among other factors, whether the intervenors' interests are adequately represented by other parties and whether intervention will unduly delay the proceedings or prejudice existing parties." *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987) (citation omitted).

---

intervenor has the same ultimate objective as a party to the lawsuit." *Edwards*, 78 F.3d at 1005. But, as evidenced by recent litigation decisions and public statements, Defendants no longer share ABB's goal that the pregnancy-related provisions of the Rule go into effect. *See supra* p. 21.

Permissive intervention for ABB is appropriate here. As discussed above, this motion is timely. *See supra* pp. 15-17. And ABB's motion identifies common questions of law or fact with the existing action. Plaintiffs have argued that the Rule should be vacated in its entirety. *See, e.g.*, Pl.'s Mem. Supp. Mot. Summ. J. 33, ECF No. 59 (arguing that [w]hether the Court vacates the Rule or enjoins enforcement, relief should extend to the entire Rule"). ABB's position is that, even if the challenged provisions are struck down, the provisions related to pregnant and postpartum students should go into effect. *See supra* p. 18. These positions clearly represent common questions of law, especially given the Fifth Circuit's "liberal[]" construction of this requirement. *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006). Indeed, Defendants previously advanced a version of ABB's argument. *See* Mem. Supp. Def.'s Resp. to Pl.'s Mot. Summ. J. & Cross-Mot. Dismiss 42-50, ECF No. 65.

Lastly, the "other factors," *Kneeland*, 806 F.2d at 1289, that the Court may consider also favor permissive intervention. As discussed above, ABB's interests are not adequately represented by the existing parties. *See supra* pp. 20-22. And there is no undue delay and prejudice to the original parties. ABB seeks to intervene for purposes of appeal in a matter fully adjudicated at the district court, and ABB's intervention would not require that the parties complete additional discovery, brief additional motions to this Court, or otherwise burden the Court and the parties with further proceedings at the district court level. *See, e.g.*, *Texas v. United States*, No. 18-CV-00167, 2018 WL 10562846, at *3 (N.D. Tex. May 16, 2018) (granting permissive intervention in part because intervention would not delay discovery or motion practice); *see also supra* pp. 15-17 (discussing lack of prejudice to existing parties from ABB's intervention in this case). Further, the original parties "can hardly contend that [their] ability to litigate the issue was unfairly unprejudiced simply because an appeal . . . was brought by [intervenor], rather than by one of the

23

original named [defendants]." *McDonald*, 432 U.S. at 394. Accordingly, the Court should permit ABB to intervene in this suit under Rule 24(b).

## CONCLUSION

For the foregoing reasons, Proposed Intervenor A Better Balance respectfully requests that this Court grant its Motion to Intervene.

DATED: March 25, 2025                        Respectfully submitted,

                                             /s/ *Roger L. Mandel*
                                             Roger L. Mandel
                                             JEEVES MANDEL LAW GROUP
                                             2833 Crockett Street, Suite 135
                                             Fort Worth, TX 76107
                                             Phone: 214-253-8300
                                             rmandel@jeevesmandellawgroup.com
                                             khill@jeeveslawgroup.com

                                             Matthew Borden*
                                             Kory DeClark *
                                             BRAUNHAGEY & BORDEN LLP
                                             747 Front Street, 4th Floor
                                             San Francisco, CA 94111
                                             Telephone: (415) 599-0210
                                             Facsimile: (415) 276-1808
                                             borden@braunhagey.com
                                             declark@braunhagey.com

                                             Christman Rice*
                                             Marissa Benavides*
                                             Lily (Haeun) Kim*
                                             BRAUNHAGEY & BORDEN LLP
                                             118 W 22nd Street, 12th Floor
                                             New York, NY 10011
                                             Telephone: (646) 829-9403
                                             Facsimile: (415) 276-1808
                                             rice@braunhagey.com
                                             benavides@braunhagey.com
                                             kim@braunhagey.com

                                             [continued on next page]

Alexandra Z. Brodsky*
Adele P. Kimmel*
PUBLIC JUSTICE
1620 L Street NW
Suite 630
Washington, DC 20036
Phone: (202) 797-8600
abrodsky@publicjustice.net
akimmel@publicjustice.net

*Pro hac vice motions forthcoming*

*Attorneys for Proposed Intervenor-Defendant*

## CERTIFICATE OF CONFERENCE

On March 24, 2025, I conferred by email with Mathew Hoffman, counsel for Plaintiff Carroll Independent School District, and he stated that Plaintiff opposes the relief sought in this motion.

On March 24, 2025, I conferred by email with Elizabeth Tulis, counsel for Defendants, and she stated that Defendants oppose the relief sought in this motion.

DATED: March 25, 2025                    /s/ *Alexandra Z. Brodsky*
                                         Alexandra Z. Brodsky

25

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 25, 2025, the above document was filed with the CM/ECF filing system, which electronically serves a copy to all counsel of record.

DATED: March 25, 2025                    /s/ *Roger L. Mandel*
                                         Roger L. Mandel