IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **CARROLL INDEPENDENT SCHOOL DISTRICT**, <br><br> *Plaintiff*, <br><br> v. <br><br> **UNITED STATES DEPARTMENT OF EDUCATION**; **DENISE CARTER**, in her official capacity as Acting Secretary of the United States Department of Education; **ASSISTANT SECRETARY FOR CIVIL RIGHTS AT THE UNITED STATES DEPARTMENT OF EDUCATION**, in her official capacity; **UNITED STATES DEPARTMENT OF JUSTICE**; **PAM BONDI**, in her official capacity as Attorney General of the United States; and **ASSISTANT ATTORNEY GENERAL FOR THE CIVIL RIGHTS DIVISION OF THE UNITED STATES DEPARTMENT OF JUSTICE**, in her official capacity, <br><br> *Defendants*. | Case No.: 4:24-cv-00461-O |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
MOTION TO INTERVENE BY A BETTER BALANCE**

Before the Court is a motion to intervene by A Better Balance ("ABB"), a national nonprofit organization that advocates for pregnant and caregiving workers and students. ABB seeks to intervene "for the limited purpose of appealing a portion of the [Court's] judgment to the Fifth Circuit to argue that it should revive the portions of the Rule that protect pregnant and postpartum students." ECF No. 91 at 1. ABB seeks to intervene only because Defendants have indicated that they do not plan to appeal. But ABB may not appeal in Defendants' stead because it lacks Article III standing. Accordingly, the Court should deny ABB's motion to intervene.

1

## BACKGROUND

As set forth more fully in Defendants' prior briefing, this case concerns a 2024 rule (the "Rule") that makes numerous changes to the Department of Education's Title IX regulations. *See Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024). The Rule contains numerous provisions, ranging from revising recordkeeping requirements to guaranteeing access to lactation spaces for breastfeeding students. *See generally id.* Plaintiff challenged several portions of the Rule, including § 106.10, § 106.31(a)(2), and the definition of sex-based hostile environment harassment in § 106.2—focusing particularly on those provisions' application to gender identity discrimination—as well as two provisions related to grievance procedures. *See generally* ECF No. 1. Plaintiff did not raise any claim that the Rule's provisions regarding protections for pregnant and postpartum students were unlawful. On February 19, 2025, the Court granted Plaintiff's motion for summary judgment, denied Defendants' motion for summary judgment, and vacated the Rule on a nationwide basis. ECF Nos. 86, 87. The Court declined to sever the challenged portions of the Rule from the Rule's other provisions, including the provisions addressing protections for pregnant and postpartum students; instead, the Court vacated the Rule "in its entirety." ECF No. 86 at 7.

ABB "is a national nonprofit legal advocacy organization dedicated to advocating for pregnant, parenting, and caregiving workers and students." ECF No. 91-1, ¶ 2. On March 25, 2025, ABB filed a motion to intervene, requesting "to intervene in this action to defend [on appeal] provisions of [the Rule] that protect pregnant and postpartum students." ECF No. 91 at 1.

**LEGAL STANDARDS**

To intervene of right under Rule 24(a)(2), ABB must demonstrate: (1) that its request is timely, (2) that it has "an interest relating to the property or transaction which is the subjection of the action," (3) that a decision in the case may harm its ability to protect that interest, and (4) that its interest in inadequately represented by parties to the suit. *New Orleans Pub. Serv., Inc. v. United Gas Pipeline Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (citing Fed. R. Civ. P. 24(a)(2)).

Rule 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). It must be the kind of claim or defense "that can be raised in courts of law as part of an actual or impending law suit," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 n.18 (1997) (citation omitted), and for which there are "independent jurisdictional grounds," *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985) (citations omitted).

"Article III does not require intervenors to independently possess standing where the intervention is into a *subsisting and continuing* Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so." *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006) (citation omitted). However, "to appeal a decision that the primary party does not challenge, an intervenor must independently demonstrate standing." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019) (citing *Wittman v. Personhuballah*, 578 U.S. 539 (2016); *Diamond v. Charles*, 476 U.S. 54 (1986)); *see Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 938 (N.D. Tex. 2019) (O'Connor, J.) ("[S]hould Putative Intervenors seek to appeal, they will need to show more than just a sufficiently pleaded legally protectable interest in the case; they will need to prove they have Article III standing.").

**ARGUMENT**

The motion to intervene should be denied. ABB seeks to intervene only to argue on appeal, in Defendants' stead, that the Fifth Circuit should "revive the portions of the Rule that protect pregnant and postpartum students." ECF No. 91 at 1. But because ABB lacks Article III standing to raise any such claims, it may not intervene to pursue an appeal in the absence of Defendants. *See Va. House of Delegates*, 587 U.S. at 663.

To demonstrate Article III standing, a party must show "(1) that [it] suffered an injury in fact, which is a concrete and particularized invasion of a legally protected interest; (2) that the injury is traceable to the challenged action of the defendant; and (3) it is likely, rather than merely speculative, the injury will be redressed by a particular decision." *Parr v. Cougle*, 127 F.4th 967, 972 (5th Cir. 2025) (citation omitted). "Like an individual, an organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the . . . conduct" at issue. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) (citation omitted). Here, ABB may not continue this suit as an intervenor-defendant because it has not shown that it "fulfills the requirements of Article III." *Diamond*, 476 U.S. at 68.

ABB offers two theories for why it has standing: (1) vacatur of the Rule is draining its resources and frustrating ABB's pursuit of its mission, ECF No. 91 at 7–11, and (2) the Court's vacatur of the Rule and a failure by Defendants to appeal that decision will deny ABB "procedural rights," *id.* at 12. Neither theory has merit.

*First,* ABB contends that it has standing because, absent the Rule, it will expend resources that it otherwise would use to more broadly pursue its mission and yet "will likely achieve worse results" for the student callers it assists than if the Rule were in place. ECF No. 91 at 8. ABB argues that this anticipated impact is sufficient to establish an Article III injury under *Havens*

4

*Realty Corp. v. Coleman*, 455 U.S. 363 (1982). ECF No. 91 at 7, 9-11.

ABB errs in likening this case to *Havens*. In *Havens*, the plaintiff housing counseling service sued the defendant under the Fair Housing Act on the ground that the defendant provided its employees false information about apartment availability. 455 U.S. at 368. The Court concluded that this impairment of the organization's "ability to provide counseling and referral services for low-and moderate-income homeseekers" was an injury in fact because it was "concrete and demonstrable," and thus "far more than simply a setback to the organization's abstract social interests." *Id.* at 379. As the Supreme Court recently explained in *FDA v. Alliance for Hippocratic Medicine*, the *Havens* plaintiff had standing because the defendant's actions "directly affected and interfered with [the plaintiff's] core business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer." *All. for Hippocratic Med.*, 602 U.S. at 395. "*Havens* was an unusual case, and [the] Court has been careful not to extend the *Havens* holding beyond its context." *Id.* at 396.

ABB errs in likening this case to *Havens* because ABB has not shown that vacatur of the Rule impairs its ability to "[a]ssist[] pregnant and postpartum students who call ABB's free legal helpline" or otherwise frustrates ABB's pursuit of its "mission of protecting the rights of pregnant, parenting, and caregiving workers and students." ECF No. 91 at 7. The only "impairment" ABB identifies is that it must "expend more time and other resources to counsel student callers" than would be necessary absent the Rule. *Id.* at 8-9. ABB provides as an example a student caller whose school forced her to take a leave of absence instead of allowing her to reschedule an exam for her due date, noting that if the Rule were in place, ABB could have "quickly assisted her" by "pointing her to the part of the Rule that defines an adjusted exam date as a reasonable accommodation," instead of having to "try to come up with arguments" to help the student rectify the situation. ECF

5

No. 91 at 8. ABB's argument amounts to a contention merely that the substance of the assistance ABB provides in some cases may be different due to vacatur of the Rule. ABB does not show that the vacatur has prevented it from continuing to counsel the students who call ABB's helpline.

ABB likewise cannot demonstrate standing based on its contention that it is securing "worse results" for students than it would if the Rule were in place. ECF No. 91 at 9. This suggestion simply reframes ABB's argument that it would be easier to assist pregnant and postpartum students in obtaining pregnancy-related accommodations if the Rule were in place, *see id.* Because ABB does not claim that, as a result of the Rule's vacatur, it is now receiving "false information" or the equivalent of "defective goods," *All. for Hippocratic Med.*, 602 U.S. at 395, it fails to show that vacatur of the Rule has "perceptibly impaired" its ability to counsel students who contact its legal helpline, *id.* (quoting *Havens*, 455 U.S. at 379).

Also unavailing is ABB's suggestion that, absent the Rule, "it must divert resources away from other efforts in which it would like to engage to pursue its mission." ECF No. 91 at 9. ABB speculates that if the Rule were in effect, it could expand its core activities by "provid[ing] full representation . . . to more callers, rather than only providing them legal information so they can advocate for themselves." *Id.* (quoting ECF No. 91-1, ¶ 35). But standing cannot rest on a chain of speculative possibilities, *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013), and in any event, the benefits ABB imagines might accrue if it were to prevail on appeal do not equate to a present or imminent harm. Most pertinently, ABB's expectation that it would expand its services if the Rule were in effect does not mean that the Rule's vacatur is "directly affect[ing] and interfer[ing] with [its] core business activities." *All. for Hippocratic Med.*, 602 U.S. at 395.

ABB fails to contend with the Supreme Court's admonition in *Alliance for Hippocratic Medicine* that the holding of *Havens* was specific to the context of that case. Instead, ABB cites

6

pre-*Alliance* Fifth Circuit cases for the proposition that an organization suffers an injury in fact if an action "perceptibly impairs the organization's activities and consequently drains the organization's resources." ECF No. 91 at 7 (alterations omitted) (quoting *Vote.Org v. Callanen*, 89 F.4th 459, 470 (5th Cir. 2023)); *see also id.* at 10-11 (citing *OCA-Greater Houston v. Tex*as, 867 F.3d 604, 610-12 (5th Cir. 2017); *Vote.Org*, 89 F.4th at 470-71; *Ass'n of Cmty. Orgs. for Reform Now v. Fowler* ("*ACORN*"), 178 F.3d 350, 361 (5th Cir. 1999)). Not only did the Fifth Circuit decide those matters without the benefit of the Supreme Court's *Alliance* analysis, but the cases are also distinguishable on their facts, as they involved claimed voting rights violations that interfered with the organizational plaintiffs' efforts to support and encourage voting. For example, in *OCA-Greater Houston*, the challenged state law restricted the interpretation assistance available to English-limited voters, and thereby directly hindered the plaintiff's "getting out the vote" efforts by deterring a substantial portion of its membership from voting. 867 F.3d at 606, 610. Similarly, in *Vote.org*, the plaintiff's mission was to simplify voting, and the challenged state law requiring an original signature on a voter registration form "frustrated use of the organization's smartphone app that allow[ed] for digitized signatures only." 89 F.4th at 467. In the third case, *ACORN*, the Fifth Circuit concluded that the plaintiff organization had met its standing burden for one claim because the organization had presented evidence not only that the defendant's alleged violation of the National Voter Registration Act made the organization's core activities "more difficult," but also that the organization's mission was "in direct conflict" with the challenged conduct. 178 F.3d at 361. All three voting rights cases cited by ABB thus involved circumstances more akin to the direct interference with core activities at issue in *Havens*. *See All. for Hippocratic Med.*, 602 U.S. at 395.

    ***Second***, ABB has not demonstrated standing on the basis that it is suffering a "procedural"

injury. ECF No. 91 at 12. ABB argues that the Court's vacatur of the Rule, in combination with a failure by Defendants to defend the Rule on appeal, will deprive ABB of the right to submit input on whether the Rule should be rescinded via a notice-and-comment rulemaking. *Id.* (citing 5 U.S.C. § 553(c)). But a claimed deprivation of a procedural right is of no help to ABB unless ABB can also show that is suffering some concrete and particularized injury due to the Rule's vacatur. While a procedural claim relaxes the redressability requirement, a procedural deprivation "in vacuo" is insufficient for constitutional standing because "the requirement of injury in fact is a hard floor of Article III jurisdiction." *Summers v. Earth Island Institute*, 555 U.S. 488, 497 (2009); *see, e.g.*, *Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 503 (5th Cir. 2024) (addressing whether plaintiff had standing based on a procedural injury *after* "[h]aving determined that [the plaintiff] ha[d] standing based on economic injury"). Here, as explained above, ABB has failed to demonstrate that vacatur of the Rule is causing it to suffer any such Article III injury. In any event, the government has no obligation to appeal from an adverse judgment, and the government's decision to forego an appeal in no way creates a "procedural" right for potential intervenors like ABB to challenge that decision.

Because ABB has not shown that it is suffering any concrete and particularized, actual or imminent injury due to the Court's vacatur of the Rule, it lacks standing to pursue an independent appeal. *See Va. House of Delegates*, 587 U.S. at 663; *Franciscan All.*, 414 F. Supp. 3d at 938. Accordingly, the Court should deny ABB's motion to intervene.

## CONCLUSION

For the foregoing reasons, the Court should deny ABB's motion to intervene.

Dated: April 7, 2025                                  Respectfully submitted,

                YAAKOV M. ROTH
                Acting Assistant Attorney General

                DIANE KELLEHER
                Director, Federal Programs Branch

                */s/ Elizabeth Tulis*
                ELIZABETH TULIS
                Assistant Director
                United States Department of Justice
                Civil Division, Federal Programs Branch
                1100 L Street NW
                Washington, DC 20005
                Phone: (202) 514-9237
                Fax: (202) 616-8470
                E-mail: elizabeth.tulis@usdoj.gov

                *Counsel for Defendants*