UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CARROLL INDEPENDENT SCHOOL DISTRICT,<br><br>            Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, et al.,<br><br>            Defendants,<br><br>    and<br><br>A BETTER BALANCE,<br><br>           [Proposed] Intervenor-Defendant. | Case No. 4:24-CV-00461-O |

**PROPOSED INTERVENOR-DEFENDANT
A BETTER BALANCE'S REPLY IN SUPPORT OF ITS MOTION TO INTERVENE**

# INTRODUCTION

A Better Balance ("ABB") seeks to intervene in this case to defend the 2024 Title IX Rule's important protections for pregnant and postpartum students. Unlike the plaintiff in the recent Supreme Court case on which the parties rely, ABB is not a pure issue advocacy organization looking to "spend its way into standing" by advocating for policy reforms. Rather, the Rule's vacatur perceptibly impairs ABB's counseling service—a core activity—and thus requires ABB to divert resources from other work in pursuit of its mission. This is an injury-in-fact, caused by the Rule's vacatur, that would be redressed by its narrowing on appeal. Defendants rightly do not contest that ABB is otherwise entitled to mandatory and permissive intervention. Contrary to Carroll ISD's argument, ABB meets Rule 24(a)'s requirements for mandatory intervention. Had ABB tried to intervene last year, as Carroll ISD contends it should have, its motion would have been premature. And while ABB will be severely prejudiced if the Court denies its intervention, Carroll ISD will not be prejudiced by any delay on ABB's part. Further, ABB unquestionably has a substantial interest in parts of the Rule. Carroll ISD's cursory arguments as to permissive intervention are no more persuasive. Accordingly, the Court should grant ABB's motion.

# ARGUMENT

I. **ABB HAS STANDING**

    A. **ABB Has Standing Because This Court's Vacatur Impairs A Core Activity and Drains Its Resources**

        1. **ABB Has Suffered an Injury-In-Fact**

1. *Food & Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), confirms ABB has standing. That recent case clarified that an organization cannot "spend its way into standing" by electing to spend money to advocate against a government rule or action with which it disagrees. *Id.* at 394. There, organizations could not establish standing to challenge the

1

FDA's approval of a medication based on their voluntary decision to advocate against certain studies on the medication's safety risks and pay for "public education" campaigns to share their views of the medication. *Id.* at 394-97. In contrasting those facts with *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), *Alliance* affirmed *Havens*'s continued power: An organization may have standing where the challenged conduct interferes with its core business activity such that it must expend extra resources. *See Alliance*, 602 U.S. at 393-96; *Fair Hous. Ctr. of Metro. Detroit v. Singh Senior Living, LLC*, 124 F.4th 990, 993 (6th Cir. 2025); *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 396-97 (4th Cir. 2024). *Alliance* explained that the "[c]ritical" fact in *Havens*—distinguishing it from a plaintiff "spend[ing] its way into standing"—was that the plaintiff there "not only was an issue-advocacy organization, but also operated a housing counseling service" with which the challenged conduct interfered. 602 U.S. at 394-95.

Like the plaintiff in *Havens*, ABB engages in both issue advocacy and counseling and is suffering a "perceptibl[e] impair[ment] [to its] ability to provide counseling" with a "consequent drain on the organization's resources" due to the vacatur. *Havens*, 455 U.S. at 379. Like the plaintiff in *Havens*, ABB does not lose standing because it can still provide counseling, or because it provided counseling prior to the vacatur: The premise of *Havens*-style standing is that pre-existing counseling becomes harder, not that it stops. *See* ABB Mot. Intervene 9-10, ECF No. 91. And, unlike the organizational plaintiffs in *Alliance*, ABB does not claim injury based on its voluntary public advocacy work to try to reform law it does not like. *See id.* at 7-11.

*Alliance* did not hold that an organization's direct "legal right" must be impaired, Pl.'s Opp'n 9-10, ECF No. 149, or narrow *Havens* to claims where an organization "receiv[es] 'false information' or the equivalent of 'defective goods,'" Defs.' Opp'n 6, ECF No. 131; *see* Pl.'s Opp'n 9. Rather, it approvingly cited many cases in which the Court found standing even though the

2

defendant's conduct harmed those parties indirectly. *See Alliance*, 602 U.S. at 384-85. (ABB could, though, meet that standard: The vacatur makes its primary tool for helping students worse.)

2. Carroll ISD (at 11) and Defendants (at 7) try to dismiss as outdated Fifth Circuit cases that confirm an unregulated organization can establish an injury-in-fact by showing a diversion of its resources necessitated by a "perceptibl[e] impair[ment] to its "activities" and "consequent[] drain" on "the organization's resources." *Vote.org v. Callanen*, 89 F.4th 459, 470 (5th Cir. 2023); *see OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017); *Ass'n of Cmty. Orgs. for Reform Now v. Fowler ("ACORN")*, 178 F.3d 350, 360 (5th Cir. 1999). These cases remain good law post-*Alliance*. *See La Union Del Pueblo Entero v. Abbott*, 753 F.Supp.3d 515, 559-60 (W.D. Tex. 2024) (applying pre-*Alliance* Fifth Circuit law). "[F]or a Supreme Court decision to override a Fifth Circuit case, the decision must unequivocally overrule prior precedent; mere illumination of a case is insufficient." *Gahagan v. U.S. Citizenship & Immigr. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018). The parties do not identify any part of *Alliance* that overrules these Fifth Circuit cases. Moreover, a "district court is 'not free to overturn' Fifth Circuit precedent, even if the Supreme Court has 'implicitly overruled' [it]." *United States v. Brown*, 720 F.Supp.3d 475, 478 (S.D. Miss. 2024) (quoting *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 789, 792 (5th Cir. 2021)).

Plus, even accepting their characterizations of ABB's cited Fifth Circuit cases, Defendants are wrong (at 7) that they are distinguishable on their facts. Defendants contend that the plaintiff in *OCA-Greater Houston* had standing because the challenged law "directly hindered" its voter turnout "efforts by deterring a substantial portion of its membership from voting." Defs.' Opp'n 7 (citing 867 F.3d at 606, 610). That is not what the case says. *See* 867 F.3d at 610. Regardless, the Rule's vacatur "directly hinders" ABB's efforts: Because of the vacatur, students have fewer rights and greater need for ABB's services, and ABB's primary tool to assist these students is weaker,

3

so the organization achieves worse results for its callers. *See* Greenberg Decl. ¶¶ 14-37, ECF No. 91-1. Similarly, just as the challenged conduct in *Vote.org* "frustrated [the plaintiff's] use of [its] smartphone app" to register voters, Defs.' Opp'n 7 (quoting 89 F.4th at 467); *see also* 89 F.4th at 470, vacatur of the Rule has frustrated ABB's use of its helpline by making calls with students less efficient and effective, *see* Greenberg Decl. ¶¶ 14-34. Just as the challenged conduct in *ACORN* was "in direct conflict" with "the organization's mission," Defs.' Opp'n 7 (quoting 178 F.3d at 361), vacatur of the Rule's provisions providing unambiguous rights to pregnant and postpartum students is in direct conflict with ABB's mission of advocating for those students, *see* Greenberg Decl. ¶ 2. Ultimately, like the organizations in these cases, ABB has standing because these "hind[rances]" and "conflict[s]" require it to expend more resources on its helpline work with students, at the cost of other efforts. *See* ABB Mot. 7-9.

For its part, Carroll ISD notes (at 11) that ABB's cited Fifth Circuit cases involved violations of laws that consumed an organization's resources in a way that would not have been spent otherwise. So too, here: The Rule's vacatur has also forced ABB to expend resources in a way that it otherwise would not have. *See* ABB Mot. 7-9. Carroll ISD also notes (at 9) that a diversion of resources alone is not an injury-in-fact. True. But a diversion of resources combined with a perceptible impairment is. *See La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., L.L.C.*, 82 F.4th 345, 355 (5th Cir. 2023). And ABB has demonstrated both. *See* ABB Mot. 7-9.

3. The parties' attempts to minimize ABB's injuries cannot be squared with ABB's evidence. For example, Defendants assert that ABB "conten[ds] merely that the substance of the assistance ABB provides in some cases may be different due to vacatur of the Rule." Defs.' Opp'n 6. Similarly, Carroll ISD characterizes ABB's injury as only that "its client counseling in the future might be more complex." Pl.'s Opp'n 9-10. That is just not right: ABB has provided evidence that,

4

because of the Rule's vacatur, it must spend significantly more resources to assist each student-caller—diverting resources from other efforts, through the helpline and otherwise—and it nonetheless achieves worse results for these students. ABB Mot. 7-9; Greenberg Decl. ¶ 35. Nor is ABB's injury a lack of "uniform national rule." Pl.'s Opp'n 9-10. There already is a national Title IX regulation protecting pregnant and postpartum students. *See* 32 C.F.R. § 106.40 (1980). But, because that regulation is less clear and expansive than the Rule, the vacatur makes it more difficult for ABB to assist student-callers. ABB Mot. 7-9. Defendants are similarly wrong (at 6) that ABB's injuries are impermissibly speculative. The Rule's vacatur is *currently* interfering with ABB's core business activity, assisting helpline callers, and *currently* requiring it to expend additional resources. ABB Mot. 7-9; *see Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 502 (5th Cir. 2024) (explaining "there [was] nothing conjectural" about an organization's allegation that a policy was "*currently* impacting its members").

### 2. ABB Has Established Causation and Redressability

Only Carroll ISD contends (at 14-15) that ABB has not established causation and redressability. That is wrong. Carroll ISD never disputes that ABB's actual injury—expending more resources to advise student-callers, while still achieving worse results and diverting resources from other efforts—is caused by the vacatur. Instead, it ignores that injury and complains ABB has failed to demonstrate causation for another, unnamed harm. Carroll ISD also ignores ABB's evidence about "what issues the calls raised specifically" and "whether the Rule would apply at all," and its "evidence that students called about accommodations that would have been required by the Rule." Pl.'s Opp'n 14-16; *see* Greenberg Decl. ¶¶ 13, 17-19, 23-27, 29-33 (providing this evidence). Similarly, Carroll ISD ignores ABB's evidence about how the vacatur injures the organization itself. *See* ABB Mot. 7-9 (citing Greenberg Decl. ¶¶ 6-37). Moreover, ABB's evidence about its pre-Rule experiences is relevant because it "serve[s] as evidence of expected

5

future harm" now that the Rule has been vacated. *Murthy v. Missouri*, 603 U.S. 43, 70 (2024).

Carroll ISD is also wrong that ABB's injuries are not redressable because "other courts have enjoined [the Rule's] enforcement" in some states and at schools. Pl.'s Opp'n 17. Reversal of this Court's nationwide vacatur of the pregnancy-related provisions would remove "one obstacle" to reviving them. ABB Mot. 11-12. And even if the Rule remains enjoined in parts of the country, its partial revival would lessen ABB's injury. ABB's helpline serves students nationwide, and it hears from students in states not covered by other courts' injunctions. *See, e.g.*, Greenberg Decl. ¶¶ 6-7, 19. Also, where the Rule applies, students are less likely to need ABB's helpline, thus reducing the drain on ABB's resources. *See id.* ¶¶ 31-34; *see also id.* ¶ 13.

### B.     ABB Has Standing Based on Its Procedural Injury

Defendants argue (at 8) that ABB cannot establish a "concrete" interest necessary for procedural injury standing for the same reason that it lacks *Havens* organizational standing. Not so. First, as explained, ABB has established *Havens* standing. *See supra* Part I.A. Second, "the concrete interest analysis is subject to a looser standard than [a traditional Article III] injury analysis." *Becerra*, 116 F.4th at 503. Accordingly, ABB can "demonstrate a concrete interest, even if its [*Havens*] injury theory failed." *Id.* Carroll ISD does no better: It merely notes (at 13) that a procedural injury requires a concrete interest without addressing why ABB does not have one.

Moreover, Defendants do not dispute that they have engaged in collusive litigation tactics, or that those tactics caused ABB a procedural injury. Rather, they contend without citation that the federal government "has no obligation to appeal from an adverse judgment." Defs.' Opp'n 8. But Defendants' failure to appeal is only one part of its "rulemaking-by-collusive-acquiescence." *Arizona v. City & Cnty. of San Francisco*, 596 U.S. 763, 766 (2022) (Roberts, J., concurring) (quoting *City & Cnty. of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 992 F.3d 742, 744 (9th Cir. 2021) (VanDyke, J., dissenting)). Defendants "seized upon . . . the . . . judgments against

it" to get rid of a regulation it did not like, and also "opposed efforts by other interested parties . . . to carry on the defense of the Rule." *Id.* at 765-66. In doing so, Defendants violated ABB's right to participate in the notice-and-comment process required to rescind a regulation. Carroll ISD insists (at 12) that ABB had no such right because the Rule was vacated. That misses the point: Defendants have acquiesced to that vacatur to avoid the process necessary to rescind the Rule.

## II.   ABB IS ENTITLED TO INTERVENTION AS OF RIGHT

### A.   ABB's Motion to Intervene is Timely

1. Carroll ISD is wrong (at 18-23) that ABB filed its motion too late. If ABB had moved to intervene last summer, as Carroll ISD says it should have, its motion would have been premature. Back then, ABB could not have shown, as required by Rule 24(a)(2), that its interest was inadequately represented by the existing parties to the suit. At that stage, and until recently, Defendants defended the Rule. *See, e.g.*, Defs.' Mem. Supp. Resp. Mot. Summ. J., ECF No. 65; Defs.' Br. Supp. Resp. Mot. Prelim. Inj., ECF No. 29. In doing so, Defendants demonstrated they shared ABB's "ultimate objective" in this case, and thus were adequate representatives. *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1288 (5th Cir. 1987). Contrary to Carroll ISD's suggestion (at 19-20) without legal authority, Defendants were not inadequate representatives last year simply because their severability argument was not successful. "Differences of opinion regarding an existing party's litigation strategy or tactics" will not render a party who shares a putative intervenor's "ultimate objective" an inadequate representative. *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022) (collecting cases). Also, Defendants' arguments were not as thin as Carroll ISD claims. *See, e.g.*, Defs.' Mem. Supp. Resp. Mot. Summ. J. 42-50; Defs.' Br. Supp. Resp. Mot. Prelim. Inj. 29-30. The government convinced at least four Supreme Court justices, one appellate judge, and one district court. *See Dep't of Educ. v. Louisiana*, 603 U.S. 866, 868-76 (2024) (Sotomayor, J., dissenting in part); *Tennessee v. Cardona*,

7

No. 24-5588, 2024 WL 3453880, at *5-7 (6th Cir. July 17, 2024) (Mathis, J., dissenting in part); *Alabama v. Cardona*, No. 24-CV-533, 2024 WL 3607492, at *11-13 (N.D. Ala. July 30, 2024).

2. Carroll ISD previously acknowledged that ABB and other proposed intervenors may not have known "about the threat to their interests" until "shortly after this Court vacated the Rule" on February 19. Pl.'s Opp'n Mot. Ext. 7, ECF No. 126. Under *Franciscan Alliance, Inc. v. Burwell*, that is starting the clock too soon, since Defendants did not decide not to appeal until weeks later. *See* No. 16-CV-00108-O, 2017 WL 2964088, at *3-4 (N.D. Tex. Jan. 24, 2017) (O'Connor, J.) (holding that a defendant's refusal to "provide[] assurances that they will appeal" an adverse ruling does not render it an inadequate representative); Defs.' Resp. Opp'n VRLC & Doe Mot. Intervene 1-2, *Tennessee v. McMahon*, No. 24-cv-00072 (E.D. Ky. Mar. 7, 2025), ECF No. 180 (explaining federal defendants had "not yet made a final determination" about whether to appeal, by the March 10 deadline, another court's vacatur of the Rule).

But even accepting Carroll ISD's timeline, ABB cannot be faulted for taking a month to draft the necessary filings. Carroll ISD is just wrong that ABB "completed that work before seeking intervention in *Tennessee*." Pl.'s Opp'n 22. To intervene here, ABB had to assemble a new legal team that included local counsel who meets this Court's requirements. *See* Loc. R. 83.10. To write a new brief, ABB had to research Fifth Circuit law; *Tennessee* is in a different circuit. ABB also had to answer Carroll ISD's 346-paragraph complaint. *See* ABB Answer, ECF No. 92. The time ABB required to prepare these filings is less than permitted for other, successful intervenors. *See, e.g.*, *Ass'n of Pro. Flight Attendants v. Gibbs*, 804 F.2d 318, 321 (5th Cir. 1986) (five months); *VanDerStok v. Garland*, 680 F.Supp.3d 741, 755-56 (N.D. Tex. 2023) (O'Connor, J.) (three months), *aff'd in part, vacated in part on other grounds,* 86 F.4th 179 (5th Cir. 2023), *rev'd on other grounds sub nom. Bondi v. VanDerStok*, 145 S.Ct. 857 (2025); *Buckland v. Ohio*

*Nat'l Life Assurance Corp.*, No. 15-cv-400-O, 2015 WL 13188295, at *2 (N.D. Tex. Oct. 7, 2015) (O'Connor, J.) (two months); ABB Mot. 16 (collecting cases). And ABB moved to intervene in *Tennessee* earlier than here because that case reached final judgment more than five weeks earlier, prompting ABB to intervene even before Defendants decided whether to appeal. *See Tennessee v. Cardona*, No. 24-CV-072, 2025 WL 63795, at *7 (E.D. Ky. Jan. 10, 2025).

      3. ABB would be significantly prejudiced if it cannot intervene. ABB Mot. 17; *see Edwards v. City of Houston*, 78 F.3d 983, 1002 (5th Cir. 1996) (holding movants would be prejudiced if denied intervention to appeal consent decree, the only way to challenge it). The timing of ABB's motion, however, does not prejudice Carroll ISD. The district asserts (at 23) that it is prejudiced because, had ABB moved earlier, the parties could have included a plan for discovery related to ABB's standing in their August 7, 2024, joint status report. *See* Joint Notice, ECF No. 56. But ABB was not required, or permitted, to intervene by then. *See supra* pp. 7-8. Plus, if discovery is warranted, it would be no more onerous to Carroll ISD now than it would have been earlier. So, any prejudice would be a result of ABB's intervention, not any putative delay, and the timeliness "factor is concerned only with" the latter, *Edwards*, 78 F.3d at 1002. This case is nothing like *Rotstain v. Mendez*, where the parties had already engaged in discovery, and, due to the movants' eighteen-month delay, their intervention would have required "a second round of fact discovery, risking duplication, inefficiency, and increased costs." 986 F.3d 931, 938 (5th Cir. 2021).[1]

      Carroll ISD is also wrong that ABB intervening would prejudicially require it to address arguments "for the very first time on appeal." Pl.s' Opp'n 23-24. The parties have already briefed whether the challenged provisions were severable. *See, e.g., supra* p. 7 (collecting Defendants'

---

[1] ABB would not have needed standing to intervene last summer. *See Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006). ABB's litigation director's declaration is sufficient evidence at summary judgment. *See, e.g., Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

9

briefing). Carroll ISD offers no support for its assumption that ABB will advance arguments different from Defendants'. But, had Defendants appealed, they would not have been "limited to the precise arguments made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). Carroll ISD is not prejudiced by facing that appeal from ABB instead. *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977).

### B. ABB Has Substantial Interests in Part of the Rule

In mischaracterizing ABB's interest as purely "ideological," Pl.'s Opp'n 24, Carroll ISD ignores ABB's concrete interests in the pregnancy-related provisions of the Rule: Without those provisions, ABB must devote more staff time and resources to provide direct legal services to student-callers in order to further its mission. ABB Mot. 18. That is a substantial interest. *Id.* Separately, because ABB played a central role in advocating for the pregnancy-related provisions of the Rule, it has an interest in protecting them. ABB Mot. 19. ABB was not just one commenter among many. It authored two comments on the pregnancy-related provisions of the proposed regulation, one signed by "allied advocacy organizations." Greenberg Decl. ¶ 4. The Education Department revised the regulations based on ABB's recommendations, *id.*, so the organization is directly responsible for portions of the Rule it seeks to protect.

## III. PERMISSIVE INTERVENTION IS ALSO WARRANTED

In the alternative, the Court should grant permissive intervention. As explained, ABB's motion is timely, *see supra* Part II.A, and its intervention will not prejudice Carroll ISD, *see supra* pp. 9-10; *Wallach v. Eaton Corp.*, 837 F.3d 356, 378 (3d Cir. 2016) (treating discovery into intervenor's standing as unburdensome). Carroll ISD does not explain how ABB's intervention "would unduly delay the case," Pl.'s Opp'n 25, or how that would injure the district.

### CONCLUSION

ABB respectfully requests that this Court grant its Motion to Intervene.

DATED: April 24, 2025                               Respectfully submitted,

/s/ *Alexandra Z. Brodsky*
Alexandra Z. Brodsky*
Adele P. Kimmel*
PUBLIC JUSTICE
1620 L Street NW
Suite 630
Washington, DC 20036
Phone: (202) 797-8600
abrodsky@publicjustice.net
akimmel@publicjustice.net

Roger L. Mandel
JEEVES MANDEL LAW GROUP
2833 Crockett Street, Suite 135
Fort Worth, TX 76107
Phone: 214-253-8300
rmandel@jeevesmandellawgroup.com
khill@jeeveslawgroup.com

Matthew Borden*
Kory DeClark*
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210
Facsimile: (415) 276-1808
borden@braunhagey.com
declark@braunhagey.com

Christman Rice*
Marissa Benavides*
Lily (Haeun) Kim*
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
Telephone: (646) 829-9403
Facsimile: (415) 276-1808
rice@braunhagey.com
benavides@braunhagey.com
kim@braunhagey.com

*\*Admitted pro hac vice*

*Attorneys for Proposed Intervenor-Defendant*

## CERTIFICATE OF SERVICE

I certify that on April 24, 2025, the above document was filed with the CM/ECF filing system, which electronically serves a copy to all counsel of record.

DATED: April 24, 2025                              /s/ *Alexandra Z. Brodsky*
                                                   Alexandra Z. Brodsky