IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CARROLL INDEPENDENT SCHOOL DISTRICT, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> UNITED STATES DEPARTMENT OF § <br> EDUCATION, et al., § <br> § <br> Defendants. § | Civil Action No. 4:24-cv-00461-O |

## ORDER

Before the Court are Proposed Intervenor-Defendant A Better Balance's Motion to Intervene (ECF No. 91), filed March 25, 2025; Proposed Intervenor-Defendants Victim Rights Law Center and Jane Doe's Motion to Intervene (ECF No. 99), filed March 31, 2025; Defendants' Responses (ECF Nos. 131, 148), filed April 2, 2025, and April 17, 2025, respectively; Plaintiff's Response (ECF No. 149), filed April 17, 2025; Proposed Intervenor-Defendant A Better Balance's Reply (ECF No. 151), filed April 24, 2025; and Proposed Intervenor-Defendants Victim Rights Law Center and Jane Doe's Reply (ECF No. 152), filed April 24, 2025. The above-mentioned Motions are fully briefed and ripe for the Court's review. Upon reviewing the briefing and applicable law, the Court hereby **DENIES** Proposed Intervenor-Defendant A Better Balance's Motion (ECF No. 91) and Proposed Intervenor-Defendants Victim Rights Law Center and Jane Doe's Motion (ECF No. 99).

## I.   BACKGROUND

This case concerns the Department of Education's promulgation of a Final Rule that interprets Title IX of the Education Amendments of 1927 ("Title IX"), 20 U.S.C. § 1681 *et seq.*, as prohibiting discrimination based on sexual orientation and gender identity.[1] The regulatory landscape surrounding the Final Rule is well-known and does not require further mention here.[2]

### A.   Relevant Procedural History

Plaintiff Carroll Independent School District ("Carroll ISD") initiated this lawsuit requesting the Court hold the Final Rule unlawful; set it aside under the Administrative Procedure Act, 5 U.S.C. § 706; and enjoin Defendants from enforcing it against Carroll ISD.[3] On July 11, 2024, the Court granted a preliminary injunction to Carroll ISD, blocking the Final Rule's enforcement as to Carroll ISD, while deferring ruling on Carroll ISD's request for a stay of the Final Rule's effective date under 5 U.S.C. § 705.[4] After ordering additional briefing, the Court denied Carroll ISD's request for a stay because the preliminary injunction provided complete relief.[5]

On February 19, 2025, the Court granted Carroll ISD's Motion for Summary Judgment and issued a Final Judgment, thereby vacating the Final Rule.[6] A flurry of procedural activity has since followed. Proposed Intervenor-Defendant A Better Balance ("ABB") moved to intervene in this action on March 25, 2025.[7] Soon after, Proposed Intervenor-Defendants Victim Rights Law

---

[1] *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 34 C.F.R. § 106 (2024) (the "Final Rule").
[2] *See Texas v. United States*, 740 F. Supp. 3d 537, 542–44 (N.D. Tex. 2024) (Kacsmaryk, J.); *Texas v. Cardona*, 743 F. Supp. 3d 824, 835–41 (N.D. Tex. 2024) (O'Connor, J.); *Louisiana v. U.S. Dep't of Educ.*, 737 F. Supp. 3d 377, 386–92 (W.D. La. 2024) (Doughty, J.).
[3] Carroll ISD Compl. 2, ECF No. 1.
[4] July 11, 2024, Mem. Op. & Order 14–15, ECF No. 43.
[5] July 31, 2024, Order 2, ECF No. 55.
[6] *See* Feb. 19, 2025, Order, ECF No. 86; Feb. 19, 2025, Final J., ECF No. 87.
[7] *See* ABB Mot. Intervene, ECF No. 91.

Center ("VRLC") and Jane Doe ("Doe") also moved to intervene.[8] The Court found good cause to extend the appeal deadline from April 21, 2025, to May 21, 2025, and ordered full briefing on the Motions to Intervene.[9] These Motions are now ripe for the Court's review.

### B. Proposed-Intervenor Defendants

ABB "is a national nonprofit legal advocacy organization dedicated to advocating for pregnant, parenting, and caregiving workers and students."[10] Among other initiatives, ABB engages in legislative advocacy, legal services, and strategic litigation to protect the rights of these workers and students.[11] ABB moves to intervene in this action "for the limited purpose of appealing a portion of the judgment to the Fifth Circuit to argue it should revive the portions of the [Final] Rule that protect pregnant and postpartum students."[12]

VRLC is "a nonprofit advocacy organization that provides legal assistance to student survivors of sex-based harassment."[13] Doe alleges she was raped and strangled by a classmate in 2024.[14] Both "VRLC and Doe move to intervene to appeal the vacatur of the [Final] Rule's provisions that pertain to sex-based harassment, including the longstanding definition of hostile-environment sex-based harassment that the [United States Department of Education] had enforced for decades before the 2020 Rule."[15]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) requires courts to permit a movant to intervene as a matter of right provided (1) the movant's application for intervention is timely, (2) the movant has

---

[8] *See* VRLC and Doe Mot. Intervene, ECF No. 99.
[9] *See* Apr. 11, 2025, Order, ECF No. 145.
[10] ABB Mot. Intervene 2, ECF No. 91.
[11] *Id.*
[12] *Id.* at 1.
[13] VRLC and Doe Br. Supp. Mot. Intervene 4, ECF No. 100.
[14] *Id.*
[15] *Id.*

3

an interest related to the action, (3) the movant's interest would be impaired or impeded by the instant case, and (4) the movant's interest is not adequately represented by the existing parties to the suit. FED. R. CIV. P. 24(a)(2); *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247 (5th Cir. 2009). And though, as the movant, the would-be intervenor carries the burden of establishing all four elements for intervention as of right, that burden is "minimal," albeit cognizable. *Texas v. United States*, 805 F.3d 653, 661 (5th Cir. 2015). In making its determination, a court is to accept the movant's factual allegations as true. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022). "Failure to satisfy any one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist. & State of La.*, 493 F.3d 570, 578 (5th Cir. 2007) (citation omitted).

Rule 24(b) also permits a movant to seek permissive intervention at the discretion of a district court, provided the applicant (1) files a timely motion, (2) shows it "has a claim or defense that shares with the main action a common question of law or fact," and (3) the court determines that intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(1)(B), (b)(3).

"[T]o appeal a decision that the primary party does not challenge, an intervenor must independently demonstrate standing." *Louisiana v. Haaland*, 86 F.4th 663, 666 (5th Cir. 2023) (alteration in original) (quoting *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019)). Article III of the Constitution limits the exercise of the judicial power to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 438 (2017) (citation omitted). "The party invoking federal jurisdiction bears the burden of establishing" that it has standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

There are three requirements for Article III standing. A party seeking relief in federal court must demonstrate: (1) an injury-in-fact, which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) that the injury is "fairly traceable to the challenged action"; and (3) that it is "likely . . . the injury will be redressed by a favorable decision." *Id.* at 560–61 (cleaned up).

## III. ANALYSIS

Among other arguments, ABB and VRLC both contend they are organizations that satisfy Article III standing requirements such that they may intervene in this action.[16] Similarly, Doe argues she is an individual who has been harmed by the Court's vacatur of the Final Rule to such an extent as to give rise to Article III standing.[17] For the following reasons, the Court **DENIES** ABB's and VRLC and Doe's Motions because they do not have standing under Article III to intervene in this case. Because all three Proposed Intervenor-Defendants lack Article III standing, the Court does not reach their remaining arguments.

### A. ABB and VRLC lack a cognizable injury.

The Court concurrently addresses ABB and VRLC's organizational standing arguments. "An organization 'can establish standing in its own name if it meets the same standing test that applies to individuals.'" *La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., L.L.C.*, 82 F.4th 345, 351 (5th Cir. 2023) (quoting *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017)). Thus, both ABA and VRLC must satisfy *Lujan*'s tripartite test:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third,

---

[16] ABB Mot. Intervene 7–12, ECF No. 91; VRLC and Doe Br. Supp. Mot. Intervene 6–12, ECF No. 100.
[17] VRLC and Doe Br. Supp. Mot. Intervene 13–15, ECF No. 100.

it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* (alterations in original) (quoting *Lujan*, 504 U.S. at 560–61).  ABB and VRLC "falter[] on the first prong, injury-in-fact, so [the Court] need not tarry on the others."  *Id.*

ABB and VRLC contend that the Court's vacatur of the Final Rule has "perceptibly impaired" their organizational activities and created "a consequent drain" on their respective resources.[18]  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).  "An organization may establish a cognizable injury by showing that its ability to pursue its mission is *perceptibly impaired* because it has diverted significant resources to counteract the defendant's conduct[.]" *La. Fair Hous. Action Ctr.*, 82 F.4th at 351 (emphasis added) (alteration in original) (internal quotation marks and citations omitted).  "However, not every diversion of resources rises to an injury sufficient to confer standing."  *Id.* (citing *NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010)).  "The organization's purportedly injurious counteractions must *differ* from its routine [ ] activities."  *Id.* (emphasis added) (alteration in original) (internal quotation marks and citations omitted).  To be clear, "the 'perceptible impair[ment]' to an organization's ability to carry out its mission, not the 'drain on the organization's resources,' is the 'concrete and demonstrable injury' for organizational standing."  *Id.* at 353 (alteration in original) (quoting *Havens Realty*, 455 U.S. at 379).

Here, ABB and VRLC have not shown that their alleged "injurious counteractions" to the Court's vacatur of the Final Rule differ from their routine activities.  *Id.*  Beginning with ABB, it "is a national nonprofit legal advocacy organization dedicated to *advocating* for pregnant, parenting, and caregiving workers and students."[19]  ABB "work[s] to protect the rights of these

---

[18] ABB Mot. Intervene 7, ECF No. 91; VRLC and Doe Br. Supp. Mot. Intervene 7, ECF No. 100.
[19] ABB App. Supp. Mot. Intervene Ex. 1 (Greenberg Decl.) ¶ 2, ECF No. 91-1 (emphasis added).

6

workers and students through *legislative advocacy*, *direct legal services*, and *strategic litigation*, among other avenues."[20]  ABB maintains it "has played a leading role in advocating for dozens of laws and policies."[21]  For instance, it "advocated for the federal Pregnant Workers Fairness Act" and "played a leading role in passing the federal PUMP for Nursing Mothers Act."[22]  A significant portion of ABB's legal work "consists of counseling workers and students who contact [it] through [its] free legal helpline."[23]

None of ABB's alleged injuries have perceptibly impaired its ability to carry out its mission.  To the contrary, the efforts ABB has taken to counteract the effects of the Court's vacatur of the Final Rule "would appear to advance, rather than impair, [ABB's] mission of" providing legal services and assisting workers and students through its helpline.  *La. Fair Hous. Action Ctr.*, 82 F.4th at 354.  For instance, as a result of the vacatur of the Final Rule, ABB argues that its "lawyers must spend significantly more time and resources to respond to each call," and they must "conduct research and craft individualized arguments" for its callers.[24]  In other words, "ABB currently must expend 'more time and other resources to counsel student-callers.'"[25]  These alleged counteractions, though, squarely comport with ABB's mission and purpose as an organization to provide legal services and counseling, primarily through its helpline.  Indeed, ABB has *furthered* its mission by spending more time with callers, counseling them on changes in the Title IX legal landscape, and providing them with legal services, all of which are part of ABB's routine organizational activities.  Thus, ABB "has not pled facts sufficient to show that its ability to carry

---

[20] *Id.* (emphasis added).
[21] *Id.* ¶ 3.
[22] *Id.*
[23] *Id.* ¶ 6.
[24] ABB Mot. Intervene 8, ECF No. 91.
[25] *Id.* (quoting ABB App. Supp. Mot. Intervene Ex. 1 (Greenberg Decl.) ¶ 35, ECF No. 91-1).

out its mission [is] perceptibly impaired because it has diverted significant resources" to its legal and counseling efforts. *Id.* at 352–53 (internal quotation marks and citations omitted).

Further, ABB contends that "because [its] helpline assistance to students requires more time and other staff resources . . . , it must divert resources away from other efforts in which it would like to engage to pursue its mission."[26] ABB contends that, if the Final Rule were in effect, ABB could provide more comprehensive representation to its callers, such as "drafting demand letters, engaging in pre-suit negotiations, and filing administrative complaints and lawsuits."[27] However, "'diverting' resources from one core mission activity to another, i.e., prioritizing which 'on-mission' projects, out of many potential activities, an entity chooses to pursue, does not suffice." *Id.* at 355. Indeed, "organizations daily must choose which activities to fund, staff, and prioritize." *Id.* ABB admits its "free legal helpline is a core part of how the organization pursues its mission of protecting the rights of pregnant, parenting, and caregiving workers and students."[28] So, ABB's diversion of resources towards assisting and counseling individuals through its helpline cannot constitute a concrete and demonstrable injury, as it is furthering one of its "core mission activit[ies]." *Id.*

In sum, ABB's alleged "impairment of [its] mission, frustration of one of its core activities, and drain on its resources" do not arise to an injury-in-fact.[29]

Now turning to VRLC, it is "dedicated solely to serving the legal needs of victims of sex-based harassment, including survivors of sexual assault, dating violence, and stalking."[30] "VRLC's mission is to provide *legal representation* to such victims to help rebuild their lives and

---

[26] *Id.* at 9.
[27] *Id.* (quoting ABB App. Supp. Mot. Intervene Ex. 1 (Greenberg Decl.) ¶ 35, ECF No. 91-1).
[28] *Id.* at 7.
[29] *Id.* at 9.
[30] VRLC and Doe App. Supp. Mot. Intervene Ex. 1 (Malone Decl.) ¶ 6, App. 3, ECF No. 101.

to promote a national movement committed to seeking justice for every victim."[31]  One of its organizational activities includes "providing education-related legal consultation and representation."[32]  In fact, VRLC attorneys routinely "represent victims to communicate effectively with school administrators, acquire supportive measures to restore and preserve their education, prepare for and attend grievance proceedings, file appeals, and if necessary, file complaints against their schools with the [United States Department of Education]."[33]

VRLC first contends it is injured by the Court's vacatur of the Final Rule because the vacatur has interfered with its core organizational activity, that is, "VRLC's ability to provide legal assistance to student survivors."[34]  The Court disagrees.

VRLC specifically argues the Court's vacatur of the Final Rule is "impairing its mission to redress and prevent sex-based harassment because the change discourages students from requesting its services and filing Title IX complaints with schools."[35]  In other words, "VRLC's clients are now less willing to file or continue with a pending Title IX complaint of sex-based harassment."[36]  Moreover, according to VRLC, the vacatur of the Final Rule has "frustrat[ed] VRLC's mission of representing student survivors in school Title IX proceedings," because schools must dismiss Title IX complaints that "do not meet a narrow and stringent definition of 'sexual harassment,'" among other reasons.[37]  In sum, VRLC argues that unless the Court's vacatur is narrowed, "VRLC and its clients will continue to receive more dismissals of Title IX complaints,

---

[31] *Id.* (emphasis added).
[32] *Id.* ¶ 8.
[33] *Id.*
[34] VRLC and Doe Br. Supp. Mot. Intervene 8, ECF No. 100.
[35] *Id*.
[36] *Id.* at 9; *see id.* at 8 ("[I]n just the first six weeks after vacatur, VRLC received 41% fewer requests for legal assistance compared to the first six weeks after the 2024 Rule became effective.").
[37] *Id.* at 9–10.

9

obtain fewer fair and accurate investigation outcomes, file fewer administrative complaints, and suffer decreased deterrence of sex-based harassment."[38]

VRLC, though, does not contend that the Court's vacatur of the Final Rule has perceptibly impaired its ability to provide *legal representation* to victims of sex-based harassment. Rather, VRLC solely focuses on the negative affects its *clients* may experience as a result of the Court's vacatur of the Final Rule. But the fact that its clients may not receive favorable outcomes in legal proceedings cannot be conflated as a perceptible impairment of VRLC's ability to fulfill its mission. Said differently, VRLC has not been injured "based on the (potential) downstream effects that the reversion to the 2020 Rule's regulatory scheme[39] will have on potential complainants' willingness to pursue Title IX complaints."[40] Indeed, by no means is VRLC restricted from continuing to legally represent victims of sex-based harassment. VRLC must now navigate new and complicated legal issues in light of the vacatur of the Final Rule, which comports with its stated mission and purpose. VRLC has not suffered a cognizable and demonstrable injury based on any alleged perceptible impairment of its mission.

Also unavailing is VRLC's second argument, namely, that the vacatur of the Final Rule is "draining its resources."[41] Specifically, VRLC explains it "must now spend at least four times as long as it did before representing student survivors in higher education in grievance proceedings," and "expend significantly more time and resources to provide legal assistance to its clients at all levels of education."[42] VRLC argues it "will be forced to continue diverting its resources toward

---

[38] *Id.* at 10.

[39] On February 4, 2025, the United States Department of Education issued a guidance document announcing that it is enforcing Title IX under the provisions of the 2020 Title IX Rule. *Letter*, U.S. DEP'T OF EDUC., 1 (Feb. 4, 2025), https://www.ed.gov/media/document/title-ix-enforcement-directive-dcl-109477.pdf.

[40] Gov't Resp. 6, ECF No. 148.

[41] VRLC and Doe Br. Supp. Mot. Intervene 10, ECF No. 100.

[42] *Id.* at 11.

its legal assistance program to meet its clients' increased needs."[43]  Like ABB, VRLC's diversion-of-resources arguments fail because VRLC does not "sufficiently allege that [its] resources were diverted towards *non-routine activities*." *Associated Builders & Contractors of Se. Tex., Inc. v. Su*, No. 1:23-CV-00396, 2025 WL 900682, at *18 (E.D. Tex. Mar. 19, 2025) (emphasis in original) (citing *La. Fair Hous. Action Ctr.*, 82 F.4th at 355 (holding that "'diverting' resources from one core mission activity to another" is insufficient to demonstrate injury-in-fact)).  Indeed, the fact that VRLC is spending time and resources providing legal assistance and representing students in grievance proceedings squarely comports with its routine activities.[44]  Thus, VRLC's alleged drain and diversion of resources fail to establish a concrete and demonstrable injury.

Both ABB and VRLC err in likening the facts of this case to *Havens Realty*, 455 U.S. 363.  In *Havens*, the Supreme Court held an organization whose mission was equal opportunity in housing had standing to challenge the "defendants' racial steering practices." *Id.* at 379 (citation omitted).  Importantly, the organization's "activities included the operation of a housing counseling service." *Id.* at 368.  The organization argued that the defendants' "steering practices ha[d] perceptibly impaired [the organization's] ability to provide counseling and referral services for low-and moderate-income homeseekers." *Id.* at 379.  The Supreme Court held there was "no question that the organization ha[d] suffered injury in fact," because "[s]uch concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitute[d] far more than simply a setback to the organization's abstract social interests." *Id.*  In the Fifth Circuit's words, the organization's "provision of [its]

---

[43] *Id.* at 12.
[44] *See* VRLC and Doe App. Supp. Mot. Intervene Ex. 1 (Malone Decl.) ¶¶ 7–8, App. 3, ECF No. 101 ("VRLC provides legal services to help restore victims' lives after experiencing sex-based harassment," which includes "represent[ing] victims to communicate effectively with school administrators, acquir[ing] supportive measures to restore and preserve their education, [and] prepar[ing] for and attend[ing] grievance proceedings.").

services was perceptibly impaired by [the defendants'] discriminatory practices" as the organization "could not place African American clients into housing at [the defendants'] complex when [the defendants were] engaged in illegal racial steering." *La. Fair Hous. Action Ctr.*, 82 F.4th at 355 (summarizing the Supreme Court's holding in *Havens Realty*).

As explained above, the Court's vacatur of the Final Rule has not perceptibly impaired ABB and VRLC's ability to carry out their respective missions. And, unlike the organization in *Havens*, "ABB and VRLC do not identify any false information anyone is giving their potential clients that hinders their core business activities."[45] In any event, the Supreme Court has since clarified that "*Havens* was an unusual case, and . . . has been careful not to extend the *Havens* holding beyond its context." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 396 (2024). So, this Court declines to extend *Havens* to the context of the instant action.

Likewise, ABB and VRLC's reliance on *OCA-Greater Houston* is misplaced. 867 F.3d 604. In *OCA-Greater Houston*, an organization whose primary mission was "voter outreach and civic education" challenged Texas provisions that restricted voters' accessibility to interpreters at voting polls. *Id.* at 610. Because of the Texas provisions at issue, the organization "calibrated its outreach efforts to spend extra time and money educating its members about these Texas provisions and how to avoid their negative effects." *Id.* The Fifth Circuit held the organization suffered an injury-in-fact because it engaged in activities "that consumed its time and resources in a way they would not have been spent absent the Texas law." *Id.* at 612. Thus, the Texas provisions "perceptibly impaired" the organization's ability to fulfill its mission. *Id.* (quoting *Havens Realty*, 455 U.S. at 379).

---

[45] Carroll ISD Resp. 9, ECF No. 149.

*OCA-Greater Houston* is distinguishable. While the organization in *OCA-Greater Houston* experienced perceptible impairment of its mission, ABB and VRLC have experienced no such impairment. Indeed, both ABB and VRLC face no impediment to their ability to fulfill their missions and have engaged in routine activities since the Court's vacatur of the Final Rule. Though ABB and VRLC may be less successful in securing legal victories for their clients, this does not arise to cognizable injuries as they are still able to provide legal services and advocate for their clients in the absence of the Final Rule. *See La. Fair Hous. Action Ctr.*, 82 F.4th at 354 (Because "LaFHAC fail[ed] to allege that its activities in response to Azalea Garden's alleged discrimination perceptibly impaired its mission," *OCA-Greater Houston* was distinguishable.).

In sum, ABB and VRLC fail to demonstrate they have suffered a concrete and demonstrable injury to such an extent as to give rise to Article III standing.

### B. ABB lacks procedural standing.

Next, the Court briefly addresses ABB's alleged procedural standing. ABB argues that Defendants' refusal to defend the Final Rule on appeal deprives ABB of the right to participate in notice-and-comment rulemaking, thereby resulting in ABB's standing to intervene.[46] The Court disagrees.

"[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). A party "can have standing to enforce procedural rights *only* if 'the procedures in question are designed to protect some threatened concrete interest' that is 'the ultimate basis of [the party's] standing.'" *Shrimpers & Fishermen of RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 426 (5th Cir. 2020) (emphasis added) (quoting *Lujan*,

---

[46] ABB Mot. Intervene 12–13, ECF No. 91.

504 U.S. at 573 n.8). Indeed, a party alleging procedural standing must still "show that the action injures [it] in a concrete and personal way" because "the requirement of injury in fact is a hard floor of Article III jurisdiction." *Summers*, 555 U.S. at 497 (citation omitted). As the Court held above, ABB has not demonstrated any cognizable injury.[47] Accordingly, ABB's "assertion of 'a procedural right *in vacuo*' is therefore 'insufficient to create Article III standing.'" *Shrimpers & Fishermen of RGV*, 968 F.3d at 426 (quoting *Summers*, 555 U.S. at 496).

### C. Doe lacks Article III standing.

Finally, the Court addresses Doe's Article III standing. Doe argues that the Court's vacatur of the Final Rule and the reversion to the 2020 Rule harm Doe "because she will now face cross-examination by her rapist's advisor as a part of her Title IX investigation, which she fears will be a retraumatizing experience that blames her for her own rape."[48] For the following reasons, the Court concludes Doe has not suffered a concrete or demonstrable injury under Article III.

Doe alleges she was raped and strangled by her classmate in 2024.[49] After reporting the incident to her school's Title IX office, her university launched a Title IX investigation.[50] At that time, the university was subject to the Final Rule, which allowed the university to "choose to question [Doe] through one of two methods, neither of which would require her to be directly cross-examined by her rapist's advisor."[51] After the vacatur of the Final Rule, Doe's university informed her that "it would now address her complaint under the 2020 Rule, which requires her to submit to cross-examination by her rapist's advisor at an upcoming hearing."[52] Doe is anxious "by the prospect of being cross-examined in a Title IX hearing," and she is "considering not

---

[47] *See supra* Section III.A.
[48] VRLC and Doe Br. Supp. Mot. Intervene 13, ECF No. 100.
[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *Id.*

participating in her upcoming Title IX hearing to avoid being retraumatized by cross-examination."[53] But Doe explains that not participating in the hearing runs the risk of making her less credible to the Title IX decision-maker.[54] Doe thus moves to intervene in this action "so that [she] does not have to choose between being subjected to a distressing cross-examination or not being cross-examined and therefore reducing [her] chances of holding [the accused] accountable under the 2020 Rule."[55]

The Court disagrees with Doe's theories of Article III injury because they are too speculative to support standing as a matter of law. To begin, the relevant provision of the 2020 Rule articulates that "[i]f a party or witness does not submit to cross-examination at the live hearing, . . . the decision-maker(s) *cannot draw an inference* about the determination regarding responsibility based solely on a party's or witness's absence from the live hearing or refusal to answer cross-examination or other questions." 34 C.F.R. § 106.45(b)(6)(i) (2020) (emphasis added). Put differently, "nothing in the [2020] Rule *requires* the decisionmaker to draw a negative inference regarding Doe's credibility if she declines to participate in a live hearing."[56] Thus, Doe's alleged injury regarding the mere *possibility* of her being less credible in front of a Title IX decision-maker is purely speculative as it assumes the decision-maker will act contrary to the 2020 Rule. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.").

Similarly, any alleged injury stemming from Doe's anxiety of submitting to cross-examination by the accused's advisor is speculative. In her declaration attached to VRLC

---

[53] *Id.* at 14.
[54] *Id.*
[55] VRLC and Doe App. Supp. Mot. Intervene Ex. 2 (Doe Decl.) ¶ 21, App. 25, ECF No. 101.
[56] Gov't Resp. 10, ECF No. 148 (emphasis added).

and Doe's Motion to Intervene, Doe stated that the potential dates for her Title IX hearing were "April 3, April 4, and April 11."[57] In VRLC and Doe's Reply, Doe explains that "[h]er university has now held one day of hearings on her complaint and told her it 'will likely schedule a 2-hour' additional hearing."[58] Doe clarifies that her accused's advisor did not cross-examine Doe in the hearing that already took place.[59] An "injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *All. for Hippocratic Med.*, 602 U.S. at 381 (citing *Clapper*, 568 U.S. at 409). Here, Doe did not face cross-examination by her accused's advisor in the hearing that has already taken place, and it is unclear whether Doe will face this alleged injury at her possible future hearing. Thus, this injury is too speculative to support standing under Article III. *See Clapper*, 568 U.S. at 409 ("[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that [a]llegations of *possible* future injury are not sufficient." (emphasis and second alteration in original) (internal quotation marks and citation omitted)).

In sum, Doe has failed to demonstrate Article III standing and, consequently, has failed to establish that she may intervene in this action.

## IV.   CONCLUSION

For the reasons set out above, the Court **DENIES** ABB's Motion to Intervene (ECF No. 91) and VRLC and Doe's Motion to Intervene (ECF No. 99).

**SO ORDERED** on this **15th day** of **May, 2025**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE

---

[57] VRLC and Doe App. Supp. Mot. Intervene Ex. 2 (Doe Decl.) ¶ 16, App. 24, ECF No. 101.
[58] VRLC and Doe Reply 4–5, ECF No. 152.
[59] *Id.* at 5.